**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CR04-20031 |
| DENNY R. PATRIDGE, | ) |
| Defendant. | ) |

**TRIAL BRIEF ON BEHALF OF THE UNITED STATES OF AMERICA**

The United States of America by its attorneys, Jan Paul Miller, United States Attorney, Central District of Illinois, and Hilary W. Frooman, Assistant United States Attorney for the Central District of Illinois, hereby file the following trial brief, which is, in short, a review of issues relevant to the case of United States v. Denny R. Patridge.

**STATUS OF THE CASE**

1.  Trial is set to begin on February 7, 2005, before the Honorable Michael P. McCuskey, United States District Judge.  Trial by jury has not been waived.

2.  Count One of the superseding indictment charges defendant Denny R. Patridge with filing a false income tax return, in violation of 26 U.S.C. § 7206(1) for the 1998 tax year. (R.18) Count Two charges the defendant with tax evasion for the 1996 and 1997 tax years, in violation of 26 U.S.C. § 7201. (R.18) Count Three also charges the defendant with tax evasion for the 1999 tax year. (R.18) Count Four charges the defendant with a $200,000 wire fraud, in violation of 18 U.S.C. § 1343. (R.18) Count Five also charges the defendant with wire fraud, in the amount of $100,000; and Counts Six and Seven charge the defendant with money laundering pursuant to 1956(a)(1)(B)(I) and 1956(a)(1)(A)(ii). (R.18)

3.  Estimated trial time for the government's case is 5 to 6 days, assuming reasonable cross examination limits.  The United States expects to call approximately 15  witnesses in its case-in-chief.  The United States intends to offer approximately 300 exhibits.  Many of the exhibits are group exhibits and when the government indicates a total number of exhibits, the

number "300" is the number of individual pages to which witnesses may refer. The government has followed a very liberal discovery policy.  As of December 21, 2004, the defense has received 6,309 document.  The defense has also received agent interviews of  witnesses and Grand jury transcripts.  The defense has been informed that other documents can be made available if the defense chooses to make arrangements. The government began providing copies of exhibits to the defense in late July, 2004.  Many exhibits were already familiar to the defense from six Rule to Show Cause hearings held prior to the defendant's indictment.  The defendant, represented by counsel, attended each of these Rule to Show Cause hearings. Copies of the government's exhibit list and witness list have also been provided to defense counsel.  Further, the government has informed defendant that if it makes arrangements with a copy company, the government will send whatever records the defense wants copied to the company with which the defendant has made arrangements.  The government has received no such instructions from the defendant.

4.  Some exhibits may be eliminated by stipulation and/or acceptance of bank record summaries so that full account records need not be placed in evidence.

5.  The United States will be represented by Assistant United States Attorney Hilary W. Frooman of the Central District of Illinois and by Lea Carlisle of the United States Department of Justice Tax Division.

6.  Pretrial motions have been filed by the government and the defendant.  Both parties have responded to the others' motions.  The Court has ruled on those motions.

7.  The government will disclose the curriculum vitae of its summary/expert witness, James R. Pogue, and a summary of his opinions on or about than January 14, 2005.  Defense counsel will have the "green light" to discuss the case with the government's expert when they receive his curriculum vitae and opinion summary.  The government intends to use Scott Emerson, IRS, Trust Technical Advisor, as a witness if the defendant either cross examines the government's witnesses on the technical aspects of trusts or puts on such evidence through their own witnesses. S/A Bernard Coleman will testify as a summary witness to assist the jury to

- 2 -

1    understand the flow of funds to and from Sultan Services, Minetta, Inc. and the defendant's

2    accounts at Edgar County Bank and Clay City Bank. He is not expected to testify as an expert

3    witness.

4        8.  To date, the defense has provided no discovery, no summaries of witness interviews,

5    and has revealed no defense expert witnesses to the United States.

## APPLICABLE STATUTES

### 26 U.S.C. § 7206(1) Filing a False Tax Return (Count One)

9.  The elements of the crime of willfully and knowingly making, subscribing, and filing

a false federal income tax return in violation of 26 U.S.C. § 7206(1), are:

(1) that the defendant made or caused to be made, a federal income tax return for

the year in question which he verified as true;

(2) the tax return was false as to a material matter;

(3) the defendant signed the return willfully and knowing it was false; and

(4) the return contained a written declaration that it was made under the penalty

of perjury.

*United States v. Whyte*, 699 F.2d 375, 381(7th Cir. 1983); *citing United States v. Oggoian*, 678
F.2d 671, 673 (7th Cir.1982); *United States v. Scott*, 660 F.2d 1145, 1147 (7th Cir.1981).

10.  Prosecution under 26 U.S.C. § 7206(1) requires that a taxpayer cause to be made and

verify as true, under penalties of perjury, a tax return that the taxpayer knows is not true and

correct as to every material matter.  *United States v. Pree*, 384 F.3d 378, 388 (7th Cir. 2004).

Prosecution under § 7206(1) also requires that the defendant sign the return willfully, knowing it

to be false.  *Id.* at 390.

11.  Venue may lie not only where the return was made and subscribed, but also where

filed, or where the preparer received information from the defendant even though the defendant

signed and filed the returns elsewhere. *United States v. Marrinson*, 832 F.2d 1465, 1475 (7th

Cir. 1987).  To show any of these things requires only a preponderance of the evidence, which

may include inferences drawn from circumstantial evidence. *Id.*  The place of signing a tax

- 3 -

1  return does not control the determination of venue. *Id.*

2      12.  26 U.S.C. § 7206(1) provides that indictments are to be brought within six years

3  after the commission of the offense. *Marrinson* at 1476.  The due date of the return is when the

4  statute of limitations begins to run. *Id.*  The taxpayer cannot control the time the statute begins to

5  run by filing before the due date. *Id.*

6      13.  Under §7206(1) the amount of taxes owed is irrelevant to a prosecution for tax

7  fraud. *United States v. Minneman*, 143 F.3d 274, 279 (7th Cir. 1998).  The primary question is

8  not the amount of the evasion but whether the taxpayer intended to evade and defeat his taxes.

9  *United States v. Miller*, 545 F.2d 1204, 1211(9th Cir.1976). In *United States v. Peters*, 153 F.3d

10 445 (7th Cir. 1998), the defendant argued that the government was required to put forward proof

11 to show that any diverted funds constituted taxable income to her rather than nontaxable return

12 of capital.  The Seventh Circuit rejected her argument, stating:

13         The difficulty in automatically applying the constructive distribution rules to this
           case is that it completely ignores one essential element of the crime charged: the
14         willful intent to evade taxes, and concentrates solely on the nature of the funds
           diverted. That latter aspect is not the important element. Where the taxpayer has
15         sought to conceal income by filing a false return, he has violated the tax evasion
           statutes.
16
   *Peters* at 460-1.
17
        **a.  Preparation and Filing**
18
        14.  A return must actually be filed in order for a prosecution under Section 7206(1) to
19
   proceed.  *See United States v. Peters*, 153 F.3d 445, 461(7th Cir. 1998).  The false return alleged
20
   in Count One was filed with the IRS, as evidenced by a date received stamps on the return itself.
21
        **b.  Material Falsity**
22
        15.  Tax returns must be true and correct in all material matters.  26 U.S.C. § 7206(1).
23
   Because materiality is an element of a 7206(1) offense, materiality is a jury question.  *United*
24
   *States v. Clifton*, 127 F.3d 969, 970(10th Cir. 1997).  *See also United States v. Winchell*, 129
25
   F.3d 1093, 1098 (10th Cir. 1997); *United States v. Uchimura*, 125 F.3d 1282, 1286 (9th Cir.
26
   1997) (superseding previous opinion on rehearing). A false statement is "material" when it has
27

28                                            - 4 -

1   "the potential for hindering the IRS's efforts to monitor and verify the tax liability" of the

2   corporation and the taxpayer. *United States v. Pree,* 384 F.3d 378, 395 (7th Cir. 2004).   The test

3   of materiality with respect to a false tax return in a criminal case is whether a particular item

4   must be reported in order that the taxpayer estimate and compute his tax correctly.  *United States*

5   *v. Klausner*, 80 F.3d 55, 59 (2nd Cir. 1996), citing *United States v. Warden*, 545 F.2d 32,37 (7th

6   Cir. 1976).  The charged return consists of IRS Form 1040, Individual Income Tax Return.

7   Other tax returns and IRS forms which are relevant and material will be placed into evidence.

8   These include IRS Forms 1041, U.S. Income Tax Returns for Estates and Trusts, Forms 1120,

9   Corporate tax returns, Forms 1040NR, Non-Resident Alien Income tax returns, Forms 3050,

10  certification of lack of record, and Forms 4340, certification of assessment and payment.

