**E-FILED**
Tuesday, 01 March, 2005  04:44:15 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA,

v.                                          Case No.   CR 04-20031

DENNY R. PATRIDGE

MEMORANDUM IN SUPPORT OF 2ND MOTION TO DISMISS
COUNTS FOUR THROUGH SEVEN


Denny Patridge by and through his attorney, Jerold W. Barringer, files this

Memorandum in Support of his Motion to Dismiss Counts Four through Seven of

the Superceding Indict filed on September 1, 2004


COUNT FOUR

Count Four alleges that Defendant violated 18 U.S.C. § 1343 by wiring or

causing a wire of $ 200,000.00 from Illinois to a Bank in New York on or about

October 3, 2000 for the purpose of concealing from the IRS money that was owed

to the United States Government for taxes which allegedly the Defendant had been

assessed.


COUNT FIVE

1

Count Five alleges that Defendant violated 18 U.S.C. § 1343 by wiring $100,000.00 from St. Kitts, Nevis to a Bank in Reno, Nevada, for the purpose of "fraudulently preventing the IRS from obtaining a first lien on his real estate."

I.    THE ELEMENTS TO PROVE WIRE FRAUD

Under the standard formulation of the elements of wire fraud, the government must prove: (1) the defendant's participation in a scheme to defraud; (2) the defendant's intent to defraud; and (3) the defendant's use of the wires in furtherance of the fraudulent scheme. See *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996).  Under 18 U.S.C. § 1343 the phrase "scheme to defraud" is defined as:

> "A scheme is a design or plan formed to accomplish some purpose," Black's Law Dictionary 1344 (6th ed. 1990), or 'a plan, design, or program of action to be followed.' The Random House College Dictionary 1177 (rev. ed. 1980). To 'defraud' means '[t]o practice fraud,' 'to cheat or trick,' Black's, supra, at 483, or 'to deprive of a right or property by fraud,' Random House, supra, at 349; 'fraud' means 'deceit, trickery, or breach of confidence, used to gain some unfair or dishonest advantage.' Id. at 526."

*U.S. v. Doherty*, 969 F.2d 425 (7th Cir. 1992)

In addition, the Supreme Court recently held that "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 1841, 144 L.Ed.2d 35 (1999).  Finally,

2

of course, the Government must identify what the victim has been defrauded of - for example, money, property, or the § 1346 intangible right of honest services.  *U.S. v. Devegter*, 198 F.3d 1324, 1331 (11th Cir. 2000)   For a fact to be "material," an individual or entity must have a duty to disclose it. See *United States v. Irwin*, 654 F.2d 671, 678 (10th Cir. 1981), cert. denied, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982).  *U.S. v. Gimbel*, 830 F.2d 621 (7th Cir. 1987)

### A.    There are no common law crimes that any person can commit against the United States.

"There are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute." *Fasulo v. United States*, 272 U.S. 620, 629 (1926). Under our constitutional system, "federal crimes are defined by statute rather than by common law." *U.S. v. Oakland Cann. Buyers Coop*., 532 U.S. 483, 490 (2001); see *United States v. Hudson*, 7 Cranch 32, 34 (1812),

In various ways over the years, the Supreme Court of the United States has stated that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C. I. T. Credit* Corp.,
344 U.S. 218, 221-222 (1952).

This principle is founded on two policies that have long been part of tradition under Federal Law.  First, "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.  To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27 (1931) (Holmes, J.). See also *United States v. Cardiff*, 344 U.S. 174 (1952).   Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity.  This policy embodies "the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *H. Friendly, Mr. Justice Frankfurter and the Reading of Statutes, in Benchmarks* 196, 209 (1967). Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.  See also *United States v. Bass*, 404 U.S. 336, 347 - 348 (1971)

Because 18 U.S.C. § 1343 proscribes two phrases "identifying the proscribed schemes"  in the disjunctive, it is arguable that they are to be construed independently and that the money-or-property requirement of the latter phrase does not limit schemes to defraud to those aimed at causing deprivation of money or property.  *McNally v. U.S*, 483 U.S. 350, 358 (1987)

As the Supreme Court long ago stated, however, the words "to defraud"

4

commonly refer "to wronging one in his property rights by dishonest methods or

schemes," and "usually signify the deprivation of something of value by trick,

deceit, chicane or overreaching." *Hammerschmidt v. United States*, 265 U.S. 182,

188 (1924). The codification of the holding in *Durland v. U.S.* 161 U.S. 306 (1896)

does not indicate that Congress was departing from this common understanding.

