IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA,

v.                                                          Case No.   CR 04-20031

DENNY R. PATRIDGE

MEMORANDUM IN SUPPORT OF
MOTION TO RECONSIDER ORDER REGARDING
JURY TRIAL ON ALL FACT

Denny Patridge by and through his attorney, Jerold Barringer, files this Memorandum in Support of his Motion For Reconsideration regarding Defendant's demand that all necessary facts required to state an offense punishable pursuant to the United States Sentencing Guidelines be alleged in the indictment and found specifically by the Jury at trial.

COUNT ONE

Count one alleges the Defendant willfully filed a joint U.S. Individual Income Tax Return Form 1040, for the calender year 1998, which he did not believe to be true as to every material matter, in violation of 26 U.S.C. § 7206(1).

1

COUNT TWO

Count two alleges that the Defendant willfully attempted to evade, or did evade, the payment of personal income taxes due and owing to the United States of America for the calender years 1996 and 1997; specifically, regarding amounts appearing upon a January 27, 2000 Notice of Deficiency, claiming amounts owed of $ 85,608 for 1996 and $ 62,062 for 1997, by, among other things, liquidating personal investments worth more than $ 170,000 and transferring that money to foreign bank accounts so that said money could not be reached by the IRS, in violation of 26 U.S.C. § 7201.

COUNT THREE

Count three alleges that the Defendant willfully attempted to evade, or did evade, a large part of his personal income taxes due and owing to the United States of America for the year 1999; specifically $ 19,523 due and owing on taxable income of approximately $ 76,796 by depositing money earned during 1999 into foreign accounts, concealing money he earned in 1999 from the IRS, using money deposited into foreign accounts to pay personal expenses, and failing to file an individual income tax return, as required by law, in violation of 26 U.S.C. § 7201.

COUNT FOUR

Count Four alleges that Defendant violated 18 U.S.C. § 1343 by wiring or causing a wire of $ 200,000.00 from Illinois to a Bank in New York on or about October 3, 2000 for the purpose of concealing from the IRS money that was owed to the United States Government for taxes which allegedly the Defendant had been assessed.

COUNT FIVE

Count Five alleges that Defendant violated 18 U.S.C. § 1343 by wiring $100,000.00 from St. Kitts, Nevis to a Bank in Reno, Nevada, for the purpose of "fraudulently preventing the IRS from obtaining a first lien on his real estate."

COUNT SIX

Count Six alleges that Defendant violated 18 U.S.C. § 1956(a)(1(B)(i) by transferring $ 100,000.00 by wire on October 25, 2000, from an Illinois Bank to an account in St. Kitts for the purpose of hiding the money from the IRS.

COUNT SEVEN

Count Seven alleges that Defendant violated 18 U.S.C. § 1956(a)(1)(A)(ii) by wiring $ 100,000.00 from a Bank in Illinois to a Bank in St. Kitts, which purportedly represented the proceeds of a wire which is alleged to have contained proceeds of a fraud, namely evasion of income taxes due and owing, as the transaction was committed with intent to engage in conduct constituting evasion of

payment of taxes on amounts the Defendant allegedly owed for calender year 1996 and 1997.

I.    BOOKER/FANFAN ARGUMENT

Recently, this Court ruled that because of Justice Ginsberg, Part II of the decision announced in Booker/Fanfan severed 18 U.S.C. § 3553(b)(1) and no longer directed the Court to apply the Sentencing Guidelines against the Defendant in a mandatory application. Further, this Court concluded that the Supreme Court opinion made the guidelines, written by Congress, advisory or discretionary, rather than mandatory.

The second change the Booker/Fanfan Court legislated was that 18 U.S.C. § 3742(e) be severed and modified and reinserted changing the standard of review from de novo to one of reasonableness. The Court, at the request of the Government, struck the Grand Jury "special finding" section as the Court determined it was no longer applicable.

    A.    **Part II cannot be used retroactively against the Defendant.**

        i.    <u>Retroactive application of judicial construction of a criminal statute would violate the due process clause and ex post facto clause.</u>

Though the Defendant has not been found guilty of any of the seven counts

4

alleged against him, the Court stated that if Defendant was to be found guilty, that the range of a sentence in this case would be between 6 months probation to 20 years incarceration. It is with this conclusion Defendant now claims error in the indictment to the extent it is claimed that the penalty could be anywhere between 6 months to 20 years.

