UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 04-20031 |
| DENNY PATRIDGE, | ) |
| Defendant. | ) |

**COMBINED RESPONSE TO DEFENDANT'S:
MOTION TO RECONSIDER ORDER REGARDING JURY TRIAL ON ALL FACTS,[1]
SECOND MOTION TO DISMISS COUNTS FOUR THROUGH SEVEN,
SECOND MOTION TO DISMISS COUNTS TWO AND THREE**

Comes now, the United States of America, through Jan Paul Miller, United States Attorney for the Central District of Illinois, by and through Hilary W. Frooman, Assistant United States Attorney, and Department of Justice Trial Attorney, Lea Carlisle, in response to the defendant's Motion to Reconsider Order Regarding Jury Trial On All Facts, Second Motion to Dismiss Counts Four through Seven, Second Motion to Dismiss Counts Two and Three, responds as follows:

Defendant Patridge has filed three motions, all of which he admits have been previously before this Court. The defendant asks this Court to:

1. Reconsider its previous ruling that "all necessary facts required to state an offense punishable pursuant to the United States Sentencing Guidelines be alleged in the indictment and found specifically by the Jury at trial. This request refers back to the

---

[1] The criminal docket for *United States v. Patridge* shows at 68 that on 3/01/05 the defendant filed a "Motion for Reconsideration Regarding Application of Supreme Court Decision in Booker/Fanfan." The Motion the defendant actually filed was : titled " Motion to Reconsider Order Regarding Jury Trial On All Facts." The motion is at 68, the Memorandum in Support is at 69. To alleviate any confusion, the government will refer to docket numbers when it refers to the defendant's motions and memorandums. "R" refers to the docket entry number in the record.

government's motion to strike the "Special Findings" included in the Superseding Indictment, which motion was granted over the defendant's objection on January 19, 2005. (Minute entry, 1/19/05)

    2. Dismiss Count Two because it charges two tax years in a single count;

    3. Dismiss Counts Two and Three because these counts fail to specify a law or regulation which the defendant violated.

    4. Dismiss Counts Four through Seven because they are based on Counts Two and Three and Counts Two and Three should be dismissed.

    5. Dismiss Counts Four and Five because they fail to properly allege wire fraud in that they fail to specify a specific false statement and/or material falsity;

    6. Dismiss Counts Six and Seven because for failure to identify specific state or federal law.

The defendant's motions should be denied.

MOTION TO RECONSIDER ORDER REGARDING JURY TRIAL ON ALL FACTS

On September 1, 2004, a Superseding Indictment (R. 18) was filed against defendant Denny R. Patridge. The charges were the same as previously alleged in the indictment filed June 2, 2004. (R. 1) The Superseding Indictment included "Special Findings," which set forth certain factors relevant to sentencing under the Sentencing Guidelines. The Government moved to strike the Special Findings in a motion filed January 14, 2005. (R. 55) This motion was granted over the defendant's objection in an oral decision on January 19, 2005.

The defendant's current motion, Motion to Reconsider Order Regarding Jury Trial on All Facts" (R. 68) relates back to the government's Motion to Strike Special Findings. (R. 55) The government's Motion to Strike reasoned:

> Not every fact contained within an indictment is essential to the charge. The government may delete matter that does not materially change the elements of the charge or cause prejudice to the defendant. *United States v. Mankarious*, 151

>F.3d 694, 700-01 (7th Cir. 1998).  A deletion: (1) may not strike any portion of the charging paragraph; (2) may not change the charged offense;( 3) must be definite and certain; (4) may not take the defendant by surprise; and (5) may not prevent the defendant from introducing evidence available before the change.  *Id.*; *United States v. Cook*, 745 F.2d 1311, 1316-17 (10th Cir. 1984).
>
>The superseding indictment against the defendant included certain "Special Findings" which, following the Supreme Court decision in *United States v. Booker*, 2005 WL 50108 (U.S.) are irrelevant.

