E-FILED
Thursday, 21 April, 2005  03:12:36 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 04-CR-20031 |
| ) | |
| DENNY R. PATRIDGE, ) | |
| ) | |
| Defendant. ) | |

## ORDER

On April 12, 2005, the Government filed an Ex Parte Motion for Permission to File Under Seal (#80). The Government stated that there was certain information in the background of a witness it will call at trial which might possibly be considered discoverable under either Brady v. Maryland, 373 U.S. 83 (1963) or Giglio v. United States, 405 U.S. 150 (1972). The Government further stated that the information was only arguably discoverable and, if disclosed, would certainly be a violation of the witness's privacy if the disclosure was not fully necessary. The Government further noted that the Seventh Circuit has approved in camera review of disputed evidence in various cases. In its Ex Parte Motion, the Government sought permission to file its request for in camera review under seal and have the facts reviewed ex parte without revealing those facts to the defense unless the court deems it fully necessary. On April 12, 2005, this court entered a text order, under seal, and GRANTED the Government's Ex Parte Motion (#80). Accordingly, the Motion was filed under seal.

On April 13, 2005, this court received the Government's Ex Parte Disclosure of Allegations Concerning a Witness for In Camera Review. The Government noted that Defendant has been charged with, among other things, filing a false tax return for the 1998 calendar year (Count I) and

tax evasion for the 1999 calendar year (Count 3). The Government stated that, for both 1998 and 1999, the IRS revenue agent who performed the civil audit was Michael T. Helfer. The Government stated that Helfer will be a significant witness in the Government's case. The Government stated that it has discovered that, in 1997, the IRS Inspector General investigated certain allegations against Helfer. The Government provided the court with a Report of Investigation (Exhibit 1) and a Negotiated Alternative Disciplinary Agreement (Exhibit 2) regarding Helfer for this court's in camera review. The Government argued that this information should not be disclosed to Defendant because none of the information contained in these documents could be used to impeach Helfer's character for truthfulness. The Government asked that this court issue an order finding that the Government is not required to disclose any portion of the investigation from Helfer's personnel file because the information is not material to Helfer's credibility.

## APPLICABLE LAW

In Brady, the United States Supreme Court held that the prosecution has an obligation under the Due Process Clause to provide the defendant, upon request, all evidence in its possession that is favorable to the accused and material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). In Giglio, the Brady rule was extended to require the disclosure of evidence that affects the credibility of a Government witness. Giglio v. United States, 405 U.S. 150, 154 (1972). However, the Government "is not obligated to disclose 'every possible shred of evidence that could conceivably benefit the defendant.'" United States v. Bhutani, 175 F.3d 572, 577 (7th Cir. 1999), quoting United States v. Hamilton, 107 F.3d 499, 509 (7th Cir. 1997). Evidence that is known to the Government and could have been used for impeachment only needs to be disclosed if it was "material." Strickler v. Greene, 527 U.S. 263, 280-

82 (1999), citing Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). Evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler, 527 U.S. at 280; see also United States v. Williams, 272 F.3d 845, 864 (7th Cir. 2001). A "reasonable probability" is one sufficient to undermine confidence in the outcome. United States v. Dimas, 3 F.3d 1015, 1018 (7th Cir. 1993).

Under Giglio, impeachment evidence that undermines the credibility of Government witnesses, such as promises of leniency, must be disclosed. Evidence bearing on a witness's credibility can be material when it has "significant impeachment value." Dimas, 3 F.3d at 1018. However, the evidence must be admissible at trial–no Brady/Giglio violation can occur if the defendant could not have used the evidence, because inadmissible evidence cannot have an effect on the trial's outcome. See, e.g., Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995); United States v. Silva, 71 F.3d 667, 670 (7th Cir. 1995); Dimas, 3 F.3d at 1019.

Rule 608(b) of the Federal Rules of Evidence provides that specific instances of the conduct of a witness may not be proved by extrinsic evidence when used for impeachment purposes. Fed. R. Evid. 608(b). Instead, a proponent of such evidence is limited to inquiring into allegations on cross-examination, and then only if (1) the allegations concern the witness's character for truthfulness or untruthfulness, and (2) if the court so allows in its discretion. Fed. R. Evid. 608(b); see also United States v. Saunders, 166 F.3d 907, 920 (7th Cir. 1999). Thus, the starting point for examination of the materiality of this type of impeachment evidence is "what evidence would technically be admissible and what portion of that evidence [the court] would allow under the discretion granted to it by Rule 608(b)." United States v. Veras, 51 F.3d 1365, 1375 (7th Cir. 1995), quoting Dimas, 3 F.3d at 1019.

