E-FILED
Friday, 27 May, 2005  09:37:24 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 04-20031 |
| ) | **SEALED** |
| DENNY PATRIDGE, ) | |
| ) | |
| Defendant. ) | |

GOVERNMENT MOTION TO QUASH TRIAL SUBPOENA DUCES TECUM

Comes now, the United States of America, through Jan Paul Miller, United States Attorney for the Central District of Illinois, by and through Hilary W. Frooman, Assistant United States Attorney, and Lea Carlisle, Department of Justice Tax Division, moves this Court to quash subpoena duces tecum issued by the defendant for trial of this cause. Specifically, the government seeks to quash the defendant's requests for production of documents in subpoenas issued to the following: Vermita Boyd, Mark Miller, Michael Helfer, David Schermann, Larry Phillips, Craig Bergschneider and Bernard Coleman.[1]  In support of this motion, the government states:

**Misuse of Trial subpoenas as a Substitute for Discovery**

Federal Rule of Criminal Procedure 17 governs the issuance of trial subpoenas in a criminal case. The clerk, under Rule 17(a) must issue a blank subpoena to the party requesting it. A subpoena may order the witness to "produce any books, papers, documents, data, or other objects the subpoena designates." However, "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed.R.Crim.Pro. 17(c). *Margoles v. United States*, 402 F.2d 450 (7th Cir. 1968).

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951), discusses the relationship

---

[1] Copies of the subpoenas are attached.

1

between Rule 16 and Rule 17(c) of the Federal Rules of Criminal Procedure. Although Rule 17 extends to materials not subject to Rule 16 discovery, it is not intended to provide an additional means of discovery. *Id*. at 220. In federal district court, every subpoena must be a "good faith effort . . . to obtain evidence," and the district court may ensure that Rule 17(c) is used only to that end through the court's power to quash or modify subpoenas. *Id*. at 219-20. The trial court has the authority to quash a subpoena which is overly broad and/or oppressive. *Margoles v. United States*, *supra* at 451 (holding that trial court did not abuse its discretion when it quashed subpoena for any and all equipment logs of F.B.I. office relating to utilization of electronic eavesdropping equipment during 1 ½ year period as too broad).

To obtain documents under Rule 17, the defendant must show that

> (1) the subpoenaed document is relevant,
>
> (2) it is admissible, and
>
> (3) it has been requested with adequate specificity.

To meet the specificity and relevance requirements, the defendant must provide more than the title of a document and conjecture as to its contents. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992).

The government is required to provide discovery to the defense; the defense is not entitled to burden the government with subpoenas for every imaginable type of document, whether relevant or not to the trial defense. The Supreme Court identified a four-part test to guide trial courts in the issuance of subpoenas in criminal cases pursuant to Fed.R.Crim.Pro. 17(c):

> First, documents sought must be evidentiary and relevant. Second, the defendant must be unable through the exercise of due diligence to otherwise procure the documents reasonably in advance of trial. Third, the documents must be essential to prepare for trial. Finally, the application must be made in good faith and not intended as general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992).

Judge Goldberg, of the Fifth Circuit, succinctly stated the problem Patridge faces with the

subpoenas he has issued:

> The Rule 16 door closes, so a criminal defendant attempts to pry open the Rule 17(c) portal. The district court, as keeper of the Rule 17(c) gate, hears the chanting of the "open sesame!" incantation – "let me obtain the evidence" – but cannot unlock the entry, for the recitation fails to satisfy the demanding requirements of Rule 17(c).

*United States v. Arditti*, *supra*.

A defendant is not entitled to use trial subpoenas as a substitute for discovery. *United States v. Tokash,* 282 F.3d 962, 971 (7th Cir. 2002) (holding that a subpoena is not a discovery device to allow defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge; instead, it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial).

It is not particularly unusual for the same taxpayer to undergo both a civil and a criminal audit. The IRS has regulations to govern such situations. *United States v. Peters*, 153 F.3d 445, 454, n. 13 (7th Cir. 1998) (The criminal action in a case takes precedence over its civil aspects and "civil enforcement action involving the same tax and periods as an active criminal investigation is suspended or deferred until the criminal aspects of the case are closed."); *United States v. Kis*, 658 F.2d 526, 641 (7th Cir. 1981); *United States v. LaSalle National Bank*, 437 U.S. 298 (1978).

