UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 04-20031 |
| ) | |
| DENNY PATRIDGE, ) | |
| ) | |
| Defendant. ) | |

OBJECTION TO ADDITIONAL DEFENSE EXHIBITS
AND STATEMENT OF COMPLIANCE WITH COURT DISCOVERY ORDER

Comes now, the United States of America, through Jan Paul Miller, United States Attorney for the Central District of Illinois, by and through Hilary W. Frooman, Assistant United States Attorney, and Lea Carlisle, Trial Attorney, Department of Justice in response to Defendant's request for additional discovery and the Court's order that the government comply, the government states:

1. The government has complied with the order of this Court entered May 27, 2005.

2. The defendant has not complied with the Court's order, entered May 27, 2005,

FACTS

3. At a final pretrial conference, the government objected to exhibits on the defendant's exhibit list for, among other reasons, the defendant had never produced the exhibit and the government was unfamiliar with the exhibit. The Court ordered the government to provide documents with the defendant's name, seized in the Aegis search. The government has complied with the Court's order, and has provided all of the disks in the possession of IRS Springfield which contain Aegis documents seized in a search warrant and scanned into a computer system. The government is missing one disk, but has a record, via search, that the defendant's name does not appear on that disk.

1

4. Of the disks provided, if the defendant's name appeared in the document, the government printed most of the documents for the defendant. Further, the government supplied the defense a master index of the documents and highlighted which documents the defendant has received via hard copy and also indicated when the documents related to Heritage (an Aegis entity which did not deal in the type of trusts for which the defendant is charged). The government has provided written instructions on how to search the disks; moreover, the government noted when documents on the disks were related to Heritage, an uncharged section of the Aegis business, rather than to Aegis.

5. The government provided a transcript of the expert testimony of the government expert, Nicoli Ferrell from a similar case. Further, having received a letter via FAX machine from defense counsel indicating that defense was missing certain documents, the government provided copies of all the documents the defense was unable to locate, even if the government had previously provided them. Further, the government requested of agents in Portland, Oregon, on a related case, to run another search of all of their documents. The government has provided all those records to the defense, although the majority of them were duplicates of the same information previously provided to the defense.

6. The defense was ordered to provide copies of the exhibits which the government identified from the defendant's exhibit list, either by supplying a copy of the exhibit itself or identifying the exhibit by government bates stamp number. The defendant was also ordered to provide identifying information, including the location and date for the 28 videos the defendant had supplied.

7. The defendant has now listed and provided 50 video tapes to be used as exhibits. Of the 50 video tapes, 22 of those tapes had not previously been provided. Of those originally provided, 9 tapes had no sound and one tape had no video at the start; of those, many have been improved, but the sound on tape 3 "cuts out" in the middle.

Tape 13 has very poor sound. The tapes bear such identifiers as: "102A: Video tape 10, Parker St. Louis, Mo 4/00 (Govt.)"

8. It is one thing to recognize that a portion of a multi-page exhibit previously provided to opposing counsel have been left off the exhibit list. That is clearly an oversight; as opposing counsel was always aware that the additional document was considered a possible exhibit, the late addition is not a surprise and is understandable. It is quite another matter to suddenly decide a week before trial that 22 video tapes not previously identified as possible exhibits and not provided in discovery as such, are now intended as exhibits. The defendant's action is not a mere oversight. It is just plain failure to prepare for trial when ordered to do so by the Court.

9. In addition to the objections stated, the government also objects on the same grounds identified for the first 28 video tapes. The video tapes will extend the trial by at least one week, include some legal opinions, and fail to establish the defendant's actual beliefs and reasons for acting as he did. The defendant's personal testimony would present the defendant activities and reasons more concisely and more reliably, as they come from the defendant himself. As stated in the government's previous memorandum, among those factors relevant to a determination of admissibility of such video tapes:

> Among the factors which would be relevant to such a determination would be the following: 1) the centrality of these materials to a defendant's claimed misunderstanding of the tax laws; 2) the materials' length and potential to confuse the jury; 3) the degree to which such materials are merely cumulative to a defendant's testimony or to other evidence; 4) the extent to which a defendant or defendants may be attempting to use them to instruct the jury on the law or to propagate tax protestor beliefs; and 5) the potential utility of limiting instructions. *See Powell*, 955 F.2d at 1214; *Barnett*, 945 F.2d at 1301 n.3; *Willie*, 941 F.2d at 1395.

(Government Motion to Exclude Defendant's Exhibits, R. 88)

10. In addition to such considerations is the blatant violation of the court's order that the defendant's exhibit list was to be on file by April 1, 2005. It is difficult enough to recognize a legitimate purpose to 28 videotapes, but 50 videotapes is beyond reason.

11. The defendant has provided no reason for the late production of 22 video tapes. The defendant waited until the last possible moment to supply these exhibits to the government and the government moves that they be stricken for that reason alone. As to the defendant's other videotapes, the government stands on its previous objections.

12. The Court ordered the defense to provide the government copies of defense exhibits or provide government bates stamp numbers, so the government might identify the document to which the defendant referred. The defendant has not complied. Neither has the defendant supplied any reason for his failure to produce the exhibits. He has simply failed to produce the exhibits.

13. The following exhibits had not been provided to the government at the time of the final pretrial conference and the defendant has not yet provided the exhibits:

<u>Exhibit 31: 1/17/00 Ck 2293 to Parker</u>: The defendant has not provided this exhibit, but asserts that the " Government has check"

<u>Exhibit 85: 8/31/00 Nevis Am. Trust over Sultan</u>: The government noted that there was no document with the date 8/31/00 that might fit the description as provided by defense. The defendant has done nothing to clarify the confusion.

