**E-FILED**
Sunday, 05 June, 2005  10:48:56 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No.   CR 04-20031

DENNY R. PATRIDGE

DEFENDANT'S MOTION IN LIMINE REGARDING GOVERNMENT'S
REPRESENTATIONS IN CASE IN CHIEF

The Defendant, Denny Patridge, by and through his attorney, Jerold

Barringer, files his Motion in Limine and hereby respectfully requests this Court

forbid and prohibit the Government from presenting at trial legal arguments and

theories of law which are in opposition to the Internal Revenue Code and which

invade the Court's role to insure that the jury is instructed properly according to

laws written by Congress.

In support of this Motion, the Defendant states the following:

***POINTS AND AUTHORITIES***

1.    **A TRUST IS A PERSON AND IS A TAXPAYER THAT CAN OWN A
      BUSINESS AND BE HELD LIABLE FOR TAXES ON INCOME
      THAT IT EARNS.**

1

The Indictment in this case alleges that the IRS sent tax bills to Denny Patridge separately from tax bills sent to Patridge Asset Management Trust. The Indictment alleges that both the Defendant and Patridge Asset Management Trust owed the IRS money around June, 2000.

The Government's case in chief revolves around the theory that a "Trust" cannot own a business doing commerce nor can a business doing commerce be owned by a Trust. Its case also hinges upon advice given to the Defendant through Aegis in Chicago, Dennis Larson, Attorneys Parker and Rivera, J K Harris and Company who advertise the employment of many former IRS Agents, as well as the advice of Brent Winters and Arnold Goldstien   It is believed that the Government is intending to present evidence at trial through employees of the IRS that the IRS has a policy that any 1041 filed representing information regarding income earned by a Trust is completely disregarded by the IRS. In testimony given in 2000, the IRS Agent listed by the Government to testify as a "specialist" regarding "Trusts" testified that "there are only two forms of business entities. That is a corporation and the other is a personal or sole proprietorship." And that these are the "only two categories that a business entity can be." *See June 1, 2005 "received" dated December 4, 2000, page 1938 and 1939* trial testimony. The

Agent is expected to testify that the IRS does not even allow "Trusts" to be held

liable for income taxes.

26 U.S.C. § 7701 is entitled the "definition" section which begins (a) "when

used in this title, where not otherwise distinctly expressed or manifestly

incompatible with the intent thereof" which goes on to define "(1) person":

> "The term 'person' shall be construed to mean and include an individual, ***a trust***, estate, partnership, association, company or corporation." (Emphasis added).

The testimony of the "specialist" in 2000, who is expected to say the same

thing in this case, would completely contradict section 7701(a)(1) and would be an

inaccurate reading of the Internal Revenue Code.    The specialist testified that the

"check the box" regulation is under section 7701.

"If the regulation is a reasonable reading of the statute, we give deference to

the agency's interpretation. Our authority at this second step of the analysis is

therefore limited. It is not our role to determine the most appropriate interpretation

of the statute, but simply to assess whether the regulation reflects a reasonable

construction." Chevron, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11 (collecting

cases). For "Congress has delegated to the Commissioner, not to the courts, the

task of prescribing `all needful rules and regulations for the enforcement' of the Internal Revenue Code." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 449-50 (1967), quoting 26 U.S.C. § 7805(a). *Kikalos v. C.I.R.*, 190 F.3d 791, 796 (7th Cir. 1999)

There is no question that any regulation which directs the IRS to disregard a Trust as an owner of a business would not be a "reasonable construction" of 26 U.S.C. § 7701(a)(1).   Any testimony which claims that regulations under section 7701 do not recognize a "Trust" as a legitimate owner of a business would completely ignore the fact that Congress recognizes a "Trust" as a person.    This would mean that "persons" can not own a business if that person was "a trust." Allowing the Government to present testimony before the Jury based upon the IRS's regulations which completely and undeniably ignore 26 U.S.C. § 7701(a)(1) would render a violation by the Government of this Court's province to be the sole controlling authority as to what the law says, or is, and would actually prejudice the Defendant and his reliance defense.

