E-FILED
Wednesday, 15 June, 2005  03:22:03 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CR04-20031 |
| DENNY R. PATRIDGE, | ) |
| Defendant. | ) |

### UNITED STATES' MOTION IN LIMINE REGARDING DEFENSE WITNESSES AND FIFTH AMENDMENT PRIVILEGE

The United States of America by its attorneys, Jan Paul Miller, United States Attorney, Central District of Illinois, Hilary W. Frooman, Assistant United States Attorney for the Central District of Illinois, and Lea A. Carlisle, Trial Attorney for the Department of Justice, Tax Division, files the within Motion *In Limine* and hereby respectfully notifies the Court of proper procedure to protect witnesses and all parties if a defense witness might refuse to testify and assert his Fifth Amendment privilege. The government has filed a related Notice UNDER SEAL, because it addresses issues to which defense counsel, defendant, and the public should not be privy unless this Court so rules. Therefore, the related Notice should be reviewed *in camera, ex parte*, unless the Court deems it otherwise.

In support of its position, the United States offers the following points and authorities.

### POINTS AND AUTHORITIES

I.   THE INDICTMENT

In brief sum, the indictment is based upon facts discovered in an investigation which revealed the following actions taken by the defendant: The defendant established entities he termed "trusts." The defendant filed tax returns for 1996, 1997 and 1998 which purported to distribute income earned by the defendant to the "trust"

entities. Funds the defendant earned were ultimately placed under the name of a "trust" in an account in Antigua; no taxes were paid on these funds. The defendant committed additional tax crimes which are included in the indictment but not pertinent to this discussion.

Defendant purchased these "trusts" from a company known as Aegis. Six individuals associated with the Aegis company and sale of these fraudulent "trusts" were indicted on April 8, 2004 in the Northern District of Illinois and are currently awaiting trial in cause number 1:04-cr-00372. Four of these indicted individuals, Edward B. Bartoli, David E. Parker, Michael Vallone, and Robert Hopper, appear upon defendant's witness list.

Mr. Bartoli has been subpoenaed by the defense to appear and testify, as well as to produce documents, on behalf of the defendant. On May 23, 2005, Mr. Bartoli filed a Motion for Appointment of Federal Defender, 2:05-mj-07221-DG, with this Court in regards to defendant's subpoena. Mr. Bartoli's Motion clearly states that he intends to assert his Fifth Amendment right against self-incrimination if called to testify. Due to the related criminal case against him, the government asserts that Mr. Bartoli has a valid Fifth Amendment privilege against self-incrimination in the current matter.

Pursuant to information learned during the hearing on June 6, 2005, the government understands that the defendant has subpoenaed Mr. Parker, who has also expressed an intention to assert his Fifth Amendment privilege. The government has no knowledge as to whether Mr. Vallone has been subpoenaed, but learned at the hearing on June 7, 2005 that Mr. Hopper has been subpoenaed by the defense and wishes to file a motion to quash the subpoena, which makes the government believe that Mr. Hopper will assert the Fifth Amendment privilege, if called. Due to their indictment and the pending status of their trial, the government believes that Mr. Parker, Mr. Vallone, and Mr. Hopper all have valid Fifth Amendment privileges against self-incrimination in the current matter, and that Mr. Vallone will also assert the Fifth Amendment privilege if called upon to testify.

II.    <u>A CLOSED PRE-TRIAL HEARING SHOULD BE HELD DURING WHICH THE COURT SHOULD DETERMINE WHETHER DEFENSE WITNESSES WILL ASSERT THE FIFTH AMENDMENT WHEN CALLED TO TESTIFY</u>

As the Court clearly and succinctly set forth in the hearing June 6, 2005, witnesses who claim the Fifth Amendment privilege against self-incrimination do so outside the presence of the jury. *United States v. Harris*, 542 F.2d 1283, 1298 (7th Cir. 1976); *United States v. Taylor,* 154 F.3d 675, 684 (7th Cir. 1998) ("[T]he jury may not properly draw any inference from a person's exercise of her Fifth Amendment right against self-incrimination."); *U.S. v. Martin*, 526 F.2d 485, 486-97 (10th Cir. 1975).

When the basis for assertion of a claim of privilege is contested, the trial court may examine the witness to determine if the claim of privilege against self-incrimination is valid. While "[t]he privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime," the protection afforded by the Fifth Amendment "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (citation omitted). "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself--his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified and to require him to answer if it clearly appears to the court that he is mistaken." *Id*. However, "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question

or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" *Id*. at 486-87.

Yet, in determining whether a claim of privilege is valid, a hearing is not always necessary. *See Martin*, 526 F.2d at 487; *Harris*, 542 F.2d at 1298. It appears that in the majority of these cases, as it should be in this matter as well, validity of the privilege is not an issue.

In addition, the fact that Mr. Bartoli may not be able to appear due to his counsel's representations of medically-restricted travel should not be a basis for any delay in the trial, particularly because Mr. Bartoli has represented that he will assert his Fifth Amendment rights if called to testify.

