**E-FILED**
Saturday, 18 June, 2005  11:57:35 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA,

v.                                         Case No.   CR 04-20031

DENNY R. PATRIDGE

DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S
MOTION IN LIMINE REGARDING DEFENSE WITNESSES
AND FIFTH AMENDMENT PRIVILEGE

Defendant, by and through his attorney Jerold Barringer, files his response

to the Government's Motion in Limine with respect to the potential Fifth

Amendment Privilege claims the Government claims may be made by certain

defense witnesses.

In support of this opposition to the Government's questionable claims the

Defendant would state the following.

BACKGROUND

The Government claims that the indictment against the Defendant is based

1

upon "facts discovered in an investigation[1]" which revealed to the investigators:

    A.   The defendant established entities he termed "trusts."[2] [3]

    B.   The defendant filed tax returns for 1996, 1997 and 1998 which purported to distribute income earned by the defendant[4] to the "trusts" entities.[5]

    C.   Funds the defendant earned were ultimately placed under the name of a

---

[1]  Which the Defendant claims and the evidence thus far at trial has proven (with more to come) beyond any doubt that the Criminal Division, at the Direction of District Counsel in Chicago (and evidence from other Agents will show the U.S. Attorney's Office in Springfield or Urbana was jointly involved in the task of imposing the "whipsaw" tax), was conducting a criminal investigation of the Defendant using Civil Revenue Agents of the IRS even as far back as 1996 (note from Agent Coleman to Agent Pogue).

[2]  At the trial of this indictment thus far the Court and Jury have learned that it was the single response to a single letter dated June 4, 1999 that triggered the determination by the investigating Revenue Agents Miller, Helfer and Bergschneider, that the "Trusts" the Defendant purchased from Aegis were "abusive" Trusts.   At no time has anyone established the Trusts purchased from Aegis were not Trusts.

[3]  By direct evidence presented by the Government Aegis and Bartoli created the Trusts and not the Defendant.

[4]  Though the Government claims the income paid by third parties, as reported on 1099's copied both to the IRS and the Defendant, was "income earned" by the defendant, at all times the income earned by the Trusts was reported under the correct Trust Identification Number assigned to the Trust by the IRS and Aegis to the Internal Revenue Service as the law requires.

[5]  By direct evidence presented by the Government the K-1s did report distribution to an off shore Trust the Defendant purchased from Aegis.

"trust in an account in Antigua; no taxes were paid" on these funds. [6]

D.   The defendant committed additional tax crimes which are included in the indictment but not pertinent to this discussion.[78]

The Government claims the "trusts" sold by the "Six individuals"

(hereinafter referred to as the "*Chicago Six*") associated with Aegis were

"fraudulent" trusts.[9]   The Government claims that four of those associates of

---

[6]   The Government claims in theory through Former Agent Phillips testimony that sections 641 through 682, which actually is section 641 through 685 of the Internal Revenue Code, subjects the income distributed to the Foreign Trust from "Antigua" to the whipsaw tax presented by Agent Miller, Boyd and Bergschnieder in their joint approved Notice of Deficiencies issued on January 27, 2005 to both Patridge Asset Management Trust and Denny and Judy Patridge Individually.  .

[7]   Section 7206 begins (**Count One**) Any person who....(1) willfully makes...any return...which is verified by a written declaration that it is made under the penalty of perjury, and which he does not believe to be true and correct as to every material matter... Section 7201 begins  "Any person who willfully attempts in any manner to evade or defeat any tax imposed (**Count Three**) by this title or the payment thereof (**Count Two**)..."

[8]   Defendant does not understand the phrase "additional crimes which are included in the indictment but not pertinent to this discussion" where the first three claims deal with false tax return (form 1040) (**Count One**), evasion of the payment of the whipsaw taxes due and owing (**Count Two**) and evasion of the taxes imposed by Title 26 on income by not filing a return (**Count Three**).

[9]Under its theory at trial the Government has only proved the IRS identified the Trusts were "abusive" but not fraudulent.   Abusive was a term assigned by Agent Miller (he testified) when he received the first letter from the Defendant on June 18, 1999, which he stated he was threatened by.

Aegis who were indicted on April 8, 2004[10] within the Northern District of Illinois in case number 1:04-cr-00372 are appearing on the witness list of the Defendant.[11]

## BARTOLI

The Government claims that he has a "valid" fifth amendment claim "due to the related criminal case" against him.

