UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR X 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **04CR0372** |
| | ) | |
| v. | ) | No. |
| | ) | Violations: Title 18, United States |
| MICHAEL A. VALLONE, | ) | Code, Sections 2, 371, 1341 and 1343; |
| EDWARD B. BARTOLI, | ) | Title 26, United States Code, Sections |
| ROBERT W. HOPPER, | ) | 7201, 7206(1), and 7206(2) |
| TIMOTHY SHAWN DUNN, | ) | |
| WILLIAM S. COVER, and | ) | JUDGE NORGLE |
| DAVID E. PARKER | ) | |

MAGISTRATE JUDGE LEVIN

COUNT ONE

The SPECIAL NOVEMBER 2002 GRAND JURY charges:

Background

DOCKETED
APR 0 9 2004

1.      At times material to this indictment:

        a.    The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury, responsible for administering and enforcing the tax laws of the United States.

        b.    The Internal Revenue Code established laws for the taxation of income. Under these laws, individuals, sole proprietorships, partnerships, and corporations were required to report income to the IRS on income tax returns.

        c.    Under the Internal Revenue Code, income is taxable to the person who earns it.

        d.    Under the Internal Revenue Code, individuals and entities were allowed to reduce taxable income through the use of certain deductions.

e.    Defendant MICHAEL A. VALLONE, age 44 of Orland Park, Illinois, was one of the founders of The Aegis Company ("Aegis"), which was based in Palos Hills, Illinois, and which marketed and sold trust packages throughout the United States through a network of promoters, sub-promoters, managers, attorneys, and accountants. Defendant VALLONE was the Executive Director of Aegis and a principal in the company.

f.    Defendant EDWARD B. BARTOLI, age 74 of Little River, South Carolina, an attorney, was one of the founders of Aegis, the Legal Director of Aegis and a principal in the company.

g.    Defendant ROBERT W. HOPPER, age 58 of Gadsden, Alabama, was one of the founders of Aegis, the Managing Director of Aegis and a principal in the company.

h.    Defendant TIMOTHY SHAWN DUNN, age 44 of Chesterton, Indiana, a Certified Financial Planner, was a promoter and manager of Aegis trusts, and he was the Managing Director of the Aegis Management Company, which he created with defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, and ROBERT W. HOPPER and which provided management services to purchasers of Aegis trusts.

i.    Defendant WILLIAM S. COVER, age 67 of Naperville, Illinois, was a promoter and manager of Aegis trusts, and he was the president of Sigma Resource Management, Inc. (and later held the controlling interest in Sigma Resource Management, LLC), which provided management services to purchasers of Aegis trusts.

2

j.    Defendant DAVID E. PARKER, age 51 of Williamsville, New York, an attorney, was the Legal Director of the Aegis Management Company, through which he assisted in the promotion, sale, management and defense of Aegis trust systems.

### General Conspiracy Allegations

2.    Beginning at least as early as July 1994 and continuing until at least December 2003, at Palos Hills and elsewhere within the Northern District of Illinois, Eastern Division, and elsewhere,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER,
> TIMOTHY SHAWN DUNN,
> WILLIAM S. COVER, and
> DAVID E. PARKER,

defendants herein, did conspire with each other, and with others both known and unknown to the Grand Jury, to:

a.    defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the IRS of the Department of Treasury, an agency of the United States, in the ascertainment, computation, assessment, and collection of the revenue, namely income taxes; and

b.    commit offenses against the United States, namely: to willfully aid and assist in, and procure, counsel, and advise the preparation and presentation, to the IRS, of returns and claims on behalf of others which were fraudulent and false as to various material matters, in violation of Title 26, United States Code, Section 7206(2).

3.    It was part of the conspiracy that defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, TIMOTHY SHAWN DUNN, WILLIAM

S. COVER, and DAVID E. PARKER devised, organized, promoted and sold domestic and foreign trusts through Aegis to taxpayers. The purpose and effect of the Aegis trust systems was to defraud the United States of America, by attempting to fraudulently conceal trust purchasers' assets and income from the IRS and to illegally reduce or eliminate their income tax liability. In all, approximately 650 clients throughout the United States purchased Aegis trusts and used them to conceal from the IRS hundreds of millions of dollars in income, resulting in a tax loss to the United States of at least $68 million.

<u>Domestic Trusts</u>

4.    It was further part of the conspiracy that defendants used Aegis to promote, sell, and cause to be sold trusts (also known as "common law business organizations," "business trusts" and "CBOs"), primarily to self-employed individuals throughout the United States. As part of the Aegis program, the trust purchasers used their Aegis trusts to engage in a series of sham paper transactions having no economic substance or business purpose, which resulted in the concealment of assets and income from the IRS and the attempted illegal reduction or elimination of income tax liability.

5.    It was further part of the conspiracy that defendants and their associates conducted seminars and distributed Aegis promotional materials in order to recruit clients. Defendants then sold trusts and trust management services to these clients, falsely advising them that their trusts could, among other things, be used to reduce or eliminate federal income taxes.

4

6.    It was further part of the conspiracy that defendants counseled and assisted their clients in transferring the clients' businesses, homes, and other assets into trusts, or to bank accounts corresponding to trusts. Defendants further counseled and assisted their clients in making it appear on tax returns filed with the IRS that the clients had passed their business income through a series of trusts which ultimately paid little or no taxes.

7.    It was further part of the conspiracy that defendants charged trust purchasers substantial fees, ranging from about $10,000 to $75,000 for a package of one or more Aegis trusts, and for advice and counsel from one or more of the defendants on the use of these trusts to conceal assets and income from the IRS and to reduce or eliminate the purchasers' income tax liabilities.

8.    It was further part of the conspiracy that defendants provided some clients with trust documents that had been backdated to enable the clients to utilize the purported tax advantages of the trusts during periods before the date that the trusts had actually been purchased from Aegis.

9.    It was further part of the conspiracy that defendants provided many clients with executed trust documents that had been falsely notarized. That is, the documents bore the attestations, official stamps and signatures of Notary Publics, purporting to attest to the personal appearance of the signatories before the Notary Public on the specified date, when in fact there had been no such appearance before the Notary Public.

10.    It was further part of the conspiracy that the trusts designed by defendants had nominee trustees, frequently including defendants EDWARD B. BARTOLI and

5

DAVID E. PARKER, or another Aegis attorney. At virtually the same time, or even before, a client transferred assets and/or income to a trust, the Aegis attorney would "resign" via a boilerplate letter and would appoint the client as the new trustee, thus giving the client effective management and control of the assets in the trust and the trust's bank accounts, as well as the full utilization and benefit of the income that had been assigned to the trust.

11. It was further part of the conspiracy that the defendants counseled and assisted their trust clients to create false consulting and management contracts between the clients' business entities and their trusts. These false contracts caused the clients' business entities to pay to the trusts substantial fees for nonexistent services, resulting in false deductions and the diversion of income from the clients' business entities, and the filing of false business and personal tax returns.

12. It was further part of the conspiracy that the defendants counseled and assisted their trust clients to report business income on some trust tax returns but to then pass this income on to other trusts without taxes ever being paid on the income. The defendants counseled and assisted their clients to fraudulently attempt to assign income they had earned to their trusts, even though the income was earned and controlled by the clients in the same manner as it had been before the trusts were created.

13. It was further part of the conspiracy that the defendants counseled and assisted their trust clients to claim false deductions on the federal tax returns filed on behalf of their trusts. Such false deductions included the deduction by the trusts of items comprising ordinary living expenses of the Aegis trust purchasers, including

6

household utility expenses, repairs and lawn maintenance costs for the clients' personal residences, which had been designated the "world headquarters" of the trusts. Other false deductions included the cost of college tuition for the clients' children, under the guise that the children would become directors of the trusts in the future.

14.    It was further part of the conspiracy that the defendants counseled and assisted their trust clients to claim false charitable deductions on trust tax returns, purportedly for money given to legitimate charities. Such false deductions included the costs of vacations taken by Aegis clients to places such as Hawaii, under the guise that, during their vacations, the clients were looking for legitimate charities to which to donate money. In reality, the charitable trusts established by defendants for their clients were simply additional entities under the control and management of the clients, which allowed the clients to invest or spend their untaxed income.

15.    It was further part of the conspiracy that the defendants counseled and assisted their clients to create additional trusts to "lend" to themselves, or to their businesses, some of their own untaxed income.

### Foreign Trusts

16.    It was further part of the conspiracy that the defendants counseled and assisted some of their trust clients, particularly the most wealthy clients, to participate in a program they marketed as an offshore trust system. Assisted by an offshore contact in Belize, the defendants operated the offshore trust system, which was in fact an elaborate scheme for concealing clients' income from the IRS through the use of multiple domestic and foreign bank accounts, domestic and foreign trusts, and international business companies ("IBCs"). The defendants sometimes received

7

additional fees for the clients' use of the offshore trust system, consisting of approximately 3% of any funds sent out of the United States by the clients and then repatriated through a phony "demand note" process.

17.    It was further part of the conspiracy that the offshore trust system involved a series of sham transactions, through which clients' income was purportedly transferred through foreign trusts and then returned to the clients. Often, the transfer of income did not actually take place, but was made to appear to have taken place through a series of trust tax returns showing distributions of income from trust to trust. These purported distributions of income ended at a foreign trust or IBC, which did not file a tax return. The bank accounts of the foreign trust or IBC were secretly controlled by the Aegis clients.

18.    It was further part of the conspiracy that, as part of the offshore trust system, the defendants and their offshore contact in Belize created foreign trusts and IBCs. In order to create the false appearance that the foreign trusts and IBCs were not connected to or under the control of the clients, the defendants caused their offshore contact to establish certain foreign entities as straw directors of the foreign trusts and IBCs, including Freedom Services Company as "protector" and a company controlled by the Belize contact as the nominee trustee of the clients' foreign trusts. In fact, the clients had been provided with signed but undated letters of resignation from the Belize contact so that the clients actually retained control of their foreign trusts and IBCs and their related bank accounts.

