**E-FILED**
Tuesday, 12 July, 2005  04:30:24 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA,

v.                                          Case No.   CR 04-20031

DENNY R. PATRIDGE

<u>DEFENDANT'S **MEMORANDUM** IN SUPPORT OF
DEFENDANT'S MOTION FOR ORDER OF DISMISSAL OF INDICTMENT
IN COUNTS 2, 3, 4, 5, 6, AND 7 PURSUANT TO 26 U.S.C. §7201 FOR
VIOLATING CONSTITUTION,  AND IN THE ALTERNATIVE, MOTION FOR
JUDGMENT OF ACQUITTAL, AND IN THE ALTERNATIVE, TO SET ASIDE
THE VERDICT AS TO COUNTS 2, 3, 4, 5, 6, AND 7 FOR INSUFFICIENT
EVIDENCE,  AND IN THE ALTERNATIVE, MOTION FOR ORDER OF NEW
TRIAL,  AND FINALLY, FOR ORDER OF DISMISSAL OF INDICTMENT
AND VERDICT UPON RULE OF LENITY GROUNDS</u>

The Defendant, by and through his attorney, Jerold Barringer, files this

Memorandum in Support of his Motion for an Order pursuant to Fed. Rules of

Crim. Pr. 12(b)(3)(B) for (1)  dismissing Counts 2, 3, pursuant to 26 U.S.C. §7201

violating the Constitution of the United States of America as being vague and

ambiguous, and (2) dismissing Counts 4, 5, 6 and 7 for the same reason they are as

a matter of law relying upon Counts 2 (and 3); in the alternative, pursuant to Fed.

Rules of Crim. Pr. 29 for (3) Motion to Order  Judgment of Acquittal as to Counts

2, 4, 5, 6 and 7, and in the alternative, (4) Motion to Order  Judgment of Acquittal

1

as to Count 3; and in the alternative, (5) Motion to Order for Judgment of

Acquittal as to Counts 6 and 7; (6) the setting aside the Jury's Verdict regarding

Counts 2, 3, 4, 5, 6 and 7, and dismissing the charges for insufficient evidence

grounds, and in the alternative, pursuant to Fed. Rules of Crim. Pr. 33 for (7)

Motion for Order of New Trial, and finally, in the alternative, (8) Motion to

Dismiss Counts 2, 3, 4, 5, 6 and 7 both as to the indictment and the Juries Verdict

based upon the Rule of Lenity.


## QUESTIONS PRESENTED

1.    WHETHER 26 U.S.C. §7201 REGARDING THE PHRASE "ATTEMPT IN
      ANY MANNER TO EVADE OR DEFEAT" IS
      UNCONSTITUTIONALLY VAGUE AND AMBIGUOUS?

2.    WHETHER COUNTS 2 AND 3 SHOULD BE DISMISSED BY THIS
      COURT BASED UPON SECTION 7201 BEING
      UNCONSTITUTIONALLY VAGUE AND AMBIGUOUS?  And if so,

      a.    WHETHER COUNTS 4, 5, 6 AND 7 SHOULD BE DISMISSED AS
            THEY RELY UPON COUNT 2 AND COUNT 2 SHOULD BE
            DISMISSED FOR BEING UNCONSTITUTIONALLY VAGUE
            AND AMBIGUOUS?

3.    WHETHER THIS COURT SHOULD DIRECT JUDGMENT OF
      ACQUITTAL AS TO COUNTS 2, 4, 5, 6 AND 7 ON GROUNDS THE
      GOVERNMENT ENTERED NO EVIDENCE FROM WHICH THE JURY
      COULD ASCERTAIN THE ELEMENT IN COUNT TWO THAT
      DEFENDANT OWED OR HAD DUE ANY AMOUNT OF TAXES TO
      THE UNITED STATES FOR CALENDER YEARS 1996 AND 1997?

2

4.    WHETHER THIS COURT SHOULD DIRECT JUDGMENT OF
ACQUITTAL AS TO COUNT 3, AS THE GOVERNMENT FAILED TO
ESTABLISH ANY EVIDENCE THE DEFENDANT WAS REQUIRED TO
FILE ANY TAX RETURN FOR CALENDER YEAR 1999?

5.    WHETHER THIS COURT SHOULD DIRECT JUDGMENT OF
ACQUITTAL AS TO COUNTS 6 AND 7 AS NO EVIDENCE WAS
ENTERED THAT ANY ILL-GOTTEN GAINS WERE RECEIVED BY
THE DEFENDANT NOR THAT ANY GAINS WERE DERIVED FROM
A FEDERAL OR STATE CRIME?

6.    WHETHER THE GOVERNMENT ENTERED EVIDENCE TO SUSTAIN
THE JURY VERDICT AS TO EACH ELEMENT OF THE CRIMES
ALLEGED IN THE INDICTMENT?

7.    WHETHER THE COURT SHOULD GRANT THE DEFENDANT A NEW
TRIAL SINCE THE JURY WAS INCORRECTLY INSTRUCTED ON
THE LAW AND ELEMENTS OF THE CRIMES ALLEGED IN THE
INDICTMENT?

8.    WHETHER THE COURT SHOULD SET ASIDE THE JURY VERDICT
AND DISMISS THE REMAINING PARTS OF THE INDICTMENT ON
APPLICATION OF THE RULE OF LENITY GROUNDS?

## BACKGROUND

On September 1, 2004, the Grand Jury tendered the Government a

superceding indictment alleging 7 Counts including the filing of a false tax return

in Count 1, Tax Evasion of the Payment of Taxes in Count 2, Tax Evasion of the

assessment of taxes in Count 3, Wire Fraud in Counts 4 and 5 and Money

Laundering in Counts 6 and 7.   At all times the Defendant has maintained the

indictment failed to allege an offense under section 7201 regarding Counts 2,3,4,5

6 and 7.

At the close of the trial the Court's Jury Instructions were read to the Jury

by the Court.   At all times pertaining to these instructions the Defendant

maintained objection to specific instructions and the Court has so duly noted on

the record.

The Court told the Jury that "Your second duty is to apply the law that I

give you to the facts."   *Court's Instruction # 1*   The Court also referred to the

"offenses" in Court's Instruction # 8 as "tax evasion".   Instruction # 20 directed

the Jury that "to sustain a charge of attempting to *evade or defeat* the defendant's

individual tax, as charged in Count Two...."   This instruction was also objected to

by the Defendant as it did not spell out the elements of a section 7201 offense.

This instruction also instructed the third element was to be in "furtherance of the

intent to evade tax or payment of the tax".

The same error in construction of what the law commands was inherent

within the Court's Instruction regarding Count 3's instruction.  *See Court's*

*Instruction # 21*

Over the Defendant's objection to the Court's Instruction # 22, the Court

instructed the jury that:

> The term "willfully", as used in Counts Two and Three of the
> superceding indictment, means the voluntary and intentional violation
> of a known legal duty, in other words, acting with the specific intent
> to ***avoid*** paying a tax imposed by the income tax laws or to ***avoid***
> assessment of a tax that is was the legal duty of the Defendant to pay
> to the government, and that the Defendant knew it was his legal duty
> to pay.

