UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.  04-20031 |
| | ) | |
| DENNY PATRIDGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO RESTRAIN

The All Writs Act provides that courts may issue all writs necessary or appropriate in aid of their jurisdiction and agreeable to the usages and principles of law. 28 U.S.C. §1651.  The All Writs Act empowers federal courts to protect their jurisdiction. In re: Uranium Antitrust Litigation, 617 F.2d 1248, 1260 (7th Cir. 1980).  The All Writs Act serves as a legislatively approved source of procedural instruments designed to achieve the rational ends of the law.  United States v. New York Telephone Co., 434 U.S. 159, 172 (1977)(order compelling telephone company to furnish FBI information, facilities and assistance necessary to employ pen registers).  Unless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such aids is calculated in its sound judgment to achieve the ends of justice entrusted to it.  Id.

I.      JURISDICTION OF THE COURT

The district court's authority pursuant to the All Writs Act is confined to the issuance of process "in aid of" its jurisdiction. Clinton v. Goldsmith, 119 S.Ct. 1538, 1542 (1999).  The United States district courts have exclusive jurisdiction of all offenses against the laws of the United States. 18 U.S.C. §3231.  The defendant has been convicted of tax evasion for the years 1996, 1997 and 1999, he has also been convicted of two counts of wire fraud and two counts of money laundering.  Sentencing has been set

1

for September, 2005. This court has jurisdiction to sentence the defendant. 18 U.S.C. §
3551. The jurisdiction of the sentencing court includes the authority to sentence the
defendant to pay restitution to the victim of the offense and to pay a fine (18 U.S.C. §§
3556, 3663A, 3571). In imposing the manner and schedule of restitution, the court
considers the financial resources of the defendant. 18 U.S.C. § 3664(f)(2)(A). In
imposing a fine, the court must consider the financial resources of the defendant. 18
U.S.C. § 3572(a)(1). A convicted defendant should not be allowed to deplete his
resources so that those resources are not available for consideration by the sentencing
court in determining the defendant's financial condition in the imposition of a fine or
the scheduling of a restitution order. The defendant's transfer, dissipation and
depletion of his resources adversely effects the sentencing court's jurisdiction to impose
a fine and a meaningful order of restitution. Furthermore, the rights of any victims of
the offense to recover their losses would be severely diminished. The likelihood of
recovering any fine that might be ordered would also be diminished or destroyed.

    <u>Restitution</u>. An order of restitution is mandated in this case. 18 U.S.C. §
3663A(c)(1)(A)(ii). In addition to convictions under Title 26, the defendant has been
convicted of crimes under Title 18, which crimes were committed by fraud or deceit. 18
U.S.C. §§1343, 1956. Under the Victim Witness Protection Act, 18 U.S.C. §3663A, a
government agency, such as the IRS, qualifies as a victim. *See: United States v.
Minneman*, 143 F.3d 274, 284 (7th Cir. 1998). The court's authority to decline to order
restitution is limited. The victim or the government on behalf of the victim can enforce
an order of restitution. 18 U.S.C. § 3663(m)(1). Most important to the present set of
facts, a restitution order will have no value if there are no funds from which restitution
can be made and the order cannot be enforced. The defendant's dissipation of his assets
irreparably harms the victim and the government in enforcing the restitution order.

<u>Fine</u>. The statutory fine that may be imposed is $250,000 or the greater of twice the loss or twice the gain from the offense. 18 U.S.C. § 3571(b)(3) and (d). While no longer mandatory, the sentencing guidelines indicate that a sentencing court should impose a fine unless the defendant establishes that he is unable to pay and not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a).

<u>Costs of Prosecution</u>. A conviction under 26 U.S.C. §7201 allows the Court to also order the defendant to pay costs of prosecution.

<u>Collection</u>. Some of the statutory procedures provided to enforce a judgment are liens (18 U.S.C. § 3613(a)) and execution against property pursuant to the Federal Debt Collection Procedures Act (28 U.S.C. §§ 3001, et. seq). These methods of enforcement are useless if a defendant has transferred or dissipated his assets.

