IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA,

v.                                        Case No.   CR 04-20031

DENNY R. PATRIDGE

DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S
MOTION FOR ORDER PREVENTING "DISSIPATING BOTH
MONETARY AND REAL ESTATE ASSETS

Defendant Denny Patridge, by and through his attorney Jerold Barringer, files his response in opposition both to the suggestion that Defendant is even attempting to "dissipate" monetary assets or other real estate assets, or that the Court should exercise its power under the all writs act to procure restitution in the event such is ordered.   A declaration is attached and incorporated herein by reference by Denny Patridge.

As an initial note on page 7 of the Government's Memorandum, it states that an "Affidavit of Hillary Frooman" was attached, but nowhere on the Court's web cite does this "Affidavit" appear.

FIRST ISSUE

1.   IS RESTITUTION "MANDATORY" UNDER FEDERAL LAW
REGARDING COUNTS TWO THROUGH SEVEN?

1

The Government claims the answer to this question is yes, and directs this Court to the 7th Circuit's decision in *U.S. v. Minneman*, 143 F.3d 274, 284 (7th Cir. 1998) for the proposition that restitution is mandatory in this case.

A. The very case the Government cites from states that "the VWPA does not authorize a court to order restitution for Title 26 offenses - tax offenses." *Minneman* @ 284; See also (as quoted in *Minneman*) *United States v. Gottesman*, 122 F.3d 150, 151 (2d Cir. 1997); *United States v. Stout*, 32 F.3d 901, 905 (5th Cir. 1994)   The "VWPA provides for the reduction of any restitution order based on any recovery by the victim from insurance or through civil proceedings. See §3664(j)"  *Minneman* @ 285

(i). COUNTS TWO AND THREE ARE TITLE 26 OFFENSES

There is no doubt that Counts Two and Three derived from 26 U.S.C. §7201.  Restitution regarding these sections is not authorized.  *Minneman* @ 284

(ii). COUNTS FOUR, FIVE, SIX AND SEVEN ARE INTERTWINED WITH THE TAX OFFENSES, THUS NO RESTITUTION IS AUTHORIZED UNDER 3663(A).

It is true that Counts Four and Five are "wire fraud" charges and Counts Six and Seven are "money laundering" charges.   For the purpose of sentencing, this Court must look at Counts Six and Seven and Four and Five first separately and

second concurrently.

### (a).   COUNTS SIX AND SEVEN

Counts Six and Seven are the "money laundering charges" and both of these claims rely upon the tax evasion theory alleged in Count Two.   Though these are separate offenses for the purpose of Jury consideration they were joined by the Jury Instructions, the Superceding Indictment and are "grouped" for the purpose of U.S.S.G. § 3D1.1(a)(1) by the Sentencing Commission (1998).   All of the claims by the Government derive from the same course and conduct.   Each charge hinges upon whether or not the Defendant "owed" any money to the Government for the years 1996 and 1997 as "alleged in Count Two".

The amount of "restitution" for Counts Six and Seven would be the amount "owed" according to the law under the claims of Count Two.   Again, Count Two is one of the Title 26 Offenses not authorized for restitution under the VWPA.

### (b).   COUNTS FOUR AND FIVE

The Government claims under section 3663(A) that this Court is mandated to order restitution because Counts Four and Five involve the term "fraud" and that term is mentioned in 18 U.S.C. § 3663A(c)(1)(A)(ii).   First, Sec. 3663A does not include the types of charges involved in Defendant's case.  Second, Counts

Four and Five are again based upon the alleged tax loss of Count Two, and that type of loss, under Title 26, is specifically excluded from the VWPA.

Here, the Government seems to argue that it needs to use the Court's power to order "restitution" for Counts Four and Five because it cannot order restitution under Count Two. The problem for the Government here is that whatever the amount is that was being wired to evade taxes or laundered to evade taxes is the same amount that the Government has thus far been unwilling to identify in this case as being owed.

Witnesses testified for the Government that the amounts at issue in the NOD were in dispute, under the law, by the Defendant. Government witnesses also testified that the amounts at issue in the NOD's were a "whipsaw" tax and that the IRS would never attempt to collect on these amounts. See Bergschneider, Miller.

The test is, the Seventh Circuit said, "we examine the ruling to ensure that the judge acted on accurate information, determined the amount of loss with appropriate certainty, and provided the defendant with an opportunity to be heard on the question of the amount of loss. See *United States v. Mischler*, 787 F.2d 240, 247 (7th Cir. 1986).

