IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

UNITED STATES OF AMERICA,

v.                                                                          Case No.   CR 04-20031

DENNY R. PATRIDGE

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SUPERCEDING INDICTMENT

The Defendant, by and through his attorney, Jerold W. Barringer, files this Memorandum in Support of his Motion to Dismiss the superceding indictment on grounds that Defendant's Fifth Amendment Right to Due Process and his Sixth Amendment Right to compel witnesses to testify in his favor and in his own defense were violated in this case and were violated intentionally by design in the Government's prosecution of the case against the Defendant.  Besides disputing the Government's version of their case in chief, Defendant had a right to present a "good faith" defense that he did not believe that what he was doing was at any time in violation of any provision of the Internal Revenue Code, and that he did not believe that what he was doing was in violation of any of the wire fraud or money laundering statutes set forth in connection with the alleged tax evasion theory contained in the superceding indictment.

1

BACKGROUND OF FACTS

In 1995, Denny and Judy Patridge entered into a contract with the Aegis Company regarding future financial planning. *Trial testimony of Agent Bernie Coleman.*

At all times the contract required that any communication between Defendant and the IRS was required to be handled by Aegis Company's legal department. This was true even though the actual written or oral communication eventually could be made by Defendant as long as it first was approved by Aegis according to the contract. *Trial testimony of Denny Patridge.*

In 1997, the Internal Revenue Service ("IRS") conducted an internal audit of Denny and Judy Patridge's tax information communicated to the IRS for the calender year 1995. *Trial testimony of Agent Pogue.* The IRS declined to pursue either a civil audit or criminal referral of Defendant's income tax information he presented for calender year 1995. *Trial testimony of Agent Pogue.*

No person representing the IRS ever informed Defendant that what he had supplied in the way of tax information for calender year 1995 was viewed by the Government as illegal and in violation of the income tax laws. *Trial testimony of Agent Jim Pogue.* In 1999, Revenue Agent Mark Miller of the IRS, began a civil audit of Defendant's income tax information he presented to the IRS for calender years 1996 and 1997. *Trial testimony of Agent Miller.*

It was part of the contract agreement that Aegis Company would provide all

representation of Defendant regarding any legal dispute that arose between the IRS and the information reported to them by the Defendant following the Aegis program.  *Trial testimony of Denny Patridge.*

After only one letter sent to Defendant, and an admitted policy that included at least two notices regarding audit to every other American Taxpayer, Agent Miller closed his audit prematurely and sent Defendant's 96 and 97 tax years to 90 day letter status. *Trial testimony of Agent Miller*.

On January 27, 2000, Agent Vermita Boyd issued two Notices of Deficiencies involving the Defendant and the case herein.  *Testimony of Agent Boyd*.  The first notice of deficiency was sent to Patridge Asset Management Trust and the whipsaw notice of deficiency was sent to Denny and Judy Patridge.

Prior to May 11, 2000, the date in which the two 90 day notices of deficiencies were to expire, defendant sought and hired multiple persons to represent him and his wife and Patridge Asset Management Trust in regard to the January 27, 2000 whipsaw notice of deficiencies.

Defendant sought representation by Edward Bartoli, an attorney with Aegis, in regard to the January 27, 2000,  90 day letters issued by the IRS (whipsaw to Mr. Patridge)..  *Trial testimony of Denny Patridge.*   Defendant sought representations of Mr. Hopper, an expert in the field of trusts and taxes, in regard to the January 27, 2000, 90 day letters issued by the IRS (whipsaw to Mr. Patridge)..  *Trial testimony of Denny*

*Patridge*

Defendant sought the advise of Mr. Valone, one of the owners of Aegis, and the principal person Defendant relied upon in entering into the contract with Aegis in regard to the January 27, 2000, 90 day letters issued by the IRS (whipsaw to Mr. Patridge). *Trial testimony of Denny Patridge.* Defendant hired Mr. Parker, an attorney out of New York, to represent him, as recommended by Aegis with regard to the January 27, 2000, 90 day letters issued by the IRS (whipsaw to Mr. Patridge). *Trial testimony of Denny Patridge.*

