**E-FILED**
Friday, 01 September, 2006  04:47:55 PM
Clerk, U.S. District Court, ILCD

**Transcript of CDP Hearing**

**1 CURTIS:** Ok. I'm going to introduce myself. I'm <u>Curtis Megyesi</u>, I'm a

1. **2** Settlement Officer with the IRS. Ah, today's date is August the 17th, the time is 9:39.

**3** Uh, this a collection due process hearing in reference to a filing of a Notice of Federal

**4** Tax Lien. Uh, if you want to go ahead and introduce yourself around the room.

**5 JERRY:** My name is Jerry Barringer. I'm the attorney uh, for Mr. and Mrs.

**6** Patridge and I have a Power of Attorney on file.

**7 DENNY:** I'm Denny Patridge.

**8 JUDY:** I'm Judy Patridge.

**9 CURTIS:** OK. Do you want to go ahead and start or?

**10 JERRY:** Well, uh, we, of course submitted the, uh, request for notice

**11** of…uh…request for CDP hearing way back in uh December of 2000.

**12 CURTIS:** Correct.

**13 JERRY:** And nothing has occurred for quite some time with respect to the

**14** fact that there's a file that you had then sent out the information…uh… that the

**15** hearing was coming up. …Uh…I sent you a letter and you responded back to,

**16** uh…to that letter. Is it my understanding that the letter that you sent back is your

**17** answer to all the issues that I had put in my letter first of all?

**18 CURTIS:** Uh, I believe so. If you want, we can go through each issue if you

**19** want to go through it.

**20 JERRY:** I…I just…

**21 CURTIS:** I think so…I think I tried to address…I think you had uh…let me

**22** see if I can reference your letter. Oh… Ok, I've got a letter from you and don't see

**Page 2**

**1** a date on it immediately, but, uh, see if I can see a date which you might have signed

**2** it.…… . If I'm not speaking loud enough, I'll try to speak louder. I don't have a date

**3** on your letter, but you had…you had raised seven points in your letter.

**4 JERRY:** Yes.

**5 CURTIS:** And what I did was I think I've got seven uh, points addressing

**6** each one of your points in the letter.

**7 JERRY:** OK.

**8 CURTIS:** Did I answer your question?

**9 JERRY:** Um, no, I don't think so.

**10 CURTIS**: Ok, well, go ahead. And clarify..

**11 JERRY:** You have taken the position that Mr. that Mrs. Patridge cannot

**12** challenge the underlying liability um, because they have received a statutory…uh,

**13** they received a Notice of Deficiency, is that right? I…I guess the first question

**14** is….is it the opinion or position of the

**15** IRS…is that the Statutory Notice of Deficiency?

**16 CURTIS:** Yes.

**17 JERRY:** Is it the position or opinion of the IRS that that therefore meets the

**18** requirements of 6213 with respect to Notices of Deficiency?

**19 CURTIS:** Uh, did you get the copy of the reference for 6213? I'm not

**20** familiar with it.

**21 JERRY:** 6212, I'm sorry.

**22 CURTIS:** Ok. Yes. To answer your question.

**Page 3**

**1 JERRY:** Can you tell me what portion of, uh, either Subtitle A or B or

**2** Chapters 41, 42, 43, or 44, the Notice of Deficiency is referring to?

**3 CURTIS:** Can you clarify what you're…what you mean by those?

**4 JERRY:** That's what's listed in the Notice of Deficiency. Those are the

**5** areas where…

**6 CURTIS**: Uh hum.

**7 JERRY:** There has to be an issue generated to raise the Notice of

**8** Deficiency.

**9 CURTIS:** Uh hum . And yes to answer your question…

**10 JERRY:** Which one?

**11 CURTIS:** All of the above.

**12 JERRY:** All of them?

**13 CURTIS:** The Notice of Deficiency that was sent out…if I understand it

**14** correctly…from your letter. You had, you had, a Power of Attorney at the time with

**15** J.K. Harris who wasn't authorized to practice before the tax court, is that what you

**16** said in your letter?

**17 JERRY:** That's what Bobbie Mickie testified to under oath

**18 CURTIS:** Who is Bobbie Mickie?

**19 JERRY:** He is one of the owners of JK Harris.

**20 CURTIS:** OK. And he testified at your hearing that he said he wasn't

**21** authorized to represent you in tax court, so when you got the Notice of Deficiency

**21** you didn't petition because they put it in a hold file?

**Page 4**

**1 JERRY:** Yes.

**2 CURTIS:** Ok, so, once it was in a hold file…now we have a lot of taxpayers

**3** who file petitions in tax court and who have Power of Attorneys, but they, you know,

**4** that didn't explain why you didn't file a petition, so I'm…I'm not sure I'm clear on

**5** that.

**6 JERRY:** Because, JK Harris said that they would take care of it.

**7 CURTIS:** OK. Alright. So, that…so that part I'm…ok. So you're asking

8 now, is the Notice of Deficiency that was issued, is that…that…does that qualify as a

9 Notice of Deficiency, is that…?

10 **JERRY:** My question is…

11 **CURTIS:** Does that meet Code Section,

12 **JERRY:** The code section, first of all,

13 **CURTIS:** Yes.

