## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR 04-20031 |
| | ) | |
| DENNY  PATRIDGE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT COMMENTARY ON SENTENCING FACTORS

NOW COMES the United States of America, by Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Hilary W. Frooman, Assistant United States Attorney, and provides the following commentary on sentencing factors:

The majority of the defendant's objections are objections to the evidence. The defendant took advantage of every chance both pretrial and during the trial itself to argue the evidence, its relevance, its meaning.  The defendant need not accept the evidence; the jury accepted the evidence.  The Court is not required to retry the defendant in a sentencing hearing.

The Probation Officer effectively responds to the defendant's objections.  Unless the government has further information to provide, the government adopts the Probation Officers responses to objections.

Corrections:

Paragraph 15: The defendant is correct in that Patridge Insurance Services filed a return for the 1996 tax year.

The defendant makes numerous objections to facts presented in the pre-sentence report. A defendant who challenges factual allegations in the PSR has the burden of producing some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question. A defendant cannot show that the PSR is inaccurate simply by denying its truth. Instead, beyond such a bare denial, he must produce some evidence that calls reliability or correctness of alleged facts into question. United States v. Shannon, 94 F.3d 1065, 1076 (7th Cir. 1996 (vacated on other grounds). If the defendant meets his burden of production, the burden of persuasion shifts back to the prosecution, who in turn must convince the court that the facts presented by the government are actually true. United States v. Isirov, 986 F.2d 183, 186 (7th Cir. 1993), citing United States v. Coonce, 961 F.2d 1268, 1280 (7th Cir. 1992).

If challenged information in the PSR is nothing but a "naked or unsupported charge," the burden of production and mere denial of the allegation might suffice to preclude the sentencing court from relying on the information. United States v. Coonce at 1279. The government may also present evidence beyond the facts on which a defendant was convicted. In United States v. Leonard, 289 F.3d 984, 987 (7th Cir. 2002), the defendant pled guilty to filing false income taxes on her own behalf. The district court conducted a sentencing hearing and reviewed documents and heard testimony of witnesses. The court concluded there was a similarity of conduct among the several incidents before the court. For such a conclusion, a sentencing court must look to the identity of the participants and the nature, structure and location of the transactions. United States v. Cedano-Rojas, 999 F.2d 1175, 1180 (7th Cir. 1993). The court in Leonard

concluded that the tax returns which the defendant fraudulently prepared on behalf of others was "relevant conduct" to be included for sentencing and noted several factors in reaching this conclusion. Among the points on which the sentencing court relied was the fact that each transaction in the case involved a common victim: the I.R.S. Another point on which the court relied was that Leonard's <u>modus operandi</u> was the same on each occasion she caused the IRS to be defrauded. At the sentencing hearing, the sentencing court heard five prior "clients" of Leonards' testify that they observed her prepare her tax returns and for each, she attached a falsified W-2 which showed falsified wages or withholdings. <u>United States v. Leonard</u> at 987-88. The sentencing court, therefore, determined that each instance of fraud was very similar to each other instance of fraud and it was appropriate to consider all as "relevant conduct."

The defendant has been tried and convicted. He cannot retry the case now.

<u>Objection, paragraph 6:</u>

In addition to the Probation Officer's response that Larson was convicted in a related case. The government notes that Larson, as explained in paragraphs 20 and 24, Larson acted as the defendant's tax preparer during at least a portion of the fraudulent activity.

<u>Objection, paragraph 10:</u>

The government adopts the Probation Officer's response.

<u>Objection, paragraph 13:</u>

The Probation officer knows what report he reviewed. It is ridiculous for the defendant to argue this point.

Objection, paragraph 14:

W-8's relate solely to foreign entities.  The form allows a foreign entity to state it is not subject to U.S. taxes.  The defendant attempted to establish himself as a foreign entity.  The defendant was both Ebba International Trust and Conventus Global Trust.

Objection, paragraph 15:

Evidence was presented to the jury and the jury convicted the defendant.  The trusts were the defendant.  The defendant evaded his taxes by fraudulently deducting funds which were "K-1'd" to trust accounts.  However, the defendant is correct in that Patridge Insurance Services filed a return for the 1996 tax year.

Objection, paragraph 16:

Conventus did not pay taxes.  The defendant himself funneled untaxed income to Conventus and evaded taxes.  The transfer of funds was a deliberate act to evade taxes.