11  **c.   Evidence of Willfulness**

12  16.  Willfulness in a criminal tax case requires proof that the defendant intentionally

13  violated a known legal duty.  *Cheek v. United States*, 498 U.S. 192, 201 (1991).   The purpose of

14  the heightened intent requirement is the potential for the complexity of the tax laws to confuse

15  the average citizen who is honestly trying to comply with his tax obligations.  *Id.* at 199-200.   In

16  determining whether a defendant acted willfully, the jury is "free to consider any admissible

17  evidence from any source showing that [the defendant] was aware of his duty to file a return"

18  including evidence "showing his awareness of relevant provisions of the Code or regulations"

19  and knowledge "of court decisions rejecting his interpretation of the tax law...."  *Id.* at 202.

20  17.  Because direct proof of a taxpayer's state of mind is rarely available, willfulness may

21  be established by circumstantial evidence. *See United States v. Ytem*, 255 F.3d 394, 396 (7th Cir.

22  2001).  Juries are "permitted to draw inferences of subjective intent from a defendant's objective

23  acts."  *Wingfield v. Massie*, 122 F.3d 1329, 1333 (10th Cir. 1997).

24  18.  Defendant Patridge willfully misstated his gross income on his 1998 personal tax

25  return.  Gross income is defined as " income from whatever source derived, including (1) wages

26  and compensation for services, (2) gross income derived from a business; (3) gains derived from

27  dealings in property; (4) interest; (5) income from an interest in an estate or trust.   26 U.S.C.

28

- 5 -

§ 61. This information is provided in IRS publications that are available free of charge to taxpayers. "Generally, you must include in gross income everything you receive in payment for personal services" including "wages, salaries, commissions, fees, and tips." <u>Taxable and Nontaxable Income</u>, Department of the Treasury, Internal Revenue Service, Publication 525 at 1 (1991).

19. It has long been established that income is taxable to the person who actually earned it, and that "the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary from vesting even for a second in the man who earned it." *Lucas v. Earl*, 281 U.S. 111, 115 (1930). Justice Holmes concluded his opinion with the now-famous language that invalidated attempts to attribute the fruits of one's labors "to a different tree from that on which they grew." Patridge is simply another installment in a seemingly unending series of skillfully devised anticipatory arrangements designed to hide income from the IRS or pretend that income does not belong to the individual who earns, deposits, cashes, and spends the paychecks.

20. While recognizing the legal right of a taxpayer to reduce or eliminate tax liability through legal means, the courts of the United States have consistently invalidated attempts by taxpayers to create phony business transactions to disguise their income. *See, e.g., Gregory v. Helvering*, 293 U.S. 465, 470 (1935)(describing sham stock sale as "an elaborate and devious form of conveyance masquerading as a corporate reorganization"); *Moline Properties v. Commissioner of Internal Revenue*, 319 U.S. 436, 439 (1943) (establishing the dominance of substance over form when the form "is a bald and mischievous fiction").

### d. Concealment of Income

21. Proof that a taxpayer has tried to conceal income by assigning it to another entity is evidence of willfulness. *United States v. Eargle*, 921 F.2d 56 (5th Cir.1991)(assignment of income from medical practice to phony church), *cert. denied*, 502 U.S. 809 (1991). Patridge attempted to conceal income by utilizing abusive trusts, purportedly assigning his business income to a variety of "trusts," but at all times continuing to exercise control over and reap the

- 6 -

benefits of the income.

**26 U.S.C. § 7201 Tax Evasion (Counts Two and Three)**

22.  To establish a violation of section 7201, the following elements must be proved:

A)  An attempt to evade or defeat a tax or the payment thereof. *Sansone v. United States*, 380 U.S. 343, 351 (1965); *Spies v. United States*, 317 U.S. 492, 498-99 (1943).  A "willful attempt" may be inferred from any conduct having the likely effect of misleading or concealing. *Spies* at 499.

B)  An additional tax due and owing. *Sansone v. United States, supra*; *Lawn v. United States*, 355 U.S. 339, 361 (1958).  An indictment should not name an exact amount due and owing and a bill of particulars should indicate that the government need not prove a specific amount, only that a substantial amount was due and owing. *United States v. Costello*, 221 F.2d 668, 675 (2nd Cir.1955).  *See also United States v. Eley,* 314 F.2d 127, 130 (7th Cir. 1963)(Plaintiff was obliged to prove attempts to evade or defeat a substantial amount, not the exact figure set out in the indictment.)

C)  Willfulness. *Cheek v. United States*, 498 U.S. 192, 195 (1991); *United States v. Pomponio*, 429 U.S. 10, 12 (1976).

23.  The government need not charge a "substantial" tax deficiency to indict or convict under 26 U.S.C. § 7201.  *United States v. Daniels*, 387 F.3d 636, 641 (7th Cir. 2004) A substantiality element would invite taxpayers to cheat on their taxes in small amounts without fear of prosecution. *Id.*

24.  For the offense of tax evasion, the statute of limitations begins to run from the date of the latest act of evasion, not the due date of the taxes. *United States v. Ferris*, 807 F.2d 269, 271 (1st Cir.1986) *citing United States v. Trownsell*, 367 F.2d 815 (7th Cir.1966).  The Supreme Court has held that the offense of tax evasion is "committed at the time the return is filed." *United States v. Daniels*, 387 F.3d 636, 641(7th Cir. 2004). "It would make no sense to interpret the limitations period as beginning to run before appellees committed the acts upon which the crimes were based."  *Id.* at 641-2; *citing United States v. Habig,* 88 S.Ct. 926 (1968).

- 7 -

25.  The superseding indictment includes allegations of "affirmative acts of evasion" as required for a charge pursuant to 26 U.S.C. §7201, also known as a "Spies" evasion.  An affirmative act is some conduct undertaken at least in part, because of a tax evasion motive. *United States v. King*, 126 F.3d 987, 989-90 (7th Cir.1997).  It can be as simple as filing a false W-4 Form or any other document capable of misleading or concealing a tax deficiency.  *Id.* at 990.  A violation of this statute is a crime of attempt, meaning that whether the defendant succeeds in his effort to evade taxes is irrelevant. *Id*. at 994.  In *Spies v. United States*, 317 U.S. 492, 499 (1943) the Supreme Court provided a non-exhaustive list of methods by which an affirmative willful attempt to evade might be inferred:

> Conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.  If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes....

*Id.* at 499.

26.  One can violate §7201 either by evading the assessment or the payment of taxes. *United States v. Hunerlach* , 197 F.3d 1059, 1065 (11th Cir. 1999).  Count Two focuses on the evasion of payment of taxes, for the IRS had already completed an audit and determined taxes due and owing.  This taxpayer removed his assets from the reach of the IRS to prevent the collection of the taxes which the IRS had determined he owed for the 1996 and 1997 tax years. Count Three focuses on evasion of assessment of taxes, for the defendant failed to file a tax return for the 1999 tax year.   Patridge attempted to conceal his earnings both through his failure to file a tax return and by using "trusts" to conceal income, purportedly assigning his business income to a variety of "trusts."   The Superseding Indictment charges that at all times, Patridge continued to exercise control over and reap the benefits of the income.