Id. @ 312.   The Court determined that adding the second phrase simply made it

unmistakable that the statute reached false promises and misrepresentations as to the

future as well as other frauds involving money or property.  *McNally*, supra

> **B.      Counts Four and Five do not allege "materiality" nor do they allege who the  Defendant mislead.**

In this Court's Order dated November 10, 2004, it stated that the indictment

sufficiently alleges the "IRS had a property interest in the taxes by the Defendant."

*Order* @ 12      This certainly means that Counts Four and Five are not predicated

upon 18 U.S.C. § 1346.    The Court then has construed Counts Four and Five

alleging a "scheme to defraud the IRS" means the term "defraud" has no legal

meaning.   Section 1343 was available to the Government and they could have pled

the disjunctive other side encompassing "for obtaining money or property by means

of false or fraudulent pretenses, representations, or promises" but that would have

required the Government to allege the Defendant "obtained" and that they could not

do.   The central issue is that this Court should not allow the Government to turn

the term "defraud" under 18 U.S.C. § 1343 into a crime that is defined by the Court.

Defendant agrees that Count Four says "thereby conceal them from the IRS

so the IRS could not find funds and seize funds to satisfy assessed taxes owed to the

United States."Ct. 4, 1(A).  Yet the Jury instruction proposed by the Government

and as advanced as "pattern" by the Seventh Circuit says :

> "If the Defendant has incurred a tax liability, it exists from the date the
> return is due.   A Taxpayer's liability exists independent of any
> administrative assessment.  It is not necessary that a taxpayer receive a
> tax assessment before he is charged with a criminal violation of willful
> attempt to evade or defeat income tax."  Proposed # 26

There is no question that without the theory of the tax evasion in Count Two,

Count Four and Five provides no theory whatsoever for the Government to extend

18 U.S.C. § 1343 to the wire from Illinois to New York on October 3, 2000 nor the

wire from Nevada to Illinois on October 25, 2000.    Though, Defendant strongly

objects to the alleged "taxes owed", the Government clearly has back peddled away

from any advantage it earlier claimed the Notices of Deficiencies to the Defendant

may have appeared to give it under probable cause measures.   Even if each of the

claims made by the Grand Jury Indictment in Counts Four and Five were true,

nothing rises to the meaning of "defraud" with "materiality" reachable under 18

6

U.S.C. § 1343.

Under the Government's theory, once any letter is sent to any taxpayer, no matter whether the letter claimed to provide notice to the Defendant and  is supported by applicable Internal Revenue Code Provisions, or as in the case against the Defendant, not according to any specific provisions and grossly contaminated with error and abuse of authority, if any person spends, moves, withdraws or deposits, and yes, wires any money or property, then all of these acts are defrauding the United States.   An act as simple as paying a bill after receiving errant notices rises to the level of defraud, as the Government's theory against this Defendant suggests, and would otherwise be defenseless.

### 1.    Materialtiy

The only allegations in the indictment in Count Four which allege "materiality", and this by construction only, is that the Government is asking a Jury to find that (A) wiring money offshore to purportedly "conceal them from the IRS so the IRS could not find the funds and seize the funds to satisfy assessed taxes owed to the United States"; (B)  "making funds appear that the funds available to him were borrowed funds";  and (C) "making it appear that there was an unsatisfied mortgage on his home."   November 10, 2004 Court Order @ 10

7

The term "defraud" has been distinguished by the Supreme Court holding 18 U.S.C. Section 371, which punishes a conspiracy to defraud the United States and which has been construed to encompass non-property rights, like the right to honest government, from the wire and mail fraud statutes by explaining that Section 371 protects many interests of the federal government, but that "any benefit which the Government derives from the [wire or mail fraud] statute[s] must be limited to the Government's interests as property-holder." *McNally v. United States*, 483 U.S. 350, 365, 107 S.Ct. 2881. N 8, 97 L.Ed.2d 292 (1987). This statement implies that for those statutes to apply, the government must lose property if the government is the defrauded party. Finally, the Court explained that "the words `to defraud' commonly refer `to wronging one in his property rights by dishonest methods or schemes.'" 107 S.Ct. at 2880-81 (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)) (emphasis added)