    As this Court noted, Booker/Fanfan determined that under any sentence imposed pursuant to the Sentencing Guidelines, prior to January 12, 2005, where the term "shall" imposed a mandatory application of the Guidelines upon the Court in entering any final sentence upon any conviction. The Supreme Court determined that facts relied upon by the Court to raise the amount of time above that based upon the facts alleged in the indictment and found by the Jury at trial beyond a reasonable doubt, was a direct violation of any defendant's Sixth Amendment rights. This was so based upon the premise that "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Blakely v. Washington*, 542 U.S. _____ (second to last paragraph of decision.)

    Though Defendant understands the issues in Booker/Fanfan, Defendant objects to this Court's application or the Government seeking some advantage in the case against the Defendant, by the terms of the decision in Booker/Fanfan.

5

There is no question that the law applicable to the case of the Defendant are those applicable laws which were in place at the time of the alleged offenses against the Defendant. Each of the alleged offenses are alleged to have occurred at a time when the Sentencing Guidelines were mandatory. See *Booker/Fanfan* Part I. Just for noting, review of any potential conviction would also be based upon the standard the law imposed at the time of the alleged offense. That would not be reasonableness.

Defendant understands that the decision in *Booker/Fanfan* is "retroactive" in that all cases that are currently pending in any stage of appeal would be affected by the decision the Supreme Court entered on January 12, 2005 (Part I). This is because the Majority in Part I determined that *Blakely* applied to criminal trials in the United States District Court. Sixth Amendment violations would require retroactive application. The Sixth Amendment violation in *Booker/Fanfan* was committed by the District Court.

Since the Supreme Court ***did not*** hold section 3553(b)(1) nor section 3742(e) unconstitutional, application of the guidelines prior to the decision announced in *Booker/Fanfan* was mandatory (quoting Stevens Part I, "the guidelines as written, however, are not advisory; they are mandatory and binding on all judges). "The Sentencing Guidelines hav[e] the force and effect of law, [and] are to be construed as

6

if they were a statute, giving the words used their common meaning, absent a clearly expressed manifestation of contrary intent." *U.S. v. McClain*, 252 F.3d 1279, 1285 (11th Cir. 2001); See Booker/Fanfan (Part I @ 3)( "Sixth Amendment principals apply to sentencing guidelines")

Although any retroactive application of the Booker/Fanfan decision in Part II would raise a due process violation regarding the law, the Constitution's Ex Post Facto Clause figures prominently in this argument against any such retroactive application. The Clause provides simply that "[n]o State shall . . . pass any . . . ex post facto Law." Art. I, § 10, cl. 1. The most well-known and oft-repeated explanation of the scope of the Clause's protection was given by Justice Chase, who long ago identified, in dictum, four types of laws to which the Clause extends:

    1st.    Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.

    2d.    **Every law that aggravates a crime, or makes it greater than it was, when committed**.

    3d.    **Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.**

    4th.    Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

*Calder v. Bull*, 3 Dall. 386, 390 (1798) (seriatim opinion of Chase, J.)(emphasis deleted). Accord, *Carmell v. Texas*, 529 U.S. 513, 521-525 (2000); quoting *Rogers*

*v. Tennessee*, 532 U.S. 451, 456 (2001)

The same language applies to the United States as found in Art. I, Sec. 9, Clause 3.  Here, Defendant takes issue with the Sentencing Guidelines becoming advisory in his case arising from the second and third issues Justice Chase addressed. Namely, *"every law that aggravates a crime, or makes it greater than it was, when committed"* and  *"<u>every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.</u>"*

The Supreme Court of the United States in *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964), held that due process prohibits retroactive application of any "judicial construction of a criminal statute [that] is unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue.'"

The *Bouie* Court concluded that "[i]f a judicial construction of a criminal statute is `unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect." Id., at 354 (quoting J. Hall, General Principles of Criminal Law 61 (2d ed. 1960)).  See also *Rogers*, 532 U.S. at 457 (2001)

This brings Defendant to the issue presented herein.   There is no question that any potential sentence needs be imposed according to the guidelines.  Any

reliance upon judge found facts, regarding offenses dated prior to January 12, 2005, that increase any punishment beyond 6 months, would be unconstitutional in violation of the Sixth Amendment. Why 6 months? That is the only time that could be imposed based upon the language of the amended superceding indictment.