(R. 55,1)

The defendant's Memorandum in Support of his Motion to Reconsider Order Regarding Jury Trial On All Facts (R. 69) touches on several points.  The defendant believes that removal of Special Findings negatively impacts him, although he fails to explains how the removal negatively impacts him.  The defendant also believes that he has been denied his right to due process.  He notes that "retroactive application of judicial construction of a criminal statute would violate the due process clause and the ex post facto clause." (R. 69,4)  Certainly he concludes that the removal of the Special Findings impacts his possible sentence.

The defendant asserts that he was informed that if found guilty, the range of sentences would be between six months probation and 20 years incarceration and he argues that he cannot be sentenced to anything greater than 6 months' probation.  The defendant cites nothing in the record to support his allegation that he was told this was the range of sentences.  The government has reviewed defendant's arraignment on the superseding indictment by reviewing the tape made at the arraignment.[2]  There was nothing on the tape indicating that the defendant was informed that his sentence was between 6 months probation and 20 years incarceration.  In fact, for each count, the

---

[2] In the Central District of Illinois, a court reporter is not present at arraignments in a magistrate judge's courtroom.  A tape is made of such arraignments.  The record for the defendant's arraignment on 9/8/04 is found on Tape C223,at 3352-4076.

defendant was informed by Magistrate David Bernthal that as to each count, there was: ". . . penalty of up to . . . years in prison, fine, special assessment." Judge Bernthal did not ever indicate that the defendant's sentence could be between a certain number of months probation and an upper limit number of years. In fact, Judge Bernthal never mentioned probation.

When the Court previously considered the government's Motion to Strike Special Findings, the Court informed the defendant that he ". . . could be sentenced up to 20 years, the maximum under the statute, which would be in excess of what the guideline sentence would be prior to last week." (Tr.1/19/05, 15)  The defendant was clearly informed that the maximum sentence was 20 years on the most serious counts. Nowhere is there a record of the defendant being informed that he might be sentenced to no more than six months' probation.  Probation is not mentioned.

The defendant is of the opinion that should he be sentenced to any sentence above six months it would be unconstitutional.  His reasoning on this point:

> This brings Defendant to the issue presented herein.  There is no question that any potential sentence needs be imposed according to the guidelines. Any reliance upon judge found fact, regarding offense dated prior to January 12, 2005, that increase any punishment beyond 6 months, would be unconstitutional in violation of the Sixth Amendment.  Why 6 months?  That is the only time that could be imposed based upon the language of the amended superseding indictment.

(R. 69,8-9)

The government fails to follow the defendant's reasoning.  He cites no authority for his conclusion that the greatest sentence he could face is 6 month's probation. However, he is of the opinion that he must be sentenced under whatever guidelines were in effect at the time of his offense: ". . . if application of the current constructed guidelines would violate the due process or *ex post facto* clause.  *See* 1B1.11(b)(1)." (R. 69,9)   On this latter point, the defendant's conclusions are difficult to follow, but he is certainly incorrect.

4

Sentencing Guideline §1B1.11 guides a sentencing court when it faces a situation in which the sentencing guidelines have changed such that the guidelines in effect on the date of sentencing would increase a defendant's punishment over the guidelines punishment in effect on the day the defendant's criminal activity ended. The guidelines have not increased, and if they had, then the Court would certainly be guided by the guidelines in effect at the time the defendant committed his offense.

The defendant seems of the opinion that the decision in *United States v. Booker*, 125 S.C. 738 (2005), increases his possible punishment. Such is not the case. The decision in *Booker* establishes that the Sentencing Guidelines remain in force as written, "although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs." *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). Since the guidelines are no longer mandatory, the change effected by the Supreme Court might as easily allow the defendant a chance at a lower sentence as an increased sentence.

Booker does not effect the kind of change the defendant fears.

> . . .Booker does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of Booker held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application.

Id.

The defendant wants the jury to make all findings related to sentencing and the defendant wants separate jury instructions on such issues. In fact, the defendant seems to be asking the District Court to determine that the Supreme Court issued an unconstitutional ruling in *Booker*, 125 S. Ct. at 765. The defendant's argument is overreaching.

The defendant's motion should be denied.