The Government can satisfy its Brady obligation if it turns over the required information to the judge in chambers. See United States v. Cruz-Velasco, 224 F.3d 654, 662 (7th Cir. 2000). After that, the only question is whether the district court abused its discretion in determining that the evidence was not material and did not need to be disclosed. See Cruz-Velasco, 224 F.3d at 662.

## FACTS

The Government has provided to this court, for in camera review, a "Report of Investigation," dated April 9, 1997, regarding Michael T. Helfer. The Report involved an investigation conducted by the IRS Inspector General into an allegation that Helfer purchased a vehicle from Poling Chevrolet, Inc., a company which he was in the process of auditing for the Internal Revenue Service. The investigation showed that Helfer was assigned to perform an audit of Poling Chevrolet and had performed some work on the audit, including making some adjustments to Poling Chevrolet's employment tax returns and securing a signed agreement from Poling Chevrolet which resulted in additional tax assessments of over $1,200. During the course of the audit, Helfer approached the president of Poling Chevrolet and inquired about purchasing a vehicle, a Chevrolet Cavalier. When the president inquired whether it was proper for them to engage in a sale during the audit, Helfer said it would not be a problem. Helfer then discussed the purchase with a salesman who reported that Helfer applied no undue pressure on him regarding the purchase of the vehicle or the audit. Helfer then advised his group manager that he intended to purchase a vehicle from Poling Chevrolet and asked that the Poling Chevrolet audit be reassigned. Helfer's group manager did not forbid him to purchase the vehicle and did not advise him that the purchase would be a violation of IRS regulations. Helfer's group manager "attempted to persuade Helfer that purchasing the car would not be a good idea." Helfer said he wanted to purchase the vehicle and

the audit was reassigned to another agent. Helfer's group manager then decided to report this matter to Inspection.

The investigation showed that Helfer purchased the vehicle after he was removed from the audit. Helfer did not receive a special deal on the vehicle. Review of the records indicated that the price Helfer paid for the vehicle was no better than the price the average buyer would pay. In fact, Helfer actually paid a higher than average price for the vehicle. Helfer also received the average amount for the trade-in of his old vehicle. The Report of Investigation concluded with a finding that:

> There was no evidence secured to indicate that a criminal violation occurred. No referral was made to the United States Attorney for consideration of criminal prosecution. MICHAEL T. HELFER admitted to purchasing a vehicle from the company on which he had conducted an Internal Revenue Service tax examination.

The result of the investigation was a "Negotiated Alternative Disciplinary Agreement." The agreement stated that Helfer "understands how a reasonable person could perceive the purchase of a car from the dealership under these circumstances is a conflict of interest which is a violation of the Rules of Conduct." Under the terms of the agreement, Helfer was placed in non-pay status for five days during the week of September 22, 1997. This action was in lieu of a suspension.

The investigation report also contained some criticisms of Helfer's work on the audit prior to his purchase of the vehicle, including Helfer's failure to properly determine the value of the demonstration automobiles owned by Poling Chevrolet. Helfer was not disciplined for any failures with respect to audit performance. The investigation report also included documentation regarding

an unpaid leave taken by Helfer and his failure to provide the necessary documentation from his physician in a timely manner.

## ANALYSIS

Following careful review of the documents provided by the Government for in camera review, this court concludes that the information contained in the documents would not be admissible to impeach Helfer's testimony. Under Rule 608(b), Defendant could not present extrinsic evidence regarding the investigation to attack Helfer's character for truthfulness. In fact, the investigation showed that Helfer was, at all times, candid and truthful regarding his purchase of the car from Poling Chevrolet. Moreover, the information regarding the criticism of Helfer's audit and Helfer's failure to provide medical documentation in support of a leave request cannot be considered impeachment evidence relevant to the issue of Helfer's credibility. This court further concludes that none of the information would be relevant to the issue of bias as the investigation has been completed and a determination was made that no prosecution was warranted. See United States v. Austin, 103 F.3d 606, 610 (7th Cir. 1997) (no basis for concluding that promises of leniency made in exchange for testimony). This court therefore concludes that this information is not "material" and does not need to be disclosed to Defendant.

IT IS THEREFORE ORDERED THAT:

(1) The clerk is directed to file the Government's Ex Parte Disclosure of Allegations Concerning a Witness for In Camera Review under seal.

(2) The Government is not required to disclose to Defendant that portion of Helfer's personnel file which includes the Report of Investigation and Negotiated Alternative Disciplinary Agreement. The information included in these documents is not material to Helfer's credibility and

does not need to be disclosed under <u>Brady</u> or <u>Giglio</u>.

(3) This Order is to be filed under seal.

ENTERED this 21st day of April, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF JUDGE