With respect to each of the served subpoenas of which the government is at this time aware, named individuals, the defendant uses the same or a very similar first paragraph and he therefore requests, among other documents, the named individual's notes. With respect to all but Craig Bergschneider and S/A Coleman, the government, has in fact, already provided relevant documents that have evidentiary value, including notes.

S/A Coleman certainly has notes of witness interviews. The government has provided S/A Coleman's interview summaries to the defense. The defendant has also received copies of S/A Coleman's reports of interviews of the defendant. The defendant now seeks the investigator's notes on which the interview reports were based.

An agent's summary of a witness' oral statement that is not signed or adopted by the witness is not subject to disclosure under the Jencks Act. *Palermo v. United States,* 360 U.S. 343, 352-53 (1959). None of the agent's reports of interview have been adopted by the witnesses in this case and, obviously, none of the witnesses has as yet testified, and therefore 18 U.S.C. §3500 does not apply.

The government satisfies the requirements of discovery rule if it turns over a written report that contains all of the information found in an agent's original notes, but does not deliver the notes themselves to the defendant. *United States v. Coe*, 220 F.3d 573, 583 (7th Cir. 2000); *United States v. Muhammad*, 120 F.3d, 688, 699 (7th Cir. 1997). A court may, at times, perform an *in camera* review of an agent's notes to determine whether a defendant is entitled to those notes, but in those cases in which the court performs such a review, the defendant has alleged a specific entitlement to the notes. *United States v. Lopez*, 6 F.3d 1281, 1288 (7th Cir. 1993) (A presumption arises that the district court should conduct an *in camera* inspection of documents to determine whether the documents are producible under the Jencks Act only upon reasonable argument from counsel); *United States v. Marshall*, 985 F.2d 901, 908 (7th Cir. 1993) (*In camera* inspection of documents to determine whether the documents are producible under the Jencks Act is not necessary if the prosecution articulates on the record that such notes are a mere summary of oral statements that have not been adopted by the witness).

The defendant here has not even bothered to present a reasonable argument that he is entitled to the agent's notes. This defendant has attempted to bypass the discovery rules by subpoenaing the agent's notes he wants directly from the agent.

The defendant has already obtained what notes exist that are discoverable as part of the work records of IRS revenue officers. The defendant is not entitled to any other notes and he has not articulated any reason the Court should spend its time reviewing *in camera* all of the case agent's notes of interview.

The defendant insinuates that the government misused civil process in a criminal case. If

4

the government were aware of any evidence which established that the criminal case agent had misused the IRS civil process, whether this should include the use of a revenue agent to gather evidence for the criminal case or some other evidence, such would be considered exculpatory and the government would be required to turn it over to the defense. The government is not aware of any such evidence and therefore, it is entirely appropriate for the Court to deny a discovery motion for such evidence without a hearing. *United States v. Utecht*, 238 F.3d 882, 885 (7th Cir. 2001) (The defendant must make a prima facie showing of entitlement to relief when he makes discovery motion seeking IRS records of misuse of civil summons in a criminal case).

### Oppressive and Unreasonable Subpoenas

The defendant has caused subpoenas to be issued to witnesses who formerly were employed by the Internal Revenue Service. The witnesses of whom the government is aware at the time of filing this motion are: Vermita Boyd, David Schermann, and Michael Helfer. Vermita Boyd's name appears as the contact person on Notices of Deficiency issued to the defendant. David Schermann was in charge of the defendant's Collection Due Process proceeding. Michael Helfer was the revenue agent who handled the audit of the defendant's 1998 and 1999 taxes. None of these individuals are currently employed by the IRS. They do not have access to any IRS documents. As the Court is aware, records held by the IRS can be released only if disclosure is allowed under 26 U.S.C. §6103, *et seq*. The government obtained documents from the IRS as allowed under §6103, but the IRS cannot release such documents directly to the defendant unless the release is allowed under §6103. Finally, the defendant has never suggested to the government or the Court that the government failed to comply with discovery and the defendant does not even attempt to demonstrate how any of the subpoenaed documents are necessary to his defense.