<u>Exhibit 87: 9/13/00 Nevis Private Annuity ltr. "legal"</u>: The exhibit was not provided and remains missing.

<u>Exhibit 94: How to Protect your money offshore</u>: The government has not been provided a copy of this book.

<u>Exhibit 95: Asset Protection Secrets</u>: The government has not been provided a copy of this book.

<u>Exhibit 99: Vallone ltrs</u>: The government noted only one letter at the final pretrial conference and has been provided no other letters.

14.  The government has received another discovery request from the defense. This additional request is:

> . . .a C.D. of 371 Ed Bartoli statements and documents, which I believe has been identified as "Bartoli's overt acts," and which I believe is highly relevant and important to Mr. Patridge's defense. Please provide a copy of the C.D.

15.  The government is unable to comply with the defendant's request. As the Court heard from the discussion that took place in Court on May 27, 2005, the documents seized in the Aegis search have been maintained in a computer base. If the defendant desires the documents, he should somehow describe the documents. If the documents are highly relevant to the defendant's case, he can, no doubt do that.

16.  From the defendant's description of the "Bartoli overt acts," it would appear that the defendant is searching for documents that Bartoli, who is charged with crimes substantially different from those with which the defendant is charged, thinks might be helpful to the defendant's case. In fact, it sounds like the defendant has little idea the nature of the documents he seeks. Further, the defendant had several chances to request Aegis-related documents in the past.

17.  On August 11, 2005, the government provided certain documents found in the Aegis search to the defense and offered:

> The documents enclosed are the ones the government believes might be relevant to charges against your client. The government is willing to provide a disk of other documents seized in the Aegis search.

Again on September 27, 2004, the government offered:

> If there is a specific item which you want to review, but which is apparently unavailable, contact me, I may be able to direct you to it.

18. The defense never requested other Aegis documents and therefore, the government provided those documents which it believed might be relevant. Clearly, the defense could have reviewed far more than the government provided, but the defense waited until the final pretrial conference to assert that the defense sought additional documents from the Aegis search.

19. Current defense counsel complained about failing to obtain all discovery from previous counsel. (R.72) The government has inquired of previous defense counsel, Carol Dison, the first attorney to enter an appearance in the case, how she handled documents provided by the government. Dison indicated that she directed her office to copy everything, including the government's discovery letters and to provide a copy to both the defendant and to co-counsel Michael Minns, when he entered an appearance in the case. The defense attorney has never explained what efforts he made to obtain discovery from previous defense counsel, but it appears that to obtain full discovery, he need only have turned to his client. Certainly, he could have contacted Dison, as she had carefully provided discovery to both her client and to co-counsel.

20. The defendant never indicated to the government that he required assistance, despite the government's offer on March 21, 2005:

> Feel free to contact me if you believe there is something the government provided which you do not have. I enclose the first government discovery letter, but I believe you also have all items listed, as I recall that we went over the list when you came to the United States Attorney's Office.

The government was agreeable and helpful throughout and the defendant need not have waited until the last minute to obtain what he now suddenly believes are extremely important documents.

21. Defense attorney Barringer seeks enforcement of the discovery letter written by counsel Dison on behalf of the defendant. However, he does not believe he is responsible for knowledge of any of the discovery provided by the government

pursuant to that letter and prior to his entry of appearance.  He is ready to name documents which, according to him, the government has failed to provide, but he insists he has no knowledge and no reason to know what documents the government offered to the defense.  In fact, the government was very helpful to defense, and had Barringer inquired, he could have previous discovery letters, the government would certainly have provided them.

22.  Should the defendant seek additional time to review documents the government provided this week, the request should be denied.  The defendant could have had all documents now in his possession months ago.

23.  With respect to the "Bartoli disk," the fact remains that an item in the first category of federal rule of criminal procedure governing the discovery of documents and tangible objects need not be disclosed unless the defendant demonstrates that it is material to the preparation of his defense.  Fed. R. Crim. Pro. 16(a)(1)(C), *United States v. Jordan*, 316 F.3d 1215, 1250; United States v. Buckley, 586 F.2d 498, 506 (5th Cir. 1978) (The defendant must "show" "more than that the [item] bears some abstract logical relationship to the issues in the case. . .).  There must be some indication that the pretrial disclosure of the [item] would. . . enable [ ] the defendant significantly to alter the quantum of proof in his favor.")

WHEREFORE, the government requests that the Court strike all of the defendant's additional 22 video tapes; the government moves that the Court strike the two books the defendant has listed but not provided.  As to the other individual documents, if the government could simply see copies of the exhibits, there may be no further argument.

    Respectfully submitted,

    JAN PAUL MILLER
    United States Attorney


    s/Hilary W. Frooman
    HILARY W. FROOMAN
    Assistant United States Attorney
    United States Attorney
    201 S. Vine, Suite 226
    Urbana, Illinois 61802
    217/373-5875
    FAX: 217/373-5891
    hilary.frooman@usdoj.gov

    s/Lea Carlisle
    LEA CARLISLE, Trial Attorney
    U.S. Department of Justice, Tax Division

CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jerold Barringer, ,102 S. Pine, P.O. Box 213, Nokomis, IL 62075, jwbarringer@consolidated.net.

Respectfully submitted,

JAN PAUL MILLER
United States Attorney

 s/Hilary W. Frooman
HILARY W. FROOMAN
Assistant United States Attorney
United States Attorney
201 S. Vine, Suite 226
Urbana, Illinois 61802
217/373-5875
FAX: 217/373-5891
hilary.frooman@usdoj.gov