There is no question that by looking at 26 U.S.C. § 7701(a)(14), this Court would also be directing the Jury that the term "taxpayer" is defined as "'***any***' person subject to any internal revenue tax."   As the theory of the indictment goes and as the evidence clearly shows, the IRS treated Patridge Asset Management

Trust as a taxpayer subject to internal revenue income taxes.   Notice of

Deficiencies were issued to this Trust on January 27, 2000.    Both Mr. Parker and

J.K. Harris were hired to defend the Trust liability as well as the deficiency

claimed owed against the Defendant.    The IRS sent notice of levies and notice of

liens against the Trust.   All of this suggests that a Trust is a Taxpayer which is a

person under section 26 U.S.C. § 7701.

"Section 7701(a)(14), defining 'taxpayer,' informs us that '[w]hen used in

[the Internal Revenue Code], where not otherwise distinctly expressed or

manifestly incompatible with the intent thereof, . . . [t]he term `taxpayer' means

any person subject to any internal revenue tax.'  That definition does not exclude

Williams.  The Government reads the definition as if it said 'any person who is

assessed any internal revenue tax,' but these are not Congress' words. The general

phrase 'subject to' is broader than the specific phrase 'assessed' and, in the tax

collection context before us, we think it is broad enough to include Williams.  In

placing a lien on her home and then accepting her tax payment under protest, the

Government surely subjected Williams to a tax, even though she was not the

assessed party.  *U.S. v. Williams*, 514 U.S. 527, 535 (*1995)Adler & Drobny, LTD.*

*v. U.S.*, 9 F.3d 627 (7th Cir. 1993)( [fn10] Under I.R.C. § 7701(a)(1), the term

"person" includes a partnership)

In the Williams case, Mrs. Williams was not assessed.  She was still considered a taxpayer and a person.   In this case, Patridge Asset Management Trust was assessed and that assessment is at the heart of the Government's case in chief as well as the reliance defense of the Defendant.  Patridge Asset Management Trust is a person, was subjected to taxes and as such, any testimony in front of the jury that a person is not a trust or that the IRS does not recognize a Trust as a person which can own a business would be in direct contradiction to the laws written by Congress and to the acts the IRS took prior to the indictment in this case.

For these reasons, the Defendant asks the Court to prohibit the Government from asking any questions of any witnesses or otherwise presenting any evidence that would suggest to the Jury that a trust is not a person or can not own a business as a legitimate business owner as a person under 26 U.S.C. § 7701(a)(1) and (14).

**2.    THE GOVERNMENT SHOULD BE PROHIBITED FROM USING OR UTTERING THE FOLLOWING WORDS, PHRASES AND TERMS BEFORE THE JURY**.

It is expected, based upon the voluminous documents and evidence in this case that the Government is intending to use certain words, phrases and terms to attempt to describe acts of the Defendants and others regarding their case in chief. These words appear in documents but have no ascertainable meaning for the jury

to understand yet it is expected they are to be used before the Jury and should not be allowed.

### A.  Sham

The term "sham" is expected to be used in conjunction with testimony to describe what kind of "trusts" were connected to the Defendant.  The Internal Revenue Code does not mention the term "sham" to describe the type of Trusts that are not acceptable.   In fact, it would not matter what kind of Trust was being used under the Government's theory that all Trusts are not recognized by IRS policy.   Simply stated, this would be contrary to the Internal Revenue Code as the term "Trust" is utilized by Congress at section 7701(a)(1) to describe the term "person."   There are no "sham" persons identified in the Internal Revenue Code.

### B.  Tax Protestor

The term "tax protestor" is forbidden from being uttered by the United States under the Internal Revenue Code and such a term has a prejudicial intent behind it with no legal meaning.   In fact, tax protesting is every person's right yet it is thought that the Government intends to use the term to describe the Defendant in a bad light and not as a right.

### C.  No economic substance

The phrase "no economic substance" should be forbidden from being uttered by any person testifying on behalf of the Government to describe anything to do with a Trust.   The phrase has no meaning in law and is nothing more than ad hoc attack on the word Trust which is already established according to section 7701(a)(1) to describe what the Internal Revenue Code defines as a person.