The government strongly believes that none of the defendants' witnesses who wish to assert the Fifth Amendment privilege possess information that is unprivileged and relevant. However, the government anticipates the defense argument that because the witnesses who raise the Fifth Amendment privilege have both privileged and non-privileged relevant information, they should not be precluded from testifying merely because they intend to assert their Fifth Amendment privilege. Yet, other than simple preliminary testimony as to their backgrounds, any facet of their relationship with the defendant related to Heritage, Aegis, tax law, or trusts provides evidence which could be used to implicate them in federal tax crimes. Essentially, any other testimony, such as a family friendship or opinion of the defendant's character, is either irrelevant or

opens the witness to cross-examination of his knowledge about defendant's use of fraudulent trusts, which then logically leads to the witness' own knowledge of and experience with methods to violate the federal tax laws, and arguably implicates the witness' Fifth Amendment privilege against self-incrimination.

In *Brown v. United States*, 356 U.S. 148, 154 (1958), the Supreme Court held that when a witness voluntarily takes the stand, "his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination." Where a defense witness has the opportunity to assert his Fifth Amendment privilege and not testify, but instead agrees to testify and attempts to use carefully worded questions posed by the defense as stepping stones over areas which may incriminate him, the government believes he has certainly volunteered to put himself in the situation of being cross-examined. Thus, the proper focus should not be upon the witness' "privilege against self-incrimination, but upon the scope of relevant inquiry on cross-examination as defined by the matters raised by defense counsel on direct examination." *United States v. Hearst*, 412 F.Supp. 885, 887 (N.D. Cal. 1976). *See also Brown*, 356 U.S. at 157.

The government respectfully suggests the following guideline for defense witnesses who might take the Fifth Amendment:

A. If the witness possesses only privileged relevant information and intends to assert his Fifth Amendment privilege, then, as described above, the witness should not be allowed to testify. *United States v. Harris*, 542 F.2d 1283, 1298 (7th Cir. 1976); *United*

*States v. Taylor*, 154 F.3d 675, 684 (7th Cir. 1998).

      B. If a witness possesses privileged relevant information and does not intend to assert his Fifth Amendment privilege, the Court should make clear that if he begins to testify but is asked a question where he wishes to assert the Fifth and does so, his entire testimony will be stricken. *United States v. Silverstein*, 732 F.2d 1338, 1345 (7th Cir. 1984).

      C. If a witness willingly testifies and indicates he will assert his Fifth Amendment privilege against self-incrimination with regard to some questions, but intends to answer other questions, the trial court should determine, outside the presence of the jury, whether the witness possesses non-privileged relevant information. *See Taylor*, 154 F.3d at 685. If the trial court determines that the witness has both privileged and unprivileged relevant information, the court should determine what subjects will cause the witness to invoke the Fifth Amendment privilege and instruct counsel to avoid those questions during examination of the witness.[1] However,

---

[1] In *Taylor*, the trial court examined the defense witness who had both privileged and unprivileged information to determine what areas would cause her to invoke her Fifth Amendment privilege against self-incrimination. Although the court instructed counsel not to ask questions relating to those areas before the jury, the court allowed the defendant "to explore areas involving non-privileged information." *Id*. at 684. When defense counsel strayed into areas that would cause the witness to assert the privilege, the prosecution objected and was sustained. *Id*. The Seventh Circuit praised the trial court's handling of this difficult situation with the following:

> The Sixth Amendment grants the defendant the right to compel a witness' testimony, but that right is not unlimited and does not extend to testimony that is 'incompetent, privileged or otherwise inadmissible under standard rules of evidence.' Although restrictions on questioning are not an ideal solution, it is difficult to think of any approach that would

if the Court determines the witness has only privileged relevant information about which he intends to assert the Fifth Amendment privilege, the witness should be precluded from testifying before the jury.

---

    be better under these circumstances. The judge correctly did not attempt to bar the witness altogether, as is appropriate when the witness will invoke the privilege as to any question put to her. The court instead attempted to limit the questions to non-privileged areas, while preventing the jury from hearing the invocation of the Fifth Amendment privilege and drawing any inferences therefrom.

*Id.* (citations omitted).

## CONCLUSION

The government respectfully requests this Court to conduct inquiry of any defense witness, who intends to assert the Fifth Amendment, outside the presence of the jury in order to preclude such assertion from occurring in the presence of the jury. In addition, the government respectfully requests that this Court preclude defense witnesses from utilizing the Fifth Amendment to obstruct the government's cross-examination.

Respectfully submitted,

JAN PAUL MILLER
United States Attorney

s/ Hilary W. Frooman
HILARY W. FROOMAN
Assistant United States Attorney
United States Attorney
201 S. Vine, Suite 226
Urbana, Illinois 61802
217/373-5875
FAX: 217/373-5891
hilary.frooman@usdoj.gov

s/Lea A. Carlisle
LEA A. CARLISLE, TX Bar# 24031793
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 972
Washington, DC 20044
202/514-5762
FAX: 202/514-9623
lea.a.carlisle@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2005, I electronically filed the foregoing United States' Motion *in Limine* Regarding Defense Witnesses and Fifth Amendment Privilege without the sealed related Notice provided to the Court for *in camera ex parte* review, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jerold Barringer, P.O. Box 213, Nokomis, IL 62705, jwbarringer@consolidated.net.

                                                s/ Hilary W. Frooman  
                                                HILARY W. FROOMAN  
                                                Assistant United States Attorney  
                                                United States Attorney  
                                                201 S. Vine, Suite 226  
                                                Urbana, Illinois 61802  
                                                217/373-5875  
                                                FAX: 217/373-5891  
                                                hilary.frooman@usdoj.gov