## PARKER

The Government claims they learned information at the June 6, 2005 hearing that "Mr. Parker has also expressed an intention to assert his Fifth Amendment" privilege.

## VALONE

The Government has no idea whether Mr. Valone intends to claim the Fifth Amendment but asserts he will so assert his privilege.

## HOPPER

The Government argues that Mr. Hopper has informed this Court that he intends to claim the Fifth Amendment if called to testify.

―――――――――――

[10] Defendant was notified on May 17, 2004, after a letter written to the DOJ in March 2003 asking for disposition of the investigation of the Defendant, by the DOJ recommending him for prosecution.

[11] The Government has known this for three months or more and during the middle of trial, while the actual attorneys are in trial, somehow electronically filed the motion for leave to file the motion herein being opposed.

4

The heart of the Government's claim[12] is that "due to the pending status of their trial, the government believes that Mr. Parker, Mr. Valone, and Mr. Hopper all have valid Fifth Amendment privileges against self-incrimination in the current matter and if called to testify will so assert the privilege.

As a result of first having to disclose to the Government, well in advance of trial the specific defense the Defendant was to assert to the ever-changing theories the prosecution advanced at different stages of this case, and more alarming the process of having to disclose in advance all evidence which the Defendant intended to enter in his own defense[13] prior to trial, now the Court is asking the Defendant to show why his Sixth Amendment right to call any and all witnesses in aid of his defense should override any rights four of the *Chicago Six* may have according to the Fifth Amendment.

Orally, this Court has asked the Defendant to specifically state the questions

---

[12]  How convenient to hold the criminal trial in the "related" case until after the outcome of the case against Defendant so the Government can control who testifies and what they say.   The Government's request is placing this Court in the position of having to determine which constitutional right should be preserved for one individual in order to allow the protection of different Constitutional right which may be claimed by another individual.

[13]  Defendant once again is having to put forth his case in plain view of the Government, despite the standard that Defendant does not have the burden of proof in this case and is innocent until prove beyond a reasonable doubt otherwise.

Counsel intends to ask of each of the potential fifth amendment claimers.

ARGUMENT AND AUTHORITY

Before this Court can view the questions the Defendant intends to ask, the Defendant believes this Court should review the indictment in Chicago regarding the Government's claim concerning four of the *Chicago Six's* fifth amendment rights.  It would make no sense for the Defendant to speculate as to what the possible assertions are and the Government's Motion in Limine does not specifically address the relevance between the case against the Defendant and the case against the *Chicago Six*.

The witnesses in the Chicago case are charged with numerous counts all of which would have no possible bearing upon testifying in the case herein, save for Count One.   In that Count Valone, Bartoli, Hopper and Parker, are charged with a conspiracy to defraud the United States by impeding the IRS in its lawful function in the ascertainment and collection of income taxes due and owing as well as conspiracy to violate 26 U.S.C. § 7206(2).  See attachment, marked *Exhibit A, Chicago Six @ page 3*

Count One claims the *Chicago Six* sold Trusts, foreign and domestic, directed that, *according to the law*, people such as the Defendant could substantially reduce taxes if instead of future prospective income being earned

6

directly to a specific person through a Social Security Number, the prospective

income was earned through a domestic trust which was owned by a foreign trust

all of which had required Federal Identification numbers pursuant to 26 U.S.C. §

6109.

Not long ago the Supreme Court, in deciding whether a kit of gun parts that

could be assembled into a "firearm" was a firearm for the purpose of the $200

firearm tax imposed under sections 5841 through 5845 of the Internal Revenue

Code for the "making" of the firearm, explained in a footnote the reasoning behind

their decision, in part, which was:

> "In our system, avoidance of a tax by remaining outside the ambit of
> the law that imposes it is every person's right. 'Over and over again,
> courts have said that there is nothing sinister in so arranging one's
> affairs as to keep taxes as low as possible. Everybody does so, rich or
> poor; and all do right, for nobody owes any public duty to pay more
> than the law demands: taxes are enforced exactions, not voluntary
> contributions. To demand more in the name of morals is mere cant.'"
> *Commissioner v. Newman*, 159 F.2d 848, 850-851 (CA2) (L. Hand,
> J., dissenting), cert. denied, 331 U.S. 859 (1947).