19.    It was further part of the conspiracy that defendants counseled and assisted their clients to take further steps to conceal the nature of the scheme and the

8

source of the income in the course of transferring funds through the offshore trust system. The defendants advised that the clients' untaxed income should first be transferred to trust bank accounts in the United States controlled by the clients and then transferred by wire from those accounts to offshore bank accounts in Antigua in the names of the foreign trusts secretly controlled by the clients. The funds were then to be transferred by each client to a second offshore bank account in Antigua in the name of an IBC that was also secretly controlled by the client. Clients were then provided with credit cards linked to the IBC bank accounts and were instructed by the defendants that they could use the credit cards to make purchases or to receive cash advances through automatic teller machines ("ATMs") in the United States without any record of these transactions clearing in the United States. The defendants further instructed clients that they could also repatriate their untaxed income through purported "loans" or "gifts" from their IBCs. The defendants assured their clients that the IRS would not be able to link the clients to the control or management of the IBCs or IBC bank accounts, and that the IRS would not be able to obtain offshore trust and bank records.

### Aegis Audit Arsenal

20. It was further part of the conspiracy that defendants counseled and advised their clients on how to manage and operate their Aegis trust systems in order to conceal income that had passed through the domestic and foreign trust systems from the IRS. Some of the defendants assisted their clients in preparing personal, business, and trust tax returns that falsely concealed the existence of such income, and they referred clients to particular tax return preparers who the defendants knew would perpetrate and conceal the scheme.

9

21.   It was further part of the conspiracy that defendants counseled and assisted their clients in obstructing IRS audits and in thwarting IRS inquiries into the Aegis trust scheme through the use of what they called the "Aegis Audit Arsenal." Defendants advised clients to withhold information from IRS revenue agents, to respond to IRS inquiries or civil summonses for financial records with obstructive letters and questionnaires that defendants had drafted and provided to the clients, and to file meritless motions to quash IRS civil summonses.

22.   It was further part of the conspiracy that the defendants created a law firm in Washington, D.C., called Parker & Associates. Parker & Associates was established to represent Aegis clients during IRS audits and examinations, to further implement the Aegis audit arsenal strategies, and to obtain additional fees from Aegis clients.

23.   It was further part of the conspiracy that defendants filed frivolous lawsuits against the IRS and individual IRS revenue agents and special agents.

24.   It was further part of the conspiracy that defendants concealed their own income from the sale of and management of the fraudulent Aegis trust systems, by placing their assets in domestic and foreign trusts they created, by diverting their income into bank accounts held in names of such trusts, and by using such bank accounts to obtain cash, to acquire assets, and to pay their personal living expenses. Defendants further concealed their income from the IRS by failing to file federal income tax returns or by failing to report their true income to the IRS.

25.   It was further part of the conspiracy that defendants concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence, purpose and acts done in furtherance of the conspiracy.

10

## Overt Acts

In furtherance of the conspiracy, and to effect the objects thereof, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, TIMOTHY SHAWN DUNN, WILLIAM S. COVER, and DAVID E. PARKER, together with other persons known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the Northern District of Illinois, Eastern Division, and elsewhere:

26.    On or about July 4, 1994, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, and ROBERT W. HOPPER signed a bank resolution document naming the three of them as directors of The Aegis Company.

27.    On or about September 1, 1994, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, and ROBERT W. HOPPER signed an agreement contracting the skills and services of defendant MICHAEL A. VALLONE in the name of the Vallone Asset Management Company.

28.    On or about September 1, 1994, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, and ROBERT W. HOPPER signed an agreement contracting the skills and services of defendant EDWARD B. BARTOLI in the name of the Equine Trust.

29.    On or about September 1, 1994, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, and ROBERT W. HOPPER signed an agreement contracting the skills and services of defendant ROBERT W. HOPPER in the name of the Hopper Asset Management Company.

11

30. On or about September 7, 1994, defendant EDWARD B. BARTOLI responded to a trust client regarding her attorney's negative opinion on the legitimacy of the Aegis trust system.

31. On or about November 11, 1994, defendant TIMOTHY SHAWN DUNN signed an Aegis team agreement to promote, market and sell Aegis systems and receive a 20% commission for each sale.

32. On or about November 11, 1994, defendant WILLIAM S. COVER signed an independent agent's agreement with Aegis to promote, market and sell the Aegis multi-trust systems.

33. On or about January 10, 1995, an Aegis check for $1,500 was issued to the Equine Trust, which was controlled by defendant EDWARD B. BARTOLI.

34. On or about May 12, 1995, defendant EDWARD B. BARTOLI wrote a letter to a trust client defending the legality of the common law business organization ("CBO") system.

35. On or about June 13, 1995, defendant EDWARD B. BARTOLI responded to a trust client who had communicated criticisms by the client's attorney and a tax professor about the legality of the Aegis trust system.

36. On or about June 16, 1995, defendant EDWARD B. BARTOLI wrote a letter to a trust client, responding to the client's attorney's statement that defendant BARTOLI had confused the client with "misleading and incomplete information."

37. On or about June 22, 1995, defendant EDWARD B. BARTOLI signed an attorney's directive for the preparation of a quit claim deed for Aegis clients Taxpayers I and J.

12

38. On or about July 17, 1995, defendant EDWARD B. BARTOLI informed a client that he had received a letter of response from the client's attorney challenging the legality of the trusts purchased by the client.

39. On or about July 24, 1995, defendant TIMOTHY SHAWN DUNN signed an Aegis team agreement on behalf of Dunn Business Company to sell Aegis systems.

40. On or about August 18 and 19, 1995, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, and TIMOTHY SHAWN DUNN were speakers at an Aegis training school.

41. On or about December 6, 1995, defendant WILLIAM S. COVER created the Alpha Asset Management Trust as part of his own Aegis trust system.

42. On or about December 17, 1995, defendant EDWARD B. BARTOLI entered into a contract with two trust clients, a married couple, and drafted various documents for them. Eight days later, on December 25, 1995, defendant BARTOLI signed a letter of resignation as director of one of the clients' trusts.

43. On or about December 20, 1995, defendant MICHAEL A. VALLONE conducted an Aegis trust seminar in Orlando, Florida to promote the Aegis trust systems.

44. On or about January 31, 1996, defendant TIMOTHY SHAWN DUNN sent to defendant MICHAEL A. VALLONE via fax a copy of a negative opinion about the Aegis trust system from a client's attorney, with the comments "I'm guessing you have a standard response.... I do think a response is in order. Please call me on this."

45. On or about February 7, 1996, defendant EDWARD B. BARTOLI sent a responsive letter to the client's attorney referred to in Paragraph 44.

13

46.     On or about February 17 and 18, 1996, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER and TIMOTHY SHAWN DUNN conducted an Aegis trust seminar in Oak Lawn, Illinois to promote the Aegis trust systems.

47.     On or about June 15, 1996, defendant DAVID E. PARKER entered into a confidentiality agreement with Aegis.

48.     On or about June 28 and 29, 1996, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, and TIMOTHY SHAWN DUNN conducted an Aegis trust seminar in Oak Lawn, Illinois to promote the Aegis trust systems.

49.     On or about July 11, 1996, defendant WILLIAM S. COVER incorporated Sigma Resource Management, Inc. to provide management services to purchasers of Aegis trust systems.

50.     On or about September 18, 1996, defendant EDWARD B. BARTOLI wrote a letter to a person who was both an Aegis promoter and a tax return preparer for Aegis clients, telling him that Aegis guaranteed to defend the legality of any of its documents at its own expense.

51.     On or about October 9, 1996, defendant MICHAEL A. VALLONE sent a fax to a person who was both an Aegis promoter and a tax return preparer for Aegis clients, assuring him of the legality of the Aegis trust system.

52.     On or about October 25, 1996, defendant MICHAEL A. VALLONE sent another fax to a person who was both an Aegis promoter and a tax return preparer for

14

Aegis clients, dismissing another person's assertion that the Aegis trust system is a sham.

53.     On or about October 31, 1996, defendant WILLIAM S. COVER assisted in the creation of an Aegis trust system for Taxpayers C and D by signing documents as the notary public.

54.     In about December 1996, defendants MICHAEL A. VALLONE and EDWARD B. BARTOLI conducted an Aegis trust seminar in Orlando, Florida to promote the Aegis trust systems that included instructions about the use of offshore trusts.

55.     On or about January 10, 1997, defendant TIMOTHY SHAWN DUNN received a commission check from Aegis in the amount of $42,750.

56.     On or about April 28, 1997, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, and WILLIAM S. COVER met in Palos Hills, Illinois with an individual from Belize and discussed services the individual might provide to Aegis and its clients.

57.     On or about May 5, 1997, defendant DAVID E. PARKER sent a fax to defendant TIMOTHY SHAWN DUNN about a press release from the IRS concerning the IRS cautioning people about abusive trusts.

58.     On or about May 6, 1997, defendant WILLIAM S. COVER sent a fax to an Aegis client acknowledging the receipt of a check for services relating to the client's offshore trust system and mentioning that trust system documents could be backdated as early as 1993.

59.     On or about May 8, 1997, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, and TIMOTHY SHAWN DUNN filed a civil lawsuit

15

in federal district court in Chicago, Illinois against, among others, a revenue agent of the IRS, which lawsuit the court ultimately dismissed as baseless.

60. On or about May 20, 1997, defendant TIMOTHY SHAWN DUNN faxed a Weekly Alert about abusive trusts, with his comments, to a tax return preparer for Aegis clients.

61. On or about May 29, 1997, defendant TIMOTHY SHAWN DUNN responded to a fax he had received from a client's accountant about IRS Notice 97-24, relating to abusive trusts.

62. On or about May 29, 30, and 31, 1997, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, WILLIAM S. COVER, and TIMOTHY SHAWN DUNN conducted an Aegis trust seminar in Oak Lawn, Illinois to promote the Aegis trust systems.

63. On or about July 9, 1997, defendant WILLIAM S. COVER sent a fax to the Aegis offshore contact in Belize, in which defendant COVER indicated that agreements and loans would have to be backdated.