The Jury was tendered the case by the Court at 2:20 pm on June 29, 2005,

with 64 pages of instructions.    The District Court chose not to read the

indictment to the jury disclosing later that it thought either the Government or the

Defendant would have used the indictment in their closing arguments.

At 3:45 pm on June 29, 2005, the Jury sent the Court a request which read

"We would like the legal definition of the words 'AVOID' AND 'EVADE'.   This

request was signed by the Jury Foreman.

At 4:10 pm on June 29, 2005, the Court held a hearing outside the presence

of the jury informing the Government and the Defendant that it would be giving

the definition of "tax avoidance" and "tax evasion" to the Jury from Black's Law,

7th Edition.   The Court asked the Government and the Defendant if there was any

5

objection to the definition of these two phrases and neither side objected.

The Jury decided to go home at 4:30 and begin deliberations the following day at 9:00 am, June 30, 2005.

The Jury arrived at 9:00 am and by 11:30 they had informed the Court they had reached a verdict on all counts.

At 1:15 pm, June 30, 2005, the Court received and announced in open Court the Jury's Verdict of Not Guilty on Count 1 and Guilty on Counts 2,3,4,5,6 and 7.


<u>ARGUMENT AND AUTHORITY</u>

**1.   THE PHRASE "ATTEMPTS IN ANY MANNER TO EVADE OR DEFEAT" CONTAINED IN 26 U.S.C. § 7201 IS UNCONSTITUTIONALLY VAGUE AND AMBIGUOUS.**


26 U.S.C. section 7201 says "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title, or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, ....." Congress labeled this section "**Attempt to evade or defeat tax**".   There is no mention of the word "avoid" in section 7201.

As noted above, the Court directed the Jury as to the Evasion charges in Counts 2 and 3 that the element of willfulness meant:

6

The term "willfully", as used in Counts Two and Three of the superceding indictment, means the voluntary and intentional violation of a known legal duty, in other words, acting with the specific intent to ***avoid*** paying a tax imposed by the income tax laws or to ***avoid*** assessment of a tax that is was the legal duty of the Defendant to pay to the government, and that the Defendant knew it was his legal duty to pay.

There is no question that the Defendant objected to this instruction as well as the previous instruction offered by the Government during the original proposal time period in April, 2005. This instruction comes from page 345 of the 7th Circuit Pattern Jury Instructions and clearly ignores the holding by the Supreme Court in its *Cheek* decision.

A jury charge must be read as a whole. *Stewart v. Israel*, 738 F.2d 889, 892 (7th Cir. 1984). It is very clear that this Court's instructions confused the Jury regarding the difference between the meaning of the word "avoid" and "evade". As noted above, this Court directed the Jury to follow its instructions on the law and then this Court gave those instructions with regard to both instructions relying upon the word "evade" and "avoid" to instruct on the law. When the Court gave its answer to the Jury on what the "legal meaning" of the word "AVOID" AND "EVADE" was this Court was unclear as to how the Jury became confused

regarding the term "avoid".   It even presumed that a Juror with a PHD had

something to do with the debate on these two words and how they applied to the

instructions the Court gave.

"As has been held by this [Supreme] Court, the elements of § 7201 are

willfulness; the existence of a tax deficiency, *Lawn v. United States*, 355 U.S. 339,

361; *Spies v. United States*, 317 U.S. 492, at 496; and an affirmative act

constituting an evasion or attempted evasion of the tax, *Spies v. United States*,

supra."   Section 7201 is the "capstone of a system of sanctions which singly or in

combination were calculated to induce prompt and forthright fulfillment of every

duty under the income tax law and to provide a penalty suitable to every degree of

delinquency." *Sansone v. U.S.*, 380 U.S. 343, 350-351 (1965)

While "we start with the plain meaning of the statute, this court must also

weigh the IRS's duty to see that the tax laws are faithfully executed and

administered (and their ability to quickly and inexpensively do so) with the policy

of ensuring that criminal laws are strictly construed so as to give proper notice of

the unlawfulness of the activity and the reach of the statute. On the one hand,

courts should not limit a statute in such a way that prevents its purpose, but on the

other hand, courts should be mindful not to criminalize activity that is not

specifically proscribed by statute, however annoying it may be." *U.S. v. Kassouf*, 144 F.3d 952, 955 (6th Cir. 1998)

There is a "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime." Id., at 350; see id., at 350-352 (discussing, inter alia, *United States v. Harriss*, 347 U.S. 612 (1954), *Lanzetta v. New Jersey*, 306 U.S. 451 (1939), and *Connally v. General Constr. Co.*, 269 U.S. 385 (1926))

"We thus begin with the plain language of the statute itself, *Bread Political Action Committee v. FEC*, 455 U.S. 577, 580 (1982); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *United States v. Caldwell*, 49 F.3d 251, 251 (6th Cir. 1995), and absent an ambiguity interpret it according to that language unless there is evidence of Congress's contrary intent. *United States v. Apfelbaum*, 445 U.S. 115, 121 (1980); *Nixon v. Kent County*, 76 F.3d 1381, 1386 (6th Cir. 1996)

Moreover, it is a well settled canon of statutory construction that courts will presume that Congress knew of the prevailing law when it enacted the statute. See *International Union, Local 737 v. Auto Glass Employees Federal Credit Union*, 72 F.3d 1243, 1248 (6th Cir. 1996); see also *United States v. Jordan*, 915 F.2d 622, 628 (11th Cir. 1990) ("Under accepted rules of statutory construction, it is

generally presumed that Congress, in drafting legislation, is aware of well established judicial constructions of other pertinent existing statutes.") (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988)); *Hill v. Chemical Bank*, 799 F. Supp. 948, 952 (D. Minn. 1992) ("Congress is presumed to be aware of judicial interpretations of statutory language when it intentionally incorporates the language of one statute into another statute.").  See *Kassouf*, 144 F.3d @ 957

The Supreme Court directs the District Court should "interpret statutes that impose criminal liability narrowly to ensure proper notice to the accused." See *U.S. v. Aguilar*, 515 U.S. 593 at 600 (noting that courts traditionally exercise restraint in assessing the reach of a federal criminal statute "out of concern that `a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'") (citation omitted); see also *Federal Maritime Comm'n v. Seatrain Lines, Inc*., 411 U.S. 726, 733-34 (1973); *United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993) (noting that statutes must be specific enough to give reasonable and fair notice to warn people to **avoid** conduct with criminal consequences).

Where statutory language is not expressly defined, that language should be given its common meaning. *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n*, 481

10

U.S. 454, 461 (1987).  An act is done "willfully' if done voluntarily and purposely with the specific intent to do that ***which the law forbids***; that is to say, with ***bad purpose either to disobey or to disregard the law***. Willfulness includes an evil motive. *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

Generally, the plain meaning of a statute controls, "except in the `rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (alteration in original) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)

Since "willfulness" was an essential ingredient in the crime charged, we think that the jury was entitled to have the meaning of the word "willful" explained. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). True, the District Judge told the jury, in effect, that the word "knowingly" meant wrongful act, but we do not believe this was an adequate definition of either the word "knowingly" or "willfully." The question directed to the District Judge indicates strongly that the jury was interested in knowing what constituted

willful intent.  The Sixth Circuit reasoned that "[I]n our opinion the failure of the District Judge to adequately explain to the jury the meaning of the word "willfulness" was plain error within Federal Rules of Criminal Procedure 52(b). *Screws v. United States*, supra.