<u>Enforcement of the Court Order</u>. After sentencing, the court retains jurisdiction to enforce the payment of the criminal monetary penalties it imposes. *United States v. Lampien*, 89 F.3d 1316, 1320 (7th Cir. 1996). The Federal Debt Collection Procedures Act (FDCPA) provides remedies for post judgment enforcement or criminal fines or restitution, including writs of execution and garnishment, or by enforced collections pursuant to state law. 28 U.S.C. §§ 3303 (b)(s2), 3203 & 3205. The FDCPA specifically provides that, subject to the rule abolishing writs of scire facias and mandamus, a court may issue writs pursuant to 28 U.S.C. §1651 as necessary to support its post-judgment remedies. 28 U.S.C. §3202(a). Therefore, this court has authority to issue an order, pursuant to the All Writs Act, to preserve the defendant's assets. Such an order is necessary to preserve the Court's jurisdiction to garnish or execute against those assets after conviction. The FDCPA statutory enforcement methods are meaningless if a defendant can dissipate his assets.

It is clear that the sentencing court has jurisdiction to enforce its judgement against assets outside the boundaries of the Court. The FDCPA provides for

nationwide enforcement of writs and orders.  28 U.S.C. §3004.  Also under the federal long-arm execution statute, for any judgment obtained for the use of the United States, execution may issue and return be made to the court which rendered the judgment. 28 U.S.C. §2413.

If the defendant no longer has any monetary assets or interest in real estate, either in his own name personally or through the name of some entity such as Blue Mountain, LLC, and if the defendant no longer has any authority over funds in bank accounts, annuities or other investments, the court's jurisdiction is defeated.  The defendant's transfer, dissipation and depletion of his resources would adversely affect the sentencing court's jurisdiction to impose meaningful restitution to make the victim whole and to order a fine.

Availability of Other Remedies.

The issuance of an order temporarily prohibiting transfer of the funds in the defendant's accounts and prohibiting transfer of title to real property is necessary and appropriate as there are no alternative methods available that provide a legal remedy to ensure preservation of assets pending sentencing.  As recognized by the Supreme Court in *Clinton v. Goldsmith, supra,* 119 S.Ct. 1538, 1543 (1999), the All Writs Act is a residual of authority to issue writs that are not otherwise covered by statute.  There are no remedies available at law to prevent the defendant from dissipating his assets at this time.  There must be an existing judgment for the district court to exercise its statutory authority to issue writes of execution.  28 U.S.C. §2413.  The FDCPA's prejudgment procedures of attachment and garnishment are only available for civil cases.  28 U.S.C. §3101(a).  The FDCPA's enforced collection procedures do not apply to criminal cases until after a criminal monetary judgment is entered.  28 U.S.C.  §3202(a).

Temporary Order to Preserve Assets.  This court has the power to temporarily restrain the defendant from transferring and dissipating his assets.  Analogizing this

4

case to a civil case, the court would have the power to issue a temporary restraining

order and preliminary injunction. If this were a civil case, the status of the case would

be that the liability has already been determined, but the exact amount of damages is

yet to be determined. In this case, the defendant is guilty and restitution is owing, but

the amount of restitution has not been ordered. Likewise, the defendant is liable to pay

a fine depending on his financial resources and the Court can order the defendant to

pay costs of prosecution. However, the restitution order will be meaningless if the

defendant has dissipated, transferred, or hidden his assets. A fine and costs of

prosecution will be unenforceable if the defendant may, by dissipating his assets, defeat

the court's authority to even sentence him to pay a fine.

Fed.R.Civ.P. 65(b) provides the standards for a Temporary Restraining Order:

> A temporary restraining order may be granted without written or oral
> notice to the adverse party or that party's attorney only if (1) it clearly
> appears from specific facts shown by affidavit or by the verified complaint
> that immediate and irreparable injury, loss, or damage will result to the
> applicant before the adverse party or that party's attorney can be heard in
> opposition, and (2) the applicant's attorney certifies to the court in writing
> the efforts, if any, which have been made to give the notice and the
> reasons supporting the claim that notice should not be required.

See also, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2951.