This is all the Defendant has ever asked for. Congress enacted the RRA in 1998 to prevent the IRS from the types of abuses which would result in the IRS

attempting to collect more from the taxpayer than the law provides.  See section 7214 for prohibited acts of agents and officers.

Recently, the IRS, at the direction of special agent Coleman, directed a new "settlement officer" to hold the collection due process "hearing" Defendant was due four years ago under 26 U.S.C. §6330.  The "officer" chose not to discuss the "underlying liability" because he determined that the Defendant had received a "Notice of Deficiency".  See *Exhibit 3, Declaration of Denny Patridge*

At the hearing on this matter, Defendant attempted to settle the issue of "liability" and the "officer" refused.   When pressed as to how he determined the Notice of Deficiency was a "Statutory" Notice of Deficiency, the "officer" was unable to identify with any specificity where the "liability" was derived. *Patridge Declaration @ 2*.

After pointing out that the "liability" could not be a whipsaw tax and that section 6213 directed that in order for the Notice of Deficiency to be a Statutory Notice of Deficiency, the "deficiency" must come from one of the areas listed in section 6212, the "officer" could not identify what area applied.    When asked where under Subtitle A or B or subchapters 41,42,43, and 44 did the whipsaw deficiency derive, the "officer" answered all of them, that the deficiency came from each of the titles and subchapters listed in section 6212.   That position is

legally incorrect.

The Government seems to be seeking an amount owed in the civil CDP hearing that is different than the amount they can seek herein. For instance, tax loss becomes center stage for the purpose of sentencing in this case. Setting aside the argument that this entire case has the possibility of being reversed and dismissed by the Seventh Circuit, the next question is what is the amount that could be sought for restitution. Even if the Government could seek restitution under Counts Four, Five, Six and Seven, that amount would be subject to the same rules of evidence that govern sentencing for conviction of the offenses listed in this case.

This then would bring in "tax loss". The Government will no longer be able to stand behind the "he owes something". The Government amended the indictment in September, 2004, listing out "more than $30,0000" for Count Two, which of course, means less than $40,000 under U.S.S.G. 2T4.1(G)(1998). The Government then moved to strike this "special finding", which was not really found by the Grand Jury, because of the interpretation the DOJ gave the holding in U.S. v. Booker (2005). Defendant strongly objected to the removal of the special findings section arguing that there could not be a tax loss established without a finding by the jury as to an amount due and owing.

The only evidence presented to the Jury at trial was the Notice of Deficiency for 1996 and 1997. Whether this amount is owed is still a question not yet settled by any Court. The jury was not asked whether this was the amount the Defendant owed. The Jury was even told a formal assessment was not even required under the facts of this case. Nowhere in the Government's Motion does it ever state what it believes the evidence will show as to how much is even owed for 1996 and 1997, let alone whether that amount can somehow be ordered as "restitution" for Counts Four through Seven, but not Count Two.

Since the amount "owed" is still actively in dispute civilly between the IRS and the Defendant, there is no restitution that can be calculated as the "tax laws provide elaborate procedures for determining a taxpayer's civil liability. See 26 U.S.C. § 6212(a), 6213." *Minneman* @ 285

Though *Minneman* holds that "[t]he amendments to the VWPA evince a congressional intent to expand the district court's ability to determine the amount of restitution" and that "the statute contemplates that on occasion the district court may need complex procedures to determine the amount of loss with accuracy" it also does not take into consideration "congressional intent" regarding RRA 1998 and how the "collection" is "suspended" during any timely exercise of a request under section 6330. It is shocking that the Government claims they have no idea

as to how much is "owed" after so many years of pursuit in this case. *Brief @ 5*

The Government in effect is asking this Court to circumvent section 6330(e) by ordering restitution on Counts Four through Seven when it knows the amounts at issue in Counts Four through Seven are interdependent upon the amounts at issue in Count Two.

The amounts at issue in Count Two are currently being fettered out under the CDP statute of section 6330 which the law specifically provides for.   To allow the argument of restitution to prevail would be to allow the Government to continue to prosecute this case as though section 6330 never even existed.   The Government may have survived so far with the "he owes something" but that is as far it may go without running into the "complex procedures to determine the amount of loss with accuracy".

Section 6330 is part of that complex procedure and the accuracy is at issue and has been for almost five years.   This is why, Defendant argues, Congress "suspended" the running of the limitations under section 6531, under section 6330(e), so that the issue of liability would have been settled prior to the bringing of any criminal action.   This Court has previously rejected this argument without comment, but Defendant intends this to be one of the many issues appealed to the Seventh Circuit Court of Appeals.