Defendant then contracted and hired the tax resolution firm of J.K. Harris and Company, LLC, to handle what then was described as an "emergency" denoting "EMT" with an emergency date also identified on the contract. *Trial testimony of Denny Patridge and Bobby Mickey.* The name of Mr. Yasidian appears on a fax regarding a power of attorney between J.K. Harris and Company and both Defendant and Patridge Asset Management Trust. *Trial testimony of Denny Patridge.*

Defendant then hired and received legal advice of attorney Brent Winters regarding the dispute between Defendant and the IRS. *Trial testimony of Denny Patridge.*

In July, 2000, the IRS, through several criminal investigators, visited J.K. Harris and Company, LLC. The visit concerned how J,K. Harris and Company, LLC was handling their power of attorneys and other issues. *See Exhibit 3a.*

It is clear in this case that the IRS was using civil procedures to background and

conduct a criminal investigation. Criminal also helped direct who was civilly assigned to the issues between Defendant and the IRS, plus criminal determined when those issues were to stop and start again. *See Exhibit 2a, transcript of CDP officer assigned stating that Agent Coleman directed him to continue*. It is also clear that the time between the Notice of Levy issued to the Defendant on November 23, 2000, and the date the Notice of Determination were issued in regard to that notice, took almost 5 years.

During the trial of the Defendant, this Court, at the request of the prosecution, granted the protection of the fifth amendment to Mr. Bartoli, Mr. Valone, Mr. Hopper, Mr. Parker and Mr Winters as this Court determined that each of them was under current threat by the prosecution for issues unrelated to Defendant. How that fifth amendment protection trumped Defendant's sixth amendment right was unclear to Defendant.

It is true that Mr. Valone, Mr. Hopper, Mr. Parker and Mr. Bartoli were indicted in Chicago for alleged crimes different than those alleged against the Defendant. *See Exhibit 4a*. It is also true that Mr. Winters was indicted in Champaign for other matters not directly related to Defendant.

It is true that the prosecution in this case worked directly with the prosecution in the Chicago Aegis case which was not by coincidence but by design. *See Trial testimony of Agent Coleman*.

It is also true that at the same time of the trial of the Defendant, the IRS had ongoing an appointed special Agent of the IRS to investigate hundreds of complaints filed

5

by citizens against the representations J.K. Harris and Company, LLC, *See Exhibit 5a.*

At least two states filed complaints against J.K. Harris and Company, LLC, for defrauding consumers out of money by making false claims and promises. See *Exhibit 6a*. These cases were settled by J.K. Harris and Company, LLC, returning each dollar they received from the consumers in those two States.

This Court is judicially aware of the claim of perjury by the Defendant against Larry Phillips, as promoted by Assistant U.S. Attorney Hillary Frooman in front of the Grand Jury, regarding the tape and transcript of Mr. Phillips' testimony to the Grand Jury in comparison to a taped conversation Mr. Phillips had with attorney Brent Winters concerning what Mr. Phillips directed Defendant to do.

## ARGUMENT AND AUTHORITY

The Defendant was charged with making a false statement, which had to be proved to be material, with regard to his 1998 tax return (Count 1). Defendant was charged with one count of willfully evading the payment of income taxes imposed by Title 26 (Count 2), as well as one count of willfully evading the tax imposed by Title 26 (Count 3). Counts 4,5,6 and 7 are all interrelated to Count 2, and thus dismissal of Count 2 would logically result in dismissal of Counts 4,5,6 and 7.