14 **JERRY:** Is where in these code sections, does the whipsaw process, the

15 whipsaw tax fit within those.

16 **CURTIS:** OK, so what's you're saying now, is, go back to this same exact

17 issue that I did before. You're…you're saying the assessment is not valid.

18 **JERRY:** We don't believe the Notice of Deficiency is valid…,

19 **CURTIS:** OK.

20 **JERRY:** First of all.

21 **CURTIS:** OK.

22 **JERRY:** Whether…whether…whether he petitions the tax court or not.

**Page 5**

1 **CURTIS:** OK, we say the Notice of Deficiency is valid. If he disagreed with

2 this, his opportunity to challenge that based on whatever arguments that he had has

3 already passed. When he received the Notice of Deficiency, he has a time frame to

4 respond. His requirement is to file a Notice of Petition in tax court……. When that

5 opportunity passed…when that deadline passed…his right to challenge this issue

6 during the collection due process hearing is prohibited. Now, what I can do…is I

7 could…he has other avenues to pursue…to challenge of this tax liability if he wants.

8 The avenue he can choose…he can pay the tax…file petition in court. Number 2, he

9 can, uh, request an audit reconsideration and then…continue to contest the liability

10 that way. He cannot, however, raise this as an issue during this collection due

**11** process.

**12 JERRY:** OK.

**13 CURTIS:** OK. So there're other avenues, but this is not one of those

**14** avenues.

**15 JERRY**: We obviously respectfully disagree with that position, because of

**16** the…Number 1, we don't believe it's a statutory Notice of Deficiency. And from

**17** that again, the whipsaw tax, the whipsaw process, what provisions of 6212 does that

**18** fit within?

**19 CURTIS:** OK, again, you can't raise a liability issue. You cannot even

**20** discuss that during this hearing.

**21 JERRY:** OK. If they had not received a statutory Notice of Deficiency,

**22** could they be raising that now?

**Page 6**

**1 CURTIS:** Um hmmm. They could be raising the statu… If they did not

**2** receive statutory Notice of Deficiency, yes.

**3 JERRY:** They could be raising…end up challenging the underlying liability.

**4 CURTIS:** Yes.

**5 JERRY:** The underlying liability?

6 CURTIS Yes, the IRS would still disagree with that and he could

7 petition and raise that as an issue in court.