Objection, paragraphs 17, 18, 19

The defendant was convicted of "evading" taxes and the government will not argue with the jury's determination.

Objection, paragraph 20:

Larson would not have prepared the defendant's tax returns had the defendant not made such a request and provided Larson with certain information.  The defendant is responsible for the filing of his tax returns.

Objection, paragraph 21:

The paperwork reduction act has nothing to do with this case and the

defendant fails to show any relation whatever to this case. The defendant never raised this argument in his defense. The idea that certain witnesses were "not allowed" to testify is utter nonsense. Those witnesses made a decision on their own not to testify. Finally, the defendant fails to establish how those witnesses could possibly have established the defendant's innocense. The defendant filed tax returns for 1996, 1997, 1998. The returns were fraudulent. The jury accepted this point and convicted the defendant.

Objection, paragraph 22:

The defendant refuses to recognize the requirement to pay taxes timely. A tax return, filed timely, reflects income and expenses in the prior year. Therefore, a tax return filed in 2000 reflects income in tax year 1999.

Objection, paragraph 23:

There is no basis for the defendant's objections. The defendant refused to provide information to the IRS. The defendant prevented a determination in line with his objection.

Objection, paragraph 24:

The defendant failed to take advantage of an opportunity to pay his taxes and put a stop to his continuing argument with the IRS. The jury both observed and heard witness Larry Phillips of J.K. Harris. The defendant had an opportunity to cross-examine the witness and the jury nevertheless convicted the defendant.

Objection, paragraph 25:

The jury heard the evidence and convicted the defendant on Counts II, IV, V, VI

and VII, all of which relate directly to the point in paragraph 25.  The defendant's association with Arnold Goldstein began July 25, 2000.  The IRS issued its notice in January, 2000.  In July, 2000, the defendant was in the middle of the audit of his 1998 returns.  The defendant failed to cooperate in the audit and he knew full well that the IRS did not recognize the concept that untaxed income might be legitimately sent offshore to avoid taxes.  Larry Phillips told the defendant that the IRS did not recognize a trust system used as the defendant used his trust system.

Objection, Paragraph 26:

The defendant asserts that the "Goldstein Plan" was created by Goldstein, not by him.  The argument is irrelevant.  It was the defendant who used the plan and the defendant who to prevent the IRS using the defendant's funds to pay the defendant's taxes.

Objection, paragraph 27:

The defendant still refuses to recognize that Patridge Asset Management Trust ("PAMT") is the defendant's nominee.  For the IRS to issue a "stat" notice in January, 2000 cannot be equated with formal recognition of the defendant's trust.  The defendant failed to cooperate in the audit and the defendant lost his opportunity to present his position to the IRS.  He presented his position to the jury and the jury rejected it.

Objection, paragraph 28:

The defendant refuses to accept Larry Phillip' trial testimony.  Phillips' position has been consistent.  The jury heard the taped conversation to which the defendant refers at least three times during the trial (by the government's count).  The jury gave

the conversation what weight it wished and the jury convicted the defendant.

The defendant had Phillips' grand jury testimony so he might cross examine Phillips at trial. The defendant not only made his remarks to the jury during trial, but he said to the grand jury as follows: (See: Exhibit 1)

Objection , paragraph 29:

The defendant caused the Minetta account opening; Minetta was Patridge's nominee.

19.  Objection, paragraph 32:

The jury heard testimony which established that the defendant loaned money to himself in that the defendant transferred money to Sultan Services; Sultan Services transferred the funds to Minetta, which the defendant controlled, and Minetta loaned funds to the defendant which were, in fact, the defendant's funds.  The defendant loaned his money to himself.

20.  Objection, paragraph 33:

 The defendant continues to argue the relevance of whipsaw tax to this case.  The defendant was charged in the Superseding indictment; PAMT was not charged.  What the IRS did with respect to PAMT and taxes owed by that entity is something the defendant can continue to argue with the IRS, but the government will establish loss based upon the defendants failure to pay the taxes assessed against the defendant, not PAMT.

21.  Objection paragraph 34:

The defendant objects that he, not the IRS, has been victimized.  Basically, the

defendant objects to the evidence. The jury heard the evidence and, made a decision based upon the evidence. One very clear reason that the IRS is a victim in this case is that the defendant was charged and convicted of evading payment. The defendant's 1996 and 1997 taxes had been assessed and the final notice of taxes owed had been provided to the defendant. Contrary to the defendant's position, the defendant did, indeed, cheat the government.