**18 U.S.C. § 1343 Wire Fraud (Counts Four and Five)**

27.  To establish a violation of Title 18 U.S.C. §1343, wire fraud, the government must prove:

A)  That the defendant participated in a scheme to defraud;

B)  That the defendant had the intent to defraud; and

C)  That the defendant used the wires to further the fraudulent scheme.

*United States v. Strang*, 80 F.3d 1214, 1219 (7th Cir.1996).

28.  The elements of mail fraud and wire fraud are identical, except that wire fraud requires the use of an interstate telephone call or electronic communication made in furtherance of the scheme. *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995).  Any scheme to deprive another of money or property by means of false pretenses, representations, or promises comes within the reach of these statutes–as long as the use of the mails or wires are part of the execution of the fraud. *United States v. Morris*, 80 F.3d 1151, 1160 (7th Cir.1996); *United States v. Walters*, 997 F.2d 1219, 1222 (7th Cir.1993); *Carpenter v. United States*, 484 U.S.19, 27 (1987).

29.  "Scheme to defraud" is not precisely defined, but the following description is effective:

> Whether a scheme to defraud exists is determined by examining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness or fair play and candid dealings in the general life of the community.

*United States v. Hammen*, 977 F.2d 379, 383 (7th Cir.1992).

30.  A scheme to defraud may include false statements and half-truths known to be misleading, where the defendant expects the victim to act upon the statement to the defendant's benefit or the victim's detriment. *Morris* at 1161.  However, mail and wire fraud also include omissions and concealment of material information, "even where no statute or regulation imposes a duty of disclosure," if the omission "is intended to induce false belief and resulting action to the advantage of the misleader and the disadvantage of the misled." *Id.*  The scheme to defraud must include a material misrepresentation or concealment. *United States v. Gee*, 226 F.3d 885, 893 (7th Cir.2000).

- 9 -

31.  Materiality which must be proven for a wire fraud conviction is not limited to a statement in the manner in which the defendant appears to limit its reference.  "Materiality" may refer to a misrepresentation or to concealment. *See Henry County Beverage Co. v. Secretary of Treasury*, 454 F.2d 413, 416 (7th Cir.1971).  "Materiality" is defined as having a natural tendency to influence, or was capable of influencing the decision-making body to which it was addressed. *United States v. Fernandez, III*, 282 F.3d 500, 508 (7th Cir.2002)  Further, as mail and wire fraud encompass the idea of "materiality" in a way that the false statement statute, 18 U.S.C. §1001 does not, a separate instruction on materiality need not be provided to a jury. *United States v. Coffman*, 94 F.3d 330, 335 (7th Cir.1996).

**18 U.S.C. §§1956(a)(1)(B)(i) and (a)(1)(B)(ii) Money Laundering (Counts Six and Seven)**

32.  Count Six of the superseding indictment is charged under 18 U.S.C. §1956(a)(1)(B)(i) -  Money Laundering.  The elements of this crime, as set forth in the Seventh Circuit Pattern Jury Instructions, are that a defendant:

> A)  Knowingly conducted or attempted to conduct a financial transaction;
>
> B)  The property involved in the financial transaction in fact involved the proceeds of some specified unlawful activity;
>
> C)  The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;
>
> D)  The defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership.

*United States v. Gabel*, 85 F.3d 1217, 1223 (7th Cir.1996); *United States v. Griffin*, 84 F.3d 912, 926 (7th Cir.1996).

33.  Count Seven is also a money laundering charge, but is brought under §1956 (a)(1)(A)(ii).  Count Six focuses on the "concealment" prong of the statute and Count Seven

- 10 -

focuses on the "promotion prong" of the statute. To prove the elements of Money Laundering as alleged in Count Seven of the superseding indictment, the government must prove the defendant:

A)  Knowingly conducted or attempted to conduct a financial transaction;

B)  The property involved in the financial transaction in fact involved the proceeds of some specified unlawful activity;

C)  The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;

D)  The defendant intended to engage in conduct contravening §7201 of the Internal Revenue Code, tax evasion.

*United States v. Masten*, 170 F.3d 790, 797 (7th Cir.1999); *United States v. Emerson*, 128 F.3d 557, 561 (7th Cir.1997); *United States v. Shorter*, 54 F.3d 1248, 1257 (7th Cir.1995).

34.  The money laundering statute does not require the underlying criminal activity be completed prior to the money laundering transactions. *United States v. Butler,* 211 F.3d 826, 829 (4th Cir.2000) ("Funds are criminally derived if they are derived from an already completed offense, or a completed phase of an ongoing offense.")

35.  The creation of sham businesses is highly relevant to the proof of concealment money laundering. *United States v. Bolden*, 325 F.3d 471, 490 (4th Cir.2003).  Further, concealment of a business from an individual or agency and thereby preventing the inclusion of that business in the assets attributed to a party, is relevant to proof of money laundering. *United States v. Ladum*, 141 F.3d 1328, 1333 (9th Cir.1998)(Concealment of ownership in a business from a bankruptcy trustee through the use of nominees who held themselves out as store owners, constitutes concealment money laundering, for the trustee was prevented from knowing that the bankrupt was the legitimate owner of the stores).

- 11 -

1

**ABUSIVE TRUST SCHEMES**

2    36. Abusive trust schemes have been discussed in the government's Motion in Limine.

3  (R.37) Of primary importance is the point that the government is not attempting to prove that the

4  trusts themselves in this case were invalid. Rather, the point in this case is that the trusts were

5  used for an illegal purpose: hiding income. Many people use trusts. If trusts are used for a

6  legitimate purpose, the Internal Revenue Service has no argument with them. If, however, the

7  trusts are used to conceal income and avoid the payment of taxes while at the same time enjoying

8  full benefit of and control over the money in the trust, then the purpose of the trust is not

9  legitimate.

10    37. The government need not actually prove at trial that the trusts are fraudulent or

11  without substance. "Whether a [trust] itself would be held to be a sham is of no moment; here it

12  was the fact that the [trusts] whether in other respects sham entities or not, were used to conceal

13  income and assets in a fraudulent manner which made the scheme illegal." *United States v.*

14  *Schmidt*, 935 F.2d 1440, 1446 (4th Cir. 1991)(affirming conviction of trust scheme promoter). In

15  the present case, the Court should follow the advice of the Fourth Circuit and resist the

16  defendant's attempt "to divert attention away from the well-settled law of what constitutes tax

17  evasion and into the misty realm" of trust law. *Id.* at 1448; see also *United States v. Krall*, 835

18  F.2d 711,714 (8th Cir. 1987)(upholding false return conviction of South Dakota optometrist who

19  "transferred" all assets to sham business "trust).

20

21    38. There are few trust schemes prosecuted criminally in the Seventh Circuit, although

22  there are numerous cases in the Ninth and Tenth Circuits. In fact, trusts have frequently been

23  used by taxpayers attempting to conceal their receipt of income and evade the assessment of

24  taxes, or alternatively their ownership of assets in order to evade the collection of previously

25  assessed taxes. One of the few Seventh Circuit cases, *Muhich v. Commissioner*, 238 F.3d 860

26  (7th Cir. 2001), reviewed the issues from a civil point of view. Nevertheless, *Muhich* notes the

27  same points the criminal cases note: those transactions which lack economic substance need not

28  be recognized for tax purposes. *Id.* at 864; *Hanson v. Commissioner*, 696 F.2d 1232 (1983).

- 12 -

> When taxpayers buy cars, travel, or take out life insurance policies, they make those expenditures out of after-tax dollars. The trust devices here are a transparent attempt to alter that state of affairs by turning all the families' activities into trust activities and all the families' expenses into expenses of trust administration. If this device worked, [they] would, unlike the rest of us, make all their consumptive expenditures with pre-tax dollars.