The Court in its November 10, 2004 Order held that "the IRS had a property interest in the taxes owed by the Defendant." So, the materiality element is to be measured by "materiality of falsehood." *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 1841, 144 L.Ed.2d 35 (1999). The Government must identify of what it has been defrauded - for example, taxes. *U.S. v. Devegter*, 198 F.3d 1324, 1331 (11th Cir. 2000)(modified) For a fact to be "material," an individual or entity must

8

have a duty to disclose it. See *United States v. Irwin*, 654 F.2d 671, 678 (10th Cir. 1981), cert. denied, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982).  *U.S. v. Gimbel*, 830 F.2d 621 (7th Cir. 1987)

There is nothing alleged in Count Four or Five that could reasonably be understood to satisfy the materiality element.   Even if the Court is to assume the victim is the IRS because the Defendant chose to wire money somewhere other than leaving it where it was, and even assuming the Defendant purportedly, eventually may have been perceived to owe something,[1] in no way can any statements made to the IRS be construed to have caused the IRS to do without what it had a right to have.   Neither Counts Four or Five address Materiality.

### 2.    *No person alleged to be  misled or tricked.*

Both 1(B) and 1(C) under Count Four allege "make it appear" but never identify who that "appeared" was addressed.    There is no allegation the Defendant uttered any false statement to the IRS.    Other than notices alleged to have been sent to the Defendant there is no claim that the IRS attempted to collect these taxes "owed" and were prohibited because of the Defendant's "making it appear that the funds available were borrowed funds" or "making it appear there was an unsatisfied

---

[1]  Although Defendant claims he did not owe anything the government alleges.

9

mortgage on his home." In fact, the only false statements made in Count Four are the statement "the IRS provided the defendant an opportunity to argue the amount he owed for 1996 and 1997" and "it issued a Notice of Deficiency." Someone name "V.Boyd" for the IRS may have written the words "Notice of Deficiency" on a piece of paper but in no way does that mean the IRS sent the Defendant any Notice of Deficiencies that complied with the required specific provisions of the tax law.

As to "A" in Count Four, the Government claims it was the "purpose of the scheme" to "remove defendant's liquid funds to a hidden offshore location and thereby conceal them from the IRS so the IRS could not find the funds and seize the funds to satisfy assessed taxes owed to the United States Government." This is nothing more than re-alleging under the "scheme to defraud" element the same act that alleges the interstate commerce element (the wire.)

In *U.S. v. Fernandez* (99-4203, 7th Cir. 2002), the judge charged the jury:

"'In considering whether the government has proven a scheme to defraud, it is essential that *one or more of the false pretenses*, representations, promises and acts charged in the portion of the indictment describing the scheme be proved.' The judge then stated that '[a] scheme to defraud is a scheme that is *intended to deceive or cheat another* and to obtain money or property or cause the loss of money or property to another or to deprive another of someone's honest

services.' Finally, the judge explained that 'intent to defraud' means 'that the acts charged were done *knowingly with the intent to deceive or cheat a victim in order to cause a gain of money or property to the defendant* or to deprive another of someone's honest services.' Again, materiality has been defined as having *'a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed.'* Gee, 226 F.3d at 891 (quotation omitted). **<u>We believe that these instructions adequately required the jury to find that the defendants made false representations which were capable of influencing, and thereby deceiving, Lyons</u>**. Thus, these instructions viewed in their entirety adequately embraced the concept of materiality". See also *United States v. Reynolds*, 189 F.3d 521, 525 n. 2 (7th Cir. 1999) (explaining that instructions adequately placed the question of materiality before the jury even though the instructions did not explicitly use the term "materiality"); *United States v. Pribble*, 127 F.3d 583, 589 (7th Cir. 1997) (same).

At no time in Count Four does the Grand Jury allege that the Defendant cheated the IRS out of anything.   The Grand Jury does not allege the Defendant cheated the IRS out of calculating any assessments.    It does not allege the Defendant caused the IRS to give up or do without anything.   Even though the Government may intend to argue that it only has to prove the Defendant "intended" to cheat the IRS, there is nothing in Count Four that alleges what they would have been cheated out of.