The sentencing guidelines are instructive on this position. For any person charged with a crime, that allegedly occurred prior to January 12, 2005, the District Court must apply the guidelines in effect at the time of the alleged offense if application of the current constructed guidelines would violate the due process or ex post facto clause.   See 1B1.11(b)(1)

In *Miller v. Florida*, 482 U.S. 423 (1987), the Supreme Court unanimously concluded that a revision in Florida's sentencing guidelines that went into effect between the date of petitioner's offense and the date of his conviction violated the Ex Post Facto Clause. It was the determination that the new guideline was "more onerous than the prior law," id., at 431 (quoting *Dobbert v. Florida*, 432 U.S. 282, 294 (1977)), resting entirely on an objective appraisal of the impact of the change on the length of the offender's presumptive sentence. 482 U.S., at 431. ("Looking only at the change in primary offense points, the revised guidelines law clearly disadvantages petitioner and similarly situated defendants"). See also *Lynce v. Mathis*, 519 U.S. 433 443 (1997)

There is no question that the *Booker/Fanfan* Court made crystal "clear that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."   The only way that imposing a sentence upon the defendant based upon any verdict of violating section 7206 or 7201 would not offend the ex post facto/due process Constitutional restraints placed upon this Court and the United States is if any sentence was within the guideline range "solely" based on the facts reflected in the jury verdict.

II.    POTENTIAL JURY VERDICT AND GUIDELINES APPLICABLE

The date of the alleged offense in Count One is April 12, 1999, which the guidelines in effect at the time of the alleged offense in Count One would be the November 1, 1998 United States Sentencing Guidelines Manual.

The Date of the alleged offense in Count Two is from July 2000 to the date of the indictment being June 3, 2004.   This would make the April 30, 2004 United States Sentencing Guidelines version in effect at the time of this alleged offense.

The date of the alleged offense in Count Three is October 15, 2000.   This would make the November 1, 1998 version of the United States Sentencing Guidelines applicable to this charge.

At all times regarding these three charges the Guidelines were mandatory and pursuant to the Supreme Court's decision in Booker/Fanfan Part I, judge found facts relied upon to impose any points greater than the points awarded for a possible verdict of guilty would violate the Sixth Amendment.

### A.    Guidelines for Count One.   26 U.S.C. § 7206(1)

The applicable guideline which derives the "Base Offense Level" for the possible conviction under 26 U.S.C. § 7206(1) is § 2T1.1.  Section 2T1.1 directs that the "Base Offense Level" is either the "level" from § 2T4.1 to the jury finding of tax loss, or 6 points "if there is no tax loss."

Count One alleges the Defendant falsely reported on "line 33" that his "adjusted gross income reported" was $ 6,667.00.   The Grand Jury alleges that this line should have stated on line 33 $ 86,845.00.    There is no claim of "tax loss" or how much was owed to the United States under these purported claims.   A Jury finding of guilty under Count One would tender no more than 6 points under § 2T1.1(a)(2).

### B.    Guidelines for Count Two.  26 U.S.C. § 7201.

The applicable guideline which derives the "Base Offense Level" for the possible conviction under 26 U.S.C. § 7201 is also § 2T1.1. Section 2T1.1 directs

11

that the "Base Offense Level" is either the "level" from § 2T4.1 to the jury finding of tax loss, or 6 points "if there is no tax loss."

Count Two does allege that the evasion of payment plot the Defendant allegedly attempted to accomplish involved two "Notices of Tax Deficiency" for years 1996 and 1997 sent to the Defendant on January 27, 2000, which purport to show that the Defendant had due and owing to the United States for "personal income taxes" $ 85,608.00 for the calender year 1996 and $ 62,062.00 for the calender year 1997.

There is no other amounts alleged in Count Two to which a tax loss could be derived by any finding by the Jury of a guilty verdict.  So long as the Jury instruction says to the Jury "do you find the Defendant owed $ 85,608.00 or more for calender year 1996 and do you find the Defendant owed $ 62,062.00 or more for the calender year 1997" then Defendant has no objection to this charge for purpose of sentencing base offense level points.  Simply, any jury verdict of Yes would activate the "tax table" found at § 2T4.1.