MOTION TO DISMISS COUNTS TWO AND THREE

The Supreme Court has held that the crime delineated under 26 U.S.C. § 7201 includes the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax. *Sansone v. U.S.*, 380 U.S. 343, 354 (1965). Evasion of payment, as charged in Count 2, often involves single acts which are intended to evade the payment of several years of tax due the government. It is well settled that as long as two or more acts, which would each constitute an offense standing alone, can be characterized as part of a single, continuing scheme, they may be charged as a single count in an indictment. *See United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987) (*abrogated on other grounds by Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

In *Shorter*, the court approved the use of a single count to cover several years of tax evaded when charged "as a course of conduct in circumstances such as those . . . where the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes" for those years. *Id.* at 56. For the twelve years covered by the single count in the indictment, the defendant in *Shorter* had conducted all of his personal and professional business in cash, avoided the acquisition of attachable assets, and failed to record receipts and disbursements. These activities demonstrated a continuous course of conduct, and each affirmative act of evasion was intended to evade payment of all taxes owed, or anticipated, at the time. The court noted that the same evidence used to prove one multi-year count would be admissible to support twelve single year counts. *Id.* at 57. As such, in evasion of payment cases, it is permissible to charge multiple years of tax due and owing in one count, as in the present case involving defendant's evasion of payment for 1996 and 1997, when the evasion is accomplished by a continuing course of conduct. *See Id.* at 56-57.

In *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978), the Seventh Circuit

held that to determine whether two offenses charged in a single count constitute a continuing course of conduct, a "'distinct and separate' test should be applied . . . with a view toward serving the purposes of the prohibition against duplicity." This test is essentially the same as that described in *Shorter*. According to the Seventh Circuit, "plural fraudulent omissions in a single federal income tax return are one offense rather than as many offenses as there are omissions; and . . . tax evasion committed over several years can be charged as a single continuous course of evasion." *U.S. v. White*, 879 F.2d 1509, (7th Cir. 1989) (citing *United States v. Johnson*, 319 U.S. 503, 513-15 (1942)). *See also United States v. England*, 347 F.2d 425 (7th Cir. 1965) (charging two defendants in a single count with evasion of payment of three consecutive years of federal income taxes); *United States v. Brimberry*, 961 F.2d 1286 (7th Cir. 1992) (charging the defendant with evasion of payment of over $19 million in federal income taxes assessed against her for the years 1975 through 1981 in a single count).

    The defendant's sophisticated use of shell corporations, offshore entities, and offshore credit cards to launder money and hide his income from the IRS certainly qualifies as a continuing course of conduct designed to evade the payment of his federal income taxes for 1996 and 1997, thus this Court must deny defendant's motion to dismiss count two as duplicitous. Count 3 alleging the defendant's evasion of his 1999 taxes involves affirmative acts identical in nature to that of Count 2, but focuses on the evasion of assessment of the 1999 tax, rather than on the evasion of payment of the 1996 and 1997 taxes. As the theories of evasion differ, the government properly chose to charge these crimes in separate counts, in reverence to accepted legal practice as well as to avoid confusion. Furthermore, defendant's seeming purposeful misinterpretation of Count Two as alleging that "payment of the taxes for years 1996 and 1997 [must be paid] together," Memorandum in Support of Defendant's 2nd Motion to Dismiss Counts Two and Three (R. 64), is patently ridiculous and illustrates the frivolous intent

of this Motion. Similarly, defendant's argument that Count Three "fails to allege the specific provision of the code to which the duty arising for 1999 separated itself from the duty imposed for 1996 and 1997 under the law," (R. 64,7), is patently frivolous.