**Vermita Boyd**

Vermita Boyd was subpoenaed to provide:

> You are also commanded to bring with you the following
> documents or objects: (1) Any and all documents, papers, notes,
> records, recordings, held in either printed original form, by you,
> reprinted from your computer, or otherwise held in you possession

>in any other readable, legible or other format, regarding your participation and involvement in the matter of the federal tax liability and other Internal Revenue Service issues related to Denny R. Patridge, individually and as trustee. The time period for this request is from 1-1-1996 through 6-13-2005; (2) any documents authorizing you to participate as a revenue agent involving the federal tax matters of Denny R. Patridge while a criminal investigation was ongoing involving Denny R. Patridge and those same federal tax matters from 1-1-96 through 12-31-04; (3) any and all documents you relied upon in your examination that resulted in your issuance of the two Notices of Deficiency to Denny R. Patridge and Patridge Asset Management Trust dated January 27, 2000 for years 1996 and 1997 SS ▇▇▇▇▇▇▇ and EIN #37-633449.

Vermita Boyd does not have access to any IRS documents. More importantly, there is no need for the defendant to make such a request of Ms. Boyd, for the defendant has the IRS documents to which he is entitled.

The Notices of Deficiency for the 1996 and 1997 tax years were based on the audit file of Revenue Agent Mark Miller. Miller's complete file has been made available to the defendant. David Schermann's file, and Revenue Agent Mike Helfer's file include all relevant documents for the defendant and the 1996, 1997, 1998 and 1999 tax years. The defendant has access to all of the noted files, which would include documents he has subpoenaed from Boyd. The defendant has no basis to request documents "authorizing" Boyd to participate in tax maters of Denny Patridge.

**Larry Phillips**

Larry R. Phillips is an employee of J. K. Harris, a Charleston, South Carolina company which provides consulting services to assist taxpayers in dealing with the IRS and IRS audits. The defendant hired Phillips in 2000 to assist with his 1998 audit. Phillips is a witness partial to neither the government nor the defense. He is simply a person with relevant knowledge. However, as the defendant knows, Phillips appeared before the grand jury on June 4, 2003, pursuant to subpoena, and at that time, he provided records in compliance with the subpoena:

>Q. You were subpoenaed to appear before the grand jury and to provide to the grand jury copies of any and all work papers from the audit file of Denny Patridge for the period January 1, 1998 through December 31, 1999, and copies of any and all work papers form the audit file of another individual named Gary Scherer, S-c-h-e-r-e-r,

> involving any dealings with Denny Patridge.
>   And have you complied with that request by means of turning those records over through myself and through Special Agent Coleman?
>
> A. Yes, I have.

GJ 6/4/03 at 3.

The defendant has now served Phillips with a trial subpoena duces tecum for the following:

> Any and all documents, papers, notes, records, recordings, held in either printed original form, by you, reprinted from your computer, or otherwise held in you possession in any other readable, legible or other format regarding your participation and involvement in the matter of the federal tax liability and other Internal Revenue Service issues related to Denny R. Patridge, individually and as trustee. The time period for this subpoena is from April 1, 2000 through June 13, 2005. The years at issue regarding this subpoena and Denny R. Patridge individually and as trustee are 1996, 1997, 1998 and 1999.

The government provided the defendant with copies of all the documents Phillips produced. The majority of those are listed on the Government Exhibit list at Govt. Exb. 55. The government has had contact with Phillips in preparation for the trial and there are no other documents to be produced. It would be overly burdensome and a mere fishing expedition for the defendant to cause Larry Phillips to now provide copies of documents already in the defendant's possession. Further, the defendant is well aware of the broad interpretation Phillips gave the grand jury subpoena because the defendant has had access to Phillips' testimony before the grand jury and the defendant knows that Phillips' personal notes, his letters to the defendant, letters and memos Phillips received from the defendant, and instructions Phillips provided to the defendant were all included when Phillips provided documents to the grand jury.

**S/A Bernard Coleman, Former Revenue Agent Michael Helfer, Revenue Agent Mark Miller**

The defendant has caused Special Agent Bernard Coleman, former Revenue Agent Michael Helfer and Revenue Agent Mark Miller to be served with trial subpoenas. All three subpoenas have the same first paragraph, which requests the witnesses to provide:

7

> (1) Any and all documents, papers, notes, records, recordings, held in either printed original form, by you, reprinted from your computer, or otherwise held in you [sic] possession in any other readable, legible or other format, regarding your participation and involvement in the matter of the federal tax liability and other internal revenue service issues related to Denny Patridge, individually and as trustee. The time period for this request is from 1-1-1996 through 6-13-2005;

The subpoena to Revenue Agent Miller also requests:

> (2) Any documents authorizing you to participate as a revenue agent involving the federal tax matters of Denny R. Patridge while a criminal investigation was ongoing involving Denny R. Patridge and those same federal tax matters from 1-1-96 through 12-31-04;
> (3) Any and all documents regarding your transfer of your investigation results to Vermita Boyd, ID # 36-09217, for years 1996 and 1996 on SS # ▬▬▬▬▬▬ and EIN # 37-633449.
> (4) Any documents which specifically assigned you to the matters involving Internal Revenue taxes of Denny R. Patridge and Patridge Asset Management Trust.