### D.   Sold Trusts for Aegis

It is expected the Government is going to offer testimony that the Defendant sold Trusts for Aegis.   Though it is undisputed the Defendant referred one person to Aegis who purchased Trusts from Aegis, there is no direct evidence that the Defendant "sold" Trusts for Aegis.   To insinuate the Defendant sold Trusts like he sold life insurance, tax deferred annuities or other products where the purchaser gave the money to the Defendant, versus the one referral which the purchaser gave the money to Aegis would be prejudicial to the Defendant as he never "sold" the Aegis program to any person.   The Defendant would not object to being referred to as having made a referral to Aegis whereby Aegis offered to sell trusts to the one individual.

### E.   Taxes owed for 1996 and 1997 is 40k

It is expected the Government is going to offer testimony that the Defendant

owed taxes for the year 1996 and 1997 involving Count Two.   Count Two's

theory regards the "affirmative acts" to have began in June/July, 2000 and not on

April 15, 1997 and April 15, 1998.   It is expected the Government is intending to

argue that the Defendant owed taxes in 1997 and 1998 and not after June/July of

2000.   It is also expected the Government is going to offer a summary witness

that will testify the Defendant owed around 40k for both years.   There is no

evidence that the Defendant was ever put on notice by the IRS or any of his

representatives after June/July 2000, during the allege evasion of payment in

Count Two, that Defendant was ever made aware of the amount owed being

$40,000.

In fact, Count Two alleges the Defendant was evading the payment of the

taxes claimed owed by the IRS in their Notice of Deficiencies and Notice of

Levies.   This amount was over 270,000.  The original theory behind the

Government's case was that the Defendant placed a lien on his house of 100,000

and wired money of 200,000 to evade the payment of the 270,000.   At no time

was the claim by the Government that the Defendant wired 200,000 and placed a

lien on his home of 100,000 to evade the payment of 40,000.   The Government

should be prohibited from introducing any evidence concerning Count Two's

evasion-of-payment-of- taxes-owed theory other than the amounts the IRS claimed

the Defendant owed in 2000.

F.   According to the law or according to the Internal Revenue Code

It is expected the Government will introduce or claim the Defendant failed

to pay the taxes he owed to the IRS as claimed by the Notice of Deficiencies and

Notice of Levies.   It is also claimed by the Government that Defendant owed

these monies in 1997 and 1998.    In explaining this theory to the Jury the

Government should be prohibited from asking any questions of any witness or

making any statements which include the vague and ambiguous phrase "according

to the tax laws" or "according to the Internal Revenue Code."   The Government

should only be allowed to reference the law or code with the specific sections of

the law or code to which they claim supports their theory when introducing that

part of their case in chief.    Though the Court is the sole source of the law for the

Jury, Count Two hinges on one interpretation of the law or code verses another.

Count Two involves how certain income was reported to the IRS, not that income

was not reported.   Count Two involves how deductions were taken, not that the

IRS wasn't informed through a series of communications reporting income earned

by certain persons including Trusts.   This case involves how the Defendant relied

upon others and not omissions.

Willfulness has three elements.    The Government must prove there was a duty to report the income differently than the Defendant, through counsel or representatives reported it, that the Defendant was aware of the duty to do it differently than he was instructed and counseled, and that he did the reporting contrary to the law voluntarily and intentionally.    The good faith of relying upon others in the professional business of tax reporting and strategy can only be shown if specific sections read as written, presented with others, can be explained.    Since the Defendant has no burden of proof and that burden rests with the Government, they should be prohibited from referencing the theory they advance that explains the evasion of payment as "according to the tax laws" or "according to the Internal Revenue Code."

Respectfully Submitted

/s/ Jerold Barringer
Jerold Barringer
Attorney at Law
Bar # 06185092
P.O. Box 213
Nokomis Illinois 62075
jwbarringer@consolidated.net
217-563-2646 (fax also)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of Defendant's Motion

in Limine has been electronically emailed on June 5, 2005 through the Court's

Electronic Notification System to:


Hilary W. Frooman
hilary.frooman@usdoj.gov
U.S. Assistant Attorney
201 South Vine
Urbana, Illinois 61801
217-373-5875


/s/ Jerold Barringer