See *U.S. v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 (1992).   Though the

indictment of the *Chicago Six* clearly alleges a conspiracy to defraud by usage of

domestic and foreign trusts there is no way to divine what specific sections of the

code prohibited the alleged sale and promotion of the Aegis Trust Package, or for

that matter, the purchase and usage of the Aegis Trust Package.   Congress never

gave the power of determination to the I.R.S. of which fictitious-named entities were valid and which ones were not valid.

It is true the indictment of the *Chicago Six* claims some documents were back dated and others notarized without the person stated to be present being present, but there is no claim against the Defendant that involved any of those "back dated" documents.   There is no claim against the Defendant that any documents he relied upon were either back dated or that he knew were back dated.

A conspiracy to defraud under section 371 is nothing more than an alleged common law crime against the United States.  "Under 18 U.S.C. § 371, the conspiracy statute which is the basis for Count I, it is necessary to allege those three elements which are said to be the gist of the offense: the agreement, the unlawful object towards which the agreement is directed, and an overt act in furtherance of the conspiracy. "*U.S. v. Charnay*, 537 F.2d 341, 350 (9th Cir. 1976); quoting *United States v. Falcone*, 311 U.S. 205, 210, 61 S.Ct. 204, 206, 85 L.Ed. 128, 132 (1940); *United States v. Offutt*, 75 U.S.App.D.C. 344, 127 F.2d 336, 338 (1942)

18 U.S.C. § 371 clearly reads:

> "If two or more persons conspire either to commit any
> offense against the United States, or to defraud the

> United States, or any agency thereof in any manner or for
> any purpose, and one or more of such persons do any act
> to effect the object of the conspiracy, .....”

It goes on to say:

> “If, however, the offense, the commission of which is the
> object of the conspiracy, is a misdemeanor only, the
> punishment for such conspiracy shall not exceed the maximum
> punishment for such misdemeanor.”

"Section 371 is the descendent of and bears a strong resemblance to conspiracy laws that have been in the federal statute books since 1867. See Act of Mar. 2, 1867, ch. 169, § 30, 14 Stat. 484. Neither the "ambiguous statutory language" of the defraud clause, nor its "stingy" legislative history, *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 2753, 97 L.Ed.2d 90 (1987), provides guidance as to the scope of this 1867 statute. **It has been left to the courts in the interpretation of the statute and the application of it to the facts of particular cases, to define the crime**. *U.S. v. Minarik*, 875 F.2d 1186 (6th Cir. 1989)

In the leading case outlining the scope of the defraud clause, the Supreme Court held:

> To conspire to defraud the United States means primarily [1] to cheat
> the government out of property or money, but it also means [2] to
> interfere with or obstruct one of its lawful governmental functions by

9

deceit, craft, or trickery, or at least by means that are dishonest.

*Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924).

Because the reach of the defraud clause is unclear, the *Hammerschmid*t principle should be, and has been, strictly applied: "ambiguity concerning the ambit" of the defraud clause "should be resolved in favor of lenity." *Tanner v. United States*, 107 S.Ct. at 2753. <u>A charge of conspiracy to defraud will not lie where there is no positive obstruction of a governmental program</u>. *United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979).   "A criminal statute, after if not before it is judicially construed, should have a discernible meaning." *Tanner*, 107 S.Ct. at 2753.

In *Tanner*, as well as in other recent Supreme Court opinions, see, e.g., *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (a criminal fraud statute should not be construed "in a manner that leaves its outer boundaries ambiguous"), the Court warned against loose interpretations of criminal fraud statutes which allow the fact situation to define the crime. The problem is particularly acute under the "defraud" clause of § 371 because *Hammerschmidt* stripped the word "defraud" of its common law roots limiting it to

purposeful misrepresentation and broadened it to include "interference" with "lawful government functions . . . at least by means that are dishonest."

Simply put, the allegation the *Chicago Six* entered into an agreement of telling people they could avoid taxes does not expand a possible allegation of conspiracy to commit a specific offense into the broad category of conspiracy to defraud.  Nothing else was alleged to be the object in the Chicago indictment.

An indictment charging "defraud" the United States must allege "depriving it of its lawful governmental functions by dishonest means." *Glasser*, 315 U.S. @ 66   There are, however, "numerous statutes expressly making intent to defraud an element of a specified offense against the revenue laws" *U.S. v. Scharton*, 285 U.S. 518, 521 (1932)  Under these, an indictment failing to aver that intent would be defective. *Id*.