64. On or about August 4, 1997, defendant TIMOTHY SHAWN DUNN wrote a letter to defendants MICHAEL A. VALLONE and EDWARD B. BARTOLI, in which he discussed the resources he had to expend responding to articles about abusive trusts.

65. On or about August 26, 1997, defendant MICHAEL A. VALLONE wrote a letter to all Aegis representatives, in which he discussed IRS Notice 97-24, relating to abusive trusts, and in which he touted the success of his audit strategy in preventing at least three IRS audits.

16

66. On or about October 27, 28, and 29, 1997, defendants MICHAEL A. VALLONE and WILLIAM S. COVER conducted an Aegis trust seminar, which defendant DAVID E. PARKER attended, in Depew, New York to promote the Aegis trust systems.

67. On or about November 14, 1997, defendant WILLIAM S. COVER sent a fax to the offshore contact Aegis had in Belize, in which defendant COVER noted that the backdating of a client's trust documents still had not been completed.

68. On or about January 1, 1998, defendant ROBERT W. HOPPER signed a fee and commission contract with another person on behalf of Aegis.

69. On or about January 9, 1998, Aegis issued a check for $3,000 for consulting made payable to The Hopper Asset Management Trust, which defendant ROBERT W. HOPPER signed.

70. Between about January 13 and January 17, 1998, defendants MICHAEL A. VALLONE and WILLIAM S. COVER promoted the Aegis trust system during the "Belize Tax Planning Conference 1998" in the country of Belize.

71. On or about February 19, 20, and 21, 1998, defendants MICHAEL A. VALLONE, ROBERT W. HOPPER, TIMOTHY SHAWN DUNN and WILLIAM S. COVER conducted an Aegis trust seminar in Oak Lawn, Illinois to promote the Aegis trust systems.

72. On or about March 16, 1998, defendant ROBERT W. HOPPER signed on behalf of Aegis an agreement with another person who was becoming a member and representative of Aegis in order to market and promote the Aegis trust system to prospective clients.

17

73.    On or about March 19, 1998, defendant WILLIAM S. COVER wrote a letter to a client in which he discussed dealing with the problem of self-dealing in management contracts between entities by using a director with a different surname, and in which defendant COVER stated that he would backdate documents to reflect such changes as of the beginning of the year.

74.    On or about April 1, 1998, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, and TIMOTHY SHAWN DUNN filed an amended complaint in their civil lawsuit in federal district court in Chicago, Illinois against, among others, a revenue agent of the IRS, which amended complaint the court ultimately dismissed as baseless.

75.    On or about April 6, 1998, defendant WILLIAM S. COVER wrote a letter to a client in which he explained that he had backdated new documents to show that defendant COVER had been appointed as a director of the client's trust on December 23, 1997 and had then resigned from that position on December 23, 1997, and in which defendant COVER instructed the client to destroy the old set of documents relating to that trust.

76.    On or about July 16, 1998, defendant MICHAEL A. VALLONE filed an affidavit with the Illinois Secretary of State certifying that The Aegis Company was created on July 1, 1994, and listing defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, and ROBERT W. HOPPER as trustees of Aegis.

77.    On or about July 23, 1998, defendant WILLIAM S. COVER created Sigma Resource Management, LLC to provide management services to purchasers of Aegis trust systems.

18

78.    On or about July 28, 1998, defendant TIMOTHY SHAWN DUNN faxed to defendant MICHAEL A. VALLONE an article entitled "IRS Cracks Down on '90s 'Fake Tax Shelters'" he had received from an Aegis client.

79.    On or about August 7, 1998, defendant WILLIAM S. COVER signed a fee and commissions contract with Aegis setting forth what he would be paid for each trust system sold.

80.    On or about October 5, 1998, defendant WILLIAM S. COVER prepared documents directing a client as to which bank accounts he should use to pay particular expenses and into which bank accounts he should deposit money from different sources of income.

81.    On or about November 12, 1998, defendant TIMOTHY SHAWN DUNN caused Aegis trust documents to be backdated and falsely notarized for an Aegis client.

82.    In or about November 1998, defendant DAVID E. PARKER, acting as a trust director, backdated documents which falsely represented that he participated in trust meetings with an Aegis client.

83.    On or about December 10, 1998, defendant TIMOTHY SHAWN DUNN sent a letter to a CPA about the CPA's client and disputing issues about the validity of the Aegis trust system.

84.    On or about December 17, 1998, defendant TIMOTHY SHAWN DUNN faxed to defendant MICHAEL A. VALLONE an e-mail he had received warning about abusive trusts.

85.    On or about December 28, 1998, defendant TIMOTHY SHAWN DUNN instructed an Aegis client to circulate funds from his business through various bank

19

accounts in the names of the client's trusts to make it appear that the client's business was paying the trusts for management services.

86.     On or about February 18, 19, and 20, 1999, defendants MICHAEL A. VALLONE, TIMOTHY SHAWN DUNN, WILLIAM S. COVER, and DAVID E. PARKER conducted an Aegis trust seminar in Cleveland Ohio to promote the Aegis trust systems.

87.     On or about March 4, 1999, defendant EDWARD B. BARTOLI signed a document entitled "Re: The Aegis Company" in order to establish offshore bank accounts.

88.     On or about March 7, 1999, defendant TIMOTHY SHAWN DUNN faxed to defendant MICHAEL A. VALLONE an IRS notice relating to an Aegis client.

89.     On or about March 25, 26, and 27, 1999, defendants MICHAEL A. VALLONE, TIMOTHY SHAWN DUNN, WILLIAM S. COVER, and DAVID E. PARKER conducted an Aegis trust seminar in St. Louis, Missouri, to promote the Aegis trust system.

90.     In about April 1999, defendant MICHAEL A. VALLONE promoted the Aegis trust system during a cruise to Antigua, which defendant WILLIAM S. COVER attended.

91.     On or about April 12, 1999, defendant WILLIAM S. COVER wrote a letter to two Aegis clients in which he stated, "The primary value of the offshore system is to transfer the tax liability.  Bringing money back tax free on the credit card is frosting on the cake."

92.     On or about May 10, 1999, defendant MICHAEL A. VALLONE faxed a letter to defendant EDWARD B. BARTOLI acknowledging the receipt of the account

20

numbers for defendant BARTOLI's offshore bank account in the name of The Sared Company, explaining that there would be two secured credit cards issued to defendant BARTOLI, and stating that "We have established a standing order that each month the full balance on these credit cards will be paid from the current account for The Sared Company."

93.     On or about May 27, 28, and 29, 1999, defendants MICHAEL A. VALLONE, TIMOTHY SHAWN DUNN, and DAVID E. PARKER conducted an Aegis trust seminar in Beverly Hills, California, to promote the Aegis trust systems.

94.     On or about June 3, 1999, defendant TIMOTHY SHAWN DUNN advised a CPA to call a $150,000 wire transfer a "gift" in a fax about an Aegis client.

95.     On or about August 3, 1999, defendant TIMOTHY SHAWN DUNN mailed to defendant MICHAEL A. VALLONE an article entitled "Family Estate Trust: An Abusive Trust by Any Other Name" sent to him by an Aegis client.

96.     On or about August 19, 20, and 21, 1999, defendants MICHAEL A. VALLONE, ROBERT W. HOPPER, TIMOTHY SHAWN DUNN, WILLIAM S. COVER, and DAVID E. PARKER conducted an Aegis trust seminar in Oak Lawn, Illinois, to promote the Aegis trust systems.

97.     On or about August 24, 1999, defendant DAVID E. PARKER sent an e-mail to defendants MICHAEL A. VALLONE, ROBERT W. HOPPER and TIMOTHY SHAWN DUNN about the adverse United States Tax Court decision in the case of an Aegis client.

98.     On or about September 2, 1999, defendant MICHAEL A. VALLONE sent a letter to an Aegis client about how the Aegis "audit arsenal" should stop the potential

21

negative effect of an IRS audit, and defendant VALLONE sent the client a personalized letter for the client to sign, have notarized, and then mail to the IRS via certified mail.

99.   On or about September 13, 1999, defendant TIMOTHY SHAWN DUNN instructed an employee to backdate a trust document more than three years, to June 15, 1996.

100.   On or about September 24, 1999, defendant DAVID E. PARKER wrote a letter to an Aegis client, instructing him to backdate some promissory notes.

101.   On or about November 12, 1999, defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, and ROBERT W. HOPPER signed an agreement stating that the three of them had "equal managerial authority" in Aegis.

102.   On or about November 19, 1999, defendant TIMOTHY SHAWN DUNN faxed to defendant ROBERT W. HOPPER several articles, including one from Financial Privacy Report titled "You could wind up in jail and flat broke if you're hiding money in an offshore trust!"

103.   On or about December 3, 1999, defendant TIMOTHY SHAWN DUNN faxed to an Aegis client a rebuttal to an article titled "The New Tax Snake Oil – Abusive Trusts."

104.   On or about December 7, 1999, defendant DAVID E. PARKER signed documents as the director of an Aegis client's asset management company trust.

105.   On or about December 13, 1999, defendant DAVID E. PARKER signed documents indicating that he had resigned from the position of director of an Aegis client's asset management company trust, which position defendant PARKER had



assumed on December 7, 1999, and further indicating that the client had been appointed as the new director.

106. On or about January 13, 2000, an Aegis check for $1,000 signed by defendant ROBERT W. HOPPER was issued to the Equine Trust, which was controlled by defendant EDWARD B. BARTOLI.

107. On or about January 24, 2000, defendant TIMOTHY SHAWN DUNN faxed to defendant MICHAEL A. VALLONE an IRS notice relating to an Aegis client.

108. On or about March 13, 2000, defendant MICHAEL A. VALLONE signed a written response to concerns about the validity of the Aegis trust system expressed by an attorney who had met with a potential Aegis client.

109. On or about March 17, 2000, defendant MICHAEL A. VALLONE sent an e-mail to defendants ROBERT W. HOPPER, TIMOTHY SHAWN DUNN, and DAVID E. PARKER discussing how to implement the Aegis audit arsenal strategies through their newly created law firm, Parker and Associates, and further discussing the fees Parker & Associates will charge the Aegis clients for its services.