Tax Court has construed the term "evade" with the requirement "to a finding of fraud."  See *Merritt v. Commissioner*, 301 F.2d 484, 487 (5th Cir. 1962); *Cefalu v. Commissioner*, 276 F.2d 122, 129 (5th Cir. 1960); *Korecky v. Commissioner*, 781 F.2d at 1568.  Furthermore, the term "subterfuge" has a well-understood meaning that relies upon both the words "avoid and evade" in its  Merriam Webster's New Third International Dictionary definition (a deception by artifice or a stratagem to conceal, escape, avoid or evade).  See *Leonard F.  v. Israel Discount Bank of New York*, 199 F.3d 99, 105 (2nd Cir. 1999)

"[A] transaction, otherwise within an exception of the tax law, does not lose its immunity because it is actuated by a **desire to avoid**, or, if one choose, to evade, taxation.  Anyone may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes.  Therefore, if what was done here was what was intended by [the statute], it is of no

consequence that it was all an elaborate scheme to get rid of [estate] taxes, as it certainly was." *U.S. v. Carlton*, 512 U.S. 26, 36 (1994); *Helvering v. Gregory*, 69 F.2d 809, 810 (CA2  1934) (citations omitted), aff'd, 293 U.S. 465 (1935).

The Supreme Court, in not accepting the Government's suggestions regarding the meaning and application of the word "make"involving the argument that  "complete-parts kits must be taxable because otherwise manufacturers will be able to "avoid the tax" conclude that such kits are within the definition of the taxable item and thus failure to pay the tax "on such a kit thus would amount to **evasion**, not ***avoidance***." "In our system, ***avoidance*** of a tax by ***remaining outside the ambit of the law that imposes it is every person's right***. 'Over and over again, courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions. To demand more in the name of morals is mere cant.'" *Commissioner v. Newman*, 159 F.2d 848, 850-851 (CA2) (L. Hand, J., dissenting), cert. denied, 331 U.S. 859 (1947).

### A.    THE TERM "EVADE" ALLEGED UNDER SECTION 7201 IS UNCONSTITUTIONALLY VAGUE AND AMBIGUOUS.

13

First, there is not one single case ever which defines the most important terms in section 7201.  That word being "evade" or "defeat".

There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926); accord, *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

Second, as a sort of "junior version of the vagueness doctrine," H. Packer, The Limits of the Criminal Sanction 95 (1968), the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. See, e.g., *Liparota v. United States*, 471 U.S. 419, 427 (1985); *United States v. Bass*, 404 U.S. 336, 347-348 (1971); *McBoyle*, supra, at 27.

Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute, see, e.g., *Bouie*, supra, at 357-359; *Kolender*, supra, at 355-356; *Lanzetta*, supra, at 455-457; *Jeffries, Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L. Rev. 189, 207

14

(1985), due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope, see, e.g., *Marks v. United States*, 430 U.S. 188, 191-192 (1977); *Rabe v. Washington*, 405 U.S. 313 (1972) (per curiam); Bouie, supra, at 353-354; cf. U.S. Const., Art. I, § 9, cl. 3; id., § 10, cl. 1; Bouie, supra, at 353-354 (Ex Post Facto Clauses bar legislatures from making substantive criminal offenses retroactive). In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal. *U.S. v. Lanier*, 520 U.S. 259 (1997)

The 7th Circuit in *Korando*, 29 F.3d 1114(1994) addressed whether the RICO statute was unconstitutional in that it did not define the criminal offense with sufficient clarity such that ordinary people understand what is allowed and what is forbidden. Such a level of clarity is a requirement of due process of law. *Bouie v. Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

The 7th Circuit addressed this argument in *U.S. v. Masters*, 924 F.2d 1362, and held that RICO was not unconstitutionally vague. "RICO is a remedial statute only. It does not make criminal activity that is otherwise legal; it only increases the sanction for engaging in activity that is already forbidden."  Id. @ 1367

15

Therefore, "[p]rovided the statutes criminalizing the predicate acts are not

unconstitutionally vague -... - the defendants are on adequate notice that they are

committing crimes, and the fact that they may not be aware of the extent of their

criminality and consequent exposure to punishment is a detail." *U.S. v. Korando*,

29 F.3d 1114 (7th Cir. 1994)

**B.     THE PHRASE "IN ANY MANNER" ADDED TO "EVADE AND DEFEAT" IS UNCONSTITUTIONALLY VAGUE AND AMBIGUOUS.**

Under section 7201 the relevant language applicable to the Defendant is:

"Any person who willfully attempts **in any manner** to evade or defeat any tax imposed by this title or the payment thereof..."

Comparing the analysis in *Masters* of the word "Rico" to  section 7201's "evade or

defeat" can only make criminal that which "is already forbidden".    *Masters @*

1367.   This would connect to the phrase "in any manner".

The indictment brought by the Government in this case relies upon the word

"evade" and "defeat" several times in Counts 2 and 3.  For instance:

"Did unlawfully and willfully evade and defeat, and attempt to evade and defeat, and cause evasion, defeat, and attempted evasion and defeat of the payment of personal income tax due and owing to the

16

> United States of America for the 1996 and 1997 year, specifically,
> approximately $ 85,608 for calender year 1996 and approximately $
> 62,062 for the 1997 calender year,...”

The words are the same for Count 3, save the amount due and owing is $ 19,523

calculated on $ 76,796 of alleged income.

In both charges the Jury was given a separate instruction regarding the term

"willful" as opposed to the instruction regarding "willful" alleged in Count 1.  The

Court's Instruction # 22, instructed the jury that:

> The term "willfully", as used in Counts Two and Three of the
> superceding indictment, means the voluntary and intentional violation
> of a known legal duty, in other words, acting with the specific intent
> to ***avoid*** paying a tax imposed by the income tax laws or to ***avoid***
> assessment of a tax that is was the legal duty of the Defendant to pay
> to the government, and that the Defendant knew it was his legal duty
> to pay.

This instruction directed the Jury to find that the Defendant knew it was his

legal duty to pay the amounts alleged in the Notice of Deficiencies dated January

27, 2000.  This Court must be on notice that every IRS Agent testified the

Defendant did not owe the amounts contained in the Notice of Deficiencies yet the

Court instructed the Jury that if the Defendant intended to avoid paying these

amounts then the Jury could find the Defendant acted "willfully".   The

Government claimed the tax being "evaded" was the payment of the amounts in

the Notice of Deficiencies dated January 27, 2000.