Specific Facts Establishing Necessity of Order

The affidavit of Special Agent Bernard Coleman of the IRS and evidence

presented at the trial of Denny R. Patridge clearly demonstrates that the defendant is

highly intelligent, previously demonstrated unwillingness to comply with orders of the

Internal Revenue Service nor did the defendant demonstrate any willingness to accept

responsibility for his criminal acts.

The defendant transferred funds to Nevis and back to the United States where he

caused the funds to be deposited to an account under the name of Minetta, Inc. The

defendant then borrowed the funds which were, in fact, the same funds he had

transferred to Nevis and back to the United States, and he caused a mortgage to be

placed on his real property in Strasburg, Illinois.  Subsequently, he quit claimed his interest in the property at 108 W. South First Street, Strasburg, Illinois, which he had mortgaged to Minetta, Inc., October, 2000, to an entity known as Blue Mountain, LLC. The defendant himself had established Blue Mountain, LLC.  The defendant entered into these legal transactions with respect to his residence shortly after he received notice frm the IRS that it might  seek to place liens on his property if he failed to make arrangement to pay his 1996 and 1997 taxes.  Effectively, the defendant prevented the IRS from obtaining a first lien, for Minetta, Inc. had a prior interest by means of its mortgage.  Then the property was transferred from the defendant o Blue Mountain, LLC.  (The defendant has never explained how the property on which Minetta, Inc. held a mortgage, could be transferred to Blue Mountain, LLC.  The defendant had himself placed a lien on his own property.)

Now, knowing that the Court has the power to order payment of restitution, a fine and costs, on August 2, 2005, the defendant  filed a civil lawsuit against witnesses who testified both on behalf of the government and on behalf of the defendant himself. In case 05-2172, the defendant has sued Larry Phillips, a government witness, and Bobbie Mickie, a defense witness, both of J.K. Harris and Company, also named in the lawsuit.  In Count I, the defendant accuses both Phillips and Mickie of perjury.  The defendant alleges in Count I, paragraph 45, that he has had to spend over $281,552 in legal fees, for which the named witnesses are largely responsible,  and defendant requests $10,000,000 in damages.

As the government just recently learned of the civil lawsuit, it has not determined an exact procedure for action, but having reviewed the perjury allegations in the suit, it is clear that the lawsuit is, with respect to at least one allegation, clearly frivolous.  *Bricoe v. LaHue*, 460 U.S. 325, 330-334 (1983) (a witness has an absolute privilege and public policy demands that it should be so).

The government's recollection of the defendant's statement under oath on cross-examination, is that when asked what happened to the money placed in an account in Nevis, the defendant stated that the money was "still there."  Exactly how much money might "still be there," the government has no way of knowing, as the money is no longer in the same Sultan Services, Inc. account in which it began.  However, the defendant has some funds in Nevis and the defendant still has his house at 108 W. South First Street,  Shelbyville, Illinois.  Based upon affidavit of Assistant United States Attorney, Hilary W. Frooman and the defendant's civil case attached to the affidavit, the Court can determine that the government's request for an order under the All Writs Act should be granted, should be granted immediately and should be granted without notice to the defendant.

This most recent action on the defendant's part forcefully demonstrates that the defendant has not accepted responsibility for his criminal acts, blames others for his convictions, is angry that he spent his funds to defendant himself and seeks to punish those whom he holds responsible.  Further, the defendant's civil suit demonstrates that, typical of tax and fraud cases, the issue has always been and remains solely one of money.  Under such circumstances, the government requests that an order be entered to maintain  the status quo until the sentencing hearing, so as not to frustrate the jurisdiction of this Court to enter and enforce its sentencing judgment.

WHEREFORE, the United States moves that this Court enter an order:

1.  Prohibiting the defendant, Denny R. Patridge, his agent or assigns from transferring, selling , or assigning his interest held in his own name or in the name of Blue Mountain, LLC, or the name of any other entity named or unnamed, in real property, being his residence at 108 W. South First St., Strasburg, Illinois.

2.  Prohibiting the defendant, Denny R. Patridge, his agents or assigns, from transferring , selling, spending, disposing, or assigning his interest in any bank

7

accounts, investment accounts, annuities, holding accounts, safety deposit boxes, accounts under his custody or control or funds under his custody or control, whether held in his name personally or in the name of an entity such as Sultan Services, Inc., Blue Mountain, LLC, The Big Apple Corporation, or any other entity, named or unnamed.