2.   DEFENDANT IS NOT SELLING OR TRANSFERRING ANY LIQUID ASSETS NOR THE HOME IN WHICH HE LIVES.

A.   THE HOUSE

To start, the Government has placed a "lien" against the name of Denny Patridge on December 3, 2000, on his real estate. *See Exhibit 2 Declaration of Denny Patridge*. There is no way that any Title Company would ever give title insurance without this lien being satisfied or removed, nor would any attempted sale procedure move forward without such title insurance in this instance. Further, the Illinois fraudulent conveyance act would protect the government with its lien, hence, no potential injury could ever occur to the Government by any attempted sale to the property. The Government is protected. This is regardless of the "lien", the Goldstein mortgage, the Government claims "prohibited" it from obtaining first lien protection against the property owned by the Defendant.

Furthermore, the Defendant has no intention of selling the home for any purpose as he intends for his wife to live there whether he is serving time or not. Likewise, whatever is determined by law that Defendant owes in taxes to the United States, the Defendant intends to pay. If Defendant does not agree with the final amount for any reason, the Defendant then will be able to file a claim for refund and litigate any further decisions under a suit for refund through his

attorney. The only issue ever was what the law says he owes. Thus far, even under the Government's words, that amount is yet to be determined. Isn't it interesting that something supposedly so simple is so difficult to ascertain?

    B.    OFFSHORE ACCOUNTS

Currently, Defendant cannot even access the remaining money in the private annuity because the fund has been frozen. *See Exhibit 1 Declaration of Denny Patridge*. There appears no question that the Government has had something to do with why the bank in Grenada has communicated that money deposited there is not currently available. The only money Defendant has used was the money that became available and that was pledged and used to pay his attorney for the criminal trial..

Defendant has not paid his attorney for any services related to the civil action against Mickey, Phillips and J.K. Harris. *Patridge Declaration @ 1* Also, Defendant has sued each of them for their breach of contract, which was largely factually established in the criminal trial. The Government seeks to spin that issue in another direction.

    C.    DEFENDANT'S BANK ACCOUNTS

Now for the offensive the Government has initiated against the Defendant. Agent Coleman and the Government have made contact with Defendant's local

bank Defendant did business with and caused the bank to close Defendant's account. Agent Coleman and the Government have contacted Companies the Defendant sold insurance for and persuaded them to cancel their Contract with the Defendant. *Patridge Declaration @ 2*. These efforts are devastating to the financial condition of Defendant, and effectively have eliminated the ability of the Defendant to earn any income.

And now, the Government asks this Court to keep the Defendant from dissipating his assets for restitution reasons? The Government sent out a fax press release, just days after the Jury Verdict, informing the entire world that Defendant had been ordered to pay over $1 Million in Restitution. *See Exhibit 4 attached to Declaration of Denny Patridge* To those the Defendant did business with this was devastating. Knowing this was false, as no "restitution" was either ordered or could have been ordered then or now, the Government now requests this Court to justify the Government's previous false press release with an Order seizing assets for restitution now.

If the Government was so concerned about restitution then why is it doing everything in its power to stop Defendant from earning any money? Simply, it is not worried about anything but causing Defendant more trouble. Hence, the new attack on assets as well as income. If it were so concerned about access to money

11

then why is it making it so difficult for the Defendant even to be able to maintain a bank account?

CONCLUSION

This Court lacks jurisdiction to enter an order that would not aid in its respective jurisdiction. There is no doubt the VMPA does not authorize "restitution" in this case. There is also no doubt that what is owed is still being civilly debated. The civil action filed by the Defendant was brought for Breach of Contract and for common law fraud. Further, there is no reason to enter any Temporary Restraining Order, as the lien against the Defendant amply protects the Government's interest, plus the issue surrounding the money offshore is in the control of the Government in this case. As to the Civil action the Defendant has not incurred more than the $ 250.00 filing fee and the cost of service of process.[1]

>	Respectfully Submitted
>	/s/ Jerold Barringer
>	Jerold Barringer
>	Attorney at Law
>	P.O. Box 213
>	Nokomis Illinois 62075
>	217-563-2646

---

[1] Which will be paid for by the Attorney in this case if the Court instructs the Defendant not to pay the $ 40.00 himself, as the attorney in this case now has his own interest to protect on the contingency fee case.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of Defendant's Objections to the Government's Motion for Temporary Freeze of Defendant's Assets and First Declaration of Denny Patridge with attached exhibits was electronically delivered through the Court's ECF system on August 23, 2005 to:

Hilary W. Frooman
U.S. Assistant Attorney
201 South Vine
Urbana, Illinois 61801
217-373-5875

<u>/s/ Jerold Barringer</u>