**WILLFULNESS**

In each of the first three Counts of the superceding indictment, the term "willfully" is relied upon to describe one of the elements of those crimes. As has been held by the Supreme Court, the elements of § 7201 are willfulness; the existence of a tax deficiency, *Lawn v. United States*, 355 U.S. 339, 361; *Spies v. United States*, 317 U.S. 492 at 496; and an affirmative act constituting an evasion or attempted evasion of the tax imposed at issue under Title 26 or ***of the payment thereof***, *Spies v. United States*, 317 U.S. 492, 495; See . *Sansone v. U.S.*, 380 U.S. 343, 351 (1965)

The Supreme Court though found that when the term "willful" appears in the context of "cases involving willful violations of the tax laws," it "concluded that the jury must find that the defendant was **aware of the specific provision of the tax code** that he was charged with violating." *Bryan* @ 191; See, e.g., *Cheek v. United States*, 498 U.S. 192, 201 (1991). "The proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws. Congress has accordingly softened the impact of the common law (ignorance of the law is no excuse) presumption by making **specific intent to violate the law** an element of certain federal criminal tax offenses." *Cheek* @ 199 "This special treatment of criminal tax offenses is largely due to the complexity of the tax laws." Id. @ 200

Thus, "willfulness, as construed by our prior decisions in criminal tax cases,

requires the Government to **prove that the law imposed a duty** on the defendant, that the defendant **knew of this duty**, and that he **voluntarily and intentionally violated that duty**. *Cheek,* @ 201

### GOOD FAITH RELIANCE

A good faith misunderstanding of the Internal Revenue Code would be a defense if the defendants were accused of tax evasion, see *United States v. Hauert*, 40 F.3d 197, 202-03 (7th Cir. 1994), but tax cases are "'an exception to the traditional rule' that ignorance of the law is no excuse." *Bryan v. United States*, 118 S. Ct. 1939, 1947 (1998) (quoting *Cheek v. United States*, 498 U.S. 192, 200 (1991)). See also *U.S. v. Stockheimer*, 157 F.3d 1082, 1088 (7th Cir. 1998)

It is of course true that "the defendant in a criminal case is entitled to have the jury consider any theory of the defense which is supported by the law and which has some foundation in the evidence, however tenuous." *U.S. v. Walters*, 913 F.2d 388, 391 (7th Cir. 1990); See also *U.S. v. Becker*, 965 F.2d 383 (7th Cir. 1992)

In *U.S. v. Walters*, 913 F.2d 388 (7th Cir. 1990) the Court stated that "If the jury accepted this characterization of the events, Walters could not have been considered to have formed the specific intent necessary to commit fraud upon the universities. See *U.S. v. Martin-Trigona*, 684 F.2d 485, 492 (7th Cir. 1984)

### SIXTH AMENDMENT - WITNESSES IN OWN DEFENSE

The Sixth Amendment provides that "the accused shall enjoy the right . . . to have

8

compulsory process for obtaining witnesses in his favor." Because this right "is an essential attribute of the adversary system itself," the Supreme Court has repeatedly stated that few rights "are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). "Indeed, this right is an essential attribute of the adversary system itself. . . . The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact. The right to offer testimony is thus grounded in the Sixth Amendment. . . ." *Taylor v. Illinois*, 484 U.S. 400, 408-409 (1988).

According to Joseph Story, the provision affording a defendant to compel witnesses in his favor was included in the Bill of Rights in reaction to a notorious common-law rule categorically excluding defense evidence in treason and felony cases. *Washington v. Texas*, 388 U.S. 14, 19-20 (1967) (footnotes omitted). In *Washington v. Texas*, 388 U.S. 14 (1967), when addressing that this right is applicable to the States, the Supreme Court rested its decision on the premises that it "is in plain terms the right to present a defense" and that it "is a fundamental element of due process of law."