**8 JERRY:** OK. Um…and if he had not received the statutory

**9 CURTIS:** Um hmmm.

**10 JERRY:** Notice of Deficiency…we're going hypothetical here…

**11 CURTIS:** Um yeah….

**12 JERRY:** Ah, had not received a statutory Notice of Deficiency…

**13 CURTIS:** Um hum.

**14 JERRY:** And challenge the underlying liability…

**15 CURTIS:** Uh hmmm.

**16 JERRY:** Would you personally have the ability to hear that case or would it

**17** have to be somebody else that could hear it?

**18 CURTIS:** Ok…we uh..I could hear that case.

**19 JERRY:** OK. You have that authority to…

**20 CURTIS:** Uh hum. Uh hum.

**21 JERRY:** Because we discussed in the letter…Settlement Officer versus the

**22** Appeals Officer and you said there's not really a difference for purposes of 6330?

**Page 7**

**1 CURTIS:** That's correct.

**2 JERRY:** Ok. Um, and, so you're saying with respect to the underlying

**3** liability…that's not being discussed at all.

**4 CURTIS:** That's correct.

**5 JERRY:** Second subject is that you're required to verify that all

**6** applicable…

**7 CURTIS:** Correct…

**8 JERRY:** …Laws…

**9 CURTIS:** Uh hum.

**10 JERRY:** Regulations have been met.

**11 CURTIS:** Yes.

**12 JERRY:** Who can …from the Secretary's Office, or delegates of the

**13** Secretary has... sent you the verification that everything is a fact, first of all.

**14 CURTIS:** I review, let me go back and say one thing in reference to that.

**15** Every case is different. The options, the requirements that need to be met in any

**16** particular case can be varied. Um, every case stands on it's own. Some cases, some

**17** situations apply or some rules are applicable and some they're not. Ok. And now

**18** basically what that provision is talking about is before the IRS is allowed to go out

**19** and try to collect a tax from you, ok, one, they have to have an assessment…they

**20** have to have a valid assessment. Two, they have to send you notice of that

**21** assessment. Time has to have expired and that tax has remained unpaid. Uh, so you

**22** have to have notice, you have had the opportunity to pay the tax, and if you refuse,

**Page 8**

**1** neglect, or disregard it, then at that point the IRS can go in and begin collection action.

**2** So what has happened is, they have sent you a series of notices. They sent you a

**3** Notice of Assessment…, uh, they sent you three or four notices…I made a list of them

**4** in my letter…maybe I should read those off so we'll have them on the tape recording

**5** here. Notices have been sent to advise you of the assessment and to make demand for

**6** payment. Account transcripts indicate that notices requesting payment were sent on

**7** Aug. 7, 2000, Sept. 11, 2000, October 16, 2000. When the taxes remained unpaid the

**8** IRS sent Notice of Intent to Levy on November 23, of 2000. So, basically, when the

**9** IRS notified you of the assessment….when the IRS sent you these notices requesting

**10** payment, they've fulfilled the requirement for that provision, and so what has

**11** happened is the IRS basically at this point, you know, has…has satisfied all the

**12** requirements to begin levy action.

**13 JERRY:** Let me ask another question…

**14 CURTIS:** Sure.

**15 JERRY:** As we work our way through this.

**16 CURTIS:** Uh hum.

**17 JERRY:** Is it the position of the IRS…

**18 CURTIS:** Uh hum.

**19 JERRY:** That you're not required to take a look at the statutory notice of

**20** deficiency to see if…it met…

**21 CURTIS:** Uh hum.

**22 JERRY:** The applicable statutes and regulations?

**Page 9**

**1 CURTIS:** Yes. If that Notice of Deficiency is dissatisfactory, ok, so

**2** basically, what has happened it fulfilled that requirement it needed to fulfill. If they

**3** disagreed with any of those provisions that you say…then again, at that point they

**4** should have petitioned the tax court. They can not raise that issue. You keep kind of

**5** goin' back to it…I understand where you're at, but…

**6 JERRY:** I have to lay the groundwork.

**7 CURTIS:** I understand.

**8 JERRY:** For what…uh, I'm not trying to be difficult, but I do have to lay

**9** the groundwork for what I'm trying to accomplish. Um….and along those lines, you

**10** have said that the stat…the Notice of Deficiency that you…we dispute whether it's

**11** proper statutory or not, IRS perhaps believes that it is.

**12 CURTIS:** Yes, we do.

**13 JERRY:** Um, where in it…in the Notice of Deficiency…does it reference

**14** the code provision for purposes of the tax that was owed.

**15 CURTIS:** Ok, I don't know, we'll have to look at the letter and see if it

**16** references. It should…as a matter of fact, let's go ahead and look at the letter, I think

**17** I sent you a copy of it. I've got a copy of it right here dated May 11, 2000. That's

**18** the date it officially has to be filed by…dated actually January 27, 2000. I mean, if

**19** you look at it, it references all the code sections it needs to reference, I don't

**20 JERRY:** It references one code provision…the penalties provision.

**21 CURTIS:** Uh huh, I see that.