This criminal investigation began with the defendant refusing to cooperate with an audit. All trusts are not illegal, but trusts used to evade taxes are illegal Sentencing Guideline 2T1.1c, "Tax loss" is defined in subsection c. Tax loss does not include interest or penalties, except in "willful evasion of payment cases under 26 U.S.C. §7201. . ." The government does not fully understand the defendant's point with respect to social security taxes and therefore, cannot respond. The government is prepared to present evidence on the tax loss figures. The figures were reached as follows:

1996 Tax Loss: $130,736.75

1997 Tax Loss: $88,675.47

For 1996 and 1997 tax loss, the figures are exactly those on the IRS notice of assessment. The defendant evaded payment of the taxes and the amount of taxes owed is as state. It is those amounts the defendant evaded. (Exb 55X, )

1998 Tax Loss: $25,639

The 1998 tax loss was based on the adjusted gross income presented on the defendant's 1998 tax return, to which the government added those funds funneled

through Ebba International Trust and then to Conventus Global Trust.  Certain losses

were subtracted to reach a corrected adjusted gross income ("AGI").  (See: Exhibit 185C,

185D, previously admitted, and 186E, to be presented by the government with

testimony at sentencing hearing.)

Taxes for the 1988 tax year should be included in the total tax loss, as the 1998 tax

returns are central to evasion of payment.  The 1998 tax returns were due in 1999.  By

1999, the defendant was aware that the IRS questioned his taxes for the 1996 and 1997

tax years.  The defendant continued his evasion, and, in fact, was so extremely aware of

the audit of the 1998 tax year, that in 2000, he established Sultan Services though Arnold

Goldstein. (See: Exhibit 109, Helfer's audit file, 55U, fax from Phillips to defendant

7/18/00 with notes from Helfer with questions about the defendant's offshore trusts;

Exhibit 135, 7/20/00 Fed Ex of trusts to Belize.  The defendant established Sultan

Services in August 2000, (Exhibit 120).  Finally, the investments which the defendant

liquidated in 2000 included investments from the defendants previous years' income.

That IRS would have placed a lien on all of the defendant's investment accounts had

that money remained in the United States

Further, a sentencing court may consider conduct of which a defendant has been

acquitted, so long as it has been proven by a preponderance of the evidence.  *United

States v. Wicks*, 132 F.3d 383, 388(7th Cir. 1997.  *United States v. Masters*, 978 F.2d 281, 285-

86 (7th Cir. 1992); *United States v. Banks*, 964 F.2d 687, 692 (7th Cir. 1992); *United States v.

Fonner*, 920 F.2d 1330, 1332-33 (7th Cir. 1992).

The 1998 tax year and taxes owed for that year were directly related to wire

fraud and money laundering. The defendant wired money to Nevis and wired back to Minetta; the money went next to the defendant and then back to Sultan Services in Nevis. Funds so wired included the liquidated investments which, no doubt, included funds from 1998 investments.22.

 Objection, paragraph 37: 

The Probation Officer correctly states the preparation and filing requirements for pre-sentence reports.

Objection, paragraph 38:

Circumstantial evidence links the defendant's shipment of trust documents to the IRS' intention to review those documents. The defendant took the trouble to ship documents which, according to him, can be of no interest to the IRS. Nevertheless, the IRS and the government never obtained the full trust documents. The unsigned version the trust, seized by the IRS from Aegis, was unsigned and bore no notary stamps. Nor did it reveal the appointment of directors. It did not include minutes of the board meetings. (See: Exhibit 109, 55U,135)

Objection, paragraph 39:

The defendant objects to the Probation Officer's characterization of his testimony as "untruthful." Having heard the evidence in trial, one may conclude that the statements the defendant made were, indeed, untruthful. The defendant apparently had a credit, not a debit card. The defendant misled Judge McDade. (See: Exhibit 1 (SEALED))

Objection, paragraph 40:

The Pre-Sentence Report is correct. No one but the defendant directed Sultan Services funds.

Objection, paragraph 42:

The Pre-Sentence Report is correct.

Objection paragraph 43:

The Pre-Sentence Report is correct.

Objection, paragraph 44:

The Pre-Sentence Report is accurate.