*Muhich* at 863-64.

39. The Ninth Circuit described the trust scheme in *Hanson v. Commissioner*, *supra*, as a "'flagrant tax avoidance scheme' repeatedly rejected by the courts." *Id*. at 1234. The court also rejected the Hansons' claim that they had reasonably relied on the advice of counsel. "No competent lawyer" could give such advice, and "no reasonable person would have trusted this scheme to work." *Id*. Whether "domestic" or "foreign" trusts are involved, if the transactions lack economic substance, the conclusion is the same: the transactions need not be recognized by the Internal Revenue Service. *Gregory v. Helvering*, 293 U.S. 465, 467 (1935).

40. Patridge achieved but one purpose in such transfers; confusion. By then leaving the funds off-shore, he allowed himself to draw against those funds while making it virtually impossible for an agency such as the IRS, to track the draws.

41. Further, Patridge made use of the money without the appearance of doing so. For instance, Patridge had access to two new vehicles which appeared to be highly encumbered and were purchased in the name of Minetta by the offshore funds.

42. The government expects to produce evidence that in January, 2002 the defendant completed the purchase of a Chevrolet Tahoe from Ken Diepoltz Chevrolet in Charleston, Illinois. The government expects to demonstrate that the defendant directed the entire circular funds transfer, causing Minetta, Inc. to hold the lien on this vehicle. The evidence will show that the defendant borrowed his own money for this vehicle purchase. Patridge engineered the loan agreements both for Sultan Services to make a loan of $24,600 to Minetta and for Minetta to loan Patridge $24,600. A representative of the company which established Minetta, Inc. at the defendant's direction, followed the defendant's instructions and drew up a note between

Minetta, Inc., as borrower, and Sultan Services.  She requested that Patridge review the documents and inform her of any necessary changes.  She also requested that he sign the note.

43.  Patridge directed a similar funds transfer for the purchase of another vehicle in July 2002.  Once again, he caused his own funds to be transferred from Sultan Services and he then borrowed his own funds to purchase the vehicle.  He made it appear that he had borrowed the funds from Minetta, Inc., but Minetta's funds were the defendant's funds.

**SUMMARY WITNESS AND SUMMARY SCHEDULES**

44.  IRS Special Agent Bernard Coleman will testify as a summary witness to assist the jury in understanding of the funds flow such as that described in paragraphs 42 and 43.

45.  S/A Bernard Coleman will testify as a summary witness regarding movement of money through Clay City Bank, Edgar County Bank, SKNA Bank and the Minetta Accounts at both Bank of America and Wells Fargo Bank.  The defendant will have a chance to observe the summary funds flow presentation before it is used in the courtroom.

46.  Near the end of its case, the United States will call an expert/summary witness, Revenue Agent James R. Pogue, who is trained in accounting and the computation of tax liabilities.  Pogue will provide an analysis of all the witness testimony at trial, the numerous financial records introduced into evidence and explain the tax consequences of the Government's evidence.  Agent Pogue will provide Rule 1006 summaries of voluminous records.

47.  Summary charts are often used in criminal tax cases.  *United States v. Howard*, 774 F.2d 838, 844 (7th Cir. 1985).  This circuit and others have accepted that use of a summary witness does not invade the province of the jury.  *United States v. Doyle*, 234 F.2d 788 (7th Cir.1956); *United States v. Marchini*, 797 F.2d 759 756-766 (9th Cir. 1986).  Summary charts may be admitted into evidence and published to the jury once the expert testifies concerning them.  *Howard* at 844.

48.  A summary witness draws conclusions from the evidence presented at trial. *United States v. Pree*, 384 F.3d 378, 391 (7th Cir. 2004); *citing United States v. Esser*, 520 F.2d 213,

- 14 -

217-218 (7th Cir. 1975).  As a summary witness, an IRS agent may testify as to the agent's analysis of the transaction which may necessarily stem from the testimony of other witnesses. *Moore*, 997 F.2d at 58. The agent may also explain his analysis of the facts based on his special expertise. *Id*. The summary witness may review the evidence in a manner that advocates the government's theory of the case, and need not give effect to the contentions of the defendant, so long as the testimony he provides is within his area of expertise.  *Id*. at 58-59.

49.  Pursuant to Fed.R.Evid.1006, a trial judge may admit a summary of voluminous writings into evidence.  *United States v. Petty*, 132 F.3d 373 379 (7th Cir. 1997); *Needham v. White Laboratories, Inc.*; 639 F.2d 394, 403 (7th Cir. 1981). These summaries must be admissible and a showing must be made that they are accurate. *United States v. Briscoe,* 896 F.2d 1476, (7th Cir. 1990).  The underlying records should be made available for inspection. *Zayre Corp. v. S,M. & R. Co., Inc.*, 882 F.2d 1145, 1149 (7th Cir. 1989).  While the underlying documents must be admissible, they need not be admitted at trial.  *United States v. Johnson*, 594 F.2d 1253, 1257, n. 6 (9th Cir 1979).

50.  The summary schedules, because they will reflect only evidence that is admitted or admissible at trial, by necessity will not be finalized until shortly before the agent testifies.  As such, final copies of the summary schedules will be provided to the defense shortly before the agent testifies.  However, Revenue Agent Pogue will prepare "draft" schedules reflecting the evidence the Government anticipates will be admitted.  These "draft" schedules, which are internal government work papers, are protected from disclosure pursuant to Rule 16(a)(2) of the Federal Rules of Criminal Procedure.  Nevertheless, in the spirit of discovery, the United States will provide these "draft" schedules to the defendants within one week prior to the final pre-trial date.

51.  Consequently, the United States believes that the court should admit into evidence the testimony of the expert summary witness and summary schedules to assist the jury in this case.

- 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXPERT WITNESSES**

52.  The government will definitely utilize a summary/expert witness in this case, Revenue Agent James R. Pogue of the Internal Revenue Service, and, as previously noted in paragraph 7, may utilize expert witness Scott Emerson, depending on the defendant's presentation of his case.  Resumes for both Pogue and Emerson will be provided to the defense by January 14, 2005.  A summary of Pogue's opinion and basis for that opinion will be provided to the defense on or about January 14, 2005. Pogue will explain that the defendant was legally required to declare all of the income that he earned; further, he has reviewed the funds placed in trusts which the defendant purchased through an entity known as Aegis.  In his opinion, based upon his education, training, and experience, the funds should have been declared as income on the taxpayers return.  Furthermore, when the taxpayer asserted the income had been "distributed" to a foreign trust, that money should have been declared as income on tax returns.  Agent Pogue will explain that  even if money funds were  "distributed" to a foreign" trust, a United States citizen who earned the money through business ventures in the United States owes United States taxes on the funds.

53.  Agent Pogue's expert opinion, having reviewed bank records for Patridge Asset Management Trust and Exempt Services Company, Ltd. trustee for both Conventus Global Trust and Ebba International Trust, and also included the accounts Patridge used at Swiss America Bank in Antigua, is that these trusts had no economic substance for tax purposes and the defendant retained control over the funds.  Beneficial use and enjoyment of the funds in question remained with the defendant.

54.  In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions.  *Smith v. Ford Motor Co.*, 215 F.3d 713,718 (7th Cir. 2000).  An expert may be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702.  While "extensive academic and practical expertise" in an area is certainly sufficient to qualify a potential witness as an expert, "Rule 702 specifically contemplates the

- 16 -

admission of testimony by experts whose knowledge is based on experience," *Smith* at 718.  No one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). However, the defense may not cross-examine the government's summary witness/expert regarding his interpretation of various tax statutes, as conclusions of law.  *United States v. Hawley*, 768 F.2d 249, 251 (8th Cir. 1985).