"A" says the Defendant wired ("removed")  money offshore so that the IRS could not find nor seize the funds to satisfy the assessed taxes owed to the United

11

States Government.    What is the "material" false statement or representation here that had the natural tendency to influence the decision making body to which it was addressed?  Is it "remove?"    There is not one word in part "A" of the alleged "scheme" that either gives notice to the Defendant or allowed the Jury to find "A" qualifies as one of the "false pretenses or representations" the jury may find to hold that a "scheme to defraud" the IRS existed.   Who was it represented to?

"B" says that the Defendant made "it appear that the funds available to him were borrowed funds."    Which words in "B" had a natural tendency to influence the decision making body to which they were addressed?"    Who were they addressed to?    There is no allegation that these "words" were directed at any time by the Defendant to the IRS.    There is neither any claim that these words had a natural tendency to influence the IRS in any far fetched way.    There is not one word in part "B" of the alleged "scheme" that either gives notice to the Defendant or allowed the Jury to find "B" qualifies as one of the "false pretenses or representations" the jury may find to hold that a "scheme to defraud" the IRS existed.   If the IRS is who the Government must prove was intended to be defrauded and the alleged false pretense or representation must have been capable of influencing the "body to which it was addressed" how can "B" be capable of influencing the IRS to do anything?   It simply cannot.

12

Then there is "C."   The Grand Jury alleges that the third "false pretense or representation" the Jury may find to hold a "scheme to defraud the IRS" existed is that the Defendant represented to the Recorder of Deeds that a lien had arisen upon a home then owned by the Defendant, which the Government alleges was to protect the defendant's personal real estate.   At no time does "C" allege that this appearance of a "unsatisfied mortgage" upon the Defendant's home in any way had any natural tendency to mislead the IRS in any way.   How could it?   What would it have a natural tendency to do?   The claimed mortgage in no way is alleged to have been communicated to the IRS by the Defendant during some routine question and answer session regarding collection of any taxes the IRS claimed then that the Defendant owed.   They obviously do not claim that the law supports the amount they claimed he owed then.   They likewise do not allege that the Defendant brought the "unsatisfied mortgage" to the IRS's attention.   In order for the Jury to be allowed to hold that *one or more of the false pretenses*, representations, promises and acts charged in the portion of the indictment describing the scheme was "proved," they would have to find that "making it appear that there was an unsatisfied mortgage on the Defendant's home in some way had the natural tendency to *"influence, or is capable of influencing, the decision of the decision making body to which it was addressed."*

13

First, there is no allegation as to what this "mortgage" intended to "deceive or cheat" the IRS out of. At best the Government could argue that this "mortgage" attempted to cheat the IRS out of being able to have a first lien on the Defendant's home. Whether the IRS had a first lien or a second lien, it clearly secured its interest in any property the Defendant owned. But actually, the IRS would not have filed a lien on the Defendant's home. The IRS only files "Notice of Federal Tax Liens" and it publicly files them in the County where it believes the Defendant may own property in his name. How then did placing a "mortgage" upon the house where Defendant lives deceive or cheat the IRS?     It could not under any hypothecated scheme the Government can imagine.     Was it that the IRS went looking for what he owned?   Not alleged.   Was it the IRS wished to secure the amounts the IRS claimed the Defendant owed in the grossly defective Notice of Deficiencies? Not alleged.   What is the name of the person that this mortgage could have had a natural tendency to deceive or cheat that works for the IRS?   No one is named.   At its final stage, the "mortgage" could be claimed to have been intended to cheat the IRS "collection" department out of taking the Defendant's home.

It is well settled that the IRS cannot just drive over to someone's house and take it for purported unpaid taxes.   There are procedures the IRS must follow in

14

order to satisfy the due process rights of any afflicted person it is pursuing.

Where, in the procedure the IRS would be required to follow to accomplish the

taking of person's home for purported unpaid taxes, would the "mortgage" at issue

under "C" have "deceived, influenced, cheated" or any other word the Government

can describe as "material" to its intentions?    The Indictment is silent in Count Four

because at no time during the collection administration could the "unsatisfied

mortgage" ever have kept the IRS from doing anything whatsoever.

Under the "scheme", "A" is the wire of money, "B" is making funds appear

"borrowed," and "C" making a mortgage appear on the Defendant's home.  None of

the "acts" would ever meet the standard set forth in the Seventh Circuit.