The problem with Count Two is that for sentencing purposes the Government is attempting to mingle taxes owed for 1996 and taxes owed for 1997 into taxes owed for 1996 and 1997.  Any evasion of payment under section 7201 must allege evasion of taxes owed for 1996 in a separate charge from evasion of taxes owed for

12

1997.   The taxes owed for 1996 were not owed with taxes for 1997.   Likewise, taxes owed for 1997 were not owed with taxes for 1996.   The Government simply commingled 1996 and 1997 to increase the possible tax table amount under §2T4.1 without having to present each alleged offense of evasion separately. [1]

### C.  Guidelines for Count Three.   26 U.S.C. § 7201.

The applicable guideline which derives the "Base Offense Level" for the possible conviction under 26 U.S.C. § 7201 is § 2T1.1. Section 2T1.1 directs that the "Base Offense Level"is either the "level" from § 2T4.1 to the jury finding of tax loss, or 6 points "if there is no tax loss."

Count Three alleges that $ 19,523.00 was due and owing by the Defendant to the IRS.   This would make the Base Offense Level for any conviction under Count Three 11 points pursuant to § 2T4.1(F) "more than 13,500." See *November 1, 1998 Guidelines Table*.

### III.   GROUPING OF POSSIBLE COUNTS FOR SENTENCING.

Section 3D1.2 directs the Court to "group" any sentencing regarding Counts One, Two and Three.   For purposes of grouping, with Count Two being dismissed,

---

[1] Count Two should be dismissed for failure to allege an offense.   It is impossible to know which of the two years the Grand Jury intended to charge.   A separate Motion to Dismiss Count Two is filed simultaneously herewith.

the only notice given to the Defendant is that he caused a total tax loss of $ 19,523.00.  This means for conviction for Counts One and Three the total amount of Base Offense Level points would range from 6 to no more than 11 points.

If the Jury determines that the Defendant owed specifically $ 85,608.00 for 1996 and $ 62,062.00 for 1997 or more then this would raise the points under § 2T4.1(J) to 15 points (more than 120,000.00).  See *November 1, 1998* Guidelines Table.

The government has alleged no criminal history and there is none.  15 points under the sentencing table found in Chapter 5, Part A, with a criminal history of I, would make the maximum possible punishment for the facts alleged in the indictment for these three Counts at a range from 18-24 months.  If the Government seeks more than this amount based upon potential conviction for Counts One, Two and Three, and if the Court maintains that it can impose more than two years total if the Jury convicts the Defendant on all three of these charges, Defendant claims that any potential time greater than 24 months would violate his Sixth Amendment Right to a Trial by Jury on alleged offenses that are claimed to have occurred prior to January 12, 2005.  Since the Government and the Court stated that the range after Booker/Fanfan was 6 months probation to 20 years prison, Defendant demands his right to a Jury Trial on each fact that would be relied

14

upon by the Court to reach such a sentence greater than 6 months and certainly more than two years total.

IV    COUNTS FOUR, FIVE, SIX AND SEVEN

Counts Four, Five, Six and Seven are equally as troubling.  The Indictment claims that the taxes owed in Count Two is the money used to commit a wire fraud alleged in Counts Four and Five which was used to commit money laundering alleged in Counts Six and Seven.   The Loss for Count Two must be the same for Counts Four, Five, Six and Seven under 2F1.1.  Since each of these charges derive from the same conduct as in Count Two and since Count One, Two and Three are to be "grouped", then Counts Four, Five Six and Seven are to be grouped with Counts One, Two and Three.


III.   CONCLUSION

THEREFORE, Defendant respectfully requests (1) this Court carefully reconsider its order striking the special findings additions the Grand Jury made to the original indictment and its reasoning of same; (2)  direction for identification  on the record as to all the facts the Government or Court intends to rely upon to impose any sentence of incarceration if the Defendant is found guilty at trial; (3) the Court overrule its conclusion that in this case the Sentencing Guidelines are advisory only;

and (4) this Court enter an order holding that the ex post facto and due process clause prohibit the Court from retroactively applying the Booker/Fanfan decision (Part II) to the case against the Defendant.

                                                             Respectfully Submitted,

                                                             Denny Patridge, Defendant,

By:   /s/ Jerold W. Barringer
        Jerold W. Barringer
        Attorney at Law
        102 South Pine St.
        P.O. Box 213
        Nokomis, IL 62075
        (217) 563-2646

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of this Memorandum in Support of Defendant's Motion to Reconsider application of Booker/Fanfan has been mailed on March 1, 2005 electronically through the Court system to:

Hilary W. Frooman
U.S. Assistant Attorney
201 South Vine
Urbana, Illinois 61801
217-373-5875

/s/   Jerold W. Barringer