MOTION TO DISMISS WIRE FRAUD COUNTS FOUR AND FIVE

<u>Charging a Scheme to Defraud</u>

The defendant argues that Counts Four and Five must be dismissed because the Court previously found that the superseding indictment sufficiently alleged that the "IRS had a property interest in the taxes by the defendant" The defendant is convinced that the Court has thereby found that the "scheme to defraud the IRS" "means the term 'defraud' has no legal meaning." (R. 67,5)

1. The defendant's argument is convoluted, and he is incorrect. He deliberately misunderstands the meaning of the word "defraud" and he fails to recognize the elements of the charges against him. "Scheme to defraud" is not precisely defined, but the following description is effective:

> Whether a scheme to defraud exists is determined by examining whether the scheme demonstrated a departure from fundamental honesty, moral uprightness or fair play and candid dealings in the general life of the community.

*United States v. Hammen*, 977 F.2d 379, 383 (7th Cir.1992).

In its pattern jury instructions, the Seventh Circuit defines a scheme to defraud as it is used in a wire fraud as:

> A scheme is a plan or course of action formed with the intent to accomplish some purpose.
>
> In considering whether the government has proven a scheme to defraud, it is essential that one or more of the acts charged in the portion of the indictment describing the scheme be proved establishing the existence of the scheme beyond a reasonable doubt. However, the government is

not required prove all of them.

Seventh Circuit Pattern Jury Instruction 18 U.S.C. §1343.

Under 18 U.S.C. § 1343, a defendant must knowingly devise a scheme to defraud <u>or</u> to obtain money or property by means of false pretenses, representations or promises. The defendant is not charged with the second "section" of the wire fraud statute. He is not charged with obtaining money or property by means of false pretenses, representations or promises, yet the defendant is quite adequately charged. *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981) (The government is not required to prove a specific false statement; rather, proof of a scheme to defraud may or may not involve particular false statements.)

What the defendant fails to understand or refuses to accept is that the scheme to defraud must include a material misrepresentation <u>or</u> concealment. *United States v. Gee*, 226 F.3d 885, 893 (7th Cir. 2000). *See Henry County Beverage Co. v. Secretary of Treasury*, 454 F.2d 413, 416 (7th Cir. 1971). "Materiality" is defined as having a natural tendency to influence, or is capable of influencing the decision-making body to which it was addressed. *United States v. Fernandez, III*, 282 F.3d 500, 508 (7th Cir. 2002)

Materiality which must be proven for a wire fraud conviction is not limited to facts which an individual or entity has a duty to disclose, as the defendant argues. (R. 67,3) As mail and wire fraud encompass the idea of "materiality" in a way that the false statement statute, 18 U.S.C. § 1001, does not, a separate instruction on materiality need not be provided to a jury. *United States v. Coffman*, 94 F.3d 330, 335 (7th Cir. 1996). If the instructions adequately present the question of materiality, they need not explicitly instruct on materiality. *United States v. Pribble*, 127 F.3d 583, 589 (7th Cir. 1997)

A scheme to defraud, taken as a whole, is misleading and deceptive. *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003); *See*: *United States v. Lustiger*, 386 F.2d. 132, 138

(9th Cir. 1981)(if a scheme is devised with the intent to defraud, and the mails are used in executing the scheme, the fact that there is no misrepresentation of a single existing fact is immaterial.)

Thus, while materiality has been found to be an element of both mail and wire fraud, *United States v. Neder*, 527 U.S. 1, at 24 (1999), the Court is not required to word its instructions so the jury specifically finds that a material false statement was made, as the defendant argues. This conclusion does not run contrary to the recent Seventh Circuit reversal in *United States v. Gee*, 226 F.3d 885 (7th Cir. 2000). In *Gee*, there was no allegation or proof that the defendants had made *any* misrepresentation or concealment whatever. *See United States v. Woods*, *supra* at 999, FN.3)

The defendant seems to argue that, as his statements were not made directly to the IRS, there is no scheme and no materiality to his fraud. Here the defendant is confused not so much on the meaning of the term "statement' as he is on the necessity of direct communication between the defendant and the victim entity. There is no requirement that a scheme be communicated to a human being victim. It is not necessary that an individual person be the victim of a wire fraud scheme. An entity can as easily be a victim. *United States v. Jones*, 938 F.2d 737 (7th Cir. 1991); *United States v. Bucey*, 876 F.2d 1297 (7th Cir. 1989).