The subpoena served upon Helfer requests:

> (2) Any documents authorizing you to participate as a revenue agent involving the federal tax matters of Denny R. Patridge while a criminal investigation was ongoing involving Denny R. Patridge and those same federal tax matters from 1-1-96 through 6-13-05.

The subpoena served upon S/A Coleman requests:

> (2) Any documents authorizing you to direct participation of an ongoing criminal investigation through and usage of civil revenue agents involving the federal tax matters of Denny R. Patridge and Patridge Asset Management Trust while a criminal investigation was ongoing involving both Patridge and the trust in which the same federal tax matters from 1-1-96 through 12-31-98 was ongoing;
> (3) Any memorandum or policy material you rely upon for directing CDP Officer David P. Schermann to discontinue his duty under Section 6330 regarding Denny R. Patridge and Patridge Asset Management Trust, from holding a hearing and issuing a final determination.

As noted previously with respect to witness Boyd, as Helfer no longer works for the IRS, he has no access whatever to documents maintained by the IRS. Further, his file has previously been made available to the defense.

The subpoenas served upon S/A Coleman and all of the named IRS employees and current

IRS employees appear to accuse the IRS of misusing the civil investigative process to complete a criminal case. The defendant has no basis for his conjecture and insinuation that the IRS invaded the defendant's privacy by reviewing his taxes without proper authority. The government is not aware of any evidence to show misuse of civil revenue agents or civil summons by the criminal investigator in this case. The defense has no proof or basis for such an accusation.[2] The defendant's underhanded suggestion is similar to the defendant's Motion to Dismiss for Prosecutorial Misconduct, in which the defendant accused the government attorney and IRS S/A Coleman of deliberate perjury. In response to that motion, the government commented that the defendant's allegations were reckless, frivolous and insulting.

The defendant has filed his trial subpoenas in an utter fury against the IRS and without regard to the Rules of Discovery or the unnecessary difficulty he might be causing witnesses. The defendant has all documents to which the Rules of Discovery entitle him. There are no documents which suggest that S/A Coleman misused civil revenue agents to proceed in a criminal investigation. There is no basis to believe that such misuse occurred. Simply because S/A Coleman indicated that Helfer could refer the matter again if other evidence developed is no reason to believe that Coleman misused his position. The defendant ignores the fact that had he filed accurate tax returns for the 1999 tax year, his case would never have been referred to criminal investigation at all. S/A Coleman did nothing improper; no one with the IRS misadvised the defendant.

A revenue agent must develop a "firm indication of fraud" before referring a case to the criminal division of the IRS. *United States v. Peters*, 153 F.3d 445, 455, (7th Cir. 1998) (A "firm indication of fraud" has been established when the taxpayer has engaged in a "consistent pattern of substantial under reporting of income and/or overstatement of deductions such that an intent to

---

[2] During the 1998 audit, Revenue Agent Helfer referred the matter to IRS criminal. S/A Coleman reviewed the referral and declined to accept a fraud referral on a single year's taxes. Coleman informed Helfer that if the activity continued for another year, the criminal IRS could reconsider.

evade taxes can be inferred. Such a pattern is usually established only after the revenue agent has examined the taxpayer's returns filed over a period of several years.)

During the 1998 audit, Helfer may have had strong suspicions of fraud, but S/A Coleman no doubt acted properly when he rejected the case for criminal investigation at that time. A single year of questionable activity would not likely provide a "firm indication of fraud." However, Coleman did not advise Helfer in any way; neither did Helfer obtain evidence for Coleman. The defendant proceeded to handle his taxes as he determined he would; Helfer did not interview the defendant on behalf of the criminal investigator, or proceed based on Coleman's direction.