But in *Hammerschmidt* the Supreme Court held that "the Criminal Code denouncing conspiracy 'to defraud the United States in any manner or for any purpose' did not condemn a conspiracy to defeat the selective draft by inducing persons to refuse to register." *Fasulo v. U.S.*, 272 U.S. 620, 627 (1926)

"It is there said that the decision in *Horman v. United States* went to the verge; that since that decision §5480 had been amended to make it's scope clearer; and that its construction in that case could not be used as authority to include

11

within the legal definition of a conspiracy to defraud the United States a mere

**open defiance of the governmental purpose to enforce a law**." *Fasulo*, @ 627

An indictment must "...show, within the meaning of §35 of the Penal Code, either

the purpose of obtaining the approval of a 'claim upon or against' the United

States and the Treasury Department, or the purpose and intent of 'defrauding'

them." *U.S. v. Cohn*, 270 U.S. 339,347 (1926)

Although section 371 is broadly construed, "[i]t is fundamental that a

conviction for conspiracy under 18 U.S.C. §(s) 371 cannot be sustained unless

there is 'proof of an agreement to commit an offense against the United States.'"

*Ingram v. United States*, 360 U.S. 672, 677-78, 79 S.Ct. 1314, 3 L.Ed.2d 1503

(1959).

The issue in *U.S. v. Minarik*, 875 F.2d 1186 (6th Cir. 1989) was found

complicated by the ***"failure of the Government to charge a conspiracy to commit***

***the statutory offense directly relevant to the alleged conduct - a conspiracy to***

***violate § 7206(4) of the Internal Revenue Code***, quoted in the introduction."  Id.

@ 1194  *Minarik* was concerned with "whether the indictment adequately notified

defendants of the charges against them, thereby prejudicing defendants' ability to

prepare for trial.  **The government changed its theory of the case throughout the**

**proceeding**. This Court found that the prosecution used the defraud clause in a

12

way that caused "great confusion about the conduct claimed to be illegal." Id. at 1196. *Minarik* states that ***"prosecutors and courts are required to determine and acknowledge exactly what the alleged crime is. They may not allow the facts to define the crime through hindsight after the case is over*." Id.

*Minarik* held that conspiracy to commit an offense against the United States and conspiracy to defraud the United States under section 371 are two separate crimes and the government must allege and prove violation of one clause or the other. Specifically, *Minarik* held that a defendant must be charged with a conspiracy to commit an offense against the government and not a conspiracy to defraud if there is a specific statute describing the conduct involved in the alleged conspiracy. 875 F.2d at 1193-94.

On page 3 of the Chicago Indictment the Government alleges that Count One claims the *Chicago Six* conspired to "defraud the United States" by impeding the IRS function in the collection of taxes as well as they conspired to violate 26 U.S.C. § 7206(2).

Section 7206(2) specifically prohibits:

"any person from willfully aiding and assisting in or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, or a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud

is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document;"

In *Minarik*, the indictment "did not make clear what function of the Treasury Department the defendants were impeding and the ***government changed its theory of the case throughout the indictment process and trial.***" *U.S. v. Kraig*, 99 F.3d 1361 (6th cir. 1996).

Congress uses the term "fraud" to not allow channels of interstate commerce to be "instruments of crime." *McNally v. U.S.*, 483 U.S. 350, 365 (1987) In our constitutional system, "federal crimes are defined by statute rather than by common law." *United States v. Hudson*, 7 Cranch 32, 34 (1812).

It is interesting to point out in *U.S. v. Caldwell*, 989 F.2d 1056, 1059-1060 (9th Cir. 1993)*, the government tried to broaden their reach with section 371 and yet were unsuccessful:

> [5] Yet the government proposes an even broader reading of section 371, one that eliminates element (3) altogether. **It contends any conspiracy to obstruct a government function is illegal**, Gov't Brief at 15▲16, even if the obstruction is not done deceitfully or dishonestly. Under this reading, the government argues, people have a duty "not to conduct their business affairs in such a manner that the IRS would be impeded and impaired in its . . . collection of revenue." Gov't Brief at 16-17. Or, as government counsel candidly asserted at oral argument, "if what you're doing, legal or illegal, is intended to impede and impair the Internal Revenue Service, . . . that constitutes a crime under section 371."