110. On or about March 22, 2000, defendant TIMOTHY SHAWN DUNN faxed to defendants MICHAEL A. VALLONE and ROBERT W. HOPPER a six-page unfavorable review of the CBO system by the Nautilus Group.

111. On or about March 31, 2000, defendant DAVID E. PARKER sent an e-mail to defendant MICHAEL A. VALLONE making corrections to a letter that defendant VALLONE was going to send to Aegis clients introducing Parker and Associates as the law firm handling IRS audits of the clients.

112. On or about April 28, 2000, during a teleconference call with Aegis promoters and clients, defendant MICHAEL A. VALLONE made statements to minimize the negative effects of the adverse United States Tax Court decision concerning an Aegis client, disassociating the client from himself and Aegis.

113. On or about May 2, 2000, defendant MICHAEL A. VALLONE wrote a letter to the Aegis membership introducing the "Tax Minimization Plan," which was developed in response to the IRS efforts to identify users of the Aegis trust system by their attachment of a Schedule C to their Form 1041 trust tax returns.

114. On or about July 28, 2000, in a letter to the Aegis membership, defendant MICHAEL A. VALLONE promoted the "Tax Minimization Plan" as a method for taking Aegis trust clients' tax returns "off the radar screen" of the IRS.

115. On or about September 1, 2000, defendant WILLIAM S. COVER signed a representative contract with defendant MICHAEL A. VALLONE's Fortress Trust, to promote, market and sell the "Fortress Trust," a revised version of the Aegis multi-trust system.

116. On or about September 9, 2000, defendant MICHAEL A. VALLONE responded to an e-mail communication and maintained that the deductions taken by an Aegis client were legitimate and that the IRS was unreasonable and violating laws.

117. On or about February 27, 2001, defendant WILLIAM S. COVER faxed a letter to an Aegis client in which he recommended that the client use a particular approach in dealing with an IRS audit of his Aegis trust system.

118. On or about March 6, 2001, defendant WILLIAM S. COVER wrote another letter to the Aegis client with whom he had corresponded on February 27, 2001, in

24



which he stated that since the client had taken a particular approach in dealing with the IRS, it would be impractical for the client to file a tax return with the IRS.

119. On or about May 9, 2001, defendant MICHAEL A. VALLONE and others filed a federal class action lawsuit against the IRS and several individual IRS special agents relating to the execution of search warrants on March 31, 2000, which lawsuit was eventually dismissed as meritless.

120. On or about November 12, 2003, in a letter, defendant MICHAEL A. VALLONE advised Aegis clients to contact defendants TIMOTHY SHAWN DUNN and WILLIAM S. COVER, and others, to learn of a new plan to protect assets from seizure.

In violation of Title 18, United States Code, Section 371.



## COUNT TWO

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    The Grand Jury realleges paragraph one of Count One of this Indictment.

2.    Beginning at least as early as July 1994 and continuing until at least December 2003, at Palos Hills, in the Northern District of Illinois, Eastern Division, and elsewhere,

>                    MICHAEL A. VALLONE,
>                    EDWARD B. BARTOLI,
>                    ROBERT W. HOPPER,
>                    TIMOTHY SHAWN DUNN,
>                    WILLIAM S. COVER, and
>                    DAVID E. PARKER,

defendants herein, along with others both known and unknown to the Grand Jury, did devise, intend to devise, and participate in a scheme to defraud the United States of income tax revenue, which scheme is described below.

3.    It was part of the scheme to defraud that defendants MICHAEL A. VALLONE, EDWARD B. BARTOLI, ROBERT W. HOPPER, TIMOTHY SHAWN DUNN, WILLIAM S. COVER, and DAVID E. PARKER, and others, devised, organized, promoted and sold domestic and foreign trusts through Aegis to taxpayers. The purpose and effect of the Aegis trust systems was to defraud the United States of America of tax revenue, through the concealment of trust purchasers' assets and income from the IRS, thus illegally reducing and, in some cases, eliminating income tax liability. In all, approximately 650 clients throughout the United States purchased Aegis trusts and used them to conceal from the IRS hundreds of millions of dollars in income, resulting in a tax loss to the United States of at least $68 million.

26

## Domestic Trusts

4.    It was further part of the scheme to defraud that defendants used Aegis to promote, sell, and cause to be sold trusts (also known as "common law business organizations," "business trusts" and "CBOs"), primarily to self-employed individuals throughout the United States.  As part of the Aegis program, the trust purchasers used their Aegis trusts to engage in a series of sham paper transactions having no economic substance or business purpose, which resulted in the concealment of assets and income from the IRS and the attempted illegal reduction or elimination of income tax liability.

5.    It was further part of the scheme to defraud that defendants and their associates conducted seminars and distributed Aegis promotional materials in order to recruit clients.  Defendants then sold trusts and trust management services to these clients, falsely advising them that their trusts could, among other things, be used to reduce or eliminate federal income taxes.

6.    It was further part of the scheme to defraud that defendants counseled and assisted their clients in transferring the clients' businesses, homes, and other assets into trusts, or to bank accounts corresponding to trusts.  Defendants further counseled and assisted their clients in making it appear on tax returns filed with the IRS that the clients had passed their business income through a series of trusts which ultimately paid little or no taxes.

7.    It was further part of the scheme to defraud that defendants charged trust purchasers substantial fees, ranging from about $10,000 to $75,000 for a package of one or more Aegis trusts, and for advice and counsel from one or more of the

defendants on the use of these trusts to conceal assets and income from the IRS and to reduce or eliminate the purchasers' income tax liabilities.

8.     It was further part of the scheme to defraud that defendants provided some clients with trust documents that had been backdated to enable the clients to utilize the purported tax advantages of the trusts during periods before the date that the trusts had actually been purchased from Aegis.

9.     It was further part of the scheme to defraud that defendants provided many clients with executed trust documents that had been falsely notarized.  That is, the documents bore the attestations, official stamps and signatures of Notary Publics, purporting to attest to the personal appearance of the signatories before the Notary Public on the specified date, when in fact there had been no such appearance before the Notary Public.

10.     It was further part of the scheme to defraud that the trusts designed by defendants had nominee trustees, frequently including defendants EDWARD B. BARTOLI and DAVID E. PARKER, or another Aegis attorney.  At virtually the same time, or even before, a client transferred assets and/or income to a trust, the Aegis attorney would "resign" via a boilerplate letter and would appoint the client as the new trustee, thus giving the client effective management and control of the assets in the trust and the trust's bank accounts, as well as the full utilization and benefit of the income that had been assigned to the trust.

11.     It was further part of the scheme to defraud that the defendants counseled and assisted their trust clients to create false consulting and management contracts between the clients' business entities and their trusts.  These false contracts caused the

28

clients' business entities to pay to the trusts substantial fees for nonexistent services, resulting in false deductions and the diversion of income from the clients' business entities, and the filing of false business and personal tax returns.

12.    It was further part of the scheme to defraud that the defendants counseled and assisted their trust clients to report business income on some trust tax returns but to then pass this income on to other trusts without taxes ever being paid on the income. The defendants counseled and assisted their clients to fraudulently attempt to assign income they had earned to their trusts, even though the income was earned and controlled by the clients in the same manner as it had been before the trusts were created.

13.    It was further part of the scheme to defraud that the defendants counseled and assisted their trust clients to claim false deductions on the federal tax returns filed on behalf of their trusts.  Such false deductions included the deduction by the trusts of items comprising ordinary living expenses of the Aegis trust purchasers, including household utility expenses, repairs and lawn maintenance costs for the clients' personal residences, which had been designated the "world headquarters" of the trusts.  Other false deductions included the cost of college tuition for the clients' children, under the guise that the children would become directors of the trusts in the future.

14.    It was further part of the scheme to defraud that the defendants counseled and assisted their trust clients to claim false charitable deductions on trust tax returns, purportedly for money given to legitimate charities.  Such false deductions included the costs of vacations taken by Aegis clients to places such as Hawaii, under the guise that, during their vacations, the clients were looking for legitimate charities to which to donate



money. In reality, the charitable trusts established by defendants for their clients were simply additional entities under the control and management of the clients, which allowed the clients to invest or spend their untaxed income.

15.    It was further part of the scheme to defraud that the defendants counseled and assisted their clients to create additional trusts to "lend" to themselves, or to their businesses, some of their own untaxed income.

### Foreign Trusts

16.    It was further part of the scheme to defraud that the defendants counseled and assisted some of their trust clients, particularly the most wealthy clients, to participate in a program they marketed as an offshore trust system. Assisted by an offshore contact in Belize, the defendants operated the offshore trust system, which was in fact an elaborate scheme for concealing clients' income from the IRS through the use of multiple domestic and foreign bank accounts, domestic and foreign trusts, and international business companies ("IBCs"). The defendants sometimes received additional fees for the clients' use of the offshore trust system, consisting of approximately 3% of any funds sent out of the United States by the clients and then repatriated through a phony "demand note" process.

17.    It was further part of the scheme to defraud that the offshore trust system involved a series of sham transactions, through which clients' income was purportedly transferred through foreign trusts and then returned to the clients. Often, the transfer of income did not actually take place, but was made to appear to have taken place through a series of trust tax returns showing distributions of income from trust to trust. These purported distributions of income ended at a foreign trust or IBC, which did not file a tax

return. The bank accounts of the foreign trust or IBC were secretly controlled by the Aegis clients.

18.     It was further part of the scheme to defraud that, as part of the offshore trust system, the defendants and their offshore contact in Belize created foreign trusts and IBCs. In order to create the false appearance that the foreign trusts and IBCs were not connected to or under the control of the clients, the defendants caused their offshore contact to establish certain entities as straw directors of the foreign trusts and IBCs, including Freedom Services Company as "protector" and a company controlled by the Belize contact as the nominee trustee of the clients' foreign trusts. In fact, the clients had been provided with signed but undated letters of resignation from the Belize contact so that the clients actually retained control of their foreign trusts and IBCs and their related bank accounts.