In this Court's instruction defining the elements of the "evasion" in Count 2,

the Court relied upon the word "evade or defeat" to describe the second element

the Jury was required to find beyond a reasonable doubt.   In this instruction the

Court directed the Jury that:

> "**First,** on April 15, of the year following the tax years 1996 and 1997
> Federal Income Tax was due and owing by the Defendant;   **Second,**
> the Defendant intended to evade and defeat the ascertainment,
> assessment, computation or payment of taxes for 1996 and 1997; and
> **Third**, the Defendant willfully did some act in furtherance of the
> intent to evade tax or payment of the tax."

*Court's Instruction # 20.*

It is very clear here that this instruction confuses the holding by the

Supreme Court which has held that the elements of § 7201 are willfulness; the

existence of a tax deficiency, *Lawn v. United States*, 355 U.S. 339, 361; *Spies v.*

*United States*, 317 U.S. 492, at 496; and an affirmative act constituting an evasion

or attempted evasion of the tax, *Spies v. United States*, supra."

This Court is very aware of the routine and constant objections the

Defendant maintained throughout the proceedings thus far regarding the

Government's deviation and now this Court's deviation from the decision

announced in *Spies*.

This Court is also aware of the routine and constant objections the

Defendant maintained throughout these proceedings regarding the meaning of the

term "willful" and how the *Cheek* decision is being viewed by this Court.

Defendant argued and maintains that willfulness is a three part test.   First the Jury

must find beyond a reasonable doubt and the Government must prove the

Defendant had a requirement to do something the law commands him to do.

Second, the Government must prove and the Jury must find the Defendant had

knowledge of this command to act.   And third, the Jury must find and the

Government must prove the Defendant voluntarily and intentionally failed to

satisfy this command of the law.

The Supreme Court has defined willfulness in this context as a "voluntary,

intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192,

201 (1991). *Thus the government had to prove that McCaffrey deliberately*

*intended not to file tax returns he knew he had a duty to file*. *U.S. v. McCaffrey*,

181 F.3d 854, 856 (7th Cir. 1999).   Though the Defendant disagrees with this

quote in *McCaffrey*, as it clearly does not come from page 201 of the Supreme

Court's decision in *Cheek*[1], Defendant directs this Court to compare its "Second"
element in Jury Instruction number 20 with the test the 7th Circuit suggest the
entire meaning of the word "willfully" means.

The 7th Circuit defined the term "Willfulness" for the purposes of the crimes
of tax evasion and the failure to file tax returns as "a voluntary, intentional
violation of a known legal duty." Quoting from *Cheek v. United States*, 498 U.S.
192, 201 (1991) (citing *United States v. Bishop*, 412 U.S. 346 (1973) and *United
States v. Pomponio*, 429 U.S. 10 (1976)). The 7th Circuit then stated "To prove
that Valenti acted willfully, the government **had to prove that the law imposed a
duty on him**, that **he knew of the duty**, and that **he voluntarily and intentionally
violated that duty**. *Cheek*, 498 U.S. at 201; *USA v. Valenti*, 121 F.3d 327 (7th
Cir. 1997)

For clarification sake the Supreme Court again addressed this issue in *Bryan
v. U.S.* , 524 U.S. 184, (1998) where it said:

> "In certain cases involving willful violations of the tax laws, we have
> concluded that the jury must find that the defendant was aware of the
> specific provision of the tax code that he was charged with violating.
> See, e.g., *Cheek v. United States*, 498 U.S. 192, 201 (1991)

---

[1] Which defiantly the 7th Circuit seems to continue its pre-Cheek meaning of "willfully".
This is the subject matter of one of the many issues on appeal.

Clearly the case against the Defendant is one of those type of cases the Court in *Bryan* was referring.   Also, what is the specific provision of the tax code the indictment accused the Defendant of "violating" for the Jury to find?    If this Court leaves that answer at section 7201 then there is no other specific provision to describe the meaning of the words "evade or defeat" other than "to avoid". If evade and defeat means illegal and avoid means legal then how does the Court hold that whether the Defendant intended to evade and defeat or avoid taxes could be answered by the Jury?

The Jury asked for this Court to instruct it on the legal meaning of the law and this Court had nothing to give them regarding the legal meaning of the word AVOID and EVADE.  It is true the Court gave the Jury the meaning of the phrases "tax avoidance" and "tax evasion" but this answer did nothing to fix the ambiguous and undefined meaning of the key word in the "capstone" of a series of sanctions regarding the legal meaning of the words "evade or defeat".

On retrial, the 7th Circuit held the District Court "did not say that Cheek's understanding of the law was irrelevant but rather that his view did not accurately reflect the state of the law." See *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992) (the jury cannot be allowed to decide on its own whether Section

21

6060(b) somehow makes lawful the failure to file a return; therefore, the district court must make the unlawful conduct clear). The district court did not commit error by instructing the jury as to the actual state of the law. *U.S. v. Cheek*, 3 F.3d 1057 (7th Cir. 1993)

In the case against the Defendant, the Court did not make clear to the Jury what the clear unlawful conduct was for Counts 2 and 3, and thus 4,5,6 and 7. The Jury asked for the legal difference between Avoid and Evade and the Court gave a Black's Law dictionary definition of the phrase tax avoidance and tax evasion.

It is what each element under section 7201 culminates into that was intended to define the meaning of the tax evasion statute. A finding of tax evasion as an element of a tax evasion charge makes no legal sense. It is like saying if you evaded taxes then you evaded taxes.

It appears that the Court has made tax avoidance and tax evasion without any legal distinctive difference other than the words legal or illegal.

Because the Court had no way of directing the jury to the legal meaning of the words "evade or defeat" and that because defeat and avoid are similar in common every day usages, at least as far as the Jury in this case demonstrated, any

provision that relies upon the word "evade or defeat" to put the world on notice as to what will happen if a certain line is crossed, is a vague and ambiguous law and must be found Unconstitutionally Vague and Ambiguous.

The phrase "in any manner" seems to include all manners which would include avoid within its reach.   This, however, is in opposition to the decisions announced by the Supreme Court regarding the meaning of the word "avoid". Defendant is incapable of finding any cases in the Supreme Court or 7th Circuit which define the phrase "in any manner".   The term "manner" is defined in Black's Law 6th Edition as "A way, mode, method of doing anything, or mode or proceeding in any case or situation." Pg. 963   Under this logic, one manner clearly would be to avoid instead of evade yet section 7201 clearly makes avoiding taxes a manner to defeat taxes.

For this reason, the Defendant requests this Court to find that 26 U.S.C. § 7201 is Unconstitutionally Vague and Ambiguous as generally written and as applied to this Defendant

**2.    COUNTS TWO AND THREE SHOULD BE DISMISSED DUE TO THE UNKNOWN LEGAL MEANING OF THE WORDS "EVADE", "DEFEAT" AS WELL AS THE MEANING AND APPLICATION OF THE PHRASE "IN ANY MANNER" WRITTEN IN SECTION 7201,**

**RENDERING SECTION 7201 UNCONSTITUTIONALLY VAGUE AND AMBIGUOUS**

This Court should dismiss Counts 2 and 3 as they rely upon an

Unconstitutional provision under the United States Code.   Section 7201 being

Unconstitutionally Vague and Ambiguous as to the words "evade" ,"defeat" and

the phrase "in any manner", this Court should dismiss Counts 2 and 3.