3.   Prohibiting the defendant, Denny R. Patridge from spending funds to pursue the civil suit set forth in Denny Patridge and Judy Patridge v. J. K. Harris and Company, Bobbie Mickey, and Larry Phillips, 05-2172, at least until the named defendants can file responses and or the government can file a possible response and the Court can rule on the merits of the case.

4.   The Court's Order does not limit the defendant's use of funds for normal living expenses; should there be any question regarding the use of funds, the defendant should seek review of the proposed expense by the United States Probation Office.

<u>Authority for Entry of Proposed Order</u>

Rule 65 of the Federal Rules of Civil Procedure authorizes a court to order a preliminary injunction.  "In exercising its discretion whether to grant an injunction, the court should keep in mind that the purpose of a preliminary injunction is to preserve the status quo," *Downstate Stone Co. v. United States*, 651 F.2d 1234, 1240 (7th Cir. 1981). Five factors figure into the determination of whether a preliminary injunction should be granted. <u>*Cooper v. Salazar*</u>, 196 F.3d 809, 813 (7th Cir. 1999).  As a threshold matter, plaintiffs must show:  (1) a likelihood of success on the merits, (2) irreparable harm if preliminary injunction is denied, (3) the inadequacy of any remedy at law; and once this threshold is made the court balances (4) the harm to plaintiffs if the preliminary injunction were wrongfully denied against the harm to the defendant if the injunction were wrongfully granted, and (5) the impact on the public interest.  *Id.  <u>See also</u>, Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 149, 1431-32 (7th Cir. 1986); *Roland Machinery Co. v.*

*Dresser Industries*, 749 F.2d 380, 382-88 (7th Cir. 1984); *Curtis v. Thompson*, 840 F.2d 1291, 1295 (7th Cir. 1988); *Brunswick Corp. v. Jones*, 784 F.2d 271, 273-274 (7th Cir. 1986); *Means Service, Inc. v. Rental Uniform Services of Normal-Bloomington, Inc.*, 639 F.Supp. 208, 211-212 (C.D.Ill. 1986).

1.     <u>Likelihood of Success on the Merits</u>

In the preliminary injunction context, a likelihood of success exists if the party seeking injunctive relief shows that it has a better than negligible chance of succeeding on the merits.  <u>Meridian Mutual Insurance v. Meridian Insurance Group, Inc.</u>, 128 F.3d 1111, 1114 (7th Cir. 1997).  In the present case, the guilt (liability) of the defendant has already been established, while the merits of the civil suit the defendant has filed are certainly questionable and one allegation is certainly frivolous.  The remaining issue is the amount of the defendant's  liability which is likely to be greater than the value of the real estate, upon which there is a $100,000 mortgage and the value of other funds, which the government has been unable to trace.  If the assets are greater than the potential fine, restitution, and cost of prosecution, then those assets can be released to the defendant.

2.     <u>Irreparable Harm</u>.

The victim and the United States will be irreparably harmed if the defendant is allowed to transfer and dissipate his assets.  There will be no assets from which to collect the court ordered restitution or fine.  Furthermore, there will be no assets upon which to base the ordering of a fine or the expedient payment of restitution.

3.     <u>Adequacy of Legal Remedy</u>.  There is no adequate remedy at law to either require that the defendants do not transfer or dissipate their assets or recover those assets once they are gone.

4.     <u>Balancing Harm</u>.  The harm to the defendant is minimal.  The United States is requesting a temporary freeze and inventory of assets in the locker facility until the

defendant can have a hearing, if requested, or until after sentencing. There is no reason to believe that a temporary freezing of the material in the storage locker would cause harm to the defendant. The order of the court merely maintains the status quo. On the other hand, the harm to the jurisdiction of this court order and the victims of the offense is irreparable.

5.      Public Interest. Restraining the defendant from transferring his property will not disserve the public interest. To the contrary, allowing the defendant to transfer and dissipate his assets disserves the public interest. The public interest in a criminal case is to punish the defendant and to the extent possible, to make the victim whole. The purpose in imposing a fine on a criminal defendant is to punish or forfeit his ill-gotten gains. The public requires that convicted criminal defendants should not be allowed to transfer or dissipate their assets thereby undermining the jurisdiction and authority of the court to impose and enforce a sentence to the benefit of the victims and the public.