## SIXTH AMENDMENT - CONFRONTATION OF WITNESSES

In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him." U.S. Const., Amdt. 6; *Pointer v. Texas,*

9

380 U.S. 400 (1965) (applying Sixth Amendment to the States). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). When the government seeks to offer a declarant's out-of-court statements against the accused, and, as in this case, the declarant is unavailable, courts must decide whether the Clause permits the government to deny the accused his usual right to force the declarant "to submit to cross-examination, the `***greatest legal engine ever invented for the discovery of truth.***'" *California v. Green*, 399 U.S. 149, 158 (1970) (footnote and citation omitted).

A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. See *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). A defendant's interest in presenting such evidence may thus "`bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*, supra, at 55 (quoting *Chambers*, supra, at 295); accord, *Michigan v. Lucas*, 500 U.S. 145, 149 (1991).

Moreover, the Supreme Court has found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused. See *Rock*, supra, at 58; *Chambers*, supra, at 302; *Washington v. Texas*, 388 U.S. 14, 22-23 (1967).

"A criminal defendant states a violation of the Confrontation Clause by showing

that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Confrontation Clause violations most often arise when the district court limits cross-examination to areas that impede the defendant's ability to question the witness. See *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995); *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir. 1994). The concern in such cases is that a defendant have sufficient leeway to establish "a reasonably complete picture of the witness," particularly when the witness's credibility is at stake. *United States v. Saunders*, 166 F.3d 907, 919 (7th Cir. 1999), citing *United States v. Laboy-Delgado*, 84 F.3d 22, 28 (1st Cir. 1996).U.S. v. Elem, 269 F.3d 877, 882 (7th Cir. 2001)

    This Court decided that when the fifth amendment rights of a witness run into the sixth amendment rights of an accused, indicted by a grand jury, that the Defendant in this case lost his sixth amendment right to confront and present witnesses in his own defense. Further, Defendant believes that the reliance on these witnesses, and their statements, put him in the place where the indictment alleges he was in violation of criminal tax code provisions.

    On June 16, 2005, the prosecution in this case filed a Motion (dkt # 128) in which they informed the Court regarding the fifth amendment dangers witnesses subpoenaed by Defendants would be subjected to. At oral argument on this motion, the Government informed the Court that they would not be interested in giving any immunity to any of the

subpoenaed witnesses.

On June 23, 2005, and again on June 24, 2005, this Court determined that five of the attorneys and experts Defendant relied upon should be protected from being allowed to give testimony in the trial of Defendant because they had a real concern that what they might say can be used against them.

Defendant had completely and totally relied upon the legal advice of attorneys and other experts in a series of successions. The Government was fully aware of this reliance prior to indicting the Defendant as they admitted in their June 16, 2005 Motion that some of the witnesses Defendant relied upon were indicted on April 8, 2004 while others were just under investigation.

The pattern in this case is clear. The Government chose to make certain that the Defendant could not present any evidence to the jury that he in good faith relied upon the advice of attorneys and other experts to do what the indictment claims criminally violated the tax laws of the United States.

This same prosecutor sought to have the Defendant held in contempt of court on several occasions, when faced with fifth amendment challenges by the Defendant, allegedly as trustee of a trust the government viewed as a sham, in hearings seeking Defendant to be held in contempt. Defendant claimed the fifth amendment protected him from answering the prosecutor's questions, the government said he had no protection, and the Court directed that if the Defendant did not answer the questions, Defendant would be

12

held in Contempt.  *See Exh. 7a.*

## SUMMARY

Defendant hired Aegis and its attorneys and experts.  The Government was aware of this from at least 1995, yet the Government did not even hint they objected to Aegis publically, at least to Defendant's knowledge, until June of 1999.  Defendant writes a letter to the IRS as directed by Counsel and the IRS aborts all policies and sends Defendant two 90 day Notice of Deficiencies including the illegal whipsaw in violation of 26 U.S.C. § 7214.