**22 JERRY:** What is reference…

**Page 10**

**1 CURTIS:** Well, …

**2 JERRY**: What are provisions for purposes of taxes?

**3 CURTIS:** Let me look. 6662( ) tax computed with non-penalty adjustments

**4** and adjustments subject to penalty under 62, excuse me 6662( ). I'm on page….uh, I

**5** don't know what page…. I'm on page, let me look, let me look, let me look. I can't

**6** keep…_____there…um…does it say Schedule One (a) on the top of

**7** yours?

**8 JERRY:** Yes.

**9 CURTIS:** OK…

**10 JERRY:** In handwriting?

**11 CURTIS:** Yes.

**12 JERRY:** There's Schedule One, the next page Schedule One(b).

**13 CURTIS:** OK.

**14 JERRY:** In answer to…is that what you.. Are these the pages you are

**15** referencing to?

**16 CURTIS:** Yes, that talks about the accuracy related penalty, yes. We're

**17** talking about the penalty here.

**18 JERRY:** Those don't specifically reference

**19 CURTIS:** Um hum.

**20 JERRY:** The tax itself? Is that right?

**21 CURTIS:** I'm looking at it. I don't know if it's necessary…I know it talks

**22** about the actual late penalty, I can see that… and I think it goes on to explain all the

**Page 11**

**1** schedule adjustments and this numerous schedule of adjustments…why the assessment

**2** was made. Um…it talks about…uh…under capital gain section on Schedule 3. It

**3** talks about, uh…Internal Revenue Code Section 61, 671-677 it talks about…uh…it's

**4** got numerous, numerous listings of code references here on Schedule 3.

**5 JERRY:** Well…

**6 CURTIS:** In talking about explanation of adjustments. That's go back to the

**7** tax on this and it…and it references why the…why the tax was assessed and what

**8** provisions of the code it was based on. So, if you go to page 5, it's got one, two, three,

**9** four, five code references there. You can go to page, uh, actually, it's got 5 in a

**10** different sections…interest income, dividend income. I think it pretty well

**11** explains…self-employed income, it talks about self-employed tax deductions. Uh…I

**12** don't know what further code sections that you're looking for there, but I think it

**13** explains it fairly well what the basis for those assessments were.

**14 JERRY:** Well, I mean…I mean…do…do you…?

**15 CURTIS:** I think…I think the letter is sufficient to identify why the tax was

**16** assessed. I think that, uh, based on the code sections I don't, I don't see any…any

**17** flaws with the Notice of Deficiency. Is that what you're asking or? And if there were

**18** any flaws then again, you're going back to the liability issue. I know you're laying

**19** groundwork, but it's just an issue that we cannot discuss during your hearing.

**20 JERRY:** Well, we're not discussing liability. We're actually discussing the

**21** groundwork in advance of that, I think…

**22 CURTIS:** Sure…

**Page 12**

**1 JERRY:** Uh, and I, and I

**2 CURTIS:** And I…and I again…my reference is and I'll state it again that the

**3** Notice of Deficiency was…was…was satisfactory for the requirements that it needed

**4** to meet.

**5 JERRY:** Do you know the history of the Patridges with respect that these

**6** tax returns and why it's talking about in this capital gains and trust information?

**7 CURTIS:** And why is that applicable for our hearing? If I know the history

**8** or don't know the history? I mean I can read the Notice of Deficiency, I can tell you

**9** why the tax was assessed. We can go through and read it if you want to read it, but

**10** why is that applicable some?

**11 JERRY:** Because the provision that you referenced to…

**12 CURTIS:** If you want to explain the history to me, go ahead, I'll be glad to

**13** hear it. I mean, you know…

**14 JERRY:** The phrase "whipsaw" we've talked about.

**15 CURTIS:** OK.

**16 JERRY:** That we put in letter form, uh, we've not talked about it here…was

**17** a process by which the revenue agent…

**18 CURTIS:** Uh huh.

**19 JERRY:** First, denied all the deductions Mr. Patridge on his business.

**20 CURTIS:** Um hum.

**21 JERRY:** Denied all of the…

**22 CURTIS:** Um hum.

**Page 13**

**1 JERRY:** Denied the validity of a trust…

**2 CURTIS:** OK.

**3 JERRY:** Sent all of the income from that back to him.

**4 CURTIS:** Um hum. Um hum.

**5 JERRY:** And then did calculations on that and then simultaneously…

**6 CURTIS:** Um hum.

**7 JERRY:** Issued a Notice of Deficiency for purpose of that of that trust

**8** where it denied its deductions, but kept it's income there, so first it had income…

**9 CURTIS:** Um hum.

**10 JERRY:** Or first it did not have income, and then it had income and it was

**11** being taxed there.

**12 CURTIS:** OK.

**13 JERRY:** Obviously, it then reflected at an amount that was owed that was

**14** substantially more than anything appropriate under the law.

**15 CURTIS:** Um hum.

**16 JERRY:** Because it's…

**17 CURTIS:** OK.

**18 JERRY:** It..it was…You may or may not agree with that position…

**19 CURTIS:** Um hum.

**20 JERRY:** The result was that…

**21 CURTIS:** Um hum.

**22 JERRY:** We took everything in consideration of what the IRS said Mr.