Objection, paragraph 45:

The Pre-Sentence Report is accurate and the Probation Officer correctly explains the guidelines.

Objection, paragraph 46:

The Probation Officer effectively answers the defendant's objection.

Objection, paragraph 48

The Probation Officer is quite correct in his application of the Sentencing Guidelines.

Objection, paragraph 49:

The defendant objects to an enhancement for sophisticated means. As the Seventh Circuit explained in *United States v. Furkin*, *supra*, this enhancement "relates to the complexity of a defendant's scheme." 119 F.3d at 1284. In *Furkin*, the district court based the enhancement on conduct such as: "everyday operation of the business, such

as using fictitious names, failing to keep records concerning income, destroying records, using cash to buy equipment. . ." Id.

The sophistication by which Patridge operated included: establishment of offshore bank accounts in Antigua and Nevis, using nominee entities, such as Minetta, to "loan" him money which came from the Sultan Services accounts and which he had originally placed there. The defendant liquidated his United States investments and sent the funds offshore to an account to which his name was not connected. The defendant established a complex web of activities to hide his money from the IRS. Clearly, the defendant acted with sophistication.

The above establishes sophistication in a general sense. Specifically, for money laundering, the government has shown that the defendant made use of the funds which he transferred off shore to Nevis and then transferred back to Minetta to make two vehicle purchases. One vehicle purchase, January, 2002, was made from Ken Diepholtz Chevrolet and was established through exhibits 89, 90, 91, 93, 94 and 95. The defendant also obtained a vehicle from Boarman's auto in July, 2002. The defendant handled this latter purchase by having Minetta named as the nominee lessor and the defendant named himself as the lessee for this vehicle. The defendant transferred funds from Sultan Services to Minetta to effectuate this purchase.

Objection, paragraph 51:

The government does not understand the nature of the defendant's objection.

Objection, paragraph 52:

Obstruction of Justice

The defendant objects to two points being included for obstruction.  U.S.S.G.§3C1.1

provides:

> If (A) the defendant willfully obstructed or impeded, or
> attempted to obstruct or impede, the administration of
> justice during the course of the investigation, prosecution. . .
> of the instant offense of conviction, and (B) the obstructive
> conduct related to (i)the defendant's offense of conviction
> and any relevant conduct; or (ii) a closely related offense,
> increase the offense level by 2 levels.
> Examples of the conduct considered obstruction are:
> (c) producing or attempting to produce a false, altered, or
> counterfeit document or record during an official
> investigation. . .
> (d) destroying or concealing or directing or procuring
> another person to destroy or conceal evidence that is
> material to an official investigation or judicial proceeding
> (e.g., shredding a document or destroying ledgers upon
> learning that an official investigation has commended or is
> about to commence), or attempting to do so. . . .

U.S.S.G. §3C1.1 Application Note 4(c) and (d).

In *United States v. Furkin*, the adjustment was applied when,

> . . .after Furkin learned of the grand jury investigation, he
> lied to the IRS and caused others to do so, he caused others
> to lie to the grand jury, he failed to produce records which
> had been subpoenaed, and he created false documents to be
> turned over to the IRS and to the grand jury."

119 F.3d at 1285.

There are actually several bases for obstruction of justice.  The defendant

obstructed an audit, lied to Judge McDade regarding a grand jury subpoena, lied to a

trial jury and attempted to establish that he had no intent whatever to either obstruct or

to commit fraud to begin with.

A.  Set forth in the quote from the January 16, 2003 RTSC hearing, is the

defendant's first lie. (Exhibit. 1 (SEALED))  The defendant misled Judge McDade

regarding whether he had access to his accounts at Swiss America Bank by means of a

debit card.  His answer, as noted in the quotation in Exhibit 1(SEALED).  The defendant

stated that he had no debit card, nor any similar type of card.  Count three lists and the

government proved to the jury's satisfaction that the defendant made use of offshore

funds to his own benefit through the use of a credit card associated with his offshore

Swiss American Bank account.

      B.  The defendant's deliberate lie in the RTSC hearing on January 16, 2003 with

respect to the missing trust documents.  The defendant had been served with a

subpoena which requested such relevant documents.  Failure to comply with that

subpoena led to the RTSC hearing.  It is, first of all, not for the defendant to determine

whether documents sought by the grand jury are material to an investigation.  He has

no right to deliberately mislead the grand jury and fail to produce such documents

and/or lie about the whereabouts and reasons for his inability to access such

documents.  The defendant attempted to place blame on Larry Phillips in an attempt to

bolster his argument that in his entire fraud scheme he relied on the advice of others.