55.  Pogue will also testify that he reviewed certain promissory notes signed by the defendant and his wife to repay funds borrowed by Patridge Asset Management Trust.  Having reviewed bank records for each of the named entities, Patridge Asset Management Trust, Exempt Services Company, Ltd., Conventus Global Trust and Ebba International trust, and having reviewed the personal bank account records of the defendant, he has concluded that no repayment of the loans memorialized by the promissory notes ever occurred.  In his opinion, to be a legitimate loan with economic substance, the responsibility to repay must exist and be enforced.  Such never occurred and the "loans" were not true loans.

**PRESENCE IN THE COURTROOM**

56.  At the request of either party, the Court shall order witnesses be excluded from the courtroom, and it may also make this order pursuant to its own motion. Fed. R. Evid. 615. This rule does not authorize the exclusion of a person shown by a party to be essential to the presentation of the party's cause. (*Id*.) Specifically, the rule does not apply to an expert who can base his opinion on the facts and data learned from attending the trial and listening to testimony. *United States v. Crabtree and Cray,* 979 F.2d 1261, 1270 (7th Cir. 1993).

57.  The purpose of the sequestration rule is to prevent a witness from listening to testimony and then tailoring his testimony to match that of other witnesses. Such a limitation does not sensibly apply either to a summary witness, whose role is to summarize the testimony that has come into evidence, or an expert witness, whose opinion is based on the facts and testimony presented at the trial.

- 17 -

**COPIES**

58.  Under the Federal Rule of Evidence 1003, a duplicate, such as a photocopy, has the same status as an original, unless: (1) there is a genuine question as to the authenticity of the original or (2) it would be unfair to admit the duplicate in lieu of the original.

59.  The United States does not anticipate that either of these exceptions will apply to any of the records introduced in this case.

**BUSINESS RECORDS**

60.  Criminal tax cases, out of necessity, depend upon documentary evidence.  For the most part, these documents are obtained from financial institutions, private business and other third parties.  A portion of the Government's evidence in this case consists of business records. These include the business records seized from the Larson Accounting offices in a search warrant.

61.  Business records made and kept in the regular course of business are admissible pursuant to Rule 803(6) of the Federal Rules of Evidence.  Rule 803(6) is considered a hearsay exception and permits the admission of pre-certified domestic business records without foundation testimony. *United States v. Klinzing*, 315 F.3d 803, 810 (7th Cir. 2003).

62.  If documents are introduced by a witness, under Rule 803(6), the United States must produce a qualified witness to testify that the documents were made and kept in the regular course of business. *United States v. Keplinger*, 776 F.2d 678, 693 (7th Cir. 1985).  The phrase "other qualified witness" is broadly interpreted to require only that the witness understand the record-keeping system. *United States v. Muhammed*, 928 F.2d 1461, 1469 (7th Cir.1991).  The witness need not have actual knowledge of the treatment of the specific documents in question and need not know who actually made and kept the records. *Keplinger* at 693; *United States v. Chappell*, 698 F.2d 308, 311 (7th Cir. 1983), *cert. denied*, 461 U.S. 931 (1983).  Computer data compilations are admissible as business records under Fed.R.Evid. 803(6) if a proper foundation as to the reliability of the records is established.  *United States v. Jackson*, 208 F.3d 633, 638

- 18 -

(7th Cir. 2000). Objections that an exhibit may contain inaccuracies, ambiguities, or omisssions go to the weight and not the admissibiltiy of the evidence. *Keplinger* at 694.

**CERTIFIED DOCUMENTS**

63. The United States anticipates offering into evidence certified copies of certain Internal Revenue Service records, title records from the Shelby County Clerk, records from Nevis obtained via the Mutual Legal Assistance Act, and records from Antigua, obtained via the Mutual Legal Assistance Act. These records are self-authenticating and admissible pursuant to Federal Rules of Evidence 902(4), 803(8), and 1005.

**CHARTS**

64. The Government intends to use charts during its examination of witnesses and in closing argument. Courts have repeatedly allowed use of charts similar to the ones the United States intends to use in this case. *See, e.g., United States v. Stoecker*, 215 F.3d 788, 792 (7th Cir. 2000) (stock pledge charts which detailed which stocks the defendant pledged as security for its loans); *United States v. Swanquist*, 161 F.3d 1064, 1072 (7th Cir. 1998) (charts used to compare defendant's "disclosed" loans to his "actual" loans; *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979)(chart used to summarize the indictment); *United States v. Jennings*, 724 F.2d 436, 441-443 (5th Cir.1984)(compilation of 200 pages of material involving substantial amount of mathematical calculations); *United States v. Stephens*, 779 F.2d 232, 238 (5th Cir. 1985)(simple flow charts used that traced the defendant's use of loan proceeds).

65. When a witness testifies and uses a chart, a foundation for the admission of such chart will be established through the testimony of a witness or witnesses who will testify that the chart accurately reflects information contained in documents already in evidence or to be received in evidence. *See United States v. Lemire*, 720 F.2d 1327, 1349 (D.C. Cir. 1983) *cert. denied*, 467 U.S. 1226 (1984); *United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979), *cert. denied*, 441 U.S. 946 (1979). It is not necessary that the witness presenting the chart be an expert witness or have some specialized knowledge of what he or she is testifying about if the

- 19 -

chart does not contain complicated calculations that an expert would need to explain. *United States v. Jennings*, 724 F.2d 436, 443 (5th Cir. 1984), *cert. denied*, 467 U.S. 1227 (1984).

66.  Subject to the court's satisfaction that the Government's charts are accurate, and that each piece of information contained on the charts is supported by admissible documentary or testimonial proof, use of the charts should be permitted. The charts will assist the Government to explain and summarize its case.

**CROSS EXAMINATION**

67.  Should the defendant take the stand in his own defense, he will be subject to cross examination. The defendant was present, with counsel, at two interviews during which he made statements which, if relevant, can be used by the government in its case in chief. The defendant was with counsel, was not forced to participate in the interviews, attended the meetings of his own free will and was free to leave at any time. The defendant was also present at six Rule to Show Cause hearings and personally testified under oath at five of those hearings. The defendant had no choice whether to attend the Rule to Show Cause hearings, as he had received a court order to attend and when called to the stand, he was required to answer questions. The defendant testified as a records custodian. A records custodian cannot assert his personal Fifth Amendment rights to avoid complying with a subpoena for records. *Braswell v. United States*, 487 U.S. 99, 109 (1988); *United States v . Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999). A custodian of records "must produce corporate records which are legitimately summoned even if they incriminate him." *Id.* at 760.

68.  The defendant may have some personal protection for statements he made in his capacity as records custodian. The entities named in the subpoenas are not named in the superseding indictment as fellow defendants. However, the Fifth Amendment privilege against self-incrimination does not give a defendant license to perjure himself. Suppression of evidence by reason of the Fifth Amendment is a shield, not a sword. *See United States v. Handlin*, 366 F.3d 584, 592 (7th Cir. 2004), "Having voluntarily taken that stand, [the defendant] was under an

obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process"; *citing Harris v. New York*, 401 U.S. 222, 225 (1971).

69.  Grand jury subpoenas were issued to all of the "trusts" named in the superseding indictment and also to Minetta, Inc. and to Sultan Services, Inc. The defendant, in behalf of each of these entities, appeared at five Rule to Show Cause hearings. The defendant, in behalf of the entities, ultimately provided some of the documents, as required, by the subpoenas. The defendant also made statements, under oath, in behalf of the entities.

70.  Should the defendant testify in his own behalf at trial, and should he make any statements contrary to those he made under oath before either the grand jury or the judge in a Rule to Show Cause hearing, those statements may be used to impeach him. Any prior inconsistent statement will be admissible, if it is inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. Fed.R.Evid.801(d)(1).