      3.      *The wire of money cannot be both the scheme and the wire elements in Count Four.*

Paragraph 1(A) of Count Four clearly attempts to make one of the acts

which is in the alleged "scheme", the wiring of money to a offshore account.  Since

the Jury must find "one or more of the false pretenses, representations, promises and

acts charged in the portion of the indictment describing the scheme"; the

Government wishes this Court to allow the Jury to convict the Defendant solely on

the basis that money was wired.

15

This raises the question can the wire of money fit into each of the elements for Counts Four and Five.   Under the government theory, the Jury would be allowed to find that  (1) the defendant's participation in  "wires"  to defraud; (2) the defendant's intent to defraud by the single act of wiring money; and (3) the defendant's use of the wires in furtherance of the fraudulent wire scheme.    This cannot be what the Seventh Circuit considered was the logical place the Government could go in *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996). Paragraph 1(A) must be dismissed by the Court for this reason alone.   Defendant is unable to find any place where any Court in the United States has ever allowed a single wire to serve as both the evidence for the jury to conclude the "scheme to defraud" as well as the interstate commerce element under section 1343.

In this case, the Government contends that each of the acts other than 1(A) were acts which took place after the wire of money.    Such as "borrowed funds" and "unsatisfied mortgage."        This turns 18 U.S.C. § 1343 into prohibiting schemes to defraud if done to further a wire.    That is not the language of 18 U.S.C. § 1343.    The wire is supposed to be the thing transmitted in furtherance of the scheme to defraud, not the other way around.

> 4.    *Count Five has the same defects as Count Four*

16

Count Five begins by re-alleging Paragraphs 1 through 8 of Count Four. Though Count Five alleges "THE SCHEME CONTINUED" it does not add any new purposes for which the wire in Count Five was to illegally further.

Paragraph 9 restates what 1 (C) says, that the Defendant tried to make it "appear that there was an unsatisfied mortgage on the Defendant's home only stating that "the defendant took steps to fraudulently prevent the IRS from obtaining a first lien on his real estate."   It seems that the Government wishes this Court and the Jury to believe that the Defendant, by allegedly placing a mortgage on his home so as to prevent the IRS from "obtaining a first lien on his real estate", somehow had a natural tendency to *"influence, or is capable of influencing, the decision of the decision making body to which it was addressed."*      Count Five does not allege that the Defendant ever made any communications to the IRS that he was either placing this mortgage and that the IRS was now somehow "second" or that how placing this mortgage influenced or was capable of influencing the decision making body to which it was addressed.    It did not change what the IRS thought the Defendant owed in taxes.[2]    There is no allegation that somehow this lien tricked anybody into doing or not doing anything.   Likewise, the Government does not allege that placing a mortgage on a person's own home is something that

---

[2]  Which still remains a mystery.

obstructs its administration.

Even if the IRS could show that it caused the IRS to do something that normally it would not have to do, this means that making the IRS's job harder is prohibited by the meaning of the term "fraud" in 18 U.S.C. § 1343.   As one courageous panel of the United States Court of Appeals once said:

> "Under this reading, the government argues, people have a duty "not to conduct their business affairs in such a manner that the IRS would be impeded and impaired in its . . . collection of revenue." Gov't Brief at 16-17. Or, as government counsel candidly asserted at oral argument, "if what you're doing, legal or illegal, is intended to impede and impair the Internal Revenue Service, . . . that constitutes a crime under section 371."  WE THINK NOT.

*U.S. v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993)

Though it is true what the Court in Caldwell was dealing with was the term "defraud" under 18 U.S.C. § 371, if the term "defraud" under 18 U.S.C. § 371 does not reach making the IRS's job hard under its expansive interpretation, the meaning of "fraud" in "scheme to defraud" under 18 U.S.C. § 1343 certainly could not mean what it does not mean under section 371.  Again, under 18 U.S.C. Section 371, which punishes a conspiracy to defraud the United States and which has been construed to encompass non-property rights, as compared to the wire and mail fraud statutes by explaining that Section 371 protects many interests of the federal

2:04-cr-20031-MPM-DGB    # 67    Page 19 of 23

government, but that "any benefit which the Government derives from the [wire or mail fraud] statute[s] must be limited to the Government's interests as property-holder." *McNally v. United States*, 483 U.S. 350, 365, 107 S.Ct. 2881. N 8, 97 L.Ed.2d 292 (1987).

There is nothing about the wires of October 3, 2000 or October 25, 2000 that, as alleged, qualifies as either the "scheme to defraud" or the "wire" in furtherance of that scheme.