The defendant appears to believe that he was required under the statute to cause the IRS to act or not to act. Such is not the case. If the defendant's acts/statements had the natural tendency to influence, or were capable of influencing, the decision of a federal agency to which they were directed, "materiality" has been satisfied. The communications at issue need not be directly submitted to a federal department or

agency. *United States v. Ross*, 77 F.3d 1525, 1544-45 (7th Cir. 1996)[3]

Count Four, Wire Fraud

The defendant is charged in Count Four with concealing and hiding his assets and preventing the IRS from finding and seizing those assets. The defendant's argument is that none of his actions prevented the IRS from obtaining anything to which it had a right. The defendant is absolutely wrong. The government has a property interest in income taxes due and owing. *United States v. Bucey*, *supra*, at 741.

The IRS had formally notified the defendant of a specific tax amount due and owing for specific tax years. When the defendant concealed his assets, he had anticipated the IRS' next move, which would have been to place a lien on his assets so those assets could not be seized. The defendant had been notified by the IRS that it intended to place a lien on his property if his taxes were not paid. The defendant concealed his assets under a name which had no apparent connection to himself.

Count Four specifically sets out as one of the scheme's objectives:

> A. Remove the defendant's liquid funds to a hidden offshore location and thereby conceal them from the IRS so the IRS could not find the funds and seize the funds to satisfy assessed taxes owed to the United States government . . .

In truth, the defendant wishes to argue the right of the IRS to enforce the United States tax laws and/or argue when his taxes were due and owing. The defendant's taxes were due and owing, as a matter of law, on April 15, or other date set by law or legal extension, of the "following" year. This point is clear and unarguable, so clear that

---

[3] The materiality discussed in *United States v. Ross* is under 18 U.S.C. §1001, which includes materiality as an element which must be proven and found by a jury beyond a reasonable doubt.

it is an accepted jury instruction. (Seventh Circuit Pattern Jury Instruction 26 U.S.C. §7201.) As the federal government has a property right in its tax revenues, a scheme to deprive the government of its tax revenues by impeding the IRS' collection of income taxes is certainly a scheme to defraud. *United States v. Bucey*, supra at 1310.

It appears that the defendant's objections stem from objections to the existence of income taxes. A Motion to Dismiss prior to trial is not the forum for such argument. The government will present evidence at trial that earnings are taxed, but if the defendant wishes to argue whether the government has a right to tax earnings, he will have to argue that issue before Congress.

Count Five, Wire Fraud

As to Count Five, the defendant argues that a false mortgage filed on the defendant's property did not cheat the IRS out of having a first lien on the defendant's house. In fact, that is exactly what this fraudulent mortgage did. Knowing that the IRS intended to place a lien on his property, the defendant placed a false and fraudulent mortgage on his real estate. The defendant then argues that the IRS never intended to execute on its lien. He concludes that therefore, there was no fraud on his part. The defendant cites no case law to establish that a defense to fraud is that, in the defendant's opinion, the wronged party did not really want the money out of which he was cheated. It is not the victim's intent that must be proven; it is the defendants' intent.

Finally, the defendant argues that a single wire cannot be the basis for Counts Four and Five, and also be the scheme itself. The Superseding Indictment does not so charge. In Count Four the scheme is the liquidation of funds, depositing those funds into a newly formed account at Edgar County Bank, setting up an offshore account in a name other than his own, and finally, the execution of the scheme is the wire of funds into the offshore account. Count Five has some of the same acts as Count Four, but

Count Five focuses on the filing of a mortgage under the name of an entity controlled by the defendant, the wiring of funds from offshore to that entity, and then the subsequent transfer of those funds to the defendant under the cover of a fraudulent mortgage.

The defendant provides minuscule basis for his arguments and his motion should be dismissed.