The defendant has received far more than required under Fed. R. Crim. Pro. 16. Nevertheless, the defendant has waited until two weeks before trial to make insinuating discovery requests through the use of trial subpoenas. The government can virtually guarantee that the defendant has no intention of calling any of the above individuals as witnesses. For all but Vermita Boyd, the government will call the subpoenaed parties as witnesses and the defendant will cross-examine. There is no reason the defendant would wish to place these people on the stand and question them on direct. The defendant only wants documents to which he is not entitled under the Rules of Discovery and, in fact, has either already been provided or which do not exist.

**David Schermann**

The defendant also appears to be convinced that his due process hearing was terminated solely due to a criminal investigation. The defendant has all of the records from David Schermann, who handled the civil due process proceeding, and the defendant can read himself the reasons his due process hearing did not proceed.

**Craig Bergschneider**

Craig Bergschneider, of the Champaign IRS Office, is a Supervisory IRS agent. He supervised Helfer and he supervises Miller. He received a trial subpoena from the defense, the first paragraph of which reads exactly as the other subpoenas served to Miller, Helfer and

10


Coleman. Bergschneider reviewed and approved Miller's and Helfer's work; Bergschneider may have notes relating to Patridge, but Patridge has never named the documents he seeks and he has certainly never demonstrated how those documents are necessary to his defense. The government objects to providing such documents.

Bergschneider's subpoena also requires him to provide:

> (2) Any documents which explain the policy position of the I.R.S. regarding audit reconsideration to you and which you relied with respect to Denny R. Patridge and Patridge Asset Management Trust in Direct Larry Phillips [sic].

The records the defendant seeks are readily available to the public and can be found at the IRS web site, WWW.IRS.GOV. Before the defendant is entitled to seek such documents through Rule 17(c), the defendant must show that he has been unable to obtain them through due diligence. However, as the documents are public record, the government is willing to assist the defense, should the defense encounter difficulty. The government's assistance is based on professional courtesy, one attorney to another. The defendant does not need to seek such publications by means of subpoena to IRS employees. The government would have been quite willing to assist the defendant in obtaining the policy statements weeks ago had the defendant made the request. The government has been extremely liberal in providing discovery.[3]

In *United States v. Denny Patridge*, the government has provided far more discovery than required under Federal Rule of Criminal Procedure 16. In fact, the defendant has had access to approximately 8,000 documents. The documents provided include all records obtained from the Internal Revenue Service in relation to the 1996, 1997, 1998 and 1999 audits, the due process hearing request, communications from the IRS to the defendant regarding tax assessment and notices of lien. Should the defendant want to call any of the above individuals as witnesses to testify, the defendant is entitled to do so if there is relevant information the subpoenaed individuals can provide. However, the government believes that to ask the named witnesses to

---

[3]One of the government's discovery letter, attached as Exb. 1, demonstrates the government's willingness to assist the defense if requests are reasonable.

provide documents that have already been made available is unreasonable and oppressive. The subpoenas are, in fact, more supportive of the defendant's attack on the IRS than they are on an identifiable defense.

WHEREFORE, the government moves that the Court quash the subpoena duces tecum issued to Larry Phillips, Vermita Boyd and David Schermann as unreasonable and oppressive.

Pursuant to Motion previously granted, the above document is to be **SEALED.**

Respectfully Submitted,

JAN PAUL MILLER
United States Attorney


s/ Hilary W. Frooman
HILARY W. FROOMAN, Reg # 6180241
Assistant United States Attorney
United States Attorney
201 S. Vine, Suite 226
Urbana, Illinois 61802
217/373-5875
FAX: 217/373-5891
hilary.frooman@usdoj.gov


s/Lea Carlisle
LEA CARLISLE , TX Bar # 24031793
Trial Attorney, Tax Division
United States Department of Justice
lea.carlisle@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on May 26, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following and I hereby certify that I have mailed by United States Postal Service the document to the following:

      Jerold Barringer
      Attorney at Law
      P.O. Box 213
      Nokomis, IL 62075
      E-mail: jwbarringer@consolidated.net

      s/ Hilary W. Frooman
      HILARY W. FROOMAN, Reg # 6180241
      Assistant United States Attorney
      United States Attorney
      201 S. Vine, Suite 226
      Urbana, Illinois 61802
      217/373-5875
      FAX: 217/373-5891
      hilary.frooman@usdoj.gov