[6] ***We think not***. The Supreme Court has made it clear that "defraud" is limited only to wrongs done "by deceit, craft or trickery, or at least by means that are dishonest." Hammerschmidt, 265 U.S. at 188, 44 S.Ct. at 512. *Obstructing government functions in other ways , for example, by violence, robbery or advocacy of illegal action , can't constitute "defrauding." Id.; see also United States v. Murphy, 809 F.2d 1427, 1431▴32 (9th Cir. 1987)* **(not disclosing something that one has no independent duty to disclose isn't conspiracy to defraud, even if it impedes the IRS).**

---

[7] And surely this is the sensible reading of section 371. Under the government's theory, a husband who asks his wife to buy him a radar detector would be a felon ▴ punishable by up to five years in prison and a fine of $10,000 ▴ because their actions would obstruct the government function of catching speeders.  So would a person who witnesses a crime and suggests to another witness (with no hint of threat) that they not tell the police anything unless specifically asked about it. So would the executives of a business that competes with a government▴run enterprise and lowers its prices to siphon off the government's customers. So would co▴owners of land who refuse to sell it for use as a military base, forcing the government to go to the extra trouble of condemning it. So would have Elliot Richardson and William Ruckelshaus, had they agreed with each other to quit if asked by President Nixon to fire Archibald Cox.

[8] The federal government does lots of things, more and more every year, and many things private parties do can get in the government's way. It can't be that each such action is automatically a felony. The government may, if it wants to, explicitly outlaw conduct it thinks unduly obstructs its functions; in fact, in 1987, it enacted a regulation, 31 C.F.R. § 103.37, prohibiting the very conduct at issue in this case. But we're unwilling to conclude Congress meant to make it a federal crime to do anything, even that which is otherwise permitted, with the goal of making the government's job more difficult.

*U.S. v. Caldwell*, 989 F.2d 1056, 1059-1060 (9th Cir. 1993)

But what the government actually did prove in the case against *Caldwell* was that she conspired to make the IRS's job harder.  The Ninth Circuit continued by saying that making the IRS's job harder "just isn't illegal".  The panel concluded in Caldwell, giving a civic lesson on laws, by stating:

> [13] There are places where, until recently, "everything which [was] not permitted [was] forbidden. . . . [W]hatever [was] permitted [was] mandatory. . . . Citizens were shackled in their actions by the universal passion for banning things." Yeltsin Addresses RSFSR Congress of People's Deputies, BBC Summary of World Broadcasts, Apr. 1, 1991, available in LEXIS, Nexis Library, OMNI file. Fortunately, the United States is not such a place, and we plan to keep it that way. If the government wants to forbid certain conduct, it may forbid it. If it wants to mandate it, it may mandate it. But we won't lightly infer that in enacting 18 U.S.C. §371 Congress meant to forbid all things that obstruct the government, or require citizens to do all those things that could make the government's job easier. *So long as they don't act dishonestly or deceitfully, and so long as they don't violate **some specific law**, people living in our society are still free to conduct their affairs any which way they please.*

[14] REVERSED.

*U.S. v. Caldwell*, 989 F.2d 1056, 1060 (9th Cir. 1993)

In arguing to this Court what the alleged crime against the *Chicago Six* really is, it clearly is not a crime to direct, for sale or otherwise, any person to do what the law either does not prohibit or to which the law allows.  Defendant will agree that conspiring to direct others to file false statements or fraudulent statements could

16

comprise the offense, as the object of the conspiracy, alleged in Count One of the indictment of the *Chicago Six* in part alleges.

However, having said this, Defendant has not been alleged to have filed any false or fraudulent documents prepared or counseled to be prepared by any of the *Chicago Six*.  In fact, it is documents prepared by Mr. Larson which are at issue in this case.   The Chicago indictment does allege that the *Chicago Six* would "refer clients to particular tax return preparers who the defendants knew would conceal and perpetrate the scheme."  *See Attachment, Exhibit A, page 9, last sentence*.

So, the question is whether any of  the Chicago Six have a Fifth Amendment Right to be exercised and accepted by this Court if called to testify regarding "relevant" questions asked by the Defendant?    Defendant believes that if this Court keeps the Government from asking any rebuttal questions not relevant to the case against the Defendant, then no fifth amendment issue will arise.

The Defendant is not charged with a conspiracy to defraud the United States under section 371.  The Defendant is charged with filing a false 1040 form for 1998 (*Count One*) but there is no allegation of a conspiracy to commit an offense against the United States under section 371.   Likewise, it is Mr. Larson, who is testifying in this case, that he was the "preparer" and not any of the listed witnesses derived from the *Chicago Six*.