19.     It was further part of the scheme to defraud that defendants counseled and assisted their clients to take further steps to conceal the nature of the scheme and the source of the income in the course of transferring funds through the offshore trust system.     The defendants advised that the clients' untaxed income should first be transferred to trust bank accounts in the United States controlled by the clients and then transferred by wire from those accounts to offshore bank accounts in Antigua in the names of the foreign trusts secretly controlled by the clients. The funds were then to be transferred by each client to a second offshore bank account in Antigua in the name of an IBC that was also secretly controlled by the client. Clients were then provided with credit cards linked to the IBC bank accounts and were instructed by the defendants that they could use the credit cards to make purchases or to receive cash advances through

31

automatic teller machines ("ATMs") in the United States without any record of these transactions clearing in the United States. The defendants further instructed clients that they could also repatriate their untaxed income through purported "loans" or "gifts" from their IBCs. The defendants assured their clients that the IRS would not be able to link the clients to the control or management of the IBCs or IBC bank accounts, and that the IRS would not be able to obtain offshore trust and bank records.

<u>Aegis Audit Arsenal</u>

20. It was further part of the scheme to defraud that defendants counseled and advised their clients on how to manage and operate their Aegis trust systems in order to conceal income that had passed through the domestic and foreign trust systems from the IRS. Some of the defendants assisted their clients in preparing personal, business, and trust tax returns that falsely concealed the existence of such income, and they referred clients to particular tax return preparers who the defendants knew would perpetrate and conceal the scheme.

21. It was further part of the scheme to defraud that defendants counseled and assisted their clients in obstructing IRS audits and in thwarting IRS inquiries into the Aegis trust scheme through the use of what they called the "Aegis Audit Arsenal." Defendants advised clients to withhold information from IRS revenue agents, to respond to IRS inquiries or civil summonses for financial records with obstructive letters and questionnaires that defendants had drafted and provided to the clients, and to file meritless motions to quash IRS civil summonses.

22. It was further part of the scheme to defraud that the defendants created a law firm in Washington, D.C., called Parker & Associates. Parker & Associates was

32

established to represent Aegis clients during IRS audits and examinations, to further implement the Aegis audit arsenal strategies, and to obtain additional fees from Aegis clients.

23.   It was further part of the scheme to defraud that defendants filed frivolous lawsuits against the IRS and individual IRS revenue agents and special agents.

24.   It was further part of the scheme to defraud that defendants concealed their own income from the sale of and management of the fraudulent Aegis trust systems, by placing their assets in domestic and foreign trusts they created, by diverting their income into bank accounts held in names of such trusts, and by using such bank accounts to obtain cash, to acquire assets, and to pay their personal living expenses. Defendants further concealed their income from the IRS by failing to file federal income tax returns or by failing to report their true income to the IRS.

25.   It was further part of the scheme to defraud that defendants concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence, purpose and acts done in furtherance of the scheme.

26.   On or about June 15, 1999, at Chicago, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER,
> TIMOTHY SHAWN DUNN,
> WILLIAM S. COVER, and
> DAVID E. PARKER,

defendants herein, for the purpose of executing the aforesaid scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter,

to be sent and delivered by the United States Postal Service, an envelope containing

the 1999 United States Individual Income Tax Return (Form 1040) of Taxpayers E and

F, that envelope being addressed to:

>Internal Revenue Service
>Kansas City, MO 64999;

In violation of Title 18, United States Code, Section 1341.

## COUNT THREE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.     The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2.     On or about August 14, 1999, at Chicago, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER,
> TIMOTHY SHAWN DUNN,
> WILLIAM S. COVER, and
> DAVID E. PARKER,

defendants herein, for the purpose of executing the aforesaid scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing the 1999 United States Individual Income Tax Return (Form 1040) of Taxpayers C and D, that envelope being addressed to:

> Internal Revenue Service
> Kansas City, MO 64999;

In violation of Title 18, United States Code, Section 1341.



## COUNT FOUR

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2.    On or about March 4, 2000, at Calumet City, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER,
> TIMOTHY SHAWN DUNN,
> WILLIAM S. COVER, and
> DAVID E. PARKER,

defendants herein, for the purpose of executing the aforesaid scheme, knowingly did cause to be transmitted by means of wire communication in interstate commerce from Calumet City, Illinois, to Austin, Texas, writings, signs, and signals consisting of the 1999 United States Individual Income Tax Return (Form 1040) of Taxpayers A and B, in electronic form;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2.    On or about October 16, 2000, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> TIMOTHY SHAWN DUNN, and
> WILLIAM S. COVER,

defendants herein, for the purpose of executing the aforesaid scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing the 1999 United States Individual Income Tax Return (Form 1040) of Taxpayers E and F, that envelope being addressed to:

> Internal Revenue Service
> Kansas City, MO 64999;

In violation of Title 18, United States Code, Section 1341.

37



## COUNT SIX

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2.    On or about October 16, 2000, at Calumet City, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> TIMOTHY SHAWN DUNN, and
> WILLIAM S. COVER,

defendants herein, for the purpose of executing the aforesaid scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing the 1999 United States Individual Income Tax Return (Form 1040) of Taxpayers G and H, that envelope being addressed to:

> Internal Revenue Service
> Kansas City, MO 64999;

In violation of Title 18, United States Code, Section 1341.

## COUNT SEVEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.     The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2.     On or about October 19, 2000, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> TIMOTHY SHAWN DUNN, and
> WILLIAM S. COVER,

defendants herein, for the purpose of executing the aforesaid scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing the 1999 United States Individual Income Tax Return (Form 1040) of Taxpayers C and D, that envelope being addressed to:

> Internal Revenue Service
> Kansas City, MO 64999;

In violation of Title 18, United States Code, Section 1341.



## COUNT EIGHT

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2.    On or about April 1, 2001, at Calumet City, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> TIMOTHY SHAWN DUNN, and
> WILLIAM S. COVER,

defendants herein, for the purpose of executing the aforesaid scheme, knowingly did cause to be transmitted by means of wire communication in interstate commerce from Calumet City, Illinois, to Austin, Texas, writings, signs, and signals consisting of the 2000 United States Individual Income Tax Return (Form 1040) of Taxpayers A and B, in electronic form;

In violation of Title 18, United States Code, Section 1343.

40



## COUNT NINE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1. The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2. On or about October 15, 2001, at Calumet City, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> TIMOTHY SHAWN DUNN, and
> WILLIAM S. COVER,

defendants herein, for the purpose of executing the aforesaid scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing the 2000 United States Individual Income Tax Return (Form 1040) of Taxpayers G and H, that envelope being addressed to:

> Internal Revenue Service
> Kansas City, MO 64999;

In violation of Title 18, United States Code, Section 1341.

41



## COUNT TEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.      The Grand Jury realleges paragraphs 1 through 25 of Count Two of this Indictment.

2.      On or about October 5, 2002, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> TIMOTHY SHAWN DUNN, and
> WILLIAM S. COVER,

defendants herein, for the purpose of executing the aforesaid scheme and attempting so to do, knowingly did cause to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, an envelope containing the 2001 United States Individual Income Tax Return (Form 1040) of Taxpayers G and H, that envelope being addressed to:

> Internal Revenue Service
> Kansas City, MO 64999;

In violation of Title 18, United States Code, Section 1341.

## COUNT ELEVEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 14, 1998, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers A and B for the calendar year 1997, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $182,203, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers A and B during 1997 was an amount substantially in excess of $182,203;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.



## COUNT TWELVE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about April 1, 1999, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the

preparation and presentation to the Internal Revenue Service, of a joint United States

Individual Income Tax Return (Form 1040) of Taxpayers A and B for the calendar year

1998, which was false and fraudulent as to a material matter, in that the said return

stated that the total income (Line 22) was $144,786, whereas, as the defendants then

and there well knew and believed, the total income for Taxpayers A and B during 1998

was an amount substantially in excess of $144,786;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United

States Code, Section 2.



## COUNT THIRTEEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about March 4, 2000, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers A and B for the calendar year 1999, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $182,583, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers A and B during 1999 was an amount substantially in excess of $182,583;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

45



## COUNT FOURTEEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about April 1, 2001, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the

preparation and presentation to the Internal Revenue Service, of a joint United States

Individual Income Tax Return (Form 1040) of Taxpayers A and B for the calendar year

2000, which was false and fraudulent as to a material matter, in that the said return

stated that the total income (Line 22) was $201,075, whereas, as the defendants then

and there well knew and believed, the total income for Taxpayers A and B during 2000

was an amount substantially in excess of $201,075;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United

States Code, Section 2.



## COUNT FIFTEEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 10, 1998, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers C and D for the calendar year 1997, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $165,646, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer C and D during 1997 was an amount substantially in excess of $165,646;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

47



## COUNT SIXTEEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 11, 1999, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers C and D for the calendar year 1998, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $279,016, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer C and D during 1998 was an amount substantially in excess of $279,016;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.



COUNT SEVENTEEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about October 16, 2000, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,<br>
EDWARD B. BARTOLI, and<br>
WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers C and D for the calendar year 1999, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $232,936, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer C and D during 1999 was an amount substantially in excess of $232,936;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

49

## COUNT EIGHTEEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 10, 1998, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the

preparation and presentation to the Internal Revenue Service, of a United States

Individual Income Tax Return (Form 1040) of Taxpayers E and F for the calendar year

1997, which was false and fraudulent as to a material matter, in that the said return

stated that the total income (Line 22) was $130,375, whereas, as the defendants then

and there well knew and believed, the total income for Taxpayer E and F during 1997

was an amount substantially in excess of $130,375;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United

States Code, Section 2.



## COUNT NINETEEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about June 8, 1999, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI,
ROBERT W. HOPPER, and
WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers E and F for the calendar year 1998, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $155,505, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer E and F during 1998 was an amount substantially in excess of $155,505;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.