    **a.**     **COUNTS 4, 5, 6 AND 7 SHOULD BE DISMISSED AS A MATTER OF LAW SINCE SECTION 7201 WAS RELIED UPON TO MAKE THE FRAUD IN COUNTS 4 AND 5 AND THAT FRAUD IS THE SUBJECT MATTER OF COUNTS 6 AND 7.**


For the reasons that Counts 2 and 3 should be dismissed on grounds section

7201 is Unconstitutionally Vague and Ambiguous, this Court should dismiss

Counts 4, 5, 6 and7 as a matter of law because without the "evasion" in Counts 2

and 3, Counts 4 and 5 have no alleged "fraud" and Counts 6 and 7 have no fraud

to which the illegal proceeds were alleged to have been derived.


    **3.**     **THE COURT SHOULD ENTER JUDGMENT OF ACQUITTAL AS TO COUNTS 2, 4, 5, 6 AND 7 IRRESPECTIVE OF THE JURY VERDICT AS THE GOVERNMENT DID NOT ATTEMPT TO PROVE THE TAX LIABILITY RELIED UPON IN COUNT 2 WAS, IN FACT,  DUE AN OWING.**

Count 2 is a pivotal charge in the indictment as it has reach back into Count 1, the filing of a false tax return for "state of mind", as well as it reaches forward into Counts 4, 5, 6, and 7.   According to the Jury Instructions, given by this Court over the objection of the Defendant, the Jury could find the Defendant Guilty of evading in Count 2 if the Jury found the Defendant was "intending to evade or defeat the ascertainment, assessment, computation or payment of taxes for 1996 and 1997". *Court's Instruction # 20*

The Indictment claimed the Defendant had "due and owing" to the United States $ 85,608 for calender year 1996 and $ 62,062 for calender year 1997. These amounts which were claimed owed formed the evasion of payment theory the Government presented to the Grand Jury which was then returned in the indictment of the Defendant in this case.

The Court instructed the Jury that in order to find the Defendant Guilty of Count 2 beyond a reasonable doubt, the Jury was to find that "First" "Federal Income Tax was due and owing by the Defendant." *Court's Instruction 21*.

The only evidence the Government entered to prove that an amount was "due and owing" was the Notices of Deficiencies for 1996 and 1997.  Every IRS

Agent testified that these Notices of Deficiencies were part of a "whipsaw tax",

save Agent Boyd, who testified she could not remember virtually anything

because it has been so long.

There is no provision of the Internal Revenue Code that allows for the

imposition of the whipsaw tax upon the Defendant.  Every Agent confirmed there

was no provision in the I.R.C. to allow for a "whipsaw tax".   In *U.S. v England*,

347 F.2d at 427, the defendants were charged with the second crime proscribed by

section 7201: evasion of the payment of tax. The tax liability in that case arose as

a result of formal, civil tax assessment proceedings. The indictment alleged that in

the years following the assessments, the defendants attempted to evade the

payment of the liability by concealing the nature and extent of their property

interests.  The defendants contended that the invalidity of the tax assessments

absolved them from any duty to pay the amounts assessed; their evasion of

payment of those taxes, therefore, could not be punished. The Government

conceded that its case hinged on demonstrating a legal assessment. Therefore, this

court properly concluded that, under the facts presented, a valid tax assessment

was a necessary element of the crime charged.  Id.; but see id. at 437 (Swygert, J.,

dissenting) (validity of tax assessment in this case was a question of law for the

court to decide).  *U.S. v. Dack*, 747 F.2d 1172 (7th Cir. 1984)

This Court never directed as a matter of law that the Notices of Deficiencies were a "legal assessment" nor could it.    The testimony at trial only proved that a document entitled a Notice of Deficiency was mailed to the Defendant.   Not one person was offered by the Government to support the unauthorized imposition of the whipsaw tax[2].

The Jury instruction directed the Jury to first find whether "Federal Income Tax" was due and owing by the Defendant".    What one piece of evidence was entered for the Jury to find beyond a reasonable doubt that this part of the elements instructed by the Court for Count 2 had been presented?   None other than the Notices of Deficiencies, and as already stated, no one testified that the Notices of Deficiencies were legal or authorized, and everyone who did testify about the Notices of Deficiencies stated it was not legally authorized and even described it as a whipsawing.

Currently, Defendant has been found Guilty by the Jury of owing an illegal whipsaw tax assessment.   There is no case in the records of the United States where the only evidence of the "tax deficiency" element under section 7201 is

_____

[2] Including Agent Boyd who issued it suffering from current memory loss.

27

solely based upon a Notice of Deficiency which contains claims of a whipsaw tax

being owed and due.   There may be civil cases, but no criminal cases that

Defendant can find, which would authorize the whipsaw tax assessment as the sole

evidence of a tax properly due and owing.

Does the Court believe it can use the Notice of Deficiency to find a "tax

loss" for the purpose of sentencing the Defendant for conviction of Count 2?  In

*U.S. v Hunerlach*, 197 F.3d 1050 the court faced the issue of whether interest and

penalties should be included in the "tax loss." Id. at 1069-70. The Guidelines

defined tax loss as the "total amount of the loss that was the subject of the

offense," and the court held that the provision was ambiguous in the context of

interest and penalties.  *Id*. The court pointed out, however, that Application Note 1

unequivocally stated that "[t]he tax loss does not include interest and penalties,"

and therefore held that interest and penalties were not included in tax loss under

the Guidelines. Id. at 1070, citing U.S.S.G. § 2T1.1 comment. (n. 1) (1997).

There is no similar comment included in the Guidelines that indicates an

intent to exclude self-employment taxes, and therefore *Hunerlach* was unhelpful

the Court reasoned.   Moreover, in the present case we are not addressing interest

and penalties, with respect to which the provision covering "tax loss" is

ambiguous, but are considering the **unpaid "taxes"** themselves, which fall within

the plain meaning of the words "tax loss" and the corresponding definition. *U.S. v.*

*Twieg*, 238 F.3d 930, 932 (7th Cir. 2001)

The 7th Circuit is to review the findings of fact that underlie the district

court's determination of taxable income for clear error. *United States v. Bhagavan*,

116 F.3d 189, 191 (7th Cir. 1997). Like any other factual finding in the sentencing

context, the district court's determination must be affirmed so long as it is

supported by a preponderance of the evidence. *United States v. Hopson*, 18 F.3d

465, 467 (7th Cir.), cert. denied, 512 U.S. 1243 (1994); *United States v. Chandler*,

12 F.3d 1427, 1434 (7th Cir. 1994).

The Jury was not asked to find any specific tax loss for Count 2, nor was

any found.  Rather, the evidence introduced at trial consisting of the Notice of

Deficiencies for 1996 and 1997 would not even satisfy the preponderance test

announced in *Hopson.*   Simply, the Defendant was not shown to owe any other

tax but a whipsaw tax and that, even Agent Bergschneider said, the IRS would

never have forced the Defendant to pay because he did not owe it, nor because of

the Collection Due Process (CDP) hearing procedures had any amount become

due and final.