Criminal courts have restrained assets of convicted defendants pending sentencing. In United States v. Hoover, 175 F.3d 564, 567 (7th Cir. 1999) the district court, after the jury returned guilty mail fraud verdicts, ordered the defendant to, "pending further order of the court, not cash, negotiate or transfer any United States savings bonds, period." At sentencing the court ordered the defendant to turn over 304 ($100 face value) savings bonds to pay for the court appointed attorney and costs of prosecution and restitution. Id. The Seventh Circuit upheld the turnover order except to the extent that it found that, the Internal Revenue Service was not a victim for purposes of restitution. Id. at 569.

A district court in Massachusetts granted the government's presentence ex parte motion to seize proceeds from the sale of his family's ocean front condominium in order to satisfy any court-imposed penalty. United States v. Friedman, 143 F.3d 18, 19 (1st Cir. 1998). The district court entered an order requiring the defendant convicted of

10

bank fraud to "cease all transfers of assets and funds" and directed that "institutions and individuals who hold any assets of funds in which...[defendant] holds an ownership interest should not transfer any such funds or assets until further order of this Court." Id.

Restraining the defendant from transferring his property or requiring the proceeds to be put in escrow will not disserve the public interest. To the contrary, allowing the defendant to transfer and dissipate his assets is against the public interest. The public interest in a criminal case is, to the extent possible, to make the victim whole. Convicted criminal defendants who owe restitution to the victims of the offense should not be allowed to transfer or dissipate their assets thereby undermining the jurisdiction and authority of the court to enforce a sentence to the benefit of the victims and the public.

Finally, given the likelihood of the defendant's substantial immediate dissipation of assets on his pending civil suit, any delay in the entry of the Court's order could be harmful. The Court's order should be entered without notice to the defendant; such entry of the order is appropriate and reasonable.

WHEREFORE, the government requests that this Court enter an order that the defendant:

1. Not sell, transfer, liquidate, or in any way dispose of personal or real or any funds over which he has control in either his own name or through the name of another entity or person. Limitations on the defendant with respect to property include annuities for which the defendant directed the placement of funds, whether or not the annuity bears the defendant's name in any manner.

2. The Court's order does not limit funds spent for day-to-day living. To ensure that the defendant spend his funds appropriately, the Court orders that on the fifth day of each month, beginning September 5, 2005, and continuing until the date of

11

any incarceration, the defendant provide the United States Probation Office with an accounting of funds spent the previous month. For any expenditure above $250.00, the defendant must provide a receipt to support which identifies the date, describes the item purchased, and in general, supports the expenditure. The United States Probation Office has authority to review this accounting and determine the necessity of questioned expenditures.

3. Until the parties named as defendants and/or the United States of America can file answers to the civil suit in 05-2172, Central District of Illinois, Urbana Division, and until this Court or another judge in the Central District of Illinois has considered the merits of those answers, the defendant is to incur no further expenses in connection with the suit.

5. Due to the unusual circumstances under which this order is entered, including the possibility that assets could be depleted in twenty-four hours or less, this Court enters this Order without notice to the defendant.

Respectfully submitted,

JAN PAUL MILLER
United States Attorney


s/ Hilary W. Frooman
HILARY W. FROOMAN, Reg # 6180241
Assistant United States Attorney
United States Attorney
201 S. Vine, Suite 226
Urbana, Illinois 61802
217/373-5875
FAX: 217/373-5891
hilary.frooman@usdoj.gov

12

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jerold W. Barringer, Attorney at Law, P.O. Box 213, Nakomis, IL 62075, <u>jwbarringer@consolidated.net</u>


<u>s/ Hilary W. Frooman</u>
HILARY W. FROOMAN, Reg # 6180241
Assistant United States Attorney
United States Attorney
201 S. Vine, Suite 226
Urbana, Illinois 61802
217/373-5875
FAX: 217/373-5891
hilary.frooman@usdoj.gov