Defendant received the two Notices of Deficiencies and first communicates with Aegis and then hires attorney Parker.  What Defendant did and what Valone, Bartoli and Hopper said rested solely upon the words of Defendant because of the fifth amendment claims made by the three Aegis officials outside of the jury.  Parker gets notice he is being investigated and Defendant must find other assistance.  What Parker did rested solely upon the words of Defendant because of Parker's fifth amendment claims outside the jury.  Defendant also finds out Aegis is being investigated.  Defendant hires J.K. Harris and Company, LLC, and soon the IRS is refusing Power of Attorney filings, filings that previously had been accepted, and triggered a criminal investigation of J.K. Harris and Company.  What the Defendant did here again rests on the words of Defendant as well as the false statements of an already adverse witness in Larry Phillips before the jury. Defendant then hires attorney Winters and everything Defendant did under his advice

rests solely upon the words of Defendant and the controversial tape recording used to impeach Larry Phillips of J.K. Harris and Company, LLC, because Winters is granted immunity from testifying..

The Government was aware at the time they indicted Defendant that they needed to keep out any advice given to Defendant from being presented to the jury, other than the advice Larry Phillips testified to and his testimony was clearly adverse to Defendant.

If the Government's right to indict can only go forward if the Defendant's Sixth Amendment Right to present a defense is defeated, including witnesses adverse to the Defendant as well as on his behalf, then Defendant claims the due process clause of the Fifth Amendment prohibits an indictment from even being sought let alone issued or returned.

In this case, the Court ruled that the fifth amendment rights of witnesses to whom the Defendant relied must defeat any sixth amendment right the Defendant had to those witnesses testimony.  The question in this Motion is if the Sixth Amendment Right for the Defendant to put on a reliance defense is defeated by the Government claiming the witnesses are either indicted or under investigation, and the Government was aware of the indictment or investigation of the witnesses prior to indicting the Defendant, doesn't the right to indict the Defendant succumb to the Defendant's loss of his sixth amendment right to present a defense?

To now make things more clear, as late as the week of the 21st of August 2006, this

Honorable Court recused itself after being reminded by the prosecution in another case that this Court was the complaining party against Brent Winters that resulted in the criminal case being brought against him.

In the Government's notice, the Government claims this Court was the complaining party against Brent Winters even before Defendant was indicted. On July 9, 2002, this Court asked Hillary Frooman regarding the current disposition of Mr. Winter's Criminal Investigation. Prior to this date, at some unknown time, this Court provided background information to Jan Paul Miller, former U.S. Attorney, regarding Brent Winters and even "recommended an investigation..." *See Dft's Exhibit 1a @ pg. 1*. Since Mr. Winters was to be a witness in the Defense of Defendant and since this Court had become a complainant against Mr. Winters, it is reasonable to conclude Defendant was denied the right to Mr. Winter's testimony solely because of this Court's complaint against Mr. Winters.

## CONCLUSION

THEREFORE, Defendant respectfully requests this Court throw out the entire superceding indictment on the grounds that bringing the indictment and its subsequent prosecution are in direct violation of Defendant's Fifth Amendment Right to Due Process and his Sixth Amendment Right to be afforded the right to call witnesses in his own defense as well as to put forth a good faith reliance defense, both of which were denied by this Court.

       Respectfully Submitted

       <u>/s/ Jerold Barringer</u>
       Jerold Barringer
       Attorney at Law
       P.O. Box 213
       Nokomis Illinois 62075
       217-563-2646
       IL Bar # 06185092
       Jwbarringer@dtnspeed.net

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of this Memorandum in Support of the Motion to Dismiss the Superceding Indictment, have been electronically delivered through the Court's ECF system on August 30, 2006 to:

Hilary W. Frooman
U.S. Assistant Attorney
201 South Vine
Urbana, Illinois 61801
217-373-5875

/s/ Jerold Barringer
Jerold Barringer
Attorney at Law
P.O. Box 213
Nokomis Illinois 62075
217-563-2646
IL Bar # 06185092
Jwbarringer@dtnspeed.net