**Page 14**

**1** Patridge owed as of…January.

**2 DENNY:** 2000

**3 JERRY:** January 2000

**4 CURTIS:** Um hum.

**5 JERRY:** I was getting a specific date, January 2000, it was the 21st…

**6 JERRY:** It was almost 75% of his income…

**7 CURTIS:** Um hum.

**8 JERRY:** For each of the two years…

**9 CURTIS:** Um hum.

**10 JERRY:** Which would not be something that would be, uh, normally

**11** allowed in the law.

**12 CURTIS:** OK.

**13 JERRY:** Uh, when it's talking about trust issues here…

**14 CURTIS:** Um hum.

**15 JERRY:** It has alternatives.

**16 CURTIS:** Um hum.

**17 JERRY:** It says…alternatively…it gives a…a discussion…then it says…

**18 JERRY:** Then it says, alternatively and it gives another discussion. It's

**19** covering lots of different issues and lots of different ideas without picking one as a

**20** reason for what was being done.

**21 CURTIS:** Um hum.

**22 JERRY:** We're throwing lots of things against the wall and we hope one of

**Page 15**

**1** them will stick was actually the statment being made by, uh, Vermita….uh…Venita

**2** Boyd...

**3 CURTIS:** Um hum.

**4 JERRY:** Who issued the Notice of Deficiency…that was her part…her

**5** testimony under oath. I don't know which one of these applies. We've said all of

**6** them…

**7 CURTIS:** Um hum.

**8 JERRY:** This is a standard form letter. We've said them all.

**9 CURTIS:** Um hum.

**10 JERRY:** Uh, the point is that…and it comes back to the question I asked

**11** earlier…where in the code…

**12 CURTIS:** Um hum.

**13 JERRY:** Does this whipsaw process…

**14 CURTIS:** Um hum.

**15 JERRY:** Is it allowed?

**16 CURTIS:** Um hum. Again, you're going back to a liability issue. Uh, which

**17** cannot be raised during this hearing. And…if, again, there was a disagreement about

**18** this 75% tax on his income, you needed to petition the tax court by the date listed on

**19** the Notice of Deficiency. When that date came and past his opportunity to raise that

**20** as an issue during this hearing is prohibited. Now, again, I can provide you with

**21** alternative ways to challenge the liability. This, however, is not one of the avenues

**22** that's available to you.

**Page 16**

**1 JERRY:** And as we, as we… conclude this I hope that we can accomplish

**2** that…but I still have things I have to address.

**3 CURTIS:** I understand.

4 JERRY: With respect to this, it's your position that you're not required to

**5** look at the Notice of Deficiency to see if it complied with the law?

**6 CURTIS:** Uh huh. The Notice of Deficiency is adequate. It's as simple as

**7** that…it complies with the law.

**8 JERRY:** And…and…

**9 CURTIS:** That is my position.

**10 JERRY:** OK..Since that, is that part of what you have to make a

**11** determination on?

**12 CURTIS:** No, basically, uh, if a Notice of Deficiency is…is obviously

**13** flawed, you know, we would look at that…I don't think it's flawed.

**14 JERRY:** OK. Back again, where in the code, then is the whipsaw process

**15** appropriate, because I think you have to answer that question?

**16 CURTIS:** I understand what you're saying. If you disagree with this process

**17** of assessment, you needed to petition the tax court by the date on the Notice of

**18** Deficiency.

**19 JERRY:** OK.

**20 CURTIS:** Well, we're going to go in circles about this forever.

**21 JERRY:** I know and…and I…and I have accomplished what I have to with

**22** respect to that aspect of it.… That has to be ok

**Page 17**

**1 CURTIS:** I understand.

**2 JERRY:** Because I'm not going to

**3 CURTIS:** It's a liability issue, ok, and the liability issue is a Notice of

**4** Deficiency has been issued as per Internal Revenue Code 6330 cannot be raised or

**5** questioned during a collection due process hearing.

**6 JERRY:** If you received a Notice of Deficiency?

**7 CURTIS:** If you received a Notice of Deficiency? If and…and or otherwise

**8** had the opportunity to challenge.

**9 JERRY:** Actually it doesn't read that way.

**10 CURTIS:** Sure it does

**11 JERRY:** It says a different phrase.

**12 CURTIS:** OK.

**13 JERRY:** It runs in an opposite position..

**14 CURTIS:** OK. Go back, go back to the letter that I sent you. The initial

**15** letter that I sent you and I'll give you the terminology there.

**16 JERRY:** I'll read the underlying liability issue. The person may also raise

**17** at the hearing challenges to the existence or amount of the underlying tax liability for

**18** any tax period if the person did not receive any statutory Notice of Deficiency for

**19** such tax liability or did not otherwise have an opportunity to dispute such tax

**20** liability.

**21 CURTIS:** That's what I just said, yeah.

**22 JERRY:** Umm…And then again.. And then you have not…if you have not

**Page 18**

**1** gotten the statutory Notice of Deficiency

**2 CURTIS:** Or otherwise had the opportunity to challenge.

**3 JERRY:** How else would you challenge this?

**4 CURTIS:** You could have had another appeals conference in reference to this

**5** issue. You could have…you could have brought this issue already before appeals

**6** office. Maybe with your audit, for example, when you were being audited. Prior to the

**7** fact…prior to the time the Notice of Deficiency was issued.