      The defendant argues that the documents sent back to Belize had no relevance to

the investigation and prosecution, the trust documents themselves included other than

the simply trust document.  As the defendant admitted in his January 16, 2003 RTSC

hearing, it was not only the trust documents, but the trustees pages which were sent

back.  Such documents might have revealed dates and provided signatures.  The grand

jury and the government sought to establish who was present when the trusts were

established and the exact date they were established. Further, based on experience with other Aegis trust, there were Board of Directors minutes. The defendant never provided those minutes, but those minutes could have revealed when, exactly, when the trusts in question were established, who was present at the time, and who had responsibility for establishment of those trusts. The defendant's comment that the documents had no relevance in the investigation and the case in general, is wrong.

The third basis for obstruction is that the defendant not only lied to the grand jury, he continued in his lies before the trial jury. The defendant had two years to determine to tell the truth and he failed to do so. The Rule to Show Cause hearing was in January, 2003. The trial was in June, 2005. Therefore, the defendant lied on two occasions regarding the same piece of evidence.

Objection, paragraph 53:

The Probation Officer is correct.

Objection, paragraph 54:

This defendant is not entitled to acceptance of responsibility.

Objection paragraph 55 and 57:

The Probation Officer has correctly calculated the defendant's guidelines.

Objection, paragraphs 91-92:

The Probation Officer has correctly calculated the defendant's guidelines.

Objection, paragraph 98

The Probation Officer has correctly calculated the defendant's guidelines.

Objection, paragraph 101:

The Probation Officer has determined a correct restitution figure.

Objection, paragraph 105:

Tax loss is total tax loss, while the restitution figures give the defendant credit for income tax previously paid.  Therefore, the two are related, and the government will review both.

As an initial point, the government can be a "victim," *United States v. Salcedo-Lopez*, 907 F.2d 97 (9th Cir. 1990).  Government agencies, specifically, can be victims. *United States v. Martin*, 128 F.3d 1188, 1190-92 (7th Cir. 1997) (Illinois Department of Public Aid) and citing *United States v. Emerson*, 128 F.3d 557 (7th Cir. 1997) (Postal Service); *United States v. Humphrey*, 34 F.3d 551 (7th Cir. 1994) (Medicare); *United States v. Fountain*, 25 F.3d 553 (7th Cir. 1986) (Department of Labor).

The IRS can and has been considered a victim and courts have in the past ordered restitution to the IRS.  *United States v. Tucker*, 217 F.3d 960, 962 (8th Cir. 2000); *United States v. Minneman*, 143 F.3d 274, 284 (7th Cir. 1998), *United States v. Furkin*, 119 F.3d 1276, 1279 (7th Cir. 1997).

In the Seventh Circuit, restitution is not viewed as a criminal sanction or punishment.  As a result, the Mandatory Victim Restitution Act of 1996 (MVRA) was not subject to the *ex post facto* clause. *United States v. Bach*, 172 F.3d 520, 522-23 (7th Cir. 1999); *United States v. Lopez*, 222 F.3d 428, 440 (7th Cir. 2000).

The Seventh Circuit has addressed the issue of whether the VWPA applies to Title 26 cases.  Specifically, in *United States v. Minneman*, 143 F.3d 274, 284 (7th Cir.

1998), the Seventh Circuit reviewed a district court order from the Central District of Illinois in which the court ordered restitution in a case charged under Title 18 for a conspiracy to violate the tax laws under Title 26. As the Second Circuit had previously concluded in *United States v. Helmsley*, 941 F.2d 71, 101 (1991), the VWPA applies because "...conspiracy is a separate crime from the underlying predicate act, and nothing in the statute limits a court's power to order restitution after a conviction for conspiracy...." *Id.*

There is a clear difference between the application of the VWPA under Title 18 and the Court's power to order restitution under Title 26. Prior to imposition of the VWPA, restitution could be ordered as a condition of supervised release pursuant to 18 U.S.C. § 3579. For Title 26 offenses, the Court today may still order restitution pursuant to U.S.S.G. § 5E1.1(a)(2) and 18 U.S.C. § 3583(d). *United States v. Bugai*, 162 F.3d 1162 (6th Cir. 1998) (unpublished opinion); Gall v. United States , 21 F.3d 107, 110-11 (6th Cir. 1994)