**REBUTTAL WITNESSES**

71.  While the Due Process Clause requires the Government to disclose exculpatory evidence, *Brady v. Maryland*, 373 U.S. 83 (1963), there is otherwise no Constitutional right to discovery in non-capital criminal cases and the prosecution has no constitutional obligation to reveal its witnesses prior to trial.  *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

72.  Rebuttal witnesses may testify at trial despite not being on the government's witness list.  The government has no legal duty to disclose the identify of potential rebuttal witnesses when their testimony only becomes necessary after the testimony of the defendant.  *United States v. O'Brien*, 119 F.3d 523, 530 (7th Cir. 1997). ("Once a defendant takes the stand and denies his criminal activity, it is proper for the district judge to permit the Government to offer rebuttal evidence in contradiction of that testimony."); *United States v. Cruz-Velasco*, 224 F.3d 654, 665

(7th Cir. 2000)("Because the government has no legal duty to disclose its potential rebuttal witnesses, and because defendant...put his credibility at issue by testifying in his own defense, the district court properly allowed [the rebuttal witness] to testify.")

73. Rule 16(a)(1)(C) provides that the government must disclose only those documents and tangible objects that are material to the defendant's defense or that the government intends to use at trial. *United States v. Bastanipour*, 41 F.3d 1178, 1181 (7th Cir. 1994). The function of rebuttal is to contradict, impeach, or defuse the impact of the evidence offered by an adverse party. *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001).

74. The government has been liberal in its compliance with discovery required under Fed.R.Evid.16. Thousands of documents have been revealed and made available to defense counsel. The government has numbered numerous documents and placed these documents on the government's exhibit list. The documents on the government's exhibit list are those which will certainly or will very possibly be placed into evidence in the government's case-in-chief. The existence of numerous other documents in the government's possession has been revealed to the defense. The fact that a document is not listed on the government's exhibit list does not mean that the government has not made the document available to the defense for review

75. Once the defendant has rested, the government will have the chance to present rebuttal testimony. Such testimony is not an opportunity for the government to bring up new points or even to reiterate points previously made in its case-in-chief. Rather, to qualify as proper rebuttal evidence, the evidence must address a point made by the defendant in his case-in-chief.

76. As it is impossible to completely anticipate the defendant's case, the government may acquire some evidence during the trial solely for use as rebuttal. There is no requirement that such evidence be revealed in advance to the defendant. Therefore, some documents which the government did not consider probative, had not intended to use, and therefore failed to number as exhibits, might become relevant following the defendant's cross-examination or following

- 22 -

presentation of the defendant's witnesses. Nothing should preclude the government's use of such documents as evidence, especially since the government has been very liberal with discovery.

77.  Some point may arise which the government had not presented or checked prior to trial because it did not appear to be relevant. Should the defendant rely on such a point in his defense, and should the government obtain some information to rebut such a point; unless it is unfairly prejudicial, such evidence should be admitted. Of course, if the opposing party places a matter at issue on direct examination, fairness mandates that the other party can offer contradictory evidence even if the matter is collateral. *Jones v. Southern Pacific Railroad*, 962 F.2d 447, 450 (5th Cir. 1992). Their rebuttal testimony is limited to facts defense places in issue. *See United States v. O'Brien*, 119 F.3d 523, 530 (7th Cir. 1997); *FDIC v. Suna Associates, Inc.*, 80 F.3d 681, 687 (2nd Cir. 1996).

78.  It is impossible to anticipate all of a defendant's possible defenses and meet those in the government's case-in-chief.   It is often difficult to know in advance who may be called to rebut evidence which has not yet been presented. *United States v. Bramlet*, 820 F.2d 851, 855 (7th Cir. 1987).

**HOSTILE WITNESSES**

79.  Federal Rule of Evidence 611(c) provides:

> Leading questions should not be used ton the direct examination of a witness except as may be necessary to develop the witness' testimony.  Ordinarily leading questions should be permitted on cross-examination.  When a party calls a hostile witness, and adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

Fed.R.Evid. 611(c).

80.  A "hostile witness" is a witness "hostile in fact."  (Federal Rules of Evidence, 1974 Note to Subdivision (c)).  A witness who is identified with an adverse party can be designated as hostile. *See Ellis v. City of Chicago*, 667 F.2d 606, 612 (7th Cir. 1981)(police officers employed

- 23 -

by defendant should have been treated as hostile witnesses); *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984)(defendant's girlfriend clearly was "identified with an adverse party" and properly treated as hostile). A judge is given wide latitude in designating a witness as hostile. *Id. See also United States v. Olivo*, 69 F.3d 1057, 1065 (10th Cir. 1995). The district court has the discretion to allow or disallow leading questions of a witness identified with an adverse party. *United States v. Hall*, 165 F.3d 1095, 1117 (7th Cir. 1999).

**STATEMENT OF FACTS**

81.  In previous motions in this case, the parties have discussed most of the basic case facts.  For discussion of possible defense theories and government position on them, only the following facts are truly necessary:

**TAX EVASION**

82.  The defendant is Denny R. Patridge, an insurance salesman who purchased trusts from Aegis, established separate bank accounts for his several purchased trusts, and transferred money earned into these bank accounts. Funds so transferred were not included in his gross income and he failed to pay income taxes on the funds so transferred.  The purpose of these "trusts" was to conceal income and assets and conceal who actually controlled the funds.

**POTENTIAL DEFENSES**

Subjective Good Faith

83.  The advice of counsel defense is basically that the defendant, on counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent. In order to establish an advice of counsel defense, a defendant must establish that: 1) before taking his action, 2) he in good faith sought the advice of an attorney whom he considered competent, 3) for the purpose of securing advice on the lawfulness of his possible future conduct, 4) made a full and accurate report to his attorney of all material facts which the defendant knew, and 5) acted strictly in accordance with the advice of his attorney who had been given a full report.

- 24 -

*United States v. Cheek*, 3 F.3d 1057, 1061 (7th Cir. 1993). Though a defendant who would rely on an advice of counsel defense is required to have disclosed all pertinent information in his possession to his attorney, there is no inherent inconsistency between his taking that action and his studious avoidance of gaining other pertinent information. *United States v. Beach-Nut Nutrition*, 871 F.2d 1181, 1193-94 (2nd Cir. 1989)

84.  In *United States v. Beach-Nut Nutrition*, 871 F.2d 1181, 1193-94 (2nd Cir. 1989), the court admitted the defendant's testimony to describe the information he had provided to his attorney, and the advice he had received in return. However, in addition to a jury instruction concerning reliance on advice of counsel, the court also allowed a conscious-avoidance instruction. *Id*. at 1195. A conscious-avoidance instruction is appropriate when a defendant claims to lack "some specific aspect of knowledge necessary to conviction but where the evidence may be construed as deliberate ignorance." *Id*. This instruction informed the jury that it could find that the government had proven that the company had deliberately avoided gaining actual knowledge of facts in issue. *Id*.

85.  To obtain a jury instruction advising the jury of the advice of counsel defense, a defendant must demonstrate that the attorney advised the defendant as his counsel; and the attorney who advised the defendant was not a partner in the venture, did not take a share of the profits, or was "not a lawyer who had no interest save to give sound advice for a reasonable fee". *United States v. Carr*, 740 F.2d 339, 347 (5th Cir. 1984.) The defense of advice of counsel necessarily fails where counsel acts as an accomplice to the crime. *United States v. West*, 2004 WL 2827967 (D.C. Cir. Dec. 10, 2004)

86.  It is essential that a defendant obtained the advice of counsel with respect to future conduct. *United States v. Polytarides*, 584 F.2d 1350, 1352-53 (4th Cir. 1978). When, as in *Polytarides*, a defendant has already announced his intent to take action and/or been warned of illegality, subsequent advice would not create a sufficient factual basis for instructing the jury on the advice of counsel defense.

87.  Even with an advice of counsel defense and jury instruction, there may be a legitimate issue as to the defendants's genuine ignorance of the illegality of his conduct. (*See United States v. Heinemann*, 801 F.2d 86, 93-94 (2nd Cir.1986)(knowledge of lawfulness of tax avoidance scheme).