Accordingly, this Court should dismiss Counts Four and Five.

COUNT SIX

Count Six alleges that Defendant violated 18 U.S.C. § 1956(a)(1)(B)(i) by transferring $ 100,000.00 by wire on October 25, 2000, from an Illinois Bank to an account in St. Kitts for the purpose of hiding the money from the IRS.

COUNT SEVEN

Count Seven alleges that Defendant violated 18 U.S.C. § 1956(a)(1)(A)(ii) by wiring $ 100,000.00 from a Bank in Illinois to a Bank in St. Kitts, which purportedly represented the proceeds of a wire which is alleged to have contained proceeds of a fraud, namely evasion of income taxes due and owing, as the transaction was committed with intent to engage in conduct constituting evasion of

payment of taxes on amounts the Defendant allegedly owed for calender year 1996
and 1997.

II.    COUNTS SIX AND SEVEN DO NOT ALLEGE WHAT THE STATE OR
FEDERAL LAW WAS THAT PRESENTS THE TWO TRANSACTIONS
AS SPECIFIED UNLAWFUL ACTIVITY.

This Court told the Government in its Order of November 10, 2004, that
transactions that created the criminally derived proceeds must be distinct from the
money laundering transaction and that  money laundering statute criminalizes
transactions in proceeds and not the transaction that created the proceeds.  *Order @*
14.

In order to be valid, a Count in an indictment must allege that the defendant
performed acts which, if proven, constituted a violation of the law that he or she is
charged with violating. If the acts alleged in the indictment did not constitute a
violation of the law that the defendant has been charged with violating, we must
reverse any subsequent conviction based on that indictment. See *McNally v. United
States*, 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (quoting *Fasulo
v. United States*, 272 U.S. 620, 629, 47 S.Ct. 200, 202, 71 L.Ed. 443 (1926)).  See
also *U.S. v. Gimbel*, 830 F.2d 621 (7th Cir. 1987)

The concern, as noted in *Gimbel*, 830 F.2d at 627, is whether the jury was

required to find that the scheme resulted in the government being deprived of money or property. As we noted in *United States v. Wellman*, 830 F.2d 1453, 1462 (7th Cir. 1987), "we must look to the substantive allegations of the indictment and the jury instructions to determine whether the conduct alleged and necessarily found to have occurred by the jury constituted an offense." *U.S. v. Jones*, 938 F.2d 737 (7th Cir. 1991)

The Government contends in Counts Six and Seven that the tax evasion plot in Count Two is the Wire Fraud in Counts Four and Five which is the specified unlawful activity in Counts Six and Seven.   The Government proposed Jury instruction # 37 says that:

> "The Government must prove that the Defendant knew that the property represented the proceeds of some form of activity that constitutes a felony under state or federal law.   The Government is not required to prove that the Defendant knew that the property involved in the transaction represented the proceeds of wire fraud."

This proposal alone should direct this Court to dismiss Counts Six and Seven.   Count Two does not allege tax evasion as the Motion to Dismiss that Count instructs.   Counts Four and Five do not allege any "scheme to defraud" as required by the Supreme Court and Seventh Circuit decisions quoted above.   Counts Six and Seven do not allege what the specific "felony under state or federal law" is.   It is

clear by the Government's proposed instruction that they are departing from the "wire fraud" as being the conduit of their theory in Counts Six and Seven.

Because Counts Six and Seven do not allege what the state or federal law is that the Defendant violated in making or taking possession of the money used in the purported laundering transactions, Counts Six and Seven fail to allege a crime under 18 U.S.C. § 1956.


CONCLUSION

This Court should Grant the Defendant's Motion to Dismiss Counts Four, Five, Six and Seven for the reasons stated herein.


                                      Respectfully Submitted,

                                      Denny Patridge, Defendant,


                              By:    /s/ Jerold W. Barringer
                                      Jerold W. Barringer
                                      Attorney at Law
                                      102 South Pine St.
                                      P.O. Box 213
                                      Nokomis, IL 62075
                                      (217) 563-2646

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of this Memorandum in Support of Motion to Dismiss Counts Four, Five, Six and Seven has been mailed on March 1, 2005 electronically through the Court system  to:


Hilary W. Frooman
U.S. Assistant Attorney
201 South Vine
Urbana, Illinois 61801
217-373-5875


/s/ Jerold W. Barringer