MOTION TO DISMISS COUNTS SIX AND SEVEN

The defendant's primary argument with respect to Counts Six and Seven, money laundering, is that the government was required to identify a specific "felony under state or federal law" and the government failed to do so. (R. 67,21) The defendant turns to the government's jury instruction on money laundering to prove his argument. The instruction the defendant turns to is Seventh Circuit Pattern Jury Instruction, 18 U.S.C. §1956, Knowledge. It has long been established that the government must show only that the defendant had knowledge that the laundered funds were tainted, and willful blindness or conscious avoidance is the same as knowledge. *United States v. Rodriguez*, 53 F.3d 1439, 1447 (7th Cir. 1995). The government is of the opinion that it properly specified felonies as required by 18 U.S.C. §1956. The government has identified the wire frauds set forth in Counts Four and Five as the predicate acts for the money laundering charges.

The crux of the defendant's argument actually appears to be that he does not believe he is guilty of wire fraud, therefore, he cannot be guilty of money laundering. The defendant's concepts of money laundering are wrong. Because the government does not have to trace the proceeds to a particular sale or link them to a particular act, it may convict a defendant of money laundering even if the jury acquits him of the underlying crime. *United States v. Mankarious*, 151 F.3d at 702; *United States v. Jackson*,

983 F.2d 757 at 766-67 (7th Cir. 1993)(circumstantial evidence and reasonable inferences can satisfy predicate act element of money laundering.).

The defendant's guilt is for the jury to decide, for he has been properly charged. The remainder of the defendant's motion is confused. The defendant argues that because the government in Count Two fails to allege tax evasion, the money laundering counts should be dismissed. The defendant argues that counts Four and Five fail to allege a scheme to defraud and therefore, Counts Six and Seven should be dismissed. The defendant cites no cases to support his convoluted argument.

CONCLUSION

The defendant has filed three motions which demonstrate a failure to check the record and which provide incorrect information to the Court. The record now reflects that the defendant filed a "Motion for Reconsideration regarding Application of Supreme Court Decision in Booker/Fanfan" and provided instead "Motion To Reconsider Order Regarding Jury Trial on All Facts." The defendant failed to cite a reference for his conclusion that his sentence is limited to 6 months' probation. The defendant argues that two tax years cannot be charged in a single count, when the case law establishes that to charge tow years in a single count is acceptable and proper. The defendant argues in Count Four that the government did not charge him with making a statement when the section of the wire fraud statute under which the defendant is charged does not require that he be so charged. Previously, the defendant filed a motion in which he accused the government attorney and the case agent of perjury and he accused the government attorney of prosecutorial misconduct. (R.33) The Court found no basis for the accusations. (R.51)

While all attorneys may occasionally misstate a fact or fail to provide a reference, the defendant's failures to check the record and provide references are monumental. In

their Motion to Withdraw as Counsel, Michael Minns and Enid Williams indicated that "remaining counsel, Jerold Barringer, has informed the undersigned that he has been preparing all along and is comfortable taking over as lead counsel." (R. 54, 3) Defense counsel has had access to all the records the government provided in discovery; the government met with current defense counsel and the defendant to determine that the defense was not missing any documents.  The defense demonstrated that defense had engaged in an organized review of the discovery.  The government provided current defense counsel a list of Rule to Show Cause Hearings at which the defendant was present and the names of the court reporters who could provide the transcripts.  There is really no need to waste the Court's time with motions and replies to motions, especially when those motions were filed previously and the defendant is filing them for the second time.[4]

  The defendant's motions should be denied and the defendant should not renew his motions to dismiss without solid legal research and a specific identifiable legal reason, supported by legal research, for doing do.

---

[4] The government is answering the defendant's Second Motion to Dismiss Counts Two and Three and  Second Motion to Dismiss Counts Four Through Seven.

CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2005, I electronically filed the foregoing Response to defendant's Motion to Order Release of Grand Jury Transcript with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jerold Barringer, ,102 S. Pine, P.O. Box 213, Nokomis, IL 62075

Respectfully submitted,

JAN PAUL MILLER
United States Attorney

 s/Hilary W. Frooman
HILARY W. FROOMAN
Assistant United States Attorney
United States Attorney
201 S. Vine, Suite 226
Urbana, Illinois 61802
217/373-5875
FAX: 217/373-5891
hilary.frooman@usdoj.gov