Mr. Larson is expected to testify that he, like all the revenue agents who have testified so far, is not aware of any "specific provision" of the code that prohibits the use of Trusts, prohibits Trusts from being owned by other Trusts, or K-1's being issued to foreign trust owners.   In fact, section 684(c) for example, states that "If a Trust which is not a foreign trust becomes a foreign trust, such trust shall be treated for purposes of this section as...."   This is simply offered to show the Court that the Tax Code is filled with provisions which rely upon the term "person" which is defined at section 7701(a)(1) as to include a "trust" as well as at section 7701(a)(14) describes the term "taxpayer" as the "person subject to any internal revenue tax."

In the imposition of the "whipsaw tax" upon the Defendant, the IRS on the one hand claimed the trust as a taxpayer and on the other hand claimed not to recognize the trust at all.   The IRS has no law to support their administrative imposition of the whipsaw tax.  The Government has no specific provision which describes the object of the conspiracy against the *Chicago Six*, other than section 7206(2), which should be severable from the defraud part of Count One in that indictment.  And now the Defendant in this case gives the Court questions which the Defendant has a Sixth Amendment right to present, along with the answer, to the Jury and which does not directly or indirectly implicate any violation of any

specific provision of the tax law, or any other law, save the battered and abused term "defraud" with no outer meaning, regarding the *Chicago Six*.

QUESTIONS REGARDING VALONE

1) HAS THE U.S. GOVERNMENT OR ANY OF ITS EMPLOYEES ATTEMPTED TO WORK A PLEA AGREEMENT WITH YOU IN EXCHANGE FOR YOUR TESTIMONY?

2) IF SO, WHAT IS THE AGREEMENT AND WHEN DID THEY OFFER IT TO YOU.

3) DID YOU SEND A LETTER OUT IN MARCH OF THIS YEAR (2005) WHICH DIRECTLY COMMUNICATES STATEMENTS BY YOU AS TO HOW THE CASE IS GOING AND WHAT YOU BELIEVE THE ISSUES ARE?

4) DID YOU SEND THIS OUT FREELY AND VOLUNTARILY?

5) WHO DID YOU SEND THIS TO?

6) WHAT DID IT SAY?

7) WHY DID YOU WRITE IT AFTER YOU HAD BEEN INDICTED?

8) HAVE YOU GIVEN TESTIMONY BEFORE ANY GRAND JURY?

9) WERE YOU INDICTED BY THE GOVERNMENT ON APRIL 8, 2004 ON AN ALLEGED CONSPIRACY TO DEFRAUD AND CONSPIRACY TO ASSIST OTHERS IN THE PREPARATION OF FALSE TAX RETURNS?

10) DO YOU KNOW WHAT THE OBJECT OF THE DEFRAUD PART OF THE CONSPIRACY IS ALLEGED TO BE?

11) ARE YOU AWARE OF ANY TAX LAWS THAT YOU BELIEVE YOU DIRECTED OTHERS TO VIOLATE REGARDING THE SALE AND USAGES OF TRUSTS?

12) THE INDICTMENT STATES YOUR ALLEGED CONSPIRACY BEGAN IN 1994.    HAVE YOU EVER RECEIVED ANY CEASE AND DESIST ORDER, OR OTHER COURT ORDER DIRECTING YOU TO NOT SELL OR OFFER TO SELL THE AEGIS TRUST PACKAGES SINCE 1994?

13) HAS ANYONE FROM THE U.S. GOVERNMENT TAKEN THE TIME TO SIT DOWN WITH YOU AND EXPLAIN WHY THEY DISAGREE WITH YOUR READING AND APPLICATION OF THE TAX LAWS OVER THE LAST ELEVEN YEARS?

14) AND IF SO, WHO ARE THEY BY NAME?

15) WHAT IS YOUR EDUCATION AND BACKGROUND?    ANY LICENCES, CREDITS OR DEGREES?

Defendant believes with this foundation, he should be able to cross examine Mr. Valone extensively about his knowledge of trusts, how they work, his knowledge of the tax laws, and how he arrived at what the Government labels the

Aegis Trust Package.   Mr. Valone has informed Defense Counsel, through his attorney, that he may be willing to expose himself to the Government's questions in total.

QUESTIONS REGARDING  BARTOLI

1)   WHAT IS YOUR EDUCATION BACKGROUND?