## COUNT TWENTY

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about October 9, 2000, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI, and
WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers E and F for the calendar year 1999, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $98,963, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer E and F during 1999 was an amount substantially in excess of $98,963;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.



## COUNT TWENTY-ONE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about October 12, 2000, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers G and H for the calendar year 1999, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $976,815, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer G and H during 1999 was an amount substantially in excess of $976,815;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT TWENTY-TWO

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about October 12, 2001, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI, and
WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers G and H for the calendar year 2000, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $539,947, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer G and H during 2000 was an amount substantially in excess of $539,947;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT TWENTY-THREE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about October 10, 2002, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI, and
> WILLIAM S. COVER,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayers G and H for the calendar year 2001, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $617,339, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer G and H during 2001 was an amount substantially in excess of $617,339;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.



## COUNT TWENTY-FOUR

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 5, 1998, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers I and J for the calendar year 1997, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was a loss of $1,724, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers I and J during 1997 was an amount substantially in excess of a loss of $1,724;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT TWENTY-FIVE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about March 30, 1999, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers I and J for the calendar year 1998, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $78,402, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers I and J during 1998 was an amount substantially in excess of $78,402;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT TWENTY-SIX

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 8, 2000, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI, and
TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers I and J for the calendar year 1999, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $155,551, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers I and J during 1999 was an amount substantially in excess of $155,551;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

58



## COUNT TWENTY-SEVEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about July 9, 1998, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayer K for the calendar year 1997, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $108,115, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer K during 1997 was an amount substantially in excess of $108,115;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT TWENTY-EIGHT

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about April 8, 1999, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI,
ROBERT W. HOPPER, and
TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of an amended United States Individual Income Tax Return (Form 1040X) of Taxpayer K for the calendar year 1997, which was false and fraudulent as to a material matter, in that the said return stated that the adjusted gross income (Line 1) was $108,115, whereas, as the defendants then and there well knew and believed, the adjusted gross income for Taxpayer K during 1997 was an amount substantially in excess of $108,115;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT TWENTY-NINE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about May 13, 1999, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayer K for the calendar year 1998, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $109,392, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer K during 1998 was an amount substantially in excess of $109,392;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.



## COUNT THIRTY

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about May 11, 2000, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a United States Individual Income Tax Return (Form 1040) of Taxpayer K for the calendar year 1999, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $68,799, whereas, as the defendants then and there well knew and believed, the total income for Taxpayer K during 1999 was an amount substantially in excess of $68,799;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT THIRTY-ONE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about April 2, 1998, in the Northern District of Illinois, Eastern Division,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> ROBERT W. HOPPER, and
> TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers L and M for the calendar year 1997, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $91,582, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers L and M during 1997 was an amount substantially in excess of $91,582;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

## COUNT THIRTY-TWO

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about April 10, 1999, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI,
ROBERT W. HOPPER, and
TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the

preparation and presentation to the Internal Revenue Service, of a joint United States

Individual Income Tax Return (Form 1040) of Taxpayers L and M for the calendar year

1998, which was false and fraudulent as to a material matter, in that the said return

stated that the total income (Line 22) was $54,759, whereas, as the defendants then

and there well knew and believed, the total income for Taxpayers L and M during 1998

was an amount substantially in excess of $54,759;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United

States Code, Section 2.

64

## COUNT THIRTY-THREE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about March 18, 1998, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI,
ROBERT W. HOPPER, and
TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers N and O for the calendar year 1997, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $24,223, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers N and O during 1997 was an amount substantially in excess of $24,223;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

65

## COUNT THIRTY-FOUR

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about March 26, 1999, in the Northern District of Illinois, Eastern Division,

MICHAEL A. VALLONE,
EDWARD B. BARTOLI,
ROBERT W. HOPPER, and
TIMOTHY SHAWN DUNN,

defendants herein, did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service, of a joint United States Individual Income Tax Return (Form 1040) of Taxpayers N and O for the calendar year 1998, which was false and fraudulent as to a material matter, in that the said return stated that the total income (Line 22) was $47,863, whereas, as the defendants then and there well knew and believed, the total income for Taxpayers N and O during 1998 was an amount substantially in excess of $47,863;

In violation of Title 26, United States Code, Section 7206(2), and Title 18, United States Code, Section 2.

66

## COUNT THIRTY-FIVE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.     During the calendar year 1997, defendant MICHAEL A. VALLONE, a resident of Orland Park, Illinois, had taxable income of at least $236,682.

2.     Upon this income, defendant MICHAEL A. VALLONE owed to the United States of America income tax of at least $85,774.

3.     By reason of this income, defendant MICHAEL A. VALLONE was required by law, following the close of the calendar year 1997 and on or before April 15, 1998, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.     From on or about January 1, 1997 to at least April 15, 1998, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MICHAEL A. VALLONE,

defendant herein, well knowing of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing him to the United States of America for the calendar year 1997 by failing to make said income tax return on or before April 15, 1998 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)     by causing the payment of personal income in 1997 of approximately $292,750, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

67

made payable not in defendant VALLONE's own name but made payable to the Vallone Asset Management Company;

 (b) by depositing or causing the deposit of his personal income checks from Aegis into two bank accounts with the First National Bank of Chicago in the name of the Vallone Asset Management Company, which accounts were under the control of defendant VALLONE;

 (c) by causing the payment of personal income in 1997 of approximately $17,506, in the form of Heritage America or Heritage Management Services checks from checking accounts at the First National Bank of Chicago located within the Northern District of Illinois, such checks made payable not in defendant VALLONE's own name but made payable to the Vallone Asset Management Company;

 (d) by depositing or causing the deposit of his personal income checks from Heritage America and Heritage Management Services into two bank accounts with the First National Bank of Chicago in the name of the Vallone Asset Management Company, which accounts were under the control of defendant VALLONE;

 (e) by using the diverted income deposited into the Vallone Asset Management Company accounts with the First National Bank of Chicago to pay for various personal expenditures;

 (f) by using credit cards issued by the Swiss American Bank in Antigua in the name of Regency Ventures Limited, to access the diverted personal income by making withdrawals of cash and making personal expenditures;

 (g) by mailing to the IRS, on or about April 17, 1998, a document stating, among other things, that defendant VALLONE did not believe that he received any

gross income in 1997, and that he earned gross receipts of only $47,192.70 in 1997

from "personal enterprises", which statements defendant VALLONE knew were false;

In violation of Title 26, United States Code, Section 7201.

## COUNT THIRTY-SIX

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.     During the calendar year 1998, defendant MICHAEL A. VALLONE, a resident of Orland Park, Illinois, had taxable income of at least $139,719.

2.     Upon this income, defendant MICHAEL A. VALLONE owed to the United States of America income tax of at least $48,714.

3.     By reason of this income, defendant MICHAEL A. VALLONE was required by law, following the close of the calendar year 1998 and on or before April 15, 1999, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.     From on or about January 1, 1998 to at least April 15, 1999, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL A. VALLONE,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1998 by failing to make said income tax return on or before April 15, 1999 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)     by causing the payment of personal income in 1998 of approximately $194,500, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

made payable not in defendant VALLONE's own name but made payable to the Vallone Asset Management Company;

(b)   by depositing or causing the deposit of his personal income checks from Aegis into two bank accounts with the First National Bank of Chicago in the name of the Vallone Asset Management Company, which accounts were under the control of defendant VALLONE;

(c)   by causing the payment of personal income in 1998 of approximately $8,500, in the form of Heritage America or Heritage Management Services checks from checking accounts at the First National Bank of Chicago located within the Northern District of Illinois, such checks made payable not in defendant VALLONE's own name but made payable to the Vallone Asset Management Company;

(d)   by depositing or causing the deposit of his personal income checks from Heritage America and Heritage Management Services into two bank accounts with the First National Bank of Chicago in the name of the Vallone Asset Management Company, which accounts were under the control of defendant VALLONE;

(e)   by using the diverted income deposited into the Vallone Asset Management Company accounts with the First National Bank of Chicago to pay for various personal expenditures;

(f)   by using credit cards issued by the Swiss American Bank in Antigua in the name of Regency Ventures Limited, to access the diverted personal income by making withdrawals of cash and making personal expenditures;

(g)   by mailing to the IRS, on or about April 12, 1999, a document stating, among other things, that defendant VALLONE did not believe that he received any

71

gross income in 1998, and that he earned gross receipts of only $35,821.34 in 1998

from "personal enterprises", which statements defendant VALLONE knew were false;

In violation of Title 26, United States Code, Section 7201.

## COUNT THIRTY-SEVEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.     During the calendar year 1999, defendant MICHAEL A. VALLONE, a resident of Orland Park, Illinois, had taxable income of at least $136,407.

2.     Upon this income, defendant MICHAEL A. VALLONE owed to the United States of America income tax of at least $54,976.

3.     By reason of this income, defendant MICHAEL A. VALLONE was required by law, following the close of the calendar year 1999 and on or before April 17, 2000, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.     From on or about January 1, 1999 to at least April 17, 2000, in the Northern District of Illinois, Eastern Division, and elsewhere,

MICHAEL A. VALLONE,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1999 by failing to make said income tax return on or before April 17, 2000 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)     by causing the payment of personal income in 1999 of approximately $191,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

73

made payable not in defendant VALLONE's own name but made payable to the Vallone Asset Management Company;

(b)     by depositing or causing the deposit of his personal income checks from Aegis into two bank accounts with the First National Bank of Chicago in the name of the Vallone Asset Management Company, which accounts were under the control of defendant VALLONE;

(c)     by using the diverted income deposited into the Vallone Asset Management Company accounts with the First National Bank of Chicago to pay for various personal expenditures;

(d)     by transferring or causing to be transferred personal income from the Vallone Asset Management Company bank accounts with the First National Bank of Chicago into two foreign bank accounts with the Global Bank of Commerce (also known as Swiss American Bank) in Antigua under the names of Regency Ventures Limited, as Trustee of MTV Global Trust, and Regency Ventures Limited, as Trustee of MTV International Trust, which foreign accounts were under the control of defendant VALLONE;

(e)     by using credit cards issued by the Swiss American Bank in Antigua in the name of Regency Ventures Limited, to access the diverted personal income by making withdrawals of cash and making personal expenditures;

(f)     by mailing to the IRS, on or about April 11, 2000, a document stating, among other things, that defendant VALLONE did not believe that he received any

gross income in 1999, and that he earned gross receipts of only $34,751.39 in 1999 from "personal enterprises", which statements defendant VALLONE knew were false;

In violation of Title 26, United States Code, Section 7201.