How can the Jury find a tax loss beyond a reasonable doubt, when there was not sufficient evidence to find a tax loss by a preponderance of the evidence test? It simply cannot.    In cases involving tax evasion and failure to file tax returns, the sentencing court is to  use the government's evidence of the total tax loss to determine a defendant's base offense level. U.S.S.G. sec. 2T1.1(a)(1).  For tax years 1988 through 1991, the years for which Valenti was convicted of tax evasion, the district court used the tax loss amounts that the government proved at trial.  *U.S. v. Valenti*, 121 F.3d 327 (7th Cir. 1997)

In the case against the Defendant there was no direct evidence entered of any deficiency or tax loss for either 1996 or 1997 other than the whipsaw tax contained in the Notice of Deficiencies.  It should be noted that the Government in pre-trial preparation had structured a proposed tax loss for 1996 and 1997, but did not enter those amounts at trial, perhaps because of the *Booker/Fanfan* fiasco. With no tax loss entered, there is no first element on Count 2.   None.

Jury instruction # 25 clearly instructs that if the Defendant had a liability it was due and owing on April 15 of the following year.   This would mean that the "liability" contained within the WHIPSAW Notice of Deficiencies was due and owing to the United States on April 15, 1997 and 1998 for calender year 1996 and

1997, even though the Government's own witness testified the Defendant did not

owe it.  (Not to mention that Bobby Mickey, a 26 year former IRS Revenue

Officer did not believe the Notices of Deficiencies were valid).    There is not any

provision of the Internal Revenue Code, Title 26, U.S. Code, which allows the

Court to direct the Jury to find that a whipsaw tax is a legitimate tax and if the Jury

finds it was owed, then it was also owed on April 15 of the following year.

In Jury Instruction # 26 the Court instructed that the Jury does not need to

find the Defendant received an  "administrative assessment" in order to find the

Defendant Guilty of "willful attempt to evade or defeat income tax[es]".   This is

also circular to the Court's earlier instructions, i.e., #21, which says that the Jury

must find the Defendant intended to evade or defeat the ascertainment, assessment,

computation or payment of the tax.   Without the Notices of Deficiencies and

assessments calculated using the whipsaw tax, what other calculations can be used

by the Jury to support its verdict?  Without such evidence, at least one element of

Count 2 fails, which causes the collapse of Counts 4, 5, 6, and 7.

Without the Notice of Deficiencies for 1996 and 1997, the Government

tendered no other evidence to which the Jury could consider in finding beyond a

reasonable doubt that the Defendant had due and owing a tax liability to the

United States for the years 1996 and 1997.

Either, whether the assessments were valid is a question for the Jury to decide, and they should have been asked to find them, or the validity of the assessments is a question of law, and this Court should rule whether or not the assessments are valid.

Accordingly, because the Government entered no evidence of any valid assessment against the Defendant and no other evidence was presented to the Jury regarding any liability for calender years 1996 and/or 1997, that the Jury could have concluded was owed and due by the Defendant, relevant to the Jury Instruction #21, First Element; this Court should set aside the Jury verdict as to Counts 2,4,5,6 and 7 and enter Judgment of Acquittal in favor of the Defendant as to each of these Counts.

**4.    THE COURT SHOULD SET ASIDE THE JURY VERDICT AND ENTER JUDGMENT OF ACQUITTAL AS TO COUNT 3 ON GROUNDS THAT THE JURY WAS REQUIRED TO FIND THE DEFENDANT WAS REQUIRED TO FILE A TAX RETURN FOR CALENDER YEAR 1999, YET NO EVIDENCE WAS TENDERED NOR WAS THE JURY ASKED TO FIND THIS ESSENTIAL ELEMENT, NOT CONSIDERING THE DEFENDANT HAD A FIFTH AMENDMENT RIGHT TO SAY NOTHING SINCE HE WAS UNDER CRIMINAL INVESTIGATION**.

This Court instructed the Jury that simply not filing a return did not, without

more, arise to the level of tax evasion.    Not withstanding section 7201 is

unconstitutionally vague and ambiguous, the claim of evasion contained in Count

3 involves the claim the Defendant willfully failed to file a tax return for Calender

Year 1999 and committed other acts within 1999 to "evade and defeat the

assessment of income taxes".    The Indictment alleges:

> "1  ....and failing to file an individual income tax return, as required by law.
>
> "2.  The Defendant earned business and personal income during 1999
> and was responsible for filing an individual income tax return that
> accurately reported his income."

*Count 3, para. 1 and  2*

There is no question that whether the Defendant was required to file a tax

return for 1999 was a question the Jury was supposed to answer.    The

Government presented no evidence to the jury as to what law required the

Defendant to file a return.   The willfulness in this case directly ties in the failure

to file a return with what was required of the Defendant.   Since the Government

did not present any evidence that the Defendant was required to file a return, if the

requirement was an element of the crime alleged in Count 3, this Court must set

aside the Jury Verdict as to Count 3 and enter Judgment of Acquittal.

The District Court will be "revers[ed] only if the record contains no

evidence from which the jury could find guilt beyond a reasonable doubt." *United States v. Combs*, 222 F.3d 353, 362 (7th Cir. 2000). *U.S. v. Jefferson*, 252 F.3d 937, 942 (7th Cir. 2001)

Of course, safeguarding the jury guarantee will often require that a reviewing court conduct a thorough examination of the record.  If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error - for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding - it should not find the error harmless.  *Neder v. U.S.*, 527 U.S. 1, 19 (1999)

The requirement to file an income tax return is an essential element of the tax evasion charge in Count 3 of the Grand Jury Superceding Indictment.  An instruction that removes from the jury's purview questions that under Gaudin the Sixth Amendment commits to its decision is plain error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings". *Johnson v. United States*, 117 S.Ct. 1544, 1550 (1997), quoting from *United States v. Olano*, 507 U.S. 725, 736 (1993).

If the Jury was asked to consider the Defendant's reasons for not filing the

1999 income tax return prepared by Larson and Associates, and taken into

consideration the Defendant had filed all the extensions he was allowed to file,

along with paying the estimated "bad news" of $5,900.00, the Jury could have

concluded the Defendant did not fail or willfully fail to file the 1999 return on or

after October 15, 2000.  Likewise, there is no way for the Government to establish

that the law, and only the law, required the Defendant to file this Tax Return, even

if he did or did not believe it true and correct according to how the Government

treated the previously filed returns.

The Fifth Amendment should have protected the Defendant here as he was

under criminal investigation for the filing of other returns reporting income in the

same manner.  Yet, once again, the Government has found a way to circumvent the

Constitutional Rights of the Defendant (5th Amendment) while arguing in favor of

those same rights to every witness the Defendant relied upon in the first place in

which he intended to call but was not allowed because of the 5th Amendment

claims those witnesses made.

Not instructing the Jury to find the Defendant was required to file a tax

return according to the written law is error and is not harmless involving Count 3.