**8 DENNY:** There was no audit.

**9 CURTIS:** I'm just saying…if you had it… for exam…I'm giving you an

**10** example. If you have an audit. You ok?

**11 JUDY:** Yeah. I just_____, oh, ok.

**12 CURTIS:** It's 10:00.

**13 JUDY:** Oh, OK.

**14 CURTIS:** It beeps on the hour…I'm sorry. But if you had a prior opportunity

**15** to raise this issue…I'll give you an example…for this tax year, you can request a

**16** collection due process hearing in reference to a lien filing, in reference to a notice of

**17** intent to levy, ok. You have a Notice of Intent to Levy, the IRS has sent you. And

**18** the response to that intent to levy, you've requested the hearing. If the IRS files a

**19** lien, you can request a hearing in reference to the lien filing. But if you had another

**20** opportunity to raise an issue for this period before the appeals office…even if you

**21** didn't receive a Notice of Deficiency you can't raise it again as an issue. You don't

**22** get another bite of the apple.

**Page 19**

**1 DENNY:** Parker wrote a letter to the appeals office in Chicago and they

**2** never responded to it. That was before the 90 days was up…that was before we even

**3** hired JK Harris.

**4 JERRY:** That was during the Notice of Deficiency period. He hired an

**5** attorney.

**6 CURTIS:** Uh huh.

**7 JERRY:** Had written to Ms. Boyd and got no response.

**8 CURTIS:** OK.

**9 JERRY:** Uh, I don't know anyone having raised this issue challenging

**10** liability, challenging anything else, um, aside from them asking for the CDP process,

**11** because JK Harris as we have said didn't do what JK Harris said they were going

**12** to do.

**13 CURTIS:** OK.

**14 JERRY:** They relied upon JK Harris, JK Harris didn't do anything, We

**15** believe that fits within 6630.

**16 CURTIS:** OK.

**17 JERRY:** Now, we know that you disagree with that and you're standing on

**18** that position and is that not correct?

**19 CURTIS:** Correct.

**20 JERRY:** Ok. With respect to this process, though, it is my understanding

**21** that with…with determining whether or not all applicable laws…

**22 CURTIS:** Uh huh.

**Page 20**

**1 JERRY:** Regulations…

**2 CURTIS:** Uh huh.

**3 JERRY:** Procedures have been met that the Secretary verified that to you or

**4** supposed to do something with respect to that to you.

**5 CURTIS:** Uh huh.

**6 JERRY:** Are you familiar with that process or has anybody from the IRS

**7** central office talked to you about this issue?

**8 CURTIS:** No. We have account transcripts that we look at to make sure that

**9** certain things have happened. Again, what that section is referring to, primarily I think

**10** what we need varied depended on the circumstances of the case. What that section is

**11** referring to is before the IRS begins with enforcement action. Before the IRS tries to

**12** collect the tax, they have to have an assessment, they have to…basically…I look at a

**13** lot of things. Do you have a refund out there that's gonna pay the tax? So, basically,

**14** the IRS…if there's a tax liability that is due, they've asked you to pay it. They've

**15** given you notice, they've sent you notice, they've given you the opportunity to pay it.

**16** The IRS shouldn't be beginning enforcement actions on an assessment that is invalid.

**17** They shouldn't be giving…beginning enforcement actions if you don't owe any tax.

**18** They shouldn't seize your car if you don't owe any tax. They shouldn't levy any

**19** bank account if you don't owe any tax. So, they have to have a valid assessment.

**20** You have a valid assessment. In my determination you have a valid assessment.

**21** They went through all the steps to…to make it a valid assessment, they sent you

**22** Notice of Deficiency prior to the time…ahh…after that was done, they assessed a tax.

**Page 21**

**1** So, if they've done those things, ok, and we cannot reach an agreement, I will sustain a

**2** notice of intent to levy. And what that means is that now the IRS can go out and try to

**3** collect this.

**4 JERRY:** Taking along with all you have just talked about and I'll ask a

**5** question to further, uh, my understanding. You had said that you can't…you

**6** shouldn't be doing, ah,

**7** collecting…ah, seizing a car, seizing a bank account, something that you don't have a

**8** valid assessment. That would be true if you don't have a valid Notice of Deficiency, is

**9** that right?

**10 CURTIS:** Well, if you don't have a valid Notice of Deficiency, you wouldn't

**11** have an assessment.

**12 JERRY:** Is it possible at some point that the IRS would accidentally issue an

**13** assessment without verifying that the Notice of Deficiency was valid simply because

**14** the taxpayer hadn't done anything with tax court?

**15 CURTIS:** If the Notice of Deficiency was sent, the taxpayer did not petition

**16** by that time frame, Notice of Deficiency advises the taxpayer…of what the

**17** tax…what they're going to assess in tax. A Notice of Deficiency also gives you an

**18** opportunity to challenge it.