Because restitution is related to full loss, the government will explain both loss and restitution figures. The amount of loss sustained by a victim must be established by a preponderance of the evidence. 18 U.S.C. § 3664(d). A defendant has a constitutional right to be sentenced on the basis of accurate information. *United States v. Townsend*, 73 F.3d 747, 751 (7th Cir. 1996); *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir. 1992). Thus, while the judge may rely on hearsay and biased testimony, the testimony must be sufficient indicia of reliability to support its probable accuracy. *United States v. Carmack*, 100 F.3d 1271, 1276 (7th Cir. 1996); *United States v. Lanterman*, 76

F.3d 158, 160-61 (7th Cir. 1996) (all evidence may be considered, regardless of admissibility, but unreliable allegations may not be considered.)  The Federal Rules of Evidence do not apply to sentencing hearings.  *United States v. McEntire*, 153 F.3d 424, 435 (7th Cir. 1998); *United States v. Edwards*, 115 F.3d 1322, 1326 (7th Cir. 1997) (while hearsay is admissible, contested hearsay must be reliable and the defendant must be afforded a reasonable opportunity to rebut it).

Although the government bears the burden at sentencing of proving the amount of tax loss flowing from the defendant's illegal acts, *see*: *United States v. Rice*, 52 F.3d 843, 848 (10th Cir. 1995), neither the government nor the court has an obligation to calculate the tax loss with certainly or precision. *United States v. Bryant*,  128 F.3d 74, 75 (2d Cir. 1997).  Thus, in *United States v. Spencer*, 178 F.3d 1365, 1368 (10th Cir. 1999), a review of all employees tax returns might have generated a more accurate tax loss computation, "it would be unreasonable to impose such a burden on the government or the court."

The Tenth Circuit recognized in *Spencer* that tax records may not be accessed by government agencies except under rare circumstances and only after satisfying rigorous administrative prerequisites. (26 U.S.C. §6103) "Requiring precise calculations which entail the gathering of documents that are diffuse and/or difficult to obtain would reward a defendant whose tax fraud was particularly complex and/or spanned a significant period of time." *Id*.

In determining a sentence under the Guidelines, the court has an ". . .obligation to employ fair procedures to determine the accuracy of information used in sentencing. . . . Every factual inaccuracy does not amount to a constitutional violation." *United States v. Franz*, 886 F.2d 973, 980 (7th Cir. 1989).

The amount of tax loss is to be calculated in a similar matter under 2T1.4 to methods used in false statements on tax returns (§2T1.3) and tax evasion (§2T1.1). It is not necessary that the government present all the bank accounts associated with each sham trust discussed in the pre-sentence report.

It is also unnecessary that the government present every tax return associated with a defendant and the years in which he used his UBO's or "sham" trusts. The Internal Revenue Code specifically provides that the "gross income for a trust is determined in the same manner as that of an individual." 26 U.S.C. §641(b). The gross income on a 1041 filed for a trust would therefore be the same figure which would have appeared on the taxpayers individual 1040 tax return. Therefore, one or the other tax return would be equally appropriate for determining a sentencing guideline figure.

To determine the defendant's 1998 restitution figure, Revenue Agent Pogue will explain that the government relied on a tax return prepared but unfiled. The tax return, when compared to available bank records, provides figures upon which Pogue was able to rely in determining tax loss.

(Exhibit 2)

Respectfully submitted,

RODGER A. HEATON
United States Attorney

s/ Hilary W. Frooman_____
HILARY W. FROOMAN, Reg # 6180241
Assistant United States Attorney
United States Attorney
Southern District of Illinois
9 Executive Drive, Suite 300
Fairview Heights, IL 62208
618/628-3708
FAX:618/628-3730
hilary.frooman@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

Jerold W. Barringer
P.O. Box 213
Nokomis, IL 62075
<u>jwbarringer@dtnspeed.net</u>

<u>s/ Hilary W. Frooman</u>
HILARY W. FROOMAN, Reg # 6180241
Assistant United States Attorney
United States Attorney
Southern District of Illinois
9 Executive Drive, Suite 300
Fairview Heights, IL 62208
618/628-3708
FAX:618/628-3730
hilary.frooman@usdoj.gov