88.  A good faith belief that he was not violating the tax laws entitles a criminal tax defendant to an acquittal on the issue of willfulness. *Cheek v. United States*, 498 U.S. 192, 202 (1991).  "A good faith misunderstanding of the duty to file a return can negate the willfulness element of a failure-to-file charge."[1] *United States v. Hairston*, 819 F.2d 971, 972 (10th Cir. 1987). A defendant in a failure to file case is entitled to offer evidence of a good faith belief, and to have the jury instructed regarding such a defense if evidence of such a belief is introduced at trial. *United States v. Harting*, 879 F.2d 765, 767 (10th Cir. 1989)(reversing failure to file conviction for refusal to so instruct where defendant had testified). The belief need not be objectively reasonable as long as it is held in good faith.  *Id*.; *Cheek* at 202; *United States v. Mann*, 884 F.2d 532, 537 (10th Cir. 1989); *Hairston* at 972.  However, the jury may consider the reasonableness of the belief when deciding if it was actually held by the defendant.  *Cheek* at 203-04.

89.  When a defendant asserts lack of intent as his defense, he should be allowed to provide evidence in support of this defense even if such evidence is hearsay. *See United States v. Rubin*, 591 F.2d 278, 283 (5th Cir. 1979)  In *Rubin*, testimony offered by the defendant in was clearly hearsay. *Id*. This testimony was that the defendant had thought that the union's constitution was not to be interpreted strictly, because past presidents had told him that the constitutions were flexible, living documents that could be interpreted to fit the needs of a

---

[1]John Cheek was convicted on remand despite the subjective good faith instruction, and his conviction was upheld on appeal.  *United States v. Cheek*, 3 F.3d 1057 (7th Cir.), *cert. denied*, 510 U.S. 1112 (1993).  Tax protesters trumpeting the "*Cheek* defense" uniformly neglect to mention this troubling fact.

particular local. *Id.* The trial court excluded this testimony as hearsay and the appellate court reversed, because the testimony was relevant to the defendant's state of mind, which was pivotal in his defense of lack of intent. *Id.*

<u>Reasonable Reliance on Expert Advice</u>

90.  Reasonable reliance on advice of counsel can negate the willfulness element, but it is not an absolute defense. *United States v. Civella*, 666 F.2d 1122, 1126 (8th Cir. 1981). A legitimate reliance defense must concentrate on advice received and relied upon before the offenses were completed. *United States v. Cheek*, 3 F.3d 1057 (7th Cir. 1993)(defendant simply continued course of conduct he began before attorney "advisors" were consulted), *cert. denied*, 510 U.S. 1112 (1993); *United States v. Schmidt*, 935 F.2d 1440, 1449 (4th Cir. 1991)(requested reliance instruction rejected because defendant only spoke with accountant after he had bought abusive trusts and did not discuss the essential questions of income assignment).

91.  To qualify for a reliance defense instruction, a defendant must show that there was both: 1) a good faith reliance on a professional, and 2) a complete disclosure of all relevant facts. *United States v. Masat*, 948 F.2d 923, 930 (5th Cir. 1991)(affirming refusal to give reliance instruction based simply on letters and legal documents), *cert. denied*, 508 U.S. 950 (1993).[2]

92.  It is proper for the trial court to deny a defendant's attempt to introduce documents, books, videos, and other materials into evidence in a tax prosecution case to show that he did not believe he was required to file tax returns. *See United States v. Willie*, 941 F.2d 1384, 1391 (10th Cir. 1991); *cert. denied*, 502 U.S. 1106 (1992).  In *Willie*, the Tenth Circuit upheld the decision of the district court to reject the admission of this evidence, stating that even  if the defendant may have actually relied on the documents, the potential for jury confusion was too

-----

[2]*Masat*  reportedly "relied" on Nebraska attorney Guy Curtis, who was also one of Johnnie Sullivan's "advisors."  948 F.2d 930.

- 27 -

great. *Id*.

93.  Actual testimony by a defendant is much more probative of good faith beliefs than is the mass introduction of tax protester literature. *United States v. Mann*, 884 F.2d 532, 538 (10th Cir. 1989)("Mann's testimony regarding his views was more probative than publications"); *United States v. Hairston*, 819 F.2d 971, 973 (10th Cir. 1987)(defendant testified extensively about his beliefs, and trial court did not abuse its discretion by excluding proffered documents); *United States v. Hawley*, 592 F.Supp. 1186, 1188(D.S.D. 1984)(refusing to admit entire I.R.C.), *aff'd*, 768 F.2d 249 (8th Cir. 1985); *see also United States v. Payne*, 978 F.2d 1177, 1182 (10th Cir. 1992)(affirming denial of defendant's attempt to introduce copy of court opinion, Irwin Schiff book, Internal Revenue Code, and handwritten research notes).  *But see United States v. Harris*, 942 F.2d 1125 (7th Cir. 1991)( defendant may present evidence of mistaken good faith belief in tax law's ambiguity, including expert testimony about case law).

## EVIDENTIARY ISSUES

### Hearsay

94.  Defense witnesses should be precluded from testifying as to out-of-court statements made by the defendant. Such testimony, is inadmissible hearsay. Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Subsection (d) goes on to define certain types of statements which are not hearsay. One of those non-hearsay statements is an admission by a party-opponent. Fed.R.Evid.801(d)(2).

95.  To qualify a statement as "non-hearsay" Fed.R.Evid. 801(d)(2)(A), a statement must have been made by the party against whom it is offered. *United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000). The requirement that the statement be offered against a party to qualify as an admission is designed to exclude the introduction of self-serving statements by the party making them. *United States v. Palow*, 777 F.2d 52, 56 (1st Cir.1985), *cert. denied*, 475 U.S.

1052 (1985). Self-serving declarations of a party are only admissible if they are not hearsay or

if they fall within one of the exceptions to the hearsay rule. *United States v. Jackson*, 780 F.2d

1305, 1313-1314 n.5 (7th Cir. 1986).

96. In *United States v. Phelps*, 572 F.Supp. 262, 264-265 (E.D.Ky. 1983), defendant

Phelps sought to introduce his own statement, "That is my gym bag, but Taylor put it in the

trunk," through a police officer witness. Counsel for co-defendant Taylor objected on several

grounds, including that the statement was hearsay. *Id*. In ruling the statement inadmissible, the

District Court explained that the "statement of a party may be introduced as an admission only

when offered against that party." *Id*. The court then went on to analyze the statement under

several exceptions to the hearsay rule, none of which were applicable.

97. In the case at bar, it is anticipated that the defendant may attempt to introduce his own

statements through defense witnesses. For the reasons set forth above, the defendant should be

precluded from introducing such statements unless an exception to the hearsay rule applies.

<u>Irrelevant and Misleading Evidence</u>

98. Pursuant to Fed.R.Evid. 103(c), the jury should not be exposed to inadmissible

evidence. *United States v. Ledesma,* 632 F.2d 670, 674 (7th Cir. 1980). Fed.R.Evid. 402

provides that it is fundamental that "evidence which is not relevant is not admissible." *United

States v. Wilson*, 966 F.2d 243, 246 (7th Cir. 1992). According to Fed.R.Evid. 401, "relevant

evidence" is defined as "evidence having any tendency to make the existence of any fact that is

of consequence to the determination of the action more probable or less probable than it would

be without the evidence." *Id*. Moreover, even when evidence is arguably "relevant," the court

should still exclude the evidence "if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403;

*See United States v. Adalco*, 201 F.3d 979, 985 (7th Cir. 2000).

<u>Witness Testimony</u>

- 29 -

99.  It is well established that witnesses testify about fact, not law. *United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2000). When a legal proposition is relevant to the jury's consideration, the proper procedure is for the judge to instruct the jury on the proposition. *Id.* As stated earlier, a revenue agent may testify as an expert witness, a summary witness, or an expert summary witness. *See United States v. Pree*, 384 F.3d 378, 392 (7th Cir. 2004).