2)   HOW LONG HAVE YOU BEEN A LICENCED ATTORNEY?

3) WHAT ARE THE GENERAL AREAS IN WHICH YOU HAVE PRACTICED?

4)  HAVE YOU EVER WRITTEN ANY PUBLISHED BOOK OR TREATISE  REGARDING TAX LAWS OF THE UNITED STATES?

5)  HAVE YOU EVER HEARD OF THE NAME HERITAGE AS A BUSINESS?

6)  HAVE YOU EVER HEARD THE NAME DENNY PATRIDGE?

7) HAS HE EVER SOLD YOUR PRODUCTS?

8) FOR HOW LONG AND WHICH PRODUCTS?

9) HAVE YOU EVER BEEN ORDERED BY ANY COURT TO CEASE AND DESIST IN YOUR PROMOTION AND SALE OF ANY OF THE PRODUCTS YOU OFFERED FOR SALE?

10) HAVE YOU GIVEN TESTIMONY BEFORE ANY GRAND JURY?

11) WERE YOU INDICTED BY THE GOVERNMENT ON APRIL 8, 2004 ON AN ALLEGED CONSPIRACY TO DEFRAUD AND CONSPIRACY TO ASSIST OTHERS IN THE PREPARATION OF FALSE TAX RETURNS?

12) DO YOU KNOW WHAT THE OBJECT OF THE DEFRAUD PART OF THE CONSPIRACY IS ALLEGED TO BE?

13) ARE YOU AWARE OF ANY TAX LAWS THAT YOU BELIEVE YOU DIRECTED OTHERS TO VIOLATE REGARDING THE SALE AND USAGES OF TRUSTS?

14) THE INDICTMENT STATES YOUR ALLEGED CONSPIRACY BEGAN IN 1994.　HAVE YOU EVER RECEIVED ANY CEASE AND DESIST ORDER, OR OTHER COURT ORDER DIRECTING YOU TO NOT SELL OR OFFER TO SELL THE AEGIS TRUST PACKAGES SINCE 1994?

15) HAS ANYONE FROM THE U.S. GOVERNMENT TAKEN THE TIME TO SIT DOWN WITH YOU AND EXPLAIN WHY THEY DISAGREE WITH YOUR READING AND APPLICATION OF THE TAX LAWS OVER THE LAST ELEVEN YEARS?

16) AND IF SO, WHO ARE THEY BY NAME?

Defendant believes that none of the questions implicate any conspiracy as alleged in Count One of the indictment against the *Chicago Six,*  and therefore

22

should be allowed to be asked and answered by the witness without fear of

prosecution or that the answers may implicate his role in any crime against the U.S.

QUESTIONS REGARDING HOPPER

1)  WHAT IS YOUR EDUCATION BACKGROUND?

2)  HAVE YOU EVER RECEIVED ANY LICENCES FOR ANY

PROFESSION?

3) WHAT ARE THE GENERAL AREAS IN WHICH YOU HAVE

EXPERIENCE IN?

4)  HAVE YOU EVER WRITTEN ANY PUBLISHED BOOK OR

TREATISE  REGARDING TAX LAWS OF THE UNITED STATES?

5)  HAVE YOU EVER HEARD OF THE NAME HERITAGE AS A

BUSINESS OR HERITAGE ASSURANCE GROUP OR HERITAGE AMERICA?

6)  HAVE YOU EVER HEARD THE NAME DENNY PATRIDGE?

7) HAVE YOU EVER BEEN ORDERED BY ANY COURT TO CEASE

AND DESIST IN YOUR PROMOTION AND SALE OF ANY OF THE

PRODUCTS YOU OFFERED FOR SALE?

8) HAVE YOU GIVEN TESTIMONY BEFORE ANY GRAND JURY?

9) WERE YOU INDICTED BY THE GOVERNMENT ON APRIL 8, 2004

ON AN ALLEGED CONSPIRACY TO DEFRAUD AND CONSPIRACY TO

ASSIST OTHERS IN THE PREPARATION OF FALSE TAX RETURNS?

10) DO YOU KNOW WHAT THE OBJECT OF THE DEFRAUD PART OF

THE CONSPIRACY IS ALLEGED TO BE?

11) ARE YOU AWARE OF ANY TAX LAWS THAT YOU BELIEVE

YOU DIRECTED OTHERS TO VIOLATE REGARDING THE SALE AND

USAGES OF TRUSTS?