## COUNT THIRTY-EIGHT

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    During the calendar year 1997, defendant EDWARD B. BARTOLI, a resident of Ohio and then South Carolina, had taxable income of at least $321,449.

2.    Upon this income, defendant EDWARD B. BARTOLI owed to the United States of America income tax of at least $131,344.

3.    By reason of this income, defendant EDWARD B. BARTOLI was required by law, following the close of the calendar year 1997 and on or before April 15, 1998, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.    From on or about January 1, 1997 to at least April 15, 1998, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD B. BARTOLI,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1997 by failing to make said income tax return on or before April 15, 1998 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)    by causing the payment of personal income in 1997 of approximately $170,700, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

made payable not in defendant BARTOLI's own name but made payable to the Equine Trust;

(b) by depositing or causing the deposit of his personal income checks from Aegis not into his own personal bank account but into a bank account with the Orland State Bank located in Orland Park, Illinois, in the name of the Equine Trust, which account was under the control of defendant BARTOLI;

(c) by regularly withdrawing cash in the Northern District of Illinois by using an ATM card from his Equine Trust bank account with the Orland State Bank;

(d) by using the funds in the Equine Trust bank account with the Orland State Bank to pay family members and to make personal expenditures;

(e) by causing the payment of personal income in 1997 of approximately $130,000, in the form of checks from the Athens Company ("Athens"), such checks made payable not in defendant BARTOLI's own name but made payable to Sared or Sared Company Ltd.;

(f) by depositing or causing the deposit of certain personal income checks from Athens not into his own personal bank account but into a bank account with Key Bank in Ohio in the name of Sared Company Ltd.; and

(g) by using the funds in the Sared Company Ltd. bank account with Key Bank to make personal expenditures;

In violation of Title 26, United States Code, Section 7201.

## COUNT THIRTY-NINE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    During the calendar year 1998, defendant EDWARD B. BARTOLI, a resident of South Carolina, had taxable income of at least $130,691.

2.    Upon this income, defendant EDWARD B. BARTOLI owed to the United States of America income tax of at least $50,980.

3.    By reason of this income, defendant EDWARD B. BARTOLI was required by law, following the close of the calendar year 1998 and on or before April 15, 1999, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.    From on or about January 1, 1998 to at least April 15, 1999, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD B. BARTOLI,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1998 by failing to make said income tax return on or before April 15, 1999 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)    by causing the payment of personal income in 1998 of approximately $90,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

made payable not in defendant BARTOLI's own name but made payable to the Equine Trust;

(b)   by depositing or causing the deposit of his personal income checks from Aegis not into his own personal bank account but into a bank account with the First Union Bank headquartered in Charlotte, North Carolina, in the name of the Equine Trust, which account was under the control of defendant BARTOLI;

(c)   by using the funds in the Equine Trust bank account with the First Union Bank to pay family members and to make personal expenditures;

(d)   by withdrawing cash by using an ATM card from his Equine Trust bank account with the First Union Bank, including one withdrawal occurring in the Northern District of Illinois;

(e)   by causing the payment of personal income in 1997 of approximately $40,000, in the form of checks from Athens, such checks made payable not in defendant BARTOLI's own name but made payable to Sared Company Ltd.;

(f)   by depositing or causing the deposit of his personal income checks from Athens not into his own personal bank account but into a bank account with Key Bank in Ohio in the name of Sared Company Ltd.;

(g)   by withdrawing cash by using an ATM card from his Sared Company Ltd. bank account with Key Bank, including withdrawals occurring within the Northern District of Illinois;

(h)   by causing the payment of personal income in 1998 of approximately $4,500, in the form of Heritage America checks, such checks made payable not in defendant BARTOLI's own name but made payable to the Equine Trust; and

(i)     by depositing or causing the deposit of his personal income checks from Heritage America not into his own personal bank account but into a bank account with First Union Bank in the name of Equine Trust;

In violation of Title 26, United States Code, Section 7201.



## COUNT FORTY

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    During the calendar year 1999, defendant EDWARD B. BARTOLI, a resident of South Carolina, had taxable income of at least $80,477.

2.    Upon this income, defendant EDWARD B. BARTOLI owed to the United States of America income tax of at least $31,980.

3.    By reason of this income, defendant EDWARD B. BARTOLI was required by law, following the close of the calendar year 1999 and on or before April 17, 2000, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.    From on or about January 1, 1999 to at least April 17, 2000, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD B. BARTOLI,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1999 by failing to make said income tax return on or before April 17, 2000 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)    by causing the payment of personal income in 1999 of approximately $87,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

made payable not in defendant BARTOLI's own name but made payable to the Equine Trust;

(b)     by depositing or causing the deposit of approximately $33,000 in personal income checks from Aegis not into his own personal bank account but into a bank account with the First Union Bank in the name of the Equine Trust, which account was under the control of defendant BARTOLI;

(c)     by depositing or causing the deposit of approximately $54,000 in personal income checks from Aegis made payable to Equine Trust into a mutual fund account managed by Weiss Company of New York, New York, which account was owned by defendant BARTOLI;

(d)     by withdrawing cash by using an ATM card from his Equine Trust bank account with the First Union Bank;

(e)     by using the funds in the Equine Trust bank account with the First Union Bank to make personal expenditures;

(f)     by opening two bank accounts at Swiss America Bank in Antigua in the name of Sared Company Ltd., using the services of an Aegis employee located within the Northern District of Illinois; and

(g)     by applying for a credit card linked to the two offshore bank accounts at Swiss America Bank in Antigua in the name of Sared Company Ltd., using the services of an Aegis employee located within the Northern District of Illinois;

In violation of Title 26, United States Code, Section 7201.

82

## COUNT FORTY-ONE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.     During the calendar year 2000, defendant EDWARD B. BARTOLI, a resident of South Carolina, had taxable income of at least $34,455.

2.     Upon this income, defendant EDWARD B. BARTOLI owed to the United States of America income tax of at least $12,172.

3.     By reason of this income, defendant EDWARD B. BARTOLI was required by law, following the close of the calendar year 2000 and on or before April 16, 2001, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.     From on or about January 1, 2000 to at least April 16, 2001, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD B. BARTOLI,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 2000 by failing to make said income tax return on or before April 16, 2001 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)     by causing the payment of personal income in 2000 of approximately $12,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

83

made payable not in defendant BARTOLI's own name but made payable to the Equine Trust;

     (b)    by depositing or causing the deposit of his personal income checks from Aegis into a mutual fund account managed by Weiss Company of New York, New York, which account was owned by defendant BARTOLI; and

     (c)    by closing his mutual fund account managed by Weiss Company of New York, New York, through a wire transfer of $6,731 on or about April 7, 2000;

     In violation of Title 26, United States Code, Section 7201.

## COUNT FORTY-TWO

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.      During the calendar year 1997, defendant ROBERT W. HOPPER, then a resident of Palos Hills, Illinois, had taxable income of at least $296,762.

2.      Upon this income, defendant ROBERT W. HOPPER owed to the United States of America income tax of at least $108,834.

3.      By reason of this income, defendant ROBERT W. HOPPER was required by law, following the close of the calendar year 1997 and on or before April 15, 1998, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.      From on or about January 1, 1997 to at least April 15, 1998, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT W. HOPPER,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1997 by failing to make said income tax return on or before April 15, 1998 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)      by causing the payment of personal income in 1997 of approximately $305,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

85

made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

(b)     by depositing or causing the deposit of his personal income checks from Aegis not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER;

(c)     by causing the payment of personal income in 1997 of approximately $23,700, in the form of Heritage America or Heritage Management Services checks from checking accounts at the First National Bank of Chicago located within the Northern District of Illinois, such checks made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

(d)     by depositing or causing the deposit of his personal income checks from Heritage America and Heritage Management Services not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER; and

(e)     by using the Hopper Asset Management Company checking account to acquire assets such as a home satellite dish and to pay for personal expenditures such as mortgage payments, credit card charges and utility bills;

In violation of Title 26, United States Code, Section 7201.

## COUNT FORTY-THREE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    During the calendar year 1998, defendant ROBERT W. HOPPER, then a resident of Palos Hills, Illinois, had taxable income of at least $210,058.

2.    Upon this income, defendant ROBERT W. HOPPER owed to the United States of America income tax of at least $74,525.

3.    By reason of this income, defendant ROBERT W. HOPPER was required by law, following the close of the calendar year 1998 and on or before April 15, 1999, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.    From on or about January 1, 1998 to at least April 15, 1999, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ROBERT W. HOPPER,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1998 by failing to make said income tax return on or before April 15, 1999 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)    by causing the payment of personal income in 1998 of approximately $199,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks



made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

(b)     by depositing or causing the deposit of his personal income checks from Aegis not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER;

(c)     by causing the payment of personal income in 1998 of approximately $52,000, in the form of Heritage America or Heritage Management Services checks from checking accounts at the First National Bank of Chicago located within the Northern District of Illinois, such checks made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

(d)     by depositing or causing the deposit of his personal income checks from Heritage America and Heritage Management Services not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER; and

(e)     by using the Hopper Asset Management Company checking account to pay for personal expenditures such as mortgage payments, credit card charges and home improvements including a fireplace installation;

In violation of Title 26, United States Code, Section 7201.

## COUNT FORTY-FOUR

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.     During the calendar year 1999, defendant ROBERT W. HOPPER, then a resident of Palos Hills, Illinois, had taxable income of at least $159,634.