Without this one element no other part of the Government's theory would have

any meaning.[3]

The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without "due process of law"; and the Sixth, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." We have held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element. *U.S. v. Gaudin*, 515 U.S. 506, 509-510 (1995)

The Supreme Court has stated that in certain circumstances, it would be impossible to say that the hazards of incrimination which stem from the obligation to pay the taxes  and to file Forms are "imaginary and unsubstantial." *Reg. v. Boyes*, 1 B. & S. 311, 330; *Brown v. Walker*, 161 U.S. 591, 599-600. The criminal penalties for wagering with which petitioner is threatened are scarcely "remote possibilities out of the ordinary course of law," *Heike v. United States*, 227 U.S. 131, 144; yet he is obliged, on pain of criminal prosecution, to provide information which  would readily incriminate him, and which he may reasonably expect would be provided to prosecuting authorities. These hazards of incrimination can only be characterized as "real and appreciable." *Reg. v. Boyes*,

---

[3]  Even with it, it has no legal meaning.

supra, at 330; *Brown v. Walker*, supra, at 599-600. Moreover, unlike the income

tax return at issue in *United States v. Sullivan*, 274 U.S. 259, petitioner's

submission of an excise tax payment, and his replies to the questions on the

attendant return, would directly and unavoidably have served to incriminate him;

his claim of privilege as to the entire tax payment procedure was therefore neither

"extreme" nor "extravagant." Compare, id., at 263.  Quoting *Grosso v. U.S.*, 390

U.S. 62, 66 (1968)

We are thus obliged to inquire whether petitioner is otherwise foreclosed

from asserting the constitutional privilege.  For reasons indicated in *Marchetti*,

supra, we have found nothing in *United States v. Kahriger*, 345 U.S. 22, or *Lewis

v. United States*, 348 U.S. 419, which now warrants the exclusion of this situation

from the privilege's protection.  It need only be added that the requirements

associated with the excise tax are directed wholly to past and present wagering

activities; they lack even the illusory prospectivity which characterizes the special

occupational tax and registration requirements. *Grosso* @ 66

The Supreme Court in Sullivan clearly stated that a general failure to file

could not be protected by the Fifth Amendment.   However, in other cases cited

above, the Supreme Court has stated that if saying anything could result in

evidence used to make out a criminal complaint, the fifth amendment silence is the

only protection the public would have.

In *Selective Service v. Minn. Public Int*., 468 U.S. 841 (1984) the Supreme

noted:

> The dissent reads *Marchetti v. United States*, 390 U.S. 39 (1968), and
> *Grosso v. United States*, 390 U.S. 62 (1968), to create in this case an
> exception to the normal rule requiring assertion of the Fifth
> Amendment privilege. In Marchetti and Grosso, however, anyone
> who asserted the privilege on a wagering return did not merely call
> attention to himself; the very filing necessarily admitted illegal
> gambling activity. Those cases are therefore clearly distinguishable
> on their facts. See Grosso, at 73 (BRENNAN, J., concurring); *United
> States v. Sullivan*, 274 U.S. 259, 263 (1927).

*Selective Service* @ 859

It became very clear by the testimony at trial, the Government was doing a

criminal investigation at the time they asked the Defendant to file his 1999 return

on October 15, 2000.  The Government knew that a similar return would be a

second year (really a fifth year) in its criminal investigation.  It is also clear that

the Defendant was faced with the alleged crime of perjury if he filed it, (or filing a

false tax return), and he was faced with a crime if he did nothing.   The facts of

this case distinguish themselves from those at issue in the *U.S. v. Sullivan*, 274

U.S. 259 (1927).

For the reasons stated herein, and those expressly made in all the other pleadings filed by the Defendant, this Court should dismiss Count 3 and direct judgment of acquittal as the Government entered no evidence the Defendant was required by law to file any return for the year 1999, taking into consideration his right at all times to remain silent under the Fifth Amendment and that he most certainly was under criminal investigation by October 15, 2000. In addition, had the Jury determined the Defendant was not required to file the 1999 return, for whatever reason they chose, the Jury, as in Count 1, could have rendered a Not Guilty Verdict as to each element of the crime required to sustain the conviction in Count 3.

**5.    THE DISTRICT COURT SHOULD GRANT JUDGMENT OF ACQUITTAL AS TO COUNTS 6 AND 7 AS THE GOVERNMENT ENTERED NO EVIDENCE OF ANY ILLEGAL ACT THE JURY COULD FORM THE BASIS FOR A FINDING THE PROCEEDS MUST BE STEMMING FROM ILLEGAL ACTIVITY**.

This issue is simple.   The Government entered no evidence to which the Jury could have found the "Defendant knew the property involved in the financial transaction represented the proceeds of some form of unlawful activity".   The Government entered no evidence of what the "form of unlawful activity" was.

For this reason this Court should set aside the Jury verdict and enter an

Order of Judgment of Acquittal in favor of the Defendant as to Counts Six and Seven. The Court had previously indicated that something more was required from the Government. The Government provided nothing more.

## VI.  THE VERDICTS AS TO COUNTS 2, 3, 4, 5, 6 AND 7 SHOULD BE DISMISSED ON GROUNDS OF INSUFFICIENCY OF EVIDENCE.

As argued above, particularly as to Count 2, the Government failed to enter any evidence the Defendant owed any money to the United States for calender years 1996 and 1997 other than the Notice of Deficiencies, and which the testimony at trial was the Government would never attempt to collect on these amounts because they were an illegal usage of the power to tax by utilizing a new whipsaw method not previously within the defined meaning of taxes in the Tax Laws[4].

Also, as to Count 3, the Government did not enter any evidence that the Defendant was required by any specific provision of the law to file any request for information form (return), that he knew of that specific provision of the law requiring such form, or that he intentionally and voluntarily chose to thwart that specific provision making that requirement.

Without this evidence, or the Jury finding this evidence, this Court should

_____

[4] This is also a violation of 26 U.S.C. § 7214 by the Government in this case.

40

order as matter of law the Government failed to enter any evidence from which the Jury could have concluded the Defendant should have filed the 1999 return on or before October 15, 2000.

Because the Government tendered no evidence of the taxes owed for Count 2, or the requirement to file in Count 3, there is no evidence to which the Jury could rest for its finding of any fraud regarding Counts 4 and 5, nor is there any evidence to which a Jury could conclude wire transactions rose to the level of money laundering as at issue in Counts 6 and 7.

For these reasons, and those specifically stated within this brief, Defendant asks this Court to dismiss Counts 2, 3, 4, 5, 6 and 7 on failure of the Government to present the required evidence to support a finding on each element of each crime as alleged in the indictment.

## 7.    THIS COURT SHOULD ORDER THE DEFENDANT TO HAVE A NEW TRIAL AS TO COUNTS 2, 3, 4, 5, 6 AND 7

The decision whether to grant a new trial is within the discretion of the district court. *United States v. Gonzales*, 93 F.3d 311, 315 (7th Cir. 1996).  Rule 33 of the Federal Rules of Criminal Procedure provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interests of

justice.*"  U.S. v. Theodosopoulos*, 48 F.3d 1438 (7th Cir. 1995)  "The test to be

applied in determining whether a motion for a new trial should be granted is

whether `the verdict is against the weight of the evidence, that the damages are

excessive, or that, for other reasons, the trial was not fair to the party moving.' "

*Gen. Foam Fabricators, Inc. v. Tenneco Chem., Inc.*, 695 F.2d 281, 288 (7th Cir.