**19 JERRY:** OK. We've ….

**20 CURTIS:** I know…we've been here. We've been here. So

**21 JERRY:** That didn't happen here.

**22 CURTIS:** OK.

**Page 22**

**1 JERRY:** There was no challenge in tax court.

**2 CURTIS:** So, then…then they.. basically the Notice of Deficiency stands,

**3** the tax was assessed.

**4 JERRY:** Now, when you said the tax was assessed…that isn't a…something

**5** that you sent specifically to the Patridges the assessment occurs in house in the

**6** computers or in records or something?

**7 CURTIS:** As soon as the assessment is made a notice is generated. They

**8** happen simultaneously.

**9 JERRY:** And that notice…does…it say this…we are assessing you now?

**10 CURTIS:** No, it says you now owe tax. This is what you owe. Please pay or

**11** admit payment within thirty days. To avoid any further penalty and interest… Now,

**12** from accruing. Simultaneously, an assessment has been made.

**13 JERRY:** Uh hum.

**14 JERRY:** Do you ever provide that to the taxpayer?

**15 CURTIS:** OK, I've given you a copy…just to kind of step ahead here a little

**16** bit. I have given you a… a account transcripts that'll show the date that the tax was

**17** assessed and the date the notice was sent.

**18 JERRY:** These pages we're looking at?

**19 CURTIS:** Those are them.

**20 JERRY:** OK. Now, they're the first pages after all the documents…

**21 CURTIS:** Um hum.

**22 JERRY:** Concerning, well, those first pages after your letter back to me…

**Page 23**

**1 CURTIS:** OK.

**2 JERRY:** Would that be a fair statement?

**3 CURTIS:** Well, uh, whatever, yeah, if you want to look, yeah, those are them

**4** right there.

**5 JERRY:** And they dealt with two years and this is the transcript?

**6 CURTIS:** Yes.

**7 JERRY:** Now, did somebody verify that the transcript was valid?

**8 CURTIS:** The transcript…the transcript's valid.

**9 JERRY:** Did somebody verify that, I mean…?

**10 CURTIS:** That would be me.

**11 JERRY:** OK. Did you verify that it was valid?

**12 CURTIS:** Yes.

**13 JERRY:** How did you do that?

**14 CURTIS:** By reviewing the transcript.

**15 JERRY:** OK.

**16 CURTIS:** OK.

**17 JERRY:** Were there any other steps that you took…felt…just veri…you just

**18** looked at it…

**19 CURTIS:** Just reviewed the verification and checked notice statutes on your

**20** notices that are issued and, uh, that…that is satisfactory to validate the assessment.

**21** I…they even put a code section in there…let me find it here. 6203. Account

**22** transcripts that are issued are valid to verify the assessment.

**Page 24**

**1 JERRY:** OK. And that's all that you did with respect to that issue is you

**2** looked at a transcript, you assumed that that was correct and verified it that way.

**3 CURTIS:** That's correct.

**4 JERRY:** OK.

**5 CURTIS:** That's all I'm required to do.

**6 JERRY:** How is it that this file happens to become active again…begin.. to

**7** become active how again?

**8 CURTIS:** Ummm…basically the criminal trial…was…if you look back…we

**9** have a correspondence. I'm sure you got it from Mr. Winters. Mr. Shermann had

**10** offered this hearing to Mr. Patridge numerous times in the past…or at least two

**11** times…I shouldn't say numerous, but there was an ongoing thing. Mr. Winters based

**12** on a letter that he had sent, uh….asked that this case be discontinued until such time

**13** that the criminal case was…was completed. So, if…then…Mr….basically, and I'm

**14** gonna…maybe I can read a couple here. This letter is to memorialize our

**15** conversation. Via telephone concerning the possible civil due process hearing from

**16** my client Denny Patridge. This is a letter from Brent Winters to Mr. Shermann, the

**17** prior, uh, appeals officer. Basically, what had happened was, he said, uh, uh, with

**18** respect the due process hearing could be held for Mr. Patridge. Uh, he is requesting

**19** that hearing being postponed…uh…until the conclusion of the criminal trial and

**20** because it will…uh…it requires Mr. Patridge to forfeit his right under the Fifth

**21** Amendment to the United States Constitution. Uh…it is not disputed that

**22** Mr. Patridge is presently under real accus…accus…I can't even say it…accusatory

**Page 25**

**1** danger as defined by the United States Supreme Court. As such, certain constitutional

**2** rights attach even in civil proceedings such as any due process hearing pursuant to a

**3** civil audit. This being the case, it would seem constitutionally improper to force Mr.

**4** Patridge to choose between a constitutional right to a meaningful…meaningful due

**5** process hearing and his right to Fifth Amendment. So, basically, the reason this was

**6** postponed was at your request.

**7 DENNY:** I don't think that was the question.

**8 JERRY:** So,

**9 CURTIS:** Now…

**10 JERRY:** What triggered it….?

**11 CURTIS:** The conclusion of the criminal case.

**12 JERRY:** Did somebody contact you?

**13 CURTIS:** Uh huh…

**14 JERRY:** Or did you receive that print out that you're looking at?

**15 CURTIS:** Uh, no, I received a, uh, I don't know if I received something by, I

**16** was contacted, and I was contacted by, um, let me get his name down. Bernie

**17** Coleman to advise me that the trial was completed.

**18 JERRY:** That the special agent in the trial…

**19 CURTIS:** Cause he was working with Mr. Shermann prior to the time with

**20** this suspension.

**21 JERRY:** OK, now did he talk with you or …or …?

**22 CURTIS:** He talked with me.

**Page 26**

**1 JERRY:** And…and did you...converse about this subject…about the appeals

**2** process?

**3 CURTIS:** He advised me that the criminal case has been completed and that

**4** was it…that was the extent of it. At this point, I can offer Mr. Patridge a heaing..

**5 JERRY:** OK. Um…

**6 DENNY:** He told you…you could offer a hearing?

**7 CURTIS:** Yes.

**8 JERRY:** Well, I'm through with most of my questions. Um…just a…just a

**9** recap…very simply…you are not considering anything with respect to liability?

**10 CURTIS:** That's correct.

**11 JERRY:** Because you believe that the Patridges have lost their opportunity

**12** to hear how 6330 is written?

**13 CURTIS:** Yes.

**14 JERRY:** Um…but that you could consider it if they…if they had not lost

**15** that opportunity…you could actually take a look at that right now?

**16 CURTIS:** That's correct.

**17 JERRY:** With respect to tax returns, in general, do you take a look to see

**18** whether or not, I mean, if you…do…would the situation apply to where you could

**19** take a look to see whether or not it fits a pattern of applicable rules, laws,

**20** regulations…?

**21 CURTIS:** Yes, every case is varied and different. Depends on the case,

**22** circumstances with each case. So, if they…if it is a valid issue that can be raised I

**Page 27**

**1** address it. If it's not a valid issue that can't…you know, cannot be raised, then I, then

**2** I cannot address it.

**3 JERRY:** In this instance, you're saying you cannot address it?

**4 CURTIS:** I cannot address it.

**5 JERRY:** So, if I asked you, uh, do you know whether or not the tax return

**6** fits requirements of the Paperwork Reduction Act…

**7 CURTIS:** Um hum.

**8 JERRY:** You'd say, I can't address that.

**9 CURTIS:** I can't address it.

**10 JERRY:** Ah…and the same would be true that if I asked whether or not the

**11** tax…there is a specific law required in filing a tax return and meeting all those

**12** requirements and whether or not the tax return and that…

**13 CURTIS:** If it's a liability issue, I cannot address it.

**14 JERRY:** You cannot address it.

**15 CURTIS:** If the Notice of Deficiency has been issued, I cannot address it.

**16 JERRY:** OK. And…I think that covers all my questions as far as what I

**17** wanted to talk about. Now, you have said with respect to have…to have…still

**18** challenge this…a couple of choices…

**19 CURTIS:** Uh huh.

**20 JERRY:** One which…

**21 CURTIS:** Audit reconsideration.

**22 JERRY:** That was actually the second choice.

**Page 28**

**1 CURTIS:** The first one…is pay the taxes and file a claim.

**2 JERRY:** File a claim. The second one is audit reconsideration.

**3 CURTIS:** Yes.

**4 JERRY:** Now, how would they go about doing audit reconsideration?

**5 CURTIS:** I have a publication that I can give you that will explain the whole

**6** audit reconsideration process.

**7 JERRY:** OK.

**8 CURTIS:** I'll be glad to get it for you momentarily.

**9 JERRY:** And…are there any other choices that you were going to talk

**10** about?

**11 CURTIS:** Yes. Cause he…cause if he wished to discuss collection

**12** alternative. The IRS at this point, you know, has sent the Notice of Intent to Levy

**13** and so we, so we want to levy, we want to collect the tax that's outstanding. Do you

**14** have any alternatives to offer? As far as I ask you to submit a, you know, financial

**15** statement so we can consider those alternatives or…are you willing to do that?

**16 JERRY:** Considering where we are in a criminal process right now…

**17 CURTIS:** Um hum.

**18 JERRY**: I don't think we can. We have to conclude that while the trial is

**19** concluded…that doesn't mean that all actions that are considered with it are

**20** concluded.

**21 CURTIS:** OK.

**22 JERRY:** So, we aren't in a position and won't be until probably the first of

**Page 29**

**1** the year, to be able to do anything else.

**2 CURTIS:** OK. So you're not willing to do that at this point?

**3 JERRY:** As far as being able to say we will give you this much money or

**4** whatever, I don't think they're in the position where they can.

**5 CURTIS:** OK. Is there any other issue at all or…?

**6 JERRY:** I don't have any others. Are you going to find that…that material

**7** with respect to the audit reconsideration?

**8 CURTIS:** I've got it. I've got it readily here.

**9 JERRY:** OK. OK. You've got everything? As far as I'm concerned.

**10 CURTIS:** Alright, we'll go ahead and turn the recorders off.

**11 JERRY:** Alright, thank you.

**12 CURTIS:** Thank you…OK…let me get that.