100.  The defendant has given some indication that he intends to present evidence that the documents he called "trusts" and which he sold to at least one purchaser, Gary and Mary Scherer, were not, in and of themselves, "illegal." That argument is irrelevant. The case against the defendant is not based on the legality of trusts, but rather, focuses on the defendant's use and involvement in the sale of entities which included the establishment of bank accounts and transfers of funds which had no economic substance. (See: Government's Motion in Limine R.37)

101.  However, evidence which might have been otherwise irrelevant and inadmissible may become admissible when the other party "opens the door." In *United States v. Lerch*, 996 F.2d 158, 162 (7th Cir. 1993), the defendant cross-examined the government's tax court attorney regarding the lengthy procedural history of the tax case and civil fraud penalties discussed in the tax court's opinion, thereby "opening the door" for that opinion's admissibility.

Agency Relationship

102.  Out of court statements which might otherwise be considered hearsay are sometimes admissible under Federal Rule of Evidence 801(d)(2)(D): a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. Fed. R.Evid. 801(d)(2)(D) provides that "[a] statement is not hearsay if...[t]he statement is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency relationship." Under traditional agency law, the statements of an agent made in the course of the agency serve to bind the

- 30 -

principal.  Thus, such statements are presumably reliable in the absence of cross-examination because they are considered as if they were statements of the principal himself. *United States v. DeOrtiz*, 907 F.2d 629, 636-38 (7th Cir. 1990).

103.  In the present case, certain statements made by Brent Winters, made in the course of his representation the defendant, are both relevant and admissible under the evidentiary principal noted above. (A summary of the statements, made during a meeting of the attorneys for the government and the defendant and his attorney on February 5, 2003, and February 13, 2003, was provided to the defense on August 9, 2004.)

104.  An attorney may be the agent of his client for purposes of Rule 801 (d)(2)(D). *United States v. McClellan*, 868 F.2d 210, 216 n.9 (7th Cir. 1989). The unique nature of the attorney-client relationship demands a more exacting standard for admission of statements by attorneys under Rule 801(d)(2)(D); nevertheless, such statements have been admitted.

105.  The Seventh Circuit affirmed *United States v. Harris*, 914 F.2d 927 (7th Cir. 1990), in which such statements were admitted against the defendant. In that case, the defendant's former counsel, Carlson, had been proceeding upon a theory of mistaken identity. *Id*. at 930. Carlson had shown a witness some photos of the defendant's brother, apparently hoping the witness would indicate that the individual in the photos looked very much like the defendant. *Id*. The witness, however, stated that the photos were definitely not of the defendant. *Id* At trial, the defendant proceeded on a theory of mistaken identity and his new counsel also tried to argue that the witness had mistaken the defendant for the defendant's bother. *Id*. The witness was allowed to testify for the government as to his previous encounter with former defense counsel Carlson, who had wanted him to say that photos of the defendant's brother looked like the defendant. *Id*.

106.  The witness in *Harris* was allowed to testify regarding statements made by the defendant's first attorney because those statements did not impair the privilege against self-incrimination. *Id*. The statements did not force the defendant to take the stand and the

- 31 -

statements did not relate confidential information relating to the attorney-client relationship. *Id*.

107.  The Seventh Circuit upheld the admission of the witness's (Freeman's) testimony and stated:

> Carlson was acting as an agent of his client when he interviewed Freeman.  He was his counsel of record and his statements were made within the scope of that relationship.  For purposes of Rule 801(d)(2)(D), therefore, these statements were technically not hearsay and were admissible against Harris. None of the policy concerns inherent in the lawyer-client relationship were infringed by admitting this evidence.

*Harris* at 932.

108.  In Patridge's case, his attorney, Brent Winters, has made several statements to which S/A Coleman of the Internal Revenue Service, can testify. The statements were made after Winters had formally represented the defendant in hearings before former Chief Judge Joe B. McDade, of the Central District of Illinois. Moreover, unlike the situation described in Harris, the defendant was present when the statements were made and/or was present when those statements, such as the ones regarding the existence or non-existence of certain records, were summarized for the chief judge.

Juror Examination in the Jury Room of Admitted Documents

109.  Generally, jurors may examine any document properly admitted in evidence. *See United States v. Berry*, 64 F.3d 305, 307 (7th Cir. 1995).  Such, issues, however, are within the discretion of the trial court.  *See United States v. Burrell*, 963 F.2d 976, 982 (7th Cir. 1992). The district court has considerable discretion in the handling of exhibits during the course of the trial as well as during jury deliberations. *Id*. Charts which summarize the government's documentary evidence can properly be allowed in the jury room, although they have not been admitted into evidence, if a notebook containing copies of the charts has been admitted. *United States v. Tannehill*, 49 F.3d 1049, 1056 (5th Cir. 1995). The use of charts in complex trials has long been approved and likewise, allowing the jury to have the charts in the jury room during its

deliberations, so long as the judge properly instructs the jury that it is not to consider the charts as evidence. *United States v. Lewis,* 54 F.3d 1150, 1166 (4th Cir. 1995); *See also United States v. Doerr*, 886 F.2d 944, 958 (7th Cir. 1989).

110.  When memoranda are lengthy it is sometimes preferable to have the relevant pages reproduced and circulated to the jury after being admitted into evidence, rather than subjecting the jury to hours of testimony while a witness reads the documents into evidence. *United States v. Baron,* 602 F.2d 1248, 1251 (7th Cir. 1979).  Further, it is acceptable to have lengthy documents which have not been read into evidence made available to the jury while it is deliberating. *Id*.

111.  In other instances, documents which have been admitted in part may be admitted *en toto* if it would be unfair and confusing to the jury not to admit the full memoranda. Specifically, in *United States v. Baron*, 602 F.2d 1248, 1251 (7th Cir. 1979), a defense attorney, in the course of cross-examination, repeatedly referred to portions of memoranda produced by a witness and his trial testimony.  On redirect, the Government sought to have the witness in question read the memoranda to the jury but the court rejected the suggestion, commenting:

> [I]f they can be reproduced and circulated to the jury after they have been received, assuming they are received that is fine, but we are not going to sit here while Mr. Bryant goes on for an hour reading pages of memoranda.

*Id*.

112.  The Court admitted the memoranda over the defendant's objection and allowed copies to be before the jury while it was deliberating. *Id*. In admitting the memoranda, the trial judge relied on Rule 801(d)(1)(B) of the Federal Rules of Evidence. *Id*. In the case at bar, the Court's reason for admitting evidence may not be in issue. However, it is a point of interest that the trial court in *United States v. Baron* allowed the jury to peruse memoranda at leisure once

admitted, despite the fact that the memoranda had not been read line-by-line or page-by-page.

Respectfully Submitted,

JAN PAUL MILLER
United States Attorney

s/Hilary W. Frooman
HILARY W. FROOMAN
Assistant United States Attorney
201 S. Vine, Suite 226
Urbana, Illinois 61802
217/373-5875
FAX: 217/373-5891
hilary.frooman@usdoj.gov

- 34 -

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify that on January 12, 2005, I electronically filed the foregoing Trial Brief

3

on Behalf of the United States of America by using the CM/ECF system which will send

4

notification of such filing to the following: Carol Dison, 508 S. Broadway, Urbana, Illinois

5

61801 and Jerold Barringer, ,102 S. Pine, P.O. Box 213, Nokomis, IL 62075

6

                              Respectfully Submitted,

7

8

                              JAN PAUL MILLER
                              United States Attorney

9

10

                               s/Hilary W. Frooman

                              HILARY W. FROOMAN
11                            Assistant United States Attorney
                              United States Attorney

12                            201 S. Vine, Suite 226
                              Urbana, Illinois 61802
13
                              217/373-5875
14                            FAX: 217/373-5891

15                            hilary.frooman@usdoj.gov

16

17

18

19

20

21

22

23

24

25

26

27

28