12) THE INDICTMENT STATES YOUR ALLEGED CONSPIRACY

BEGAN IN 1994.   HAVE YOU EVER RECEIVED ANY CEASE AND DESIST

ORDER, OR OTHER COURT ORDER DIRECTING YOU TO NOT SELL OR

OFFER TO SELL THE AEGIS TRUST PACKAGES SINCE 1994?

13) HAS ANYONE FROM THE U.S. GOVERNMENT TAKEN THE TIME

TO SIT DOWN WITH YOU AND EXPLAIN WHY THEY DISAGREE WITH

YOUR READING AND APPLICATION OF THE TAX LAWS OVER THE LAST

ELEVEN YEARS?

14) AND IF SO, WHO ARE THEY BY NAME?

Defendant believes that none of the questions implicate any conspiracy as

alleged in Count One of the indictment against the *Chicago Six,* and therefore

should be allowed to be asked and answered by the witness without fear of

24

prosecution or that the answers may implicate his role in any crime against the U.S.

QUESTIONS REGARDING PARKER

1)  WHAT IS YOUR EDUCATION BACKGROUND?

2)  HOW LONG HAVE YOU BEEN A LICENCED ATTORNEY?

3) WHAT ARE THE GENERAL AREAS IN WHICH YOU HAVE PRACTICED?

4)  HAVE YOU EVER WRITTEN ANY PUBLISHED BOOK OR TREATISE  REGARDING TAX LAWS OF THE UNITED STATES?

5)  HAVE YOU EVER HEARD OF THE NAME HERITAGE AS A BUSINESS?

6)  HAVE YOU EVER HEARD THE NAME DENNY PATRIDGE?

7) HAVE YOU EVER BEEN ORDERED BY ANY COURT TO CEASE AND DESIST IN YOUR PROMOTION AND SALE OF ANY OF THE PRODUCTS YOU HAVE EVER OFFERED FOR SALE?

8) HAVE YOU GIVEN TESTIMONY BEFORE ANY GRAND JURY?

9) WERE YOU INDICTED BY THE GOVERNMENT ON APRIL 8, 2004 ON AN ALLEGED CONSPIRACY TO DEFRAUD AND CONSPIRACY TO ASSIST OTHERS IN THE PREPARATION OF FALSE TAX RETURNS?

10) DO YOU KNOW WHAT THE OBJECT OF THE DEFRAUD PART OF

25

THE CONSPIRACY IS ALLEGED TO BE?

11) ARE YOU AWARE OF ANY TAX LAWS THAT YOU BELIEVE YOU DIRECTED OTHERS TO VIOLATE REGARDING THE SALE AND USAGES OF TRUSTS?

12) THE INDICTMENT STATES YOUR ALLEGED CONSPIRACY BEGAN IN 1994.   HAVE YOU EVER RECEIVED ANY CEASE AND DESIST ORDER, OR OTHER COURT ORDER DIRECTING YOU TO NOT SELL OR OFFER TO SELL THE AEGIS TRUST PACKAGES SINCE 1994?

13) HAS ANYONE FROM THE U.S. GOVERNMENT TAKEN THE TIME TO SIT DOWN WITH YOU AND EXPLAIN WHY THEY DISAGREE WITH YOUR READING AND APPLICATION OF THE TAX LAWS OVER THE LAST ELEVEN YEARS?

14) AND IF SO, WHO ARE THEY BY NAME?


Defendant has been notified that Karen Ritter may claim the Fifth Amendment.     The only questions the Defendant had for Mrs. Ritter involved her contacting the IRS and receiving a block of EIN #s from the IRS.

CONCLUSION

THERFORE, the Defendant respectfully request this Court allow Valone,

Bartoli, Hopper and Parker to be called to testify before the Jury at trial regarding

the aforementioned questions presented for the reasons and argument herein.


Respectfully Submitted


/s/ Jerold Barringer
Jerold Barringer
Attorney at Law
Bar # 06185192
P.O. Box 213
Nokomis Illinois 62075
217-563-2646
Jwbarringer@consolidated.net

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of Defendant's

Opposition to the Government's Motion in Limine filed June 16, 2005 has been

electronically delivered through the Court's ECF filing system on June 18, 2005

before midnight to:


Hilary W. Frooman
U.S. Assistant Attorney
201 South Vine
Urbana, Illinois 61801
hilary.frooman@usdoj.gov
217-373-5875


/s/ Jerold Barringer
Server