2.     Upon this income, defendant ROBERT W. HOPPER owed to the United States of America income tax of at least $55,469.

3.     By reason of this income, defendant ROBERT W. HOPPER was required by law, following the close of the calendar year 1999 and on or before April 17, 2000, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.     From on or about January 1, 1999 to at least April 17, 2000, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT W. HOPPER,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1999 by failing to make said income tax return on or before April 17, 2000 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)     by causing the payment of personal income in 1999 of approximately $191,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

     (b)    by depositing or causing the deposit of his personal income checks from Aegis not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER;

     (c)    by causing the payment of personal income in 1999 of approximately $17,000, in the form of Heritage America checks from a checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

     (d)    by depositing or causing the deposit of his personal income checks from Heritage America not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER; and

     (e)    by using the Hopper Asset Management Company checking account to pay for personal expenditures such as mortgage payments, utility bills and cable bills;

In violation of Title 26, United States Code, Section 7201.

## COUNT FORTY-FIVE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    During the calendar year 2000, defendant ROBERT W. HOPPER, then a resident of Palos Hills, Illinois, had taxable income of at least $12,299.

2.    Upon this income, defendant ROBERT W. HOPPER owed to the United States of America income tax of at least $10,799.

3.    By reason of this income, defendant ROBERT W. HOPPER was required by law, following the close of the calendar year 2000 and on or before April 16, 2001, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

4.    From on or about January 1, 2000 to at least April 16, 2001, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ROBERT W. HOPPER,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 2000 by failing to make said income tax return on or before April 16, 2001 to the Internal Revenue Service and by failing to pay said income tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)    by causing the payment of personal income in 2000 of approximately $61,000, in the form of Aegis checks from the Aegis checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks

made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

(b)     by depositing or causing the deposit of his personal income checks from Aegis not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER;

(c)     by causing the payment of personal income in 2000 of approximately $2,400, in the form of Heritage America checks from a checking account at the First National Bank of Chicago located within the Northern District of Illinois, such checks made payable not in defendant HOPPER's own name but made payable to the Hopper Asset Management Company or to Hopper Asset Management;

(d)     by depositing or causing the deposit of his personal income checks from Heritage America not into his own personal bank account but into a checking account with the First National Bank of Chicago in the name of the Hopper Asset Management Company, which account was under the control of defendant HOPPER; and

(e)     by using the Hopper Asset Management Company checking account to pay for personal expenditures such as mortgage payments, credit card charges and utility bills;

In violation of Title 26, United States Code, Section 7201.



## COUNT FORTY-SIX

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about July 1, 1998, in the Northern District of Illinois, Eastern Division, and elsewhere,

### TIMOTHY SHAWN DUNN,

defendant herein, a resident of Chesterton, Indiana, whose tax return preparer was located in the Northern District of Illinois and who during the calendar year 1997 was single, did willfully make and subscribe a United States Individual Income Tax Return (Form 1040) for the calendar year 1997, on behalf of himself, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that the said return stated that defendant's total income (Line 22) was $16,062, whereas, as the defendant then and there well knew and believed, his total income during 1997 was an amount substantially in excess of $16,062;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FORTY-SEVEN

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about April 20, 1999, in the Northern District of Illinois, Eastern Division, and elsewhere,

### TIMOTHY SHAWN DUNN,

defendant herein, a resident of Chesterton, Indiana, whose tax return preparer was located in the Northern District of Illinois and who during the calendar year 1998 was single, did willfully make and subscribe a United States Individual Income Tax Return (Form 1040) for the calendar year 1998, on behalf of himself, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that the said return stated that defendant's total income (Line 22) was $9,169, whereas, as the defendant then and there well knew and believed, his total income during 1998 was an amount substantially in excess of $9,169;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FORTY-EIGHT

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    During the calendar year 1999, defendant TIMOTHY SHAWN DUNN was the 100% owner of Moneyfacts, Inc., a Form 1120S corporation.

2.    Under the Internal Revenue laws, the 100% owner of a Form 1120S corporation is required to report all of the corporation's income for a particular year on his personal income tax return (Form 1040) for the same year.

3.    During the calendar year 1999, defendant TIMOTHY SHAWN DUNN, a resident of Chesterton, Indiana whose tax return preparer was located in the Northern District of Illinois, had taxable income of at least $159,317.

4.    Upon this income, defendant TIMOTHY SHAWN DUNN owed to the United States of America income tax of at least $59,303.

5.    By reason of this income, defendant TIMOTHY SHAWN DUNN was required by law, following the close of the calendar year 1999 and on or before April 17, 2000, to make an income tax return to the Internal Revenue Service and to pay the income tax due and owing thereon.

6.    From on or about January 1, 1999 to at least April 17, 2000, in the Northern District of Illinois, Eastern Division, and elsewhere,

### TIMOTHY SHAWN DUNN,

defendant herein, well knowing all of the foregoing facts, willfully attempted to evade and defeat the substantial income tax due and owing by him to the United States of America for the calendar year 1999 by failing to make said income tax return on or before April 17, 2000 to the Internal Revenue Service and by failing to pay said income

tax due and owing to the Internal Revenue Service and by committing one or more of the following acts:

(a)     by reporting false "management fees" of approximately $95,000 of the $118,000 deduction on his corporate income tax return (Form 1120S) for 1999 for Moneyfacts, Inc., which return was prepared in the Northern District of Illinois and which understated the true ordinary income of his Form 1120S corporation;

(b)     by diverting at least $33,000 of personal income through a false deduction labeled "contract services" on defendant DUNN's trust income tax return (Form 1041) for 1999 for the Aegis Management Trust, which return was prepared in the Northern District of Illinois;

(c)     by diverting personal income from the HFS Bank account in the name of the Dunn Asset Management Trust, which defendant DUNN controlled, to foreign bank accounts at Swiss America Bank in Antigua, also controlled by defendant DUNN; and

(d)     by using a credit card related to these foreign bank accounts to make ATM cash withdrawals in the Northern District of Illinois and elsewhere and to make personal expenditures;

In violation of Title 26, United States Code, Section 7201.



## COUNT FORTY-NINE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 17, 1998, in the Northern District of Illinois, Eastern Division,

### WILLIAM S. COVER,

defendant herein, a resident of Bolingbrook, Illinois, who during the calendar year 1997 was married, did willfully make and subscribe a joint United States Individual Income Tax Return (Form 1040) for the calendar year 1997, on behalf of himself and his wife, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that the said return stated that the total income (Line 22) was $30,783, whereas, as the defendant then and there well knew and believed, the total income for the defendant and his wife during 1997 was an amount substantially in excess of $30,783;

In violation of Title 26, United States Code, Section 7206(1).

97



## COUNT FIFTY

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 16, 1999, in the Northern District of Illinois, Eastern Division,

### WILLIAM S. COVER,

defendant herein, a resident of Bolingbrook, Illinois, who during the calendar year 1998 was married, did willfully make and subscribe a joint United States Individual Income Tax Return (Form 1040) for the calendar year 1998, on behalf of himself and his wife, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that the said return stated that the total income (Line 22) was $30,192, whereas, as the defendant then and there well knew and believed, the total income for the defendant and his wife during 1998 was an amount substantially in excess of $30,192;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FIFTY-ONE

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

On or about August 18, 2000, in the Northern District of Illinois, Eastern Division,

### WILLIAM S. COVER,

defendant herein, a resident of Naperville, Illinois, who during the calendar year 1999 was married, did willfully make and subscribe a joint United States Individual Income Tax Return (Form 1040) for the calendar year 1999, on behalf of himself and his wife, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that the said return stated that the total income (Line 22) was $34,808, whereas, as the defendant then and there well knew and believed, the total income for the defendant and his wife during 1999 was an amount substantially in excess of $34,808;

In violation of Title 26, United States Code, Section 7206(1).

99

## FORFEITURE ALLEGATIONS

The SPECIAL NOVEMBER 2002 GRAND JURY further charges:

1.    The Grand Jury realleges Counts Five through Ten of this Indictment for the purpose of alleging that certain property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.    As a result of the offenses charged in Counts Five through Ten of this Indictment, alleging violations of Title 18, United States Code, Sections 1341 and 1343,

> MICHAEL A. VALLONE,
> EDWARD B. BARTOLI,
> TIMOTHY SHAWN DUNN, and
> WILLIAM S. COVER,

defendants herein, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, involved in such offenses, and all property that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to the following:

a.    approximately $4,125,000 in United States currency, in that such sum in the aggregate was received as a result of the offenses charged in Counts Five through Ten of this Indictment;

b.    as to defendant MICHAEL A. VALLONE:  real property commonly known as 11901 Brookshire Drive; Orland Park, Illinois;

     c.    as to defendant TIMOTHY SHAWN DUNN:

        (1)    real property commonly known as Lot 1D located at the intersection of Sand Creek Drive and Ahrens Avenue in Chesterton, Porter County, Indiana;

        (2)    real property commonly known as 1651 Hogan Avenue, Chesterton, Porter County, Indiana;

        (3)    real property commonly known as 2834 45th Street, Highland, Indiana;

        (4)    three Lincoln limousines (VINs 1L1FM81W2XY664714, 1L1FM81W7XY678155, and 1L1FM81W9XY667903) owned by Dunn Vehicle Co., doing business as DLS Limousine Service, 9889 Santa Monica Boulevard, Beverly Hills, California;

        (5)    one 1986 Lotus Esprit Coupe (VIN SCCFC20A6GHF60785); and

     d.    as to defendant WILLIAM S. COVER:  real property commonly known as 11 S 467 Whittington Lane; Naperville, Illinois;

    3.    If, as a result of any act or omission by the defendants, any of the forfeitable property described above:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the Court;

     d.    has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided

without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28,

United States Code, Section 2461(c).


A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

No.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

vs.

MICHAEL VALLONE, et al.

INDICTMENT

Violations: Title 18, United States
Code, Sections 2, 371, 1341
and 1343; Title 26, United
States Code, Sections 7201,
7206(1), and 7206(2)

A true bill:

_____
Foreman

Filed in open court this 8th day of April _____, A.D. 2004

MICHAEL W. DOBBINS

_____
Clerk

Bail, $ _____

PC 880.320