1982) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct.

189, 194, 85 L.Ed. 147 (1940). "The grant or denial of a motion for a new trial `is

not subject to review by this court, except upon exceptional *circumstances*

*showing a clear abuse of discretion.' " Id. (quoting Stinebower v. Scala*, 331 F.2d

366, 367 (7th Cir. 1964)

There is no question that the jury was confused on the meaning of the words

evade and avoid.   There is also no question that neither term has any legal

meaning under any settled law.   When both the Government and this Court

offered their proposed instruction on the meaning of "willful" the Defendant

objected.  Defendant offered both original #12 and #15 as the proper instructions

on these issues.   The Defendant, in his objections to the Court's proposed

instructions, (at page 6)(dkt #141) (as well as at page 6 of docket  #79), directed

the Court to the Cheek decision and claimed only these three elements should be

42

instructed to the Jury.    The example and the usage of the word "avoid" were clearly outside of the meaning of the term "willfully".

The Jury asked this Court to instruct them on the law regarding the meaning of the words "avoid" and "evade" and the Court had no legal meaning to give the jury as to these words.

With evade, defeat, in any manner and avoid, it is clear how the Jury became confused.   The Court instructed the Jury it was charged with finding the law and the Jury was to apply the facts to the law the Court instructs.    When faced with the question from the Jury, the Court chose to allow the Jury to decide what was avoid legally and what was evade legally.   This was an erroneous instruction on the law which was caused by the Court's deviation from the holding by the Supreme Court in *Cheek.*   Defendant understands where the instruction on avoid was derived but, nonetheless, the Court had ample opportunity to clarify the instruction on willful instead of choosing to make it appear evade and avoid were of the same legal meaning.

Though the Court gave the Jury the definition of tax avoidance and tax evasion, it is clear at that point the Jury was already confused about the specific provision of the law the Grand Jury claimed the Defendant had violated.

For the reasons (1) the Jury was confused and (2) this Court's Instructions both caused that confusion as well as made it more confusing after the Court claimed to have answered the Jury's request, when that request was not specifically answered, (3) as well as this Court turned the Jury into deciding what the legal meaning of the word Avoid and Evade meant, Defendant should receive a new trial with a properly instructed Jury as to each element of the alleged crimes in the Indictment.

**8.    THIS COURT SHOULD SET ASIDE THE JURY VERDICT AS TO COUNTS 2, 3, 4, 5, 6 AND 7 AND ORDER THE INDICTMENT DISMISSED ON APPLICATION OF THE RULE OF LENITY.**

The Supreme  Court has emphasized that "`when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'" *United States v. Bass*, 404 U.S. 336, 347 (1971), quoting *United States v. Universal C.I.T. Credit Corp*., 344 U.S. 218, 221-222 (1952)  *Williams v. U.S.*, 458 U.S. 279, 290 (1982)

The rule of lenity "comes into play only `when choice has to be made between two readings of what conduct Congress has made a crime.'" *United States*

*v. Lowe*, 860 F.2d 1370, 1376 (7th Cir. 1988) (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)). The rule of lenity is unavailable to us if the purported ambiguity in a statute can be resolved through normal methods of statutory construction. *Chapman v. United States*, 500 U.S. 453, 463 (1991); *United States v. Carr*, 965 F.2d 176, 178-79 (7th Cir. 1992)

In interpreting the reach of a criminal statute, the purpose of this court's review is to determine the intent of Congress as reflected in the language, structure, and legislative history of the statute. *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). If these manifestations of Congressional intent are ambiguous, leaving us unable to define the ambit of the criminal statute, the Rule of Lenity requires that we strictly construe the statute in favor of the defendant. *United States v. Turkette*, 452 U.S. 576, 587, n. 10, 101 S.Ct. 2524, 2531, n. 10, 69 L.Ed.2d 246 (1981). As explained by the Supreme Court, the Rule of Lenity comes into play only "when choice has to be made between two readings of what conduct Congress has made a crime." *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971). It requires that Congress speak in language that is clear and definite before a court may choose the harsher of the alternatives presented.

Section 7201 makes it a crime for any person to "willfully attempt in any manner to evade or defeat any tax imposed by this title or the payment thereof..." As demonstrated by the instructions this Court gave the Jury; the Defendant's objections thereto; the *Cheek* decision instructing willfulness, as affirmed by the *Bryan* decision; the Jury's request for the legal meaning of "avoid" and "evade" and the Court's answer thereto; as well as the legal differences between evade, defeat and avoid "in any manner", which had never been addressed by any Court of the United States assigning any "legal meaning" to those phrases; and taking into consideration the Government stated, through its own expert that what the Defendant did was perfectly legal, other than for the reduction in taxes; this Court should find and hold, if it does not choose the harsher alternative and find section 7201 unconstitutionally vague and ambiguous, that the rule of lenity applies in this case and dismiss Counts 2, 3, 4, 5, 6 and 7 against this Defendant.

For the reasons stated above and those expressed in other pleadings, this Court should apply the rule of lenity and dismiss Counts 2, 3, 4, 5, 6 and 7 against the Defendant.

## CONCLUSION

For the reasons stated herein, and as previously stated in other pleadings,

the arguments of which are hereby incorporated, the Defendant, Denny Patridge moves the Court for an Order (1) dismissing Counts 2, 3, pursuant to 26 U.S.C. §7201 violating the Constitution of the United States of America as being vague and ambiguous, and (2) dismissing Counts 4, 5, 6 and 7 for the same reason they are as a matter of law relying upon Counts 2 (and 3); or in the alternative, (3) Motion for Judgment of Acquittal as to Counts 2, 4, 5, 6 and 7, and in a separate alternative, (4) Motion for Judgment of Acquittal as to Count 3; and in a further alternative, (5) Motion for Judgment of Acquittal as to Counts 6 and 7; and as a separate alternative (6) the setting aside the Jury's Verdict regarding Counts 2, 3, 4, 5, 6 and 7, and dismissing the charges for insufficient evidence grounds, and in the alternative, or in a further alternative (7) Motion for Order of New Trial, and finally, in the alternative, (8) Motion to Dismiss Counts 2, 3, 4, 5, 6 and 7 both as to the indictment and the Jury's Verdict based upon the Rule of Lenity.

Respectfully Submitted

/s/ Jerold Barringer
Jerold Barringer
Attorney at Law
P.O. Box 213
Nokomis Illinois 62075
217-563-2646
IL Bar # 06185092

47

CERTIFICATE OF SERVICE


I HEREBY CERTIFY THAT a true and correct copy of this Memorandum in Support of the Motion for Order of Dismissal of Indictment, For Judgement of Acquittal, New Trial, and Apply Rule of Lenity has been electronically delivered through the Court's ECF system on July 12, 2005 to:


Hilary W. Frooman
U.S. Assistant Attorney
201 South Vine
Urbana, Illinois 61801
217-373-5